UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **VICTOIRE DUMONT**<br>**214 Harrison Drive**<br>**Centerport, NY 11721**<br><br>          **Plaintiff,**<br><br>     **v.**<br><br>**ABBOTT LABORATORIES, INC.**<br>**100 Abbott Park Road**<br>**Abbott Park, IL 60064**<br>**w/s/o CT CORPORATION**<br>**1025 Vermont Avenue, NW**<br>**Washington, DC 20036**<br><br>          **and**<br><br>**BURROUGHS-WELLCOME & CO.**<br>**n/k/a GlaxoSmithKline, Inc.**<br>**1500 K Street, N.W.**<br>**Washington, DC 20036**<br><br>          **and**<br><br>**S.E. MASSENGILL, CO.**<br>**n/k/a GlaxoSmithKline, Inc.**<br>**1500 K Street, N.W.**<br>**Washington, DC 20036**<br><br>          **and**<br><br>**CARNRICK LABORATORIES, INC.**<br>**n/k/a Elan Pharmaceuticals, Inc.**<br>**w/s/o National Registered Agents, Inc.**<br>**1090 Vermont Avenue, NW #910**<br>**Washington, DC 20005**<br><br>          **and** | **Civil Action No.** |

**DART INDUSTRIES, INC.,**      ]
**p/k/a Rexall Drug Company, Inc.**      ]
**c/o Sheila Ann Marie Moeller, Esq.**      ]
**Gilbride, Tusa, Last & Spellane**      ]
**31 Brookside Drive**      ]
**Greenwich, CT 06830**      ]
      ]
     **and**      ]
      ]
**ELI LILLY AND COMPANY**      ]
**Lilly Corporate Center**      ]
**Indianapolis, Indiana 46285**      ]
**w/s/o National Registered Agents, Inc.**      ]
**1090 Vermont Ave, NW #910**      ]
**Washington, DC 20005**      ]
      ]
     **and**      ]
      ]
**KREMERS-URBAN CO.,**      ]
**n/k/a Mequon Company**      ]
**c/o Cooper, Kardaras & Scharf**      ]
**40 Wall Street**      ]
**New York, New York 10005-1303**      ]
      ]
     **and**      ]
      ]
      ]
**LANNETT CO., INC.**      ]
**c/o Fox & Rothschild**      ]
**2000 Market Street**      ]
**Philadelphia, PA 19103-3291**      ]
      ]
     **and**      ]
      ]
**MALLINCKRODT, INC.**      ]
**675 McDonnell Blvd.**      ]
**St. Louis, MO 63042**      ]
      ]
     **and**      ]
      ]

**MERCK & CO., INC.**                              ]
**601 Pennsylvania Avenue NW**                     ]
**North Building, Suite 1200**                     ]
**Washington, DC 20004**                           ]
                                                   ]
      **and**         ]
                                                   ]
**MERRELL DOW**                                    ]
**PHARMACEUTICALS, INC.**                          ]
**c/o Corporation Trust Co.**                      ]
**820 Bear Tavern Road**                           ]
**West Trenton, NJ 08268**                         ]
                                                   ]
      **and**         ]
                                                   ]
**MCNEIL LAB, INC.,**                              ]
**n/k/a Ortho-McNeil Pharmaceutical, Inc**         ]
**1000 U.S. Highway 202**                          ]
**Raritan, NJ 08869**                              ]
                                                   ]
      **and**         ]
                                                   ]
**PREMO PHARMACEUTICAL**                           ]
**LABORATORIES, INC.**                             ]
**p/k/a Lemmon Co. of NJ., Inc.**                  ]
**c/o Corporation Trust Co.**                      ]
**820 Bear Tavern Road**                           ]
**West Trenton, NJ 08628**                         ]
                                                   ]
      **and**         ]
                                                   ]
**RHONE-POULENC RORER**                            ]
**PHARMACEUTICALS, INC.**                          ]
**p/k/a William H. Rorer, Inc.**                   ]
**c/o Sanofi-Aventis**                             ]
**55 Corporate Drive**                             ]
**Bridgewater, NJ 08807**                          ]
                                                   ]
      **and**         ]
                                                   ]

**ROWELL LABORATORIES, INC.,**    ]
**p/k/a Solvay Pharmaceuticals, Inc.**  ]
**c/o T.H. Rowell, Jr., President**   ]
**210 Main Street W.**              ]
**Baudette, MN 56623**         ]
                                  ]
       **and**               ]
                                  ]
**E.R. SQUIBB & SONS, INC.**    ]
**c/o The Corporation Trust Company** ]
**1025 Vermont Ave, NW**      ]
**Washington, DC 20005**      ]
                                  ]
       **and**               ]
                                  ]
**THE UPJOHN COMPANY**     ]
**c/o CT Corp. Systems**       ]
**1025 Vermont Ave, NW**      ]
**Washington, DC 20005**      ]

Plaintiff, by her attorneys, **AARON M. LEVINE AND ASSOCIATES AND THE LAW OFFICES OF SYBIL SHAINWALD, P.C.**, upon information and belief, at all times hereinafter mentioned, allege as follows:

JURISDICTION

1.      This Court has jurisdiction pursuant to 28 United States Code Section 1332, in that Plaintiffs are citizens of States and citizens of a foreign state which are different from the States where defendants are incorporated and have their principal places of business. The amount in controversy exceeds SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) as to each Plaintiff.

PARTY PLAINTIFFS

2.      Plaintiff VICTOIRE DUMONT was born on December 3, 1970, and is a citizen and resident of the State of New York.

PARTY DEFENDANTS

3.      The Abbott Laboratories is a corporation incorporated under the laws of the State of Illinois with its principal place of business in Illinois.

4.      Burroughs-Wellcome and Co., Inc., n/k/a GlaxoSmithKline, Inc. is a corporation under the laws of the State of North Carolina with its principal place of business in North Carolina.

5.      Carnrick Laboratories, Inc. n/k/a Elan Pharmaceuticals, Inc. is a corporation incorporated under the laws of the State of New Jersey with its principal place of business in New Jersey.

6.      Dart Industries, Inc., p/k/a Rexall Drug Company, Inc. is a corporation incorporated under the laws of Illinois with its principal place of business in Delaware.

7.      Eli Lilly and Company is a corporation incorporated under the laws of the State of Indiana with its principal place of business in Indiana.

8.      Kremers-Urban Co., n/k/a Mequon Company, is a corporation incorporated in the State of Wisconsin with its principal place of business in Wisconsin.

9.      Lannett Co., Inc., is a foreign corporation with its principal place of business in Pennsylvania.

10.      McNeilab, Inc., n/ka/ Ortho-McNeil Pharmaecutical, Inc. is a corporation incorporated under the laws of the State of Pennsylvania with its principal place of business in Pennsylvania.

11.      Mallinckrodt, Inc., is a corporation incorporated under the laws of the State of California with its principal place of business in California.

12.      S.E. Massengill, n/k/a GlaxoSmithKline Inc., is a corporation incorporated under the laws of the State of Tennessee with its principal place of business in

Tennessee.

13.     Merck & Co., Inc., is a corporation incorporated under the laws of the State of New Jersey with its principal place of business in New Jersey.

14.     Merrell Dow Pharmaceuticals, Inc., is a corporation incorporated under the laws of the State of Ohio with its principal place of business in Ohio.

15.     Premo Pharmaceutical Laboratories, Inc. p/k/a Lemmon Co. of N.J.. Inc., is a corporation incorporated under the laws of the State of New Jersey with its principal place of business in New Jersey.

16.     Rhone-Poulenc Rorer Pharmaceuticals, Inc. p/k/a William H. Rorer, Inc., is a corporation incorporated under the laws of the State of Pennsylvania with its principal place of business in Pennsylvania.

17.     Rowell Laboratories, inc., n/k/a Solvav Pharmaceuticals is a corporation incorporated under the laws of the State of Minnesota with its principal place of business in Minnesota.

18.     E.R. Squibb & Sons, Inc. is a corporation incorporated in the State of New Jersey with its principal place of business in New Jersey.

19.     The Upjohn Company is a corporation incorporated under the laws of the State of Michigan with its principal place of business in Michigan.

## FACTUAL BACKGROUND

20.     At all relevant times, Defendants were in the business of and did create, design, manufacture, test, formulate, advertise, market, promote, sell, and/or distribute the drug DES.

21.     During the period in and about 1940 and prior and subsequent

6

thereto, Defendants assisted each other to prepare the drug DES, which thereupon became a generic drug manufactured by them and by other drug companies. Defendants also assisted each other to exploit, market and secure permission from the FDA to publicly sell DES for ingestion by humans. Defendants knew and were aware, or should have known, that the drug had been insufficiently tested; that it had not been sufficiently tested upon humans; and lacked adequate warnings. Nevertheless, these Defendants endeavored to obtain FDA approval of the drug in that form and otherwise assisted each other and other drug companies to bring DES to the market, thereby enabling such others and themselves to market a drug involving harmful results to users and the offspring of users.

22.     Defendants made certain claims and representations that were contained in their supplemental New Drug Application, some of which were that the new use of said DES in the prevention of miscarriages and accidents in pregnancy was both safe and efficacious.

23.     Defendants made certain claims that were distributed and circulated to the medical profession and to the general public through advertising, literature, detail men, brochures and other materials stating that DES was a safe and efficacious drug for the treatment of accidents in pregnancy.

24.     At the time, these Defendants knew or should have known that DES and its components had the potential to become harmful to users and offspring of users and knew or should have known that the drug was ineffective for the purpose for which it was marketed and sold.

25.     Upon information and belief, these Defendants and the other

persons and drug companies secured FDA approval; brought DES to the market where it was produced by these Defendants and/or other drug companies with the same content and same potential for harm; and distributed and marketed DES to the public so as to induce its use in the manner in which it was used by Plaintiffs' mothers.

26.    Upon information and belief, these Defendants and the other drug companies misrepresented the risks inherent in the use of DES in their applications to the FDA and to other governmental persons and/or agencies.

27.    Defendants knew, or should have known, of the above-mentioned risks based upon the state of knowledge as it existed at that time and upon generally accepted engineering, medical and research standards and principles.

28.    The Defendants, their agents, servants and/or employees, manufactured, produced, promoted, formulated, created or designed DES without testing it for use in pregnancy, without making proper and sufficient tests to determine the dangers and contra-indications thereof, and without warning the public and the medical profession of the dangers and contra-indications and side effects inherent in the aforesaid drug. The Defendants also negligently advertised and recommended the use of DES without sufficient knowledge as to its dangerous propensities; represented that the said drug was safe for use for its intended purpose, when, in fact, it was unsafe; and failed to conduct sufficient testing programs to determine whether or not the aforesaid drug was safe for use. Defendants knew or should have known that said drug was unsafe and unfit for use by reason of the dangerous effects, contra-indications and dangers to a fetus during the pregnancy of its mother. Defendants, their agents, servants and/or employees, improperly obtained the

8

approval of the FDA to market the drug by misrepresenting the risks of the drug to the FDA; knew that it was a substance, which crossed the placental barrier and therefore could cause injury to a fetus in utero; and were otherwise negligent.

29.     Defendants, by their agents, servants and/or employees were careless and negligent in the manufacturing, selling, distribution, merchandising, advertising, promotion, compounding, packaging, fabrication, analyzing, marketing, and recommendation of said drug DES without making proper and sufficient tests to determine the dangers thereof.

30.     In this action, Plaintiffs claim that they were exposed to DES in utero and that their mothers ingested DES, which was marketed by Defendants.

31.     By reason of the foregoing, those exposed to DES have developed, or are at extremely high risk for experiencing, certain cancers, infertility, ectopic pregnancies, as well as other serious injuries; and Plaintiffs herein have sustained severe, serious, permanent and personal injuries; will require extensive hospitalizations, medical care, surgeries, and lifelong attention; will be incapacitated from their normal functioning and will be unable to pursue normal means of livelihood; will be precluded from having a normal life, physically, intellectually, vocationally, emotionally, or psychologically; and Plaintiffs have been otherwise grossly damaged.

32.     Whether or not Plaintiffs prove which particular manufacturer produced the drug ingested by Plaintiffs' mothers, Defendants will be liable to them, based on market share liability, because they marketed the drug for pregnancy use.

## FIRST CLAIM FOR RELIEF

### (Strict Products Liability)

33.     Plaintiffs repeat, reiterate and reallege each and every allegation

contained in the paragraphs numbered "1" through "35", inclusive, with the same force and effect as if hereinafter set forth at length.

34.    At all times herein mentioned, the Defendants, and each of them, manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted, sold, purchased, prescribed, and administered the aforesaid DES as hereinabove described and prior to the time that Plaintiffs or Plaintiffs' mothers, and thereby Plaintiffs, used said product.

35.    The said drug product, more particularly known as DES, was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by the Defendants.

36.    At those times, the said drug product DES, was in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, the general public and, in particular, the Plaintiffs herein.

37.    Defendants, while regularly engaged in the business activities aforementioned, did design, develop, manufacture, produce, test, sell, market and/or distribute a certain drug product, more particularly known as DES, which was ingested by Plaintiffs' mothers and thereby Plaintiffs.

38.    At all times herein mentioned, the said drug product DES was in a defective condition and unsafe and Defendants, individually, jointly and severally, knew or had reason to know that said product was defective and unsafe, especially when used as a miscarriage preventative.

39.    The said drug product DES was inherently dangerous.

40.     At the time of the occurrence and ingestion by Plaintiffs' mothers, the said drug product, DES, was being used for the purposes and a manner normally intended.

41.     Neither Plaintiffs nor their mothers could, by the exercise of reasonable care, have discovered the defects herein mentioned and/or perceived their danger.

42.     As a direct and proximate result of the defective condition of DES manufactured and supplied by Defendants, Plaintiffs were caused to sustain severe and grievous personal injuries, as described herein.

43.     By reason of the foregoing, the Defendants have become strictly liable in tort to the Plaintiffs for the marketing of a defective product, regardless of whether they marketed the particular pill taken by Plaintiffs' mothers.

44.     By reason of the foregoing, Plaintiffs have been damaged as against each defendant in the sum of TEN MILLION DOLLARS ($10,000,000.00) in compensatory damages and TEN MILLION DOLLARS ($10,000,000.00) in punitive damages.

SECOND CLAIM FOR RELIEF

(Negligence)

45.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "47" inclusive, with the same force and effect as if more fully set forth herein.

46.     The negligence of the Defendants, their agents, servants, and/or employees, included but was not limited to the following acts or omissions:

      (a) manufacturing, producing, promoting, formulating, creating, and/or designing DES without testing it for use in pregnancy;

(b) selling DES without making proper and sufficient tests to determine the dangers and contra-indications thereof;

(c) negligently failing to adequately and correctly warn the public and the medical profession of the dangers and contra-indications and side effects inherent in the aforesaid drug and failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with said product;

(d) negligently advertising and recommending the use of the aforesaid drug without sufficient knowledge as to its dangerous propensities;

(e) negligently representing that the said drug was safe for use for its intended purpose, when, in fact, it was unsafe;

(f) not conducting sufficient testing programs to determine whether or not the aforesaid drug was safe for use; in that Defendants herein knew or should have known that said drug was unsafe and unfit for use by reason of the dangerous effects, contra-indications and dangers to a fetus during the pregnancy of its mother; and

(g) improperly obtaining the approval of the FDA to market the drug by misrepresenting the risks of the drug to the FDA; in knowing that it was a substance that crossed the placental barrier and therefore could cause injury to a fetus in utero.

47.     As a direct and proximate result of the aforementioned negligence on the part of the Defendants, Plaintiffs were caused to sustain severe and grievous personal

injuries, as set forth herein.

48.     By reason of Defendants' actions as aforementioned, Defendants are liable to Plaintiffs regardless of whether or not they manufactured the particular DES drug ingested by Plaintiffs' mothers.

49.     By reason of the foregoing, Plaintiffs have been damaged as against each defendant in the sum of TEN MILLION DOLLARS ($10,000,000.00) in compensatory damages and TEN MILLION DOLLARS ($10,000,000.00) in punitive damages.

<u>THIRD CLAIM FOR RELIEF</u>

(Breach of Express Warranty)

50.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "52" inclusive, with the same force and effect as if more fully set forth herein at length.

51.     Defendants, and each of them, expressly represented to the users and their physicians that said drug DES was safe and fit for use for the purposes intended, that it was of merchantable quality, and that it did not produce any side effects dangerous to life, and that it was adequately tested and fit for its intended use.

52.     Members of the medical community relied upon the representations and warranties of the Defendants for use and ingestion of said drug DES in prescribing, recommending and/or dispensing same.

53.     Defendants knew or should have known that, in fact, said representations and warranties were false, misleading and untrue in that said drug DES was not safe and fit for the use intended, and, in fact, produces serious injuries to the user and the offspring of the user.  As a result of the aforementioned breach of warranties by Defendants,

13

Plaintiffs were caused to sustain severe and grievous personal injuries, as set forth herein.

54.    By reason of Defendants' actions as aforementioned, Defendants are liable to Plaintiffs regardless of whether or not they manufactured the particular DES drug ingested by Plaintiffs' mothers.

55.    By reason of the foregoing, Plaintiffs have been damaged as against each defendant in the sum of TEN MILLION DOLLARS ($10,000,000.00) in compensatory damages and TEN MILLION DOLLARS ($10,000,000.00) in punitive damages.

<u>FOURTH CLAIM FOR RELIEF</u>

(Breach of Implied Warranty)

56.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "58" inclusive, with the same force and effect as if more fully set forth herein.

57.    At all times herein mentioned, the Defendants, and each of them, manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted, sold, purchased, prescribed, and administered the aforesaid DES as described above and prior to the time that Plaintiffs' mothers, and thereby Plaintiffs, used said product.

58.    The Defendants, and each of them, impliedly represented and warranted to the users and their physicians that the aforementioned drug product, more particularly known as DES, was safe and of merchantable quality and fit for the ordinary purpose for which said product was to be used.

59.    The said representations and warranties aforementioned were false, misleading, and inaccurate in that said drug product DES, was unsafe, unreasonably

14

dangerous, improper, not of merchantable quality, and defective.

60.    DES products were injected into the stream of commerce by the
Defendants in a defective, unsafe, and inherently dangerous condition and the products and
materials were expected to and did reach users, handlers, and persons corning into contact
with said products without substantial change in the condition in which they were sold.

61.    As a result of the aforementioned breach of warranties by Defendants,
Plaintiffs were caused to sustain severe and grievous personal injuries, as set forth herein.

62.    By reason of Defendants' actions as aforementioned, Defendants are
liable to Plaintiffs regardless of whether or not they manufactured the particular DES drug
ingested by Plaintiffs' mothers.

63.    By reason of the foregoing, Plaintiffs have been damaged as
against each defendant in the sum of TEN MILLION DOLLARS ($10,000,000.00) in
compensatory damages and TEN MILLION DOLLARS ($10,000,000.00) in punitive
damages.

## FIFTH CLAIM FOR RELIEF

### (Fraudulent Misrepresentation)

64.    Plaintiffs repeat, reiterate and reallege each and every allegation
contained in paragraphs numbered "1" through "67", inclusive, with the same force and effect
as if more fully set forth herein at length.

65.    The Defendants falsely and fraudulently represented to the medical
community and to the public in general that said drug DES was a drug that had been tested
and found to be safe and effective for the prevention of miscarriages and other pregnancy
related uses. The representations made by said Defendants were, in fact, false.

66.    When said representations were made by Defendants, they individually, jointly, and severally, knew those representations to be false, willfully, wantonly and recklessly disregarded whether the representations were true, and these representations were made by said Defendants with the intent of defrauding and deceiving the public in general, and the medical community in particular, and with the intent of inducing the public in general, and the medical community in particular, to prescribe, dispense and purchase said drug DES for the prevention of miscarriages, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of the Plaintiffs herein.

67.    At the time the aforesaid representations were made by the Defendants and, at the time that Plaintiffs' mothers ingested said drug DES, Plaintiffs' mothers and Plaintiffs were ignorant of the falsity of said representations and reasonably believed them to be true. In reliance upon said representations, Plaintiffs' mothers were induced to and did take DES during their pregnancies with their daughters, the Plaintiffs.

68.    As a result of the fraudulent misrepresentations of the Defendants set forth hereinabove, said Defendants knew and were aware or should have known that the drug had been insufficiently tested, that it had not been tested or sufficiently tested upon humans, or lacked adequate warnings, and these Defendants cooperated with others to obtain FDA approval of the drug in that form and otherwise assisted other persons and drug companies to bring DES to market a drug involving harmful results to users and the offspring of users, thereby breaching their duty to such users and aiding and assisting other persons and drug companies marketing DES to do the same.

69.    At this time, these Defendants and other persons and drug companies

with whom they were cooperating and exchanging mutual assistance in order to bring DES to the market and secure approval thereof, knew or should have known that DES, its components and in combination, had a potential to, could, and would cause severe and grievous injury to the user and to the offspring of the users of said product and that the drug was ineffective for the purpose for which it was marketed and sold and was inherently dangerous.

70.     These Defendants and other persons and drug companies, as a result of the mutual aid of each to other and in combination, secured FDA approval, brought DES to the market where it was produced by these Defendants and other drug companies with the same content and the same potential for harm, and these Defendants and the other persons and drug companies conferred and assisted in promoting and advertising, and said Defendants acted fraudulently, wantonly and maliciously to the detriment of the Plaintiffs.

71.     As a result of Defendants' fraudulent and deceitful conduct and representations, Plaintiffs were caused to sustain severe and grievous personal injuries, as set forth herein.

72.     By reason of Defendants' actions as aforementioned, Defendants are liable to Plaintiffs regardless of whether or not they manufactured the particular DES drug ingested by Plaintiffs' mothers.

73.   By reason of the foregoing, Plaintiffs have been damaged as against each defendant in the sum of TEN MILLION DOLLARS ($10,000,000.00) in compensatory damages and TEN MILLION DOLLARS ($10,000,000.00) in punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Victoire Dumont demands judgment against each

Defendant on each cause of action with interest together with the costs and

disbursements of this action.

AARON M. LEVINE & ASSOCIATES

Dated: _____          _____

Aaron M. Levine, #7864
Brandon J. Levine, #412130
1320 19th Street, N.W., Suite 500
Washington, D.C.  20036
(202) 833-8040
aaronlevinelaw@aol.com

and

Sybil Shainwald, Esq.
Roxanne DeFrancesco, Esq.
Law Offices of Sybil Shainwald
111 Broadway
4th Floor
New York, New York 10006
(212) 608-5863
shainwaldlaw@aol.com

Counsel for Plaintiff

DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury as to all issues.

_____
Aaron M. Levine, Esq.

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Victoire Dumont | Eli Lilly & Co. et al. |

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** 88888
**(EXCEPT IN U.S. PLAINTIFF CASES)**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Aaron Levine & Associates
1320 19th St. NW
Washington, DC 20036
202-833-8040

Case: 1:07-cv-01635
Assigned To : Robertson, James
Assign. Date : 9/17/2007
Description: PI/Malpractice

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

O  1 U.S. Government Plaintiff
O  3 Federal Question (U.S. Government Not a Party)
O  2 U.S. Government Defendant
⊙  4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | O 1 | O 1 | Incorporated or Principal Place of Business in This State | O 4 | O 4 |
| Citizen of Another State | ⊙ 2 | O 2 | Incorporated and Principal Place of Business in Another State | O 5 | ⊙ 5 |
| Citizen or Subject of a Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

**IV.  CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

O **A.  Antitrust**

☐ 410 Antitrust

⊙ **B.  Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☒ 365 Product Liability
☐ 368 Asbestos Product Liability

O **C.  Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

O **D.  Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

O **E.  General Civil (Other)**    OR    O **F.  Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. mployment *Discrimination* | ○ I. *FOIA/PRIV. Y ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
This case is founded under 28 USC Section 1332. Plaintiff claims she was injured as a result of exposure to Diethylstilbesterol (DES)

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23   DEMAND $ 100,000,000.00   Check YES only if demanded in complaint
JURY DEMAND:   YES ☒   NO ☐

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form

DATE 9/17/2007   SIGNATURE OF ATTORNEY OF RECORD

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.     COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II

IV.    CASE ASSIGNMENT AND NATURE OF SUIT  The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION  Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY  If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.