**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **VICTOIRE DUMONT,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| v. | ] | **Civil Action No.: 07-CV-01635 (JR/AK)** |
| | ] | **Next Event: Discovery Requests Due** |
| **THE ABBOTT LABORATORIES, INC.,** | ] | **January 14, 2008** |
| **et al.,** | ] | |
| | ] | |
| **Defendant.** | ] | |

**PARTIAL CONSENT MOTION TO TRANSFER TO
THE EASTERN DISTRICT OF NEW YORK**

COMES NOW Plaintiff Victoire Dumont, through counsel, with consent of Defendant Elan Pharmaceuticals, and moves under 28 U.S.C. § 1404(a) to transfer this cause of action to the Eastern District of New York, and as grounds therefore states:

1.      This is a products liability and personal injury case for injuries sustained by Plaintiff including, but not limited to adenocarcinoma of the vagina and cervix and infertility, as a result of her embryonic exposure to Diethylstilbestrol ("DES"), and its components.

2.      Plaintiff was born in France and has resided in Centerport, New York, which is in the Eastern District of New York, since May 2004.

3.      Plaintiff suffered many of her injuries, including infertility, while living in Centerport, New York in the Eastern District of New York.

4.      Plaintiff's currently treating physician is in New York.  In addition, a number of other physicians who have examined Plaintiff for her gynecological health are located in New York, and the laboratories to which these medical providers have submitted Plaintiff's specimens

for testing are located in New York, New York.  Accordingly, a majority of the evidence and the fact witnesses are located in New York.

5.     Plaintiff filed this case when she was a resident of Centerport, New York, which is located in the Eastern District of New York.

6.     New York law applies to this case.  All DES cases in the Eastern District of New York are handled by Judge Jack B. Weinstein, who has adjudicated hundreds of DES cases involving New York law.  The Eastern District of New York is a more appropriate jurisdiction to determine New York decisional law.

7.     A Special Master has been appointed by Judge Jack B. Weinstein in the Eastern District of New York for purposes of settlement of DES cases.

8.     The facts adduced during discovery demonstrate that the District of Columbia's contacts with this case are not as strong as the contacts clustered in the Eastern District of New York.

WHEREFORE, for the above reasons, the reasons stated in the attached Memorandum of Points and Authorities, and for good cause shown, Plaintiff respectfully requests that this action be transferred to the Eastern District of New York.

Respectfully submitted,


 /s/ Brandon J. Levine
BRANDON J. LEVINE, (#412130)
1320 Nineteenth Street, N.W.
Suite 500
Washington, DC 20036
202-833-8040

and

2

LAW OFFICES OF SYBIL SHAINWALD,
P.C.
111 Broadway, Suite 403
New York, NY
212-425-5566

Counsel for Plaintiff

### REQUEST FOR ORAL HEARING

Pursuant to LCvR 7(f), Plaintiff respectfully requests an oral hearing on this Motion to Transfer.

/s/ Brandon J. Levine
Brandon J. Levine, (#412130)

### LCvR 7.1(m) CERTIFICATION

Plaintiff requested consent for this motion from Defendants.   Defendant Elan Pharmaceuticals has consented to transfer.  The remaining  Defendants have refused consent.

/s/ Brandon J. Levine
Brandon J. Levine, (#412130)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **VICTOIRE DUMONT,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **Civil Action No.: 07-CV-01635 (JR)** |
| | ] | **Next Event:** |
| **THE ABBOTT LABORATORIES, INC.,** | ] | |
| **et al.,** | ] | |
| | ] | |
| **Defendant.** | ] | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF HER MOTION TO TRANSFER TO
THE EASTERN DISTRICT OF NEW YORK**

**I.    INTRODUCTION**

Plaintiff Victoire Dumont brought this suit to compensate for cancer, infertility and other injuries caused by Plaintiff's exposure *in utero* to diethylstilbestrol ("DES"). New York is the most appropriate location for trial of this case, both for the convenience of the witnesses and for the interests of justice.

For the past three years of her life, Plaintiff has lived in the Eastern District of New York. *See* Exhibit A to Declaration of Brandon J. Levine, Esq., (hereinafter "Levine Dec."), the Affidavit of Plaintiff Victoire Dumont (hereinafter "Dumont Aff."). Plaintiff's currently treating physicians practice in New York, well within the subpoena power of the Eastern District. *See id.* Plaintiff was a resident of the Eastern District of New York when she filed this suit, and asserts claims under New York law. *See id.; see also* Levine Dec., Exhibit B (Complaint).

In Albin v. Eli Lilly and Co., Civil Action No. 04-986 (D.D.C. July 30, 2004), *see* Levine Dec., Exhibit C (case law), the District Court for the District of Columbia granted a DES

1

plaintiff's motion to transfer to the Eastern District of New York where the plaintiff's exposure and some of her medical treatment took place in New York, although the plaintiff was a Canadian resident. Here, Plaintiff is currently a resident of the Eastern District of New York, and all of her recent treatment has taken place in New York. Hence, Plaintiff's connection to New York is stronger than that in <u>Albin</u>, and transfer should be granted.

## II.    STANDARD ON MOTION TO TRANSFER

A transfer under 28 U.S.C. § 1404(a) is to any district where the action might have been brought. Plaintiffs could have initially brought this suit in the Eastern District of New York. All defendants are corporations, which are deemed to reside in any district that can exercise personal jurisdiction over them. <u>See</u> 28 U.S.C. § 1391(c). A plaintiff may sue in any district that a defendant resides, if all defendants reside within a state. <u>See</u> 28 U.S.C. § 1391(a)(1).

In diversity, a District Court has the same jurisdiction as the state court in the same area. Defendants either currently conduct significant business within the state to subject them to jurisdiction or are subject to jurisdiction by virtue of having committed a tortious act against Plaintiff in New York, <u>see</u> N.Y. C.P.L.R. § 302. As all Defendants are subject to jurisdiction, and therefore reside, in the Eastern District of New York, this case could be brought there.

The standard for transfer of venue as set forth by statute is "[f]or the convenience of parties and witnesses, in the interest of justice," 28 U.S.C. § 1404(a), but "[c]ourts have considered various other factors, including the private interests of the parties and the public interests of the court" in construing § 1404. <u>Trout Unlimited v. United States Dep't of Ag.</u>, 944 F. Supp. 13, 16 (D.D.C. 1996).

The private interest considerations include, but are not limited to the (1) plaintiff's choice of forum, (2) the defendants' choice of forum, (3) whether the claim arose elsewhere, (4) the

convenience of the parties, (5) the convenience of the witnesses, and (6) the ease of access to sources of proof.  Trout Unlimited, 944 F. Supp. at 16.  The public interest considerations include (1) the familiarity of the transferee forum with the governing laws, (2) the relative congestion of the court calendars, and (3) the local interest in deciding local controversies at home.  Id.

## III.   THE EASTERN DISTRICT OF NEW YORK IS MOST CONVENIENT FOR THE WITNESSES

The courts "must afford some deference" to Plaintiffs' choice of forum.  Trout Unlimited, 944 F. Supp. at 17.  Here, Plaintiffs elect to transfer; the weight of this factor is therefore militates in favor of transferring the case to the Eastern District of New York.  When the current forum has few meaningful ties to or interest in a lawsuit, the court must be "especially cautious" in allowing a case to remain there.  Trout Unlimited, 944 F. Supp. at 17.  If the forum is not the plaintiff's home forum, and the injury and initial treatment occurred elsewhere, the balance of interests is in favor of transfer.  Brannen v. National R.R. Passenger Corp., 403 F. Supp. 2d 89, 93 (D.D.C. 2005) (holding Maryland a more convenient forum where Texas residents were injured in Maryland and received treatment there).  This is a New York products liability case where no parties are residents of the District of Columbia.  The Eastern District of New York is the Plaintiff's home forum and the current injury and treatment have occurred in New York.  This balance of interests favors transfer to a New York court.

The convenience of witnesses is often considered the most important factor in evaluating a motion to transfer.  Altamont Pharmacy, Inc. v. Abbott Lab's, No. 94 C. 6282, 2002 U.S. Dist. LEXIS 759 at *7 (N.D. Ill. 2002).  In evaluating the convenience of the witnesses, the court considers a number of factors, including "(1) the number of witnesses located in each district; (2) the relative ease of access to sources of proof; (3) the availability of compulsory process for the

attendance of witnesses; and (5) the situs of the material events." 2002 U.S. Dist. LEXIS 759 at *6-7 (N.D. Ill. 2002). Here, there are no witnesses in the District of Columbia. New York is the site of the material events involving a majority of the witnesses, including Plaintiff's medical treatment. *See* Dumont Aff. The Eastern District of New York is the more convenient jurisdiction.

A witness's inconvenience is material when the inconvenience may make the witness unavailable to testify. Brannen, 403 F. Supp. 2d at 94. It will be inconvenient to require Plaintiff's treating doctor to leave New York to testify in the District of Columbia. Should Dr. Brownstein, Dr. Yi-Shin Kuo, or Dr. Kelly need to be subpoenaed, this Court does not have the power to do so, unlike the Eastern District of New York.

## IV. THE EASTERN DISTRICT OF NEW YORK IS THE MOST APPROPRIATE FORUM FOR THE INTERESTS OF JUSTICE

The Eastern District of New York is a much better forum regarding the local interest factors. "Controversies should be resolved in the locale where they arise." Trout Unlimited, 944 F. Supp. at 19. In a diversity case, the public interest factors weigh in favor of having a jury apply its local laws. See Brannen, 403 F. Supp. 2d at 96. As the Supreme Court noted:

> We pay great deference to the views of the judges of those courts who are familiar with the intricacies and trends of local law and practice . . .

Bishop v. Wood, 426 U.S. 341, 346 n. 10 (1976).

This Court has no close connection with this case, and with the exception of a single scheduling conference, this Court has not yet occupied itself with the disposition of this case.

New York, the place of Plaintiff's current injuries, applies a market share theory to DES cases. See Hymowitz v. Eli Lilly, 539 N.E.2d 1069 (N.Y. 1989). The Eastern District of New York has extensive experience in applying New York law regarding DES cases. See, e.g., In re

<u>DES Cases</u>, 789 F. Supp. 552 (E.D.N.Y. 1992) (discussing New York's DES cases in detail in reference to consolidated DES litigation). The case would be assigned to Judge Jack Weinstein, who has a Standing Order referring all Eastern District DES cases to him. Judge Weinstein has extensive experience in handling DES cases. <u>See</u> <u>In re DES Cases</u>, <u>supra</u>. The Eastern District of New York is the best district to interpret the market share law underpinning this case.

## IV. CONCLUSION

The Eastern District of New York is the most appropriate venue for this case. It has subpoena power over witnesses and documents relevant to Plaintiff Victoire Dumont's DES-related injuries and has more experience with the governing law. Therefore, Plaintiff requests to transfer this case to the Eastern District of New York.

Respectfully submitted,

<u>/s/ Brandon J. Levine</u>
BRANDON J. LEVINE (#412130)
1320 Nineteenth Street, N.W.
Suite 500
Washington, DC 20036
202-833-8040

and

LAW OFFICES OF SYBIL SHAINWALD, P.C.
111 Broadway, Suite 403
New York, NY
212-425-5566

Co-counsel for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **VICTOIRE DUMONT,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **Civil Action No.:07-CV-01635 (JR/AK)** |
| | ] | |
| **THE ABBOTT LABORATORIES, INC.,** | ] | |
| **et al.,** | ] | |
| | ] | |
| **Defendant.** | ] | |

**DECLARATION OF BRANDON J. LEVINE IN SUPPORT OF PLAINTIFF'S**
**MOTION TO TRANSFER TO**
**THE EASTERN DISTRICT OF NEW YORK**

BRANDON J. LEVINE, ESQ., an attorney duly admitted to practice law in the

District of Columbia and the United States District Court for the District of Columbia,

declares the following under the penalty of perjury:

1.      I am a member of the Law Offices of Aaron M. Levine & Associates., co-

counsel to Plaintiff Victoire Dumont ("Plaintiff") in the above-referenced case, and as such, I

am fully familiar with facts set forth herein and submit this Declaration in support of

Plaintiff's Motion to Transfer to the Eastern District of New York.

2.      Attached hereto as Exhibit "A" is an original Affidavit of Plaintiff Victoire

Dumont in Support of Plaintiff's Motion to Transfer to the Eastern District of New York.

3.      Attached hereto as Exhibit "B" is a true and exact copy of the Complaint filed

in this matter.

4.      Attached hereto as Exhibit "C" is a true and exact copy of the opinion in *Albin v. Eli Lilly & Co.*, Civ. Action No. 04-986 (DDC July 30, 2004) cited by Plaintiff in support of her Motion to Transfer.

I hereby certify that the above is true and correct.

/s/ Brandon J. Levine
Brandon J. Levine (#412130)
Law Offices of Aaron M. Levine & Associates
1320 Nineteenth St., N.W. Fifth Floor
Washington, D.C. 20036

Dated:

January 8, 2008

Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| VICTOIRE DUMONT, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | Civil Action No. 07-CV-01635 (JR) |
| v. | ] | |
| | ] | |
| ABBOTT LABORATORIES, INC., et al., | ] | **AFFIDAVIT OF PLAINTIFF** |
| | ] | **VICTOIRE DUMONT IN SUPPORT** |
| | ] | **OF PLAINTIFF'S MOTION TO** |
| | ] | **TRANSFER** |
| Defendants. | ] | |
| | ] | |

STATE OF NEW YORK          )
                                              ) S.S.:
_____ COUNTY      )

        VICTOIRE DUMONT, being duly sworn, deposes and states under penalties of perjury as
follows:

1.      Since May 2004 I have lived in Centerport, New York, which is located in Suffolk County, in
the Eastern District of New York.

2.      My currently treating OB/GYN, Dr. Ilana L. Brownstein, is located at 408 East 76th Street,
New York, NY 10021. I have treated with Dr. Brownstein since September 2001.

3.      Since 2003 I have also treated at New York Presbyterian Hospital Weill Cornell Medical
Center, New York, New York, with Dr. Dennis Yi-Shin Kuo, M.D., F.A.C.O.G. My treatment here
has included biopsies and Pap smears.

4.      In 2006 I was also examined by Patricia Kelly, M.D., of East River Medical Imaging, P.C. in
New York, New York. I presented to Dr. Kelly for a Hysterosalpingogram.

5.      At various times since September 2001 I have had various specimens submitted to laboratories
in New York, New York for testing. These laboratories have included The New York Hospital
Laboratories located at 525 East 68th Street, New York, New York 10021.

                                                   _____
                                                   VICTOIRE DUMONT

Sworn to, before me, this
2 day of Jan , 2008

_____
Notary Public

MARCENE WELCH
Notary Public - State of New York
NO. 01WE6131173
Qualified in Kings County
My Commission Expires 8/1/2009

Exhibit B

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**VICTOIRE DUMONT**                             ]
**214 Harrison Drive**                          ]
**Centerport, NY 11721**                        ]
                                                ]
          **Plaintiff,**                        ]
                                                ]
     **v.**                                     ]
                                                ]
**ABBOTT LABORATORIES, INC.**                   ]
**100 Abbott Park Road**                        ]
**Abbott Park, IL 60064**                       ]
**w/s/o CT CORPORATION**                        ]
**1025 Vermont Avenue, NW**                     ]
**Washington, DC 20036**                        ]
                                                ]
          **and**                               ]
                                                ]
**BURROUGHS-WELLCOME & CO.**                    ]
**n/k/a GlaxoSmithKline, Inc.**                 ]
**1500 K Street, N.W.**                         ]
**Washington, DC 20036**                        ]
                                                ]
          **and**                               ]
                                                ]
**S.E. MASSENGILL, CO.**                        ]
**n/k/a GlaxoSmithKline, Inc.**                 ]
**1500 K Street, N.W.**                         ]
**Washington, DC 20036**                        ]
                                                ]
          **and**                               ]
                                                ]
**CARNRICK LABORATORIES, INC.**                 ]
**n/k/a Elan Pharmaceuticals, Inc.**            ]
**w/s/o National Registered Agents, Inc.**      ]
**1090 Vermont Avenue, NW #910**                ]
**Washington, DC 20005**                        ]
                                                ]
          **and**                               ]
                                                ]

Case: 1:07-cv-01635
Assigned To : Robertson, James
Assign. Date : 9/17/2007
Description: PI/Malpractice

1

DART INDUSTRIES, INC.,                    ]
p/k/a Rexall Drug Company, Inc.           ]
c/o Sheila Ann Marie Moeller, Esq.        ]
Gilbride, Tusa, Last & Spellane           ]
31 Brookside Drive                        ]
Greenwich, CT 06830                       ]
                                          ]
          and                             ]
                                          ]
                                          ]
ELI LILLY AND COMPANY                     ]
Lilly Corporate Center                    ]
Indianapolis, Indiana 46285               ]
w/s/o National Registered Agents, Inc.    ]
1090 Vermont Ave, NW #910                 ]
Washington, DC 20005                      ]
                                          ]
          and                             ]
                                          ]
                                          ]
KREMERS-URBAN CO.,                        ]
n/k/a Mequon Company                      ]
c/o Cooper, Kardaras & Scharf             ]
40 Wall Street                            ]
New York, New York 10005-1303             ]
                                          ]
          and                             ]
                                          ]
                                          ]
LANNETT CO., INC.                         ]
c/o Fox & Rothschild                      ]
2000 Market Street                        ]
Philadelphia, PA 19103-3291               ]
                                          ]
          and                             ]
                                          ]
MALLINCKRODT, INC.                        ]
675 McDonnell Blvd.                       ]
St. Louis, MO 63042                       ]
                                          ]
          and                             ]

2

MERCK & CO., INC.                                          ]
601 Pennsylvania Avenue NW                                 ]
North Building, Suite 1200                                 ]
Washington, DC 20004                                       ]
                                                           ]
         and                                               ]
                                                           ]
MERRELL DOW                                                ]
PHARMACEUTICALS, INC.                                      ]
c/o Corporation Trust Co.                                  ]
820 Bear Tavern Road                                       ]
West Trenton, NJ 08268                                     ]
                                                           ]
         and                                               ]
                                                           ]
MCNEIL LAB, INC.,                                          ]
n/k/a Ortho-McNeil Pharmaceutical, Inc                     ]
1000 U.S. Highway 202                                      ]
Raritan, NJ 08869                                          ]
                                                           ]
         and                                               ]
                                                           ]
PREMO PHARMACEUTICAL                                       ]
LABORATORIES, INC.                                         ]
p/k/a Lemmon Co. of NJ., Inc.                              ]
c/o Corporation Trust Co.                                  ]
820 Bear Tavern Road                                       ]
West Trenton, NJ 08628                                     ]
                                                           ]
         and                                               ]
                                                           ]
RHONE-POULENC RORER                                        ]
PHARMACEUTICALS, INC.                                      ]
p/k/a William H. Rorer, Inc.                               ]
c/o Sanofi-Aventis                                         ]
55 Corporate Drive                                         ]
Bridgewater, NJ 08807                                      ]
                                                           ]
         and                                               ]
                                                           ]

3

ROWELL LABORATORIES, INC.,                    ]
p/k/a Solvay Pharmaceuticals, Inc.            ]
c/o T.H. Rowell, Jr., President               ]
210 Main Street W.                            ]
Baudette, MN 56623                            ]
                                              ]
        and                                   ]
                                              ]
E.R. SQUIBB & SONS, INC.                      ]
c/o The Corporation Trust Company             ]
1025 Vermont Ave, NW                          ]
Washington, DC 20005                          ]
                                              ]
        and                                   ]
                                              ]
THE UPJOHN COMPANY                            ]
c/o CT Corp. Systems                          ]
1025 Vermont Ave, NW                          ]
Washington, DC 20005                          ]

Plaintiff, by her attorneys, **AARON M. LEVINE AND ASSOCIATES AND THE**

**LAW OFFICES OF SYBIL SHAINWALD, P.C.,** upon information and belief, at all times

hereinafter mentioned, allege as follows: COMPLAINT

## JURISDICTION

1.      This Court has jurisdiction pursuant to 28 United States Code

Section 1332, in that Plaintiffs are citizens of States and citizens of a foreign state which are

different from the States where defendants are incorporated and have their principal places

of business. The amount in controversy exceeds SEVENTY-FIVE THOUSAND DOLLARS

($75,000.00) as to each Plaintiff.

## PARTY PLAINTIFFS

2.      Plaintiff VICTOIRE DUMONT was born on December 3, 1970,

and is a citizen and resident of the State of New York.

## PARTY DEFENDANTS

4

3. The Abbott Laboratories is a corporation incorporated under the laws of the State of Illinois with its principal place of business in Illinois.

4. Burroughs-Wellcome and Co., Inc., n/k/a GlaxoSmithKline, Inc. is a corporation under the laws of the State of North Carolina with its principal place of business in North Carolina.

5. Carnrick Laboratories, Inc. n/k/a Elan Pharmaceuticals, Inc. is a corporation incorporated under the laws of the State of New Jersey with its principal place of business in New Jersey.

6. Dart Industries, Inc., p/k/a Rexall Drug Company, Inc. is a corporation incorporated under the laws of Illinois with its principal place of business in Delaware.

7. Eli Lilly and Company is a corporation incorporated under the laws of the State of Indiana with its principal place of business in Indiana.

8. Kremers-Urban Co., n/k/a Mequon Company, is a corporation incorporated in the State of Wisconsin with its principal place of business in Wisconsin.

9. Lannett Co., Inc., is a foreign corporation with its principal place of business in Pennsylvania.

10. McNeilab, Inc., n/ka/ Ortho-McNeil Pharmaecutical, Inc. is a corporation incorporated under the laws of the State of Pennsylvania with its principal place of business in Pennsylvania.

11. Mallinckrodt, Inc., is a corporation incorporated under the laws of the State of California with its principal place of business in California.

12. S.E. Massengill, n/k/a GlaxoSmithKline Inc., is a corporation incorporated under the laws of the State of Tennessee with its principal place of business in

Tennessee.

13.    Merck & Co., Inc., is a corporation incorporated under the laws of the State of New Jersey with its principal place of business in New Jersey.

14.    Merrell Dow Pharmaceuticals, Inc., is a corporation incorporated under the laws of the State of Ohio with its principal place of business in Ohio.

15.    Premo Pharmaceutical Laboratories, Inc. p/k/a Lemmon Co. of N.J., Inc., is a corporation incorporated under the laws of the State of New Jersey with its principal place of business in New Jersey.

16.    Rhone-Poulenc Rorer Pharmaceuticals, Inc. p/k/a William H. Rorer, Inc., is a corporation incorporated under the laws of the State of Pennsylvania with its principal place of business in Pennsylvania.

17.    Rowell Laboratories, inc., n/k/a Solvav Pharmaceuticals is a corporation incorporated under the laws of the State of Minnesota with its principal place of business in Minnesota.

18.    E.R. Squibb & Sons, Inc. is a corporation incorporated in the State of New Jersey with its principal place of business in New Jersey.

19.    The Upjohn Company is a corporation incorporated under the laws of the State of Michigan with its principal place of business in Michigan.

## FACTUAL BACKGROUND

20.    At all relevant times, Defendants were in the business of and did create, design, manufacture, test, formulate, advertise, market, promote, sell, and/or distribute the drug DES.

21.    During the period in and about 1940 and prior and subsequent

6

thereto, Defendants assisted each other to prepare the drug DES, which thereupon

became a generic drug manufactured by them and by other drug companies. Defendants

also assisted each other to exploit, market and secure permission from the FDA to

publicly sell DES for ingestion by humans. Defendants knew and were aware, or should

have known, that the drug had been insufficiently tested; that it had not been sufficiently

tested upon humans; and lacked adequate warnings. Nevertheless, these Defendants

endeavored to obtain FDA approval of the drug in that form and otherwise assisted each

other and other drug companies to bring DES to the market, thereby enabling such

others and themselves to market a drug involving harmful results to users and the

offspring of users.

        22.     Defendants made certain claims and representations that were

contained in their supplemental New Drug Application, some of which were that the

new use of said DES in the prevention of miscarriages and accidents in pregnancy was

both safe and efficacious.

        23.     Defendants made certain claims that were distributed and

circulated to the medical profession and to the general public through advertising,

literature, detail men, brochures and other materials stating that DES was a safe

and efficacious drug for the treatment of accidents in pregnancy.

        24.     At the time, these Defendants knew or should have known

that DES and its components had the potential to become harmful to users and

offspring of users and knew or should have known that the drug was ineffective for

the purpose for which it was marketed and sold.

        25.     Upon information and belief, these Defendants and the other

persons and drug companies secured FDA approval; brought DES to the market where it was produced by these Defendants and/or other drug companies with the same content and same potential for harm; and distributed and marketed DES to the public so as to induce its use in the manner in which it was used by Plaintiffs' mothers.

26.     Upon information and belief, these Defendants and the other drug companies misrepresented the risks inherent in the use of DES in their applications to the FDA and to other governmental persons and/or agencies.

27.     Defendants knew, or should have known, of the above-mentioned risks based upon the state of knowledge as it existed at that time and upon generally accepted engineering, medical and research standards and principles.

28.     The Defendants, their agents, servants and/or employees, manufactured, produced, promoted, formulated, created or designed DES without testing it for use in pregnancy, without making proper and sufficient tests to determine the dangers and contra-indications thereof, and without warning the public and the medical profession of the dangers and contra-indications and side effects inherent in the aforesaid drug. The Defendants also negligently advertised and recommended the use of DES without sufficient knowledge as to its dangerous propensities; represented that the said drug was safe for use for its intended purpose, when, in fact, it was unsafe; and failed to conduct sufficient testing programs to determine whether or not the aforesaid drug was safe for use. Defendants knew or should have known that said drug was unsafe and unfit for use by reason of the dangerous effects, contra-indications and dangers to a fetus during the pregnancy of its mother. Defendants, their agents, servants and/or employees, improperly obtained the

approval of the FDA to market the drug by misrepresenting the risks of the drug to the FDA; knew that it was a substance, which crossed the placental barrier and therefore could cause injury to a fetus <u>in utero</u>; and were otherwise negligent.

29.    Defendants, by their agents, servants and/or employees were careless and negligent in the manufacturing, selling, distribution, merchandising, advertising, promotion, compounding, packaging, fabrication, analyzing, marketing, and recommendation of said drug DES without making proper and sufficient tests to determine the dangers thereof.

30.    In this action, Plaintiffs claim that they were exposed to DES <u>in utero</u> and that their mothers ingested DES, which was marketed by Defendants.

31.    By reason of the foregoing, those exposed to DES have developed, or are at extremely high risk for experiencing, certain cancers, infertility, ectopic pregnancies, as well as other serious injuries; and Plaintiffs herein have sustained severe, serious, permanent and personal injuries; will require extensive hospitalizations, medical care, surgeries, and lifelong attention; will be incapacitated from their normal functioning and will be unable to pursue normal means of livelihood; will be precluded from having a normal life, physically, intellectually, vocationally, emotionally, or psychologically; and Plaintiffs have been otherwise grossly damaged.

32.    Whether or not Plaintiffs prove which particular manufacturer produced the drug ingested by Plaintiffs' mothers, Defendants will be liable to them, based on market share liability, because they marketed the drug for pregnancy use.

FIRST CLAIM FOR RELIEF

(Strict Products Liability)

33.    Plaintiffs repeat, reiterate and reallege each and every allegation

9

contained in the paragraphs numbered "1" through "35", inclusive, with the same force and effect as if hereinafter set forth at length.

34.    At all times herein mentioned, the Defendants, and each of them, manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted, sold, purchased, prescribed, and administered the aforesaid DES as hereinabove described and prior to the time that Plaintiffs or Plaintiffs' mothers, and thereby Plaintiffs, used said product.

35.    The said drug product, more particularly known as DES, was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by the Defendants.

36.    At those times, the said drug product DES, was in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, the general public and, in particular, the Plaintiffs herein.

37.    Defendants, while regularly engaged in the business activities aforementioned, did design, develop, manufacture, produce, test, sell, market and/or distribute a certain drug product, more particularly known as DES, which was ingested by Plaintiffs' mothers and thereby Plaintiffs.

38.    At all times herein mentioned, the said drug product DES was in a defective condition and unsafe and Defendants, individually, jointly and severally, knew or had reason to know that said product was defective and unsafe, especially when used as a miscarriage preventative.

39.    The said drug product DES was inherently dangerous.

10

40.    At the time of the occurrence and ingestion by Plaintiffs' mothers, the said drug product, DES, was being used for the purposes and a manner normally intended.

41.    Neither Plaintiffs nor their mothers could, by the exercise of reasonable care, have discovered the defects herein mentioned and/or perceived their danger.

42.    As a direct and proximate result of the defective condition of DES manufactured and supplied by Defendants, Plaintiffs were caused to sustain severe and grievous personal injuries, as described herein.

43.    By reason of the foregoing, the Defendants have become strictly liable in tort to the Plaintiffs for the marketing of a defective product, regardless of whether they marketed the particular pill taken by Plaintiffs' mothers.

44.    By reason of the foregoing, Plaintiffs have been damaged as against each defendant in the sum of TEN MILLION DOLLARS ($10,000,000.00) in compensatory damages and TEN MILLION DOLLARS ($10,000,000.00) in punitive damages.

## SECOND CLAIM FOR RELIEF

### (Negligence)

45.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "47" inclusive, with the same force and effect as if more fully set forth herein.

46.    The negligence of the Defendants, their agents, servants, and/or employees, included but was not limited to the following acts or omissions:

(a) manufacturing, producing, promoting, formulating, creating, and/or designing DES without testing it for use in pregnancy;

11

(b) selling DES without making proper and sufficient tests to determine the dangers and contra-indications thereof;

(c) negligently failing to adequately and correctly warn the public and the medical profession of the dangers and contra-indications and side effects inherent in the aforesaid drug and failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with said product;

(d) negligently advertising and recommending the use of the aforesaid drug without sufficient knowledge as to its dangerous propensities;

(e) negligently representing that the said drug was safe for use for its intended purpose, when, in fact, it was unsafe;

(f) not conducting sufficient testing programs to determine whether or not the aforesaid drug was safe for use; in that Defendants herein knew or should have known that said drug was unsafe and unfit for use by reason of the dangerous effects, contra-indications and dangers to a fetus during the pregnancy of its mother; and

(g) improperly obtaining the approval of the FDA to market the drug by misrepresenting the risks of the drug to the FDA; in knowing that it was a substance that crossed the placental barrier and therefore could cause injury to a fetus in utero.

47.    As a direct and proximate result of the aforementioned negligence on the part of the Defendants, Plaintiffs were caused to sustain severe and grievous personal

injuries, as set forth herein.

     48.    By reason of Defendants' actions as aforementioned, Defendants are liable to Plaintiffs regardless of whether or not they manufactured the particular DES drug ingested by Plaintiffs' mothers.

     49.    By reason of the foregoing, Plaintiffs have been damaged as against each defendant in the sum of TEN MILLION DOLLARS ($10,000,000.00) in compensatory damages and TEN MILLION DOLLARS ($10,000,000.00) in punitive damages.

THIRD CLAIM FOR RELIEF

(Breach of Express Warranty)

     50.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "52" inclusive, with the same force and effect as if more fully set forth herein at length.

     51.    Defendants, and each of them, expressly represented to the users and their physicians that said drug DES was safe and fit for use for the purposes intended, that it was of merchantable quality, and that it did not produce any side effects dangerous to life, and that it was adequately tested and fit for its intended use.

     52.    Members of the medical community relied upon the representations and warranties of the Defendants for use and ingestion of said drug DES in prescribing, recommending and/or dispensing same.

     53.    Defendants knew or should have known that, in fact, said representations and warranties were false, misleading and untrue in that said drug DES was not safe and fit for the use intended, and, in fact, produces serious injuries to the user and the offspring of the user. As a result of the aforementioned breach of warranties by Defendants,

13

Plaintiffs were caused to sustain severe and grievous personal injuries, as set forth herein.

54.    By reason of Defendants' actions as aforementioned, Defendants are liable to Plaintiffs regardless of whether or not they manufactured the particular DES drug ingested by Plaintiffs' mothers.

55.    By reason of the foregoing, Plaintiffs have been damaged as against each defendant in the sum of TEN MILLION DOLLARS ($10,000,000.00) in compensatory damages and TEN MILLION DOLLARS ($10,000,000.00) in punitive damages.

## FOURTH CLAIM FOR RELIEF

### (Breach of Implied Warranty)

56.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "58" inclusive, with the same force and effect as if more fully set forth herein.

57.    At all times herein mentioned, the Defendants, and each of them, manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted, sold, purchased, prescribed, and administered the aforesaid DES as described above and prior to the time that Plaintiffs' mothers, and thereby Plaintiffs, used said product.

58.    The Defendants, and each of them, impliedly represented and warranted to the users and their physicians that the aforementioned drug product, more particularly known as DES, was safe and of merchantable quality and fit for the ordinary purpose for which said product was to be used.

59.    The said representations and warranties aforementioned were false, misleading, and inaccurate in that said drug product DES, was unsafe, unreasonably

14

dangerous, improper, not of merchantable quality, and defective.

60.    DES products were injected into the stream of commerce by the Defendants in a defective, unsafe, and inherently dangerous condition and the products and materials were expected to and did reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

61.    As a result of the aforementioned breach of warranties by Defendants, Plaintiffs were caused to sustain severe and grievous personal injuries, as set forth herein.

62.    By reason of Defendants' actions as aforementioned, Defendants are liable to Plaintiffs regardless of whether or not they manufactured the particular DES drug ingested by Plaintiffs' mothers.

63.    By reason of the foregoing, Plaintiffs have been damaged as against each defendant in the sum of TEN MILLION DOLLARS ($10,000,000.00) in compensatory damages and TEN MILLION DOLLARS ($10,000,000.00) in punitive damages.

## FIFTH CLAIM FOR RELIEF

### (Fraudulent Misrepresentation)

64.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "67", inclusive, with the same force and effect as if more fully set forth herein at length.

65.    The Defendants falsely and fraudulently represented to the medical community and to the public in general that said drug DES was a drug that had been tested and found to be safe and effective for the prevention of miscarriages and other pregnancy related uses. The representations made by said Defendants were, in fact, false.

15

66.    When said representations were made by Defendants, they individually, jointly, and severally, knew those representations to be false, willfully, wantonly and recklessly disregarded whether the representations were true, and these representations were made by said Defendants with the intent of defrauding and deceiving the public in general, and the medical community in particular, and with the intent of inducing the public in general, and the medical community in particular, to prescribe, dispense and purchase said drug DES for the prevention of miscarriages, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of the Plaintiffs herein.

67.    At the time the aforesaid representations were made by the Defendants and, at the time that Plaintiffs' mothers ingested said drug DES, Plaintiffs' mothers and Plaintiffs were ignorant of the falsity of said representations and reasonably believed them to be true. In reliance upon said representations, Plaintiffs' mothers were induced to and did take DES during their pregnancies with their daughters, the Plaintiffs.

68.    As a result of the fraudulent misrepresentations of the Defendants set forth hereinabove, said Defendants knew and were aware or should have known that the drug had been insufficiently tested, that it had not been tested or sufficiently tested upon humans, or lacked adequate warnings, and these Defendants cooperated with others to obtain FDA approval of the drug in that form and otherwise assisted other persons and drug companies to bring DES to market a drug involving harmful results to users and the offspring of users, thereby breaching their duty to such users and aiding and assisting other persons and drug companies marketing DES to do the same.

69.    At this time, these Defendants and other persons and drug companies

16

with whom they were cooperating and exchanging mutual assistance in order to bring DES to the market and secure approval thereof, knew or should have known that DES, its components and in combination, had a potential to, could, and would cause severe and grievous injury to the user and to the offspring of the users of said product and that the drug was ineffective for the purpose for which it was marketed and sold and was inherently dangerous.

70. These Defendants and other persons and drug companies, as a result of the mutual aid of each to other and in combination, secured FDA approval, brought DES to the market where it was produced by these Defendants and other drug companies with the same content and the same potential for harm, and these Defendants and the other persons and drug companies conferred and assisted in promoting and advertising, and said Defendants acted fraudulently, wantonly and maliciously to the detriment of the Plaintiffs.

71. As a result of Defendants' fraudulent and deceitful conduct and representations, Plaintiffs were caused to sustain severe and grievous personal injuries, as set forth herein.

72. By reason of Defendants' actions as aforementioned, Defendants are liable to Plaintiffs regardless of whether or not they manufactured the particular DES drug ingested by Plaintiffs' mothers.

73. By reason of the foregoing, Plaintiffs have been damaged as against each defendant in the sum of TEN MILLION DOLLARS ($10,000,000.00) in compensatory damages and TEN MILLION DOLLARS ($10,000,000.00) in punitive damages.

17

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Victoire Dumont demands judgment against each

Defendant on each cause of action with interest together with the costs and

disbursements of this action.

Dated: 9\17\07

AARON M. LEVINE & ASSOCIATES

Aaron M. Levine, #7864
Brandon J. Levine, #412130
1320 19th Street, N.W., Suite 500
Washington, D.C. 20036
(202) 833-8040
aaronlevinelaw@aol.com

and

Sybil Shainwald, Esq.
Roxanne DeFrancesco, Esq.
Law Offices of Sybil Shainwald
111 Broadway
4th Floor
New York, New York 10006
(212) 608-5863
shainwaldlaw@aol.com

Counsel for Plaintiff

18

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury as to all issues.

_____
Aaron M. Levine, Esq.

Exhibit C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MYRA D. ALBIN,                          )
                                        )
       Plaintiff,                       )
                                        )
       v.                               )        Civil Action No. 04-986 (RBW)
                                        )
ELI LILLY AND COMPANY, et al.,          )
                                        )
       Defendants.                      )
                                        )

## ORDER

       This matter came before the Court on July 30, 2004, for a hearing on Plaintiff's

Motion to Transfer Pursuant to 28 U.S.C. § 1404(a).  Upon consideration of this motion

and for the reasons expressed by this Court at the July 30, 2004 hearing, it is hereby

this 30th day of July, 2004

       **ORDERED** that the above-captioned case shall be **TRANSFERRED** to the

United States District Court for the Eastern District of New York.

       **SO ORDERED**.

                                        REGGIE B. WALTON
                                        United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **VICTOIRE DUMONT,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **Civil Action No.: 07-CV-01635 (JR/AK)** |
| | ] | **Next Event: Discovery Requests Due** |
| **THE ABBOTT LABORATORIES, INC.,** | ] | **January 14, 2008** |
| **et al.,** | ] | |
| | ] | |
| **Defendant.** | ] | |

<u>**(PROPOSED) ORDER**</u>

      **UPON CONSIDERATION** of the Partial Consent Motion to Transfer to the Eastern District of New York, and any Oppositions filed thereto, and for good cause shown, it is this ____ day of _____, 2008,

      **ORDERED** that Plaintiff's motion be GRANTED and the present action transferred to the court for the Eastern District of New York.

<br>

                                 _____

                                 The Honorable James Robertson
                                 United States District Judge