## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

VICTOIRE DUMONT

      Plaintiff                 *

                                  Case No. 07-1635 (JR)

v.                           *

ELI LILLY AND COMPANY, et. al.    *

      Defendants         *

*     *     *     *     *     *     *     *     *     *     *     *

### GLAXO SMITHKLINE'S MOTION FOR SUMMARYJUDGMENT

GlaxSmithKline ("GSK"), sued as Burroughs Wellcome Co. and S.E. Massengill, Co. pursuant to F.R.C.P. 56, moves this Court for summary judgment in its favor.

In this pharmaceutical product liability case involving the pharmaceutical known as diethystilbestrol (DES), Plaintiff claims *in utero* exposure to DES. As she is unable to identify the manufacturer of the DES at issue, she sues under market share liability theory. The evidence reveals that GSK's predecessors Burroughs Wellcome Co. and S.E. Massengill Co. stopped the manufacture of any products containing DES years before this plaintiff's alleged exposure. Therefore, GSK has no share of the relevant market and cannot be liable under this or any other legal theory.

The accompanying Memorandum to this motion, which is hereby incorporated along with supporting Exhibits, more fully sets forth the reasons why this motion should be granted.

WHEREFORE, GSK respectfully requests that this Court grant its motion for summary judgment.

Respectfully submitted,

_____/s/ Janet Coleman_____

Janet K. Coleman (Bar No.: 497902)
WHITNEY & BOGRIS, LLP
401 Washington Avenue
Twelfth Floor
Towson, Maryland 21204
(410) 583-8000

**Attorneys for GLAXOSMITHKLINE SUED AS BURROUGHS WELLCOME CO. AND S.E. MASSENGILL, CO.**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of GlaxoSmithKline's Motion for Summary Judgment with Supporting Memorandum, Exhibits and Proposed Order was electronically filed with the Clerk of the Court using the CM/ECF system on February 25, 2008, which sent notification of such filing to all counsel of record who are registered with that system. In addition, I caused a copy to be sent by United States mail, postage-prepaid, to:

Sybil Shainwald
Roxanne DeFrancesco
Law Offices of Sybil Shainwald
111 Broadway
4th Floor
New York, New York 10006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VICTOIRE DUMONT                          *

    Plaintiffs                              *

v.                                       *          Case No. 07-1635 (JR)

ELI LILLY AND COMPANY, et al             *

    Defendants                              *

*      *      *      *      *      *      *      *      *      *      *      *      *

GLAXOSMITHKLINE'S MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT

GlaxoSmithKline ("GSK") sued in the names of its predecessors, S.E. Massengill

Co. ("Massengill") and Burroughs Welcome ("BW"), pursuant to F.R.C.P. 56, submits

this Memorandum in Support of its Motion for Summary Judgment.

## I.   INTRODUCTION

This is a product liability case in which plaintiff Victoire Dumont sues seventeen

companies that formerly manufactured and/or sold a pharmaceutical known as

Diethystilbestrol (DES)[1], a drug allegedly taken by Ms. Dumont's mother while she was

pregnant with the  plaintiff in 1970.  Ms. Dumont filed this action on September 17, 2007

under theories of  strict liability, negligence, breach of warranty and misrepresentation.

(Ex. 1, Complaint). Ms. Dumont  alleges that this *in utero* exposure to DES caused clear

cell adenocarcinoma of the vagina and cervix.  (Ex. 2 More Definite Statement ¶ 2 )

---

[1] During the 25 years that DES was prescribed for use in treating problems of pregnancy, it was produced by as many as 300 different companies.  *Smith v. Eli Lilly & Co.,* 560 N.E.2d 324, 328, 329 (1990).  *See Enright v. Eli Lilly & Co.,* 77 N.Y.2d 377, 570 N.E.2d 198, 200;  *Conley v. Boyle Drug Co.,* 570 So.2d 275; 279 n.2 (Fl. 1990); *Martin v. Abbott Laboratories,* 102 Wash.2d 581, 689 P.2d 368, 381 (1984); *Collins v. Eli Lilly & Co.,* 116 Wis.2d 166, 342 N.W.2d 37, 44 *cert.  denied,* 469 U.S. 826 (1984).

Plaintiff is apparently unable to identify the manufacturer of the DES at issue, and therefore premises her claims on "market share liability." (*See* Ex. 1, ¶ 32 and Plaintiff's Memorandum of Points and Authorities in Support of Her Motion To Transfer to the Eastern District of New York, Ex. 3, pp. 3-4). The evidence shows that GSK's predecessors have no share of the relevant DES market as they ceased manufacture of any DES products prior to the date this Plaintiff claims exposure. Therefore, Plaintiff could not have been exposed to DES manufactured by these entities. As GSK cannot be liable to this Plaintiff under any legal theory, it is entitled to summary judgment.

## II.    STATEMENT OF FACTS

Plaintiff alleges *in utero* exposure to DES in France prior to her birth on December 3, 1970 (Ex. 1, ¶¶ 2, 30 and Ex. 2). Plaintiff has not identified the manufacturer of the DES her mother ingested, but bases liability as to each defendant on market share theory. (*See* Complaint, Ex. 1 ¶ 32, "Whether or not Plaintiffs (sic) prove which particular manufacturer produced the drug ingested by plaintiffs' mothers (sic), Defendants will be liable to them, based on market share liability, because they marketed the drug for pregnancy use.")[2] Further, in her Motion to Transfer, Plaintiff "asserts [her] claims under New York law", specifically relying on market share theory as adopted by the New York Court of Appeals in *Hymowitz v. Eli Lilly*, 539 N.E. 2d 1069 (N.Y.1989) (Ex. 3, pp.1, 4-5) As plaintiff alleges exposure in France, her reliance on New York law is apparently based on her residency and recent medical treatment in New York. *Id*.

---

[2] This statement is clearly erroneous as to BW because, as explained more fully below, BW never produced or marketed DES for use in pregnancy. (See Ex. 4,Knight Aff. ¶¶ 6,10 ); The fact that BW was never in the "pregnancy market" provides a second, independent basis why summary judgment should be granted for GSK as successor to this entity. See *Hymowitz v. Eli Lilly*, 74 N.Y.2d 487, 512 (1989).

As GSK never manufactured any DES products, Plaintiff's claims against GSK are based solely on GSK's successor relationship to BW and Massengill, *see* Complaint caption, p. 1.   Because neither of these entities were part of the DES "market" by the time of plaintiff's  alleged exposure, this plaintiff could not have been exposed to DES manufactured by either of these entities, and GSK cannot be liable. [3]

A.  Burroughs Wellcome Never Manufactured or Marketed DES
     for Use in Pregnancy and Ceased Production More Than a
     <u>Decade  Before The Date This Plaintiff  Alleges DES Exposure</u>

BW's  New Drug Applications (NDA) requested FDA approval to market DES for four uses: treating menopausal syndrome, senile vaginitis, gonorrheal vaginitis in children and  suppression of lactation. (Ex. 4, Affidavit of Donald A. Knight ¶ 4) Following approval of its NDAs, BW produced DES in relatively small dosages to be used over a brief time period for *only these conditions, all of which are unrelated to pregnancy*. (*Id*.) BW never filed a supplement to its own NDAs with the FDA, nor did it join in the submission of an NDA with any other drug company, seeking permission to use DES to preserve pregnancies or to prevent accidents of pregnancy. (Ex.4, ¶ 6) *BW discontinued the sale of DES in all dosages for any purpose in 1957*. (Ex. 4, ¶ 8, emphasis supplied)   Mr. Knight's Affidavit is unequivocal and not limited to United States production and sales. A plain reading is no way supports any contention  that BW continued DES production  for sales in any international market.

Following the New York Court of Appeals' *Hymowitz* decision with its limited adoption of market share,    litigation ensued to determine DES market share on a

---

[3] GSK makes these statements without admitting any liability for the actions of BW and Massengill, and, in fact, explicitly reserving any and all defenses to the imposition of successor liability,

national basis, based on  DES sales and production information.   The Court recognized that the production and sales data from the defendants was the "only data available"  and should be retained and available to parties in future DES cases. (Ex. 5, September 16, 1992 Order in DES Market Share Litigation ¶ 28). The resultant matrix established  a "share" of the market for each manufacturer for every year the defendant was in the DES market. (Ex.5)  This matrix took the product's  "shelf life" into account by providing that a manufacturer retained a  share of the market for a period of time after last date of production.   Consistent with BW's manufacture cessation date of 1957, and allowing for  an estimated "shelf life", BW has no market share in the New York matrix for any year after 1959 for any dose of DES. (See Ex. 5, pp.2,18 and 24 showing BW's minuscule market share for 5mg, 5-25mg. blend and 5-25-100 mg blend ending in 1959; page numbers supplied to matrix for ease of reference). [4] Therefore, based on these dates, this plaintiff **claiming exposure in 1970** could not conceivably have been exposed to any DES manufactured by BW – even if the physician prescribed  BW's DES for an "off-label" use in pregnancy.

> B.  Massengill Stopped Manufacturing DES Products in
> Early 1966  and Has No Market Share For 1970.

Massengill  last manufactured DES *in any dose in April 1966*. (Ex. 6, Parman Aff. ¶¶ 4, 5). Consistent with this statement, the New York matrix for 5mg DES, 25mg DES 5mg-25mg dose combination and 5mg-25mg-100mg dose combination shows that Massengill  has no market share for 1970. (Ex. 5 pp. 4,10,20 and 26 ) In fact, the

---

[4] By referring to the New York national DES matrix, GSK does not concede that New York law or this matrix apply  to apportion the DES manufacturer's  liability  as to  this Plaintiff who claims  DES exposure in another country.  However, assuming *arguendo* that New York law applies, the matrix  is consistent with and substantiates the dates of manufacture  stated in the affidavits, thereby barring  plaintiff's  claims under New York, or any other, law.

matrix indicates that summary judgment was granted to Massengill in the New York market share proceeding for any plaintiff exposed in 1970, *Id*. [5]

### III.  SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The party seeking summary judgment must show  no genuine issue of material fact exists, by indicating to the Court that there is an absence of evidence to support the non-moving party's case.  *Id*. at 325-326.  The party opposing summary judgment is required to go beyond the pleadings to indicate specific facts showing a genuine issue for trial.  *Id*. at 323-324.

### IV.  ARGUMENT

### A.  GSK Cannot Be Liable as Its Predecessors Were Not Part of the Relevant  DES Market

Under New York law, "identification of the exact defendant whose product injured the plaintiff is . . .generally required in a product liability action,".  *Hymowitz v. Eli Lilly & Co*., 542 N.Y.S. 2d 941, 945 (1989).   The *Hymowitz* court carved out a narrow exception  to this general principle for plaintiffs claiming injury from *in utero* exposure to DES when identification of the specific manufacturer of the DES the plaintiff's mother ingested is impossible, Id..  In that situation, the *Hymowitz* court adopted a market share theory using a national market.  As explained above, extensive DES market share proceedings were then held with the Erie County Supreme Court issuing an Order establishing each defendant's share of the market for the various dosage forms of DES

---

[5] The fact that Massengill has a market share for 1969 – after the date of manufacture - merely shows that , as in the case of BW,  "shelf life" following manufacture was considered when  market share determinations were formulated from the "only data available".

for each year DES was on the market. (Ex. 5)  Discovery in that proceeding included the defendants' production of sales or production data, which the parties stipulated was the only data available (Ex. 5, ¶ 28)

BW stopped the manufacture of DES in all forms in 1957 and has no market share beyond 1959 in the New York matrix. (Ex. 4 and Ex. 5).  Massengill's last manufacture of any DES products was in 1966. (Ex. 6) and therefore has no market share for any DES beyond 1969 (Ex. 5)  This plaintiff was born in December of 1970 (Ex. 1, ¶ 2) meaning that all of the alleged exposure necessarily occurred in 1970. Therefore, even if market share liability is found applicable to this action, GSK cannot be liable under this or any other legal theory as GSK's predecessors have no share of any DES market for the year this plaintiff alleges exposure. Prior decisions of this Court have recognized that under the applicable New York law, the DES plaintiff can seek relief under one of two different theories of liability.  Under traditional products liability principles, the plaintiff must identify the specific product that actually caused the alleged injury. Alternatively, plaintiff can rely on market share liability, "under which product identification is removed from the plaintiff's causation burden *in exchange for relegating plaintiff to a recovery equal to the named defendants' share of the national DES market*," *Gassman v. Eli Lilly*, 407 F.Supp.2d 203, 211 (D.D.C. 2005), emphasis added. Here, where GSK has no "share" of the DES market for the year in question, plaintiff's claims as to this defendant cannot stand. Without evidence that any product manufactured by GSK's predecessors caused or contributed to plaintiff's injuries, her action under any legal theory fails.

V.  <u>CONCLUSION</u>

As there is no genuine dispute that GSK's predecessors were not in the relevant market, GSK is entitled to summary judgment in its favor as to all claims. Therefore, summary judgment should be  granted  in favor of GSK.

Respectfully submitted,

<u>   /s/Janet K . Coleman        </u>

Janet K. Coleman (497902)
WHITNEY & BOGRIS, LLP
401 Washington Avenue
Twelfth Floor
Towson, Maryland 21204
(410) 583-8000

**Attorneys for  GLAXOSMITHKLINE**
 sued as Burroughs Welcome Co. and
   S.E. Massengill, Co.

# EXHIBIT 1

RECEIVED

SEP 2 6 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VICTOIRE DUMONT<br>214 Harrison Drive<br>Centerport, NY 11721 | ]<br>]<br>]<br>] |
| Plaintiff, | ]<br>] |
| v. | ]<br>] |
| ABBOTT LABORATORIES, INC.<br>100 Abbott Park Road<br>Abbott Park, IL 60064<br>w/s/o CT CORPORATION<br>1025 Vermont Avenue, NW<br>Washington, DC 20036 | ]    Civil Action No.<br>]<br>]<br>]<br>]<br>]<br>] |
| and | ]<br>] |
| BURROUGHS-WELLCOME & CO.<br>n/k/a GlaxoSmithKline, Inc.<br>1500 K Street, N.W.<br>Washington, DC 20036 | ]<br>]<br>]<br>]<br>] |
| and | ]<br>] |
| S.E. MASSENGILL, CO.<br>n/k/a GlaxoSmithKline, Inc.<br>1500 K Street, N.W.<br>Washington, DC 20036 | ]<br>]<br>]<br>]<br>] |
| and | ]<br>] |
| CARNRICK LABORATORIES, INC.<br>n/k/a Elan Pharmaceuticals, Inc.<br>w/s/o National Registered Agents, Inc.<br>1090 Vermont Avenue, NW #910<br>Washington, DC 20005 | ]<br>]<br>]<br>]<br>] |
| and | ]<br>] |

DART INDUSTRIES, INC.,                        ]
p/k/a Rexall Drug Company, Inc.               ]
c/o Sheila Ann Marie Moeller, Esq.            ]
Gilbride, Tusa, Last & Spellane               ]
31 Brookside Drive                            ]
Greenwich, CT 06830                           ]
                                              ]
        and                                   ]
                                              ]
ELI LILLY AND COMPANY                         ]
Lilly Corporate Center                        ]
Indianapolis, Indiana 46285                   ]
w/s/o National Registered Agents, Inc.        ]
1090 Vermont Ave, NW #910                     ]
Washington, DC 20005                          ]
                                              ]
        and                                   ]
                                              ]
KREMERS-URBAN CO.,                            ]
n/k/a Mequon Company                          ]
c/o Cooper, Kardaras & Scharf                 ]
40 Wall Street                                ]
New York, New York 10005-1303                 ]
                                              ]
        and                                   ]
                                              ]
                                              ]
LANNETT CO., INC.                             ]
c/o Fox & Rothschild                          ]
2000 Market Street                            ]
Philadelphia, PA 19103-3291                   ]
                                              ]
        and                                   ]
                                              ]
MALLINCKRODT, INC.                            ]
675 McDonnell Blvd.                           ]
St. Louis, MO 63042                           ]
                                              ]
        and                                   ]
                                              ]

MERCK & CO., INC.                              ]
601 Pennsylvania Avenue NW                     ]
North Building, Suite 1200                     ]
Washington, DC 20004                           ]
                                               ]
        and                                    ]
                                               ]
MERRELL DOW                                    ]
PHARMACEUTICALS, INC.                          ]
c/o Corporation Trust Co.                      ]
820 Bear Tavern Road                           ]
West Trenton, NJ 08268                         ]
                                               ]
        and                                    ]
                                               ]
MCNEIL LAB, INC.,                              ]
n/k/a Ortho-McNeil Pharmaceutical, Inc         ]
1000 U.S. Highway 202                          ]
Raritan, NJ 08869                              ]
                                               ]
        and                                    ]
                                               ]
PREMO PHARMACEUTICAL                           ]
LABORATORIES, INC.                             ]
p/k/a Lemmon Co. of NJ., Inc.                  ]
c/o Corporation Trust Co.                      ]
820 Bear Tavern Road                           ]
West Trenton, NJ 08628                         ]
                                               ]
        and                                    ]
                                               ]
RHONE-POULENC RORER                            ]
PHARMACEUTICALS, INC.                          ]
p/k/a William H. Rorer, Inc.                   ]
c/o Sanofi-Aventis                             ]
55 Corporate Drive                             ]
Bridgewater, NJ 08807                          ]
                                               ]
        and                                    ]
                                               ]

ROWELL LABORATORIES, INC.,    ]
p/k/a Solvay Pharmaceuticals, Inc.    ]
c/o T.H. Rowell, Jr., President    ]
210 Main Street W.    ]
Baudette, MN 56623    ]
    ]
  and    ]
    ]
E.R. SQUIBB & SONS, INC.    ]
c/o The Corporation Trust Company    ]
1025 Vermont Ave, NW    ]
Washington, DC 20005    ]
    ]
  and    ]
    ]
THE UPJOHN COMPANY    ]
c/o CT Corp. Systems    ]
1025 Vermont Ave, NW    ]
Washington, DC 20005    ]

COMPLAINT

Plaintiff, by her attorneys, **AARON M. LEVINE AND ASSOCIATES AND THE**

**LAW OFFICES OF SYBIL SHAINWALD, P.C.,** upon information and belief, at all times

hereinafter mentioned, allege as follows:

### JURISDICTION

1.   This Court has jurisdiction pursuant to 28 United States Code

Section 1332, in that Plaintiffs are citizens of States and citizens of a foreign state which are

different from the States where defendants are incorporated and have their principal places

of business. The amount in controversy exceeds SEVENTY-FIVE THOUSAND DOLLARS

($75,000.00) as to each Plaintiff.

### PARTY PLAINTIFFS

2.   Plaintiff VICTOIRE DUMONT was born on December 3, 1970,

and is a citizen and resident of the State of New York.

### PARTY DEFENDANTS

4

3.    The Abbott Laboratories is a corporation incorporated under the laws of the State of Illinois with its principal place of business in Illinois.

4.    Burroughs-Wellcome and Co., Inc., n/k/a GlaxoSmithKline, Inc. is a corporation under the laws of the State of North Carolina with its principal place of business in North Carolina.

5.    Carnrick Laboratories, Inc. n/k/a Elan Pharmaceuticals, Inc. is a corporation incorporated under the laws of the State of New Jersey with its principal place of business in New Jersey.

6.    Dart Industries, Inc., p/k/a Rexall Drug Company, Inc. is a corporation incorporated under the laws of Illinois with its principal place of business in Delaware.

7.    Eli Lilly and Company is a corporation incorporated under the laws of the State of Indiana with its principal place of business in Indiana.

8.    Kremers-Urban Co., n/k/a Mequon Company, is a corporation incorporated in the State of Wisconsin with its principal place of business in Wisconsin.

9.    Lannett Co., Inc., is a foreign corporation with its principal place of business in Pennsylvania.

10.    McNeilab, Inc., n/ka/ Ortho-McNeil Pharmaecutical, Inc. is a corporation incorporated under the laws of the State of Pennsylvania with its principal place of business in Pennsylvania.

11.    Mallinckrodt, Inc., is a corporation incorporated under the laws of the State of California with its principal place of business in California.

12.    S.E. Massengill, n/k/a GlaxoSmithKline Inc., is a corporation incorporated under the laws of the State of Tennessee with its principal place of business in

Tennessee.

13.    Merck & Co., Inc., is a corporation incorporated under the laws of the State of New Jersey with its principal place of business in New Jersey.

14.    Merrell Dow Pharmaceuticals, Inc., is a corporation incorporated under the laws of the State of Ohio with its principal place of business in Ohio.

15.    Premo Pharmaceutical Laboratories, Inc. p/k/a Lemmon Co. of N.J., Inc., is a corporation incorporated under the laws of the State of New Jersey with its principal place of business in New Jersey.

16.    Rhone-Poulenc Rorer Pharmaceuticals, Inc. p/k/a William H. Rorer, Inc., is a corporation incorporated under the laws of the State of Pennsylvania with its principal place of business in Pennsylvania.

17.    Rowell Laboratories, inc., n/k/a Solvay Pharmaceuticals is a corporation incorporated under the laws of the State of Minnesota with its principal place of business in Minnesota.

18.    E.R. Squibb & Sons, Inc. is a corporation incorporated in the State of New Jersey with its principal place of business in New Jersey.

19.    The Upjohn Company is a corporation incorporated under the laws of the State of Michigan with its principal place of business in Michigan.

## FACTUAL BACKGROUND

20.    At all relevant times, Defendants were in the business of and did create, design, manufacture, test, formulate, advertise, market, promote, sell, and/or distribute the drug DES.

21.    During the period in and about 1940 and prior and subsequent

6

thereto, Defendants assisted each other to prepare the drug DES, which thereupon became a generic drug manufactured by them and by other drug companies. Defendants also assisted each other to exploit, market and secure permission from the FDA to publicly sell DES for ingestion by humans. Defendants knew and were aware, or should have known, that the drug had been insufficiently tested; that it had not been sufficiently tested upon humans; and lacked adequate warnings. Nevertheless, these Defendants endeavored to obtain FDA approval of the drug in that form and otherwise assisted each other and other drug companies to bring DES to the market, thereby enabling such others and themselves to market a drug involving harmful results to users and the offspring of users.

22.    Defendants made certain claims and representations that were contained in their supplemental New Drug Application, some of which were that the new use of said DES in the prevention of miscarriages and accidents in pregnancy was both safe and efficacious.

23.    Defendants made certain claims that were distributed and circulated to the medical profession and to the general public through advertising, literature, detail men, brochures and other materials stating that DES was a safe and efficacious drug for the treatment of accidents in pregnancy.

24.    At the time, these Defendants knew or should have known that DES and its components had the potential to become harmful to users and offspring of users and knew or should have known that the drug was ineffective for the purpose for which it was marketed and sold.

25.    Upon information and belief, these Defendants and the other

7

persons and drug companies secured FDA approval; brought DES to the market where it was produced by these Defendants and/or other drug companies with the same content and same potential for harm; and distributed and marketed DES to the public so as to induce its use in the manner in which it was used by Plaintiffs' mothers.

26.    Upon information and belief, these Defendants and the other drug companies misrepresented the risks inherent in the use of DES in their applications to the FDA and to other governmental persons and/or agencies.

27.    Defendants knew, or should have known, of the above-mentioned risks based upon the state of knowledge as it existed at that time and upon generally accepted engineering, medical and research standards and principles.

28.    The Defendants, their agents, servants and/or employees, manufactured, produced, promoted, formulated, created or designed DES without testing it for use in pregnancy, without making proper and sufficient tests to determine the dangers and contra-indications thereof, and without warning the public and the medical profession of the dangers and contra-indications and side effects inherent in the aforesaid drug. The Defendants also negligently advertised and recommended the use of DES without sufficient knowledge as to its dangerous propensities; represented that the said drug was safe for use for its intended purpose, when, in fact, it was unsafe; and failed to conduct sufficient testing programs to determine whether or not the aforesaid drug was safe for use. Defendants knew or should have known that said drug was unsafe and unfit for use by reason of the dangerous effects, contra-indications and dangers to a fetus during the pregnancy of its mother. Defendants, their agents, servants and/or employees, improperly obtained the

approval of the FDA to market the drug by misrepresenting the risks of the drug to the FDA; knew that it was a substance, which crossed the placental barrier and therefore could cause injury to a fetus in utero; and were otherwise negligent.

29.    Defendants, by their agents, servants and/or employees were careless and negligent in the manufacturing, selling, distribution, merchandising, advertising, promotion, compounding, packaging, fabrication, analyzing, marketing, and recommendation of said drug DES without making proper and sufficient tests to determine the dangers thereof.

30.    In this action, Plaintiffs claim that they were exposed to DES in utero and that their mothers ingested DES, which was marketed by Defendants.

31.    By reason of the foregoing, those exposed to DES have developed, or are at extremely high risk for experiencing, certain cancers, infertility, ectopic pregnancies, as well as other serious injuries; and Plaintiffs herein have sustained severe, serious, permanent and personal injuries; will require extensive hospitalizations, medical care, surgeries, and lifelong attention; will be incapacitated from their normal functioning and will be unable to pursue normal means of livelihood; will be precluded from having a normal life, physically, intellectually, vocationally, emotionally, or psychologically; and Plaintiffs have been otherwise grossly damaged.

32.    Whether or not Plaintiffs prove which particular manufacturer produced the drug ingested by Plaintiffs' mothers, Defendants will be liable to them, based on market share liability, because they marketed the drug for pregnancy use.

### FIRST CLAIM FOR RELIEF

(Strict Products Liability)

33.    Plaintiffs repeat, reiterate and reallege each and every allegation

9

contained in the paragraphs numbered "1" through "35", inclusive, with the same force and effect as if hereinafter set forth at length.

34.    At all times herein mentioned, the Defendants, and each of them, manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted, sold, purchased, prescribed, and administered the aforesaid DES as hereinabove described and prior to the time that Plaintiffs or Plaintiffs' mothers, and thereby Plaintiffs, used said product.

35.    The said drug product, more particularly known as DES, was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by the Defendants.

36.    At those times, the said drug product DES, was in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, the general public and, in particular, the Plaintiffs herein.

37.    Defendants, while regularly engaged in the business activities aforementioned, did design, develop, manufacture, produce, test, sell, market and/or distribute a certain drug product, more particularly known as DES, which was ingested by Plaintiffs' mothers and thereby Plaintiffs.

38.    At all times herein mentioned, the said drug product DES was in a defective condition and unsafe and Defendants, individually, jointly and severally, knew or had reason to know that said product was defective and unsafe, especially when used as a miscarriage preventative.

39.    . The said drug product DES was inherently dangerous.

10

40.    At the time of the occurrence and ingestion by Plaintiffs' mothers, the said drug product, DES, was being used for the purposes and a manner normally intended.

41.    Neither Plaintiffs nor their mothers could, by the exercise of reasonable care, have discovered the defects herein mentioned and/or perceived their danger.

42.    As a direct and proximate result of the defective condition of DES manufactured and supplied by Defendants, Plaintiffs were caused to sustain severe and grievous personal injuries, as described herein.

43.    By reason of the foregoing, the Defendants have become strictly liable in tort to the Plaintiffs for the marketing of a defective product, regardless of whether they marketed the particular pill taken by Plaintiffs' mothers.

44.    By reason of the foregoing, Plaintiffs have been damaged as against each defendant in the sum of TEN MILLION DOLLARS ($10,000,000.00) in compensatory damages and TEN MILLION DOLLARS ($10,000,000.00) in punitive damages.

## SECOND CLAIM FOR RELIEF

### (Negligence)

45.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "47" inclusive, with the same force and effect as if more fully set forth herein.

46.    The negligence of the Defendants, their agents, servants, and/or employees, included but was not limited to the following acts or omissions:

(a) manufacturing, producing, promoting, formulating, creating, and/or designing DES without testing it for use in pregnancy;

11

(b) selling DES without making proper and sufficient tests to determine the dangers and contra-indications thereof;

(c) negligently failing to adequately and correctly warn the public and the medical profession of the dangers and contra-indications and side effects inherent in the aforesaid drug and failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with said product;

(d) negligently advertising and recommending the use of the aforesaid drug without sufficient knowledge as to its dangerous propensities;

(e) negligently representing that the said drug was safe for use for its intended purpose, when, in fact, it was unsafe;

(f) not conducting sufficient testing programs to determine whether or not the aforesaid drug was safe for use; in that Defendants herein knew or should have known that said drug was unsafe and unfit for use by reason of the dangerous effects, contra-indications and dangers to a fetus during the pregnancy of its mother; and

(g) improperly obtaining the approval of the FDA to market the drug by misrepresenting the risks of the drug to the FDA; in knowing that it was a substance that crossed the placental barrier and therefore could cause injury to a fetus in utero.

47.   As a direct and proximate result of the aforementioned negligence on the part of the Defendants, Plaintiffs were caused to sustain severe and grievous personal

12

injuries, as set forth herein.

48.    By reason of Defendants' actions as aforementioned, Defendants are liable to Plaintiffs regardless of whether or not they manufactured the particular DES drug ingested by Plaintiffs' mothers.

49.    By reason of the foregoing, Plaintiffs have been damaged as against each defendant in the sum of TEN MILLION DOLLARS ($10,000,000.00) in compensatory damages and TEN MILLION DOLLARS ($10,000,000.00) in punitive damages.

## THIRD CLAIM FOR RELIEF

### (Breach of Express Warranty)

50.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "52" inclusive, with the same force and effect as if more fully set forth herein at length.

51.    Defendants, and each of them, expressly represented to the users and their physicians that said drug DES was safe and fit for use for the purposes intended, that it was of merchantable quality, and that it did not produce any side effects dangerous to life, and that it was adequately tested and fit for its intended use.

52.    Members of the medical community relied upon the representations and warranties of the Defendants for use and ingestion of said drug DES in prescribing, recommending and/or dispensing same.

53.    Defendants knew or should have known that, in fact, said representations and warranties were false, misleading and untrue in that said drug DES was not safe and fit for the use intended, and, in fact, produces serious injuries to the user and the offspring of the user. As a result of the aforementioned breach of warranties by Defendants,

13

Plaintiffs were caused to sustain severe and grievous personal injuries, as set forth herein.

54.    By reason of Defendants' actions as aforementioned, Defendants are liable to Plaintiffs regardless of whether or not they manufactured the particular DES drug ingested by Plaintiffs' mothers.

55.    By reason of the foregoing, Plaintiffs have been damaged as against each defendant in the sum of TEN MILLION DOLLARS ($10,000,000.00) in compensatory damages and TEN MILLION DOLLARS ($10,000,000.00) in punitive damages.

## FOURTH CLAIM FOR RELIEF

### (Breach of Implied Warranty)

56.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "58" inclusive, with the same force and effect as if more fully set forth herein.

57.    At all times herein mentioned, the Defendants, and each of them, manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted, sold, purchased, prescribed, and administered the aforesaid DES as described above and prior to the time that Plaintiffs' mothers, and thereby Plaintiffs, used said product.

58.    The Defendants, and each of them, impliedly represented and warranted to the users and their physicians that the aforementioned drug product, more particularly known as DES, was safe and of merchantable quality and fit for the ordinary purpose for which said product was to be used.

59.    The said representations and warranties aforementioned were false, misleading, and inaccurate in that said drug product DES, was unsafe, unreasonably

14

dangerous, improper, not of merchantable quality, and defective.

      60.    DES products were injected into the stream of commerce by the Defendants in a defective, unsafe, and inherently dangerous condition and the products and materials were expected to and did reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

      61.    As a result of the aforementioned breach of warranties by Defendants, Plaintiffs were caused to sustain severe and grievous personal injuries, as set forth herein.

      62.    By reason of Defendants' actions as aforementioned, Defendants are liable to Plaintiffs regardless of whether or not they manufactured the particular DES drug ingested by Plaintiffs' mothers.

      63.    By reason of the foregoing, Plaintiffs have been damaged as against each defendant in the sum of TEN MILLION DOLLARS ($10,000,000.00) in compensatory damages and TEN MILLION DOLLARS ($10,000,000.00) in punitive damages.

## FIFTH CLAIM FOR RELIEF

### (Fraudulent Misrepresentation)

      64.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "67", inclusive, with the same force and effect as if more fully set forth herein at length.

      65.    The Defendants falsely and fraudulently represented to the medical community and to the public in general that said drug DES was a drug that had been tested and found to be safe and effective for the prevention of miscarriages and other pregnancy related uses. The representations made by said Defendants were, in fact, false.

15

66.    When said representations were made by Defendants, they individually, jointly, and severally, knew those representations to be false, willfully, wantonly and recklessly disregarded whether the representations were true, and these representations were made by said Defendants with the intent of defrauding and deceiving the public in general, and the medical community in particular, and with the intent of inducing the public in general, and the medical community in particular, to prescribe, dispense and purchase said drug DES for the prevention of miscarriages, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of the Plaintiffs herein.

67.    At the time the aforesaid representations were made by the Defendants and, at the time that Plaintiffs' mothers ingested said drug DES, Plaintiffs' mothers and Plaintiffs were ignorant of the falsity of said representations and reasonably believed them to be true. In reliance upon said representations, Plaintiffs' mothers were induced to and did take DES during their pregnancies with their daughters, the Plaintiffs.

68.    As a result of the fraudulent misrepresentations of the Defendants set forth hereinabove, said Defendants knew and were aware or should have known that the drug had been insufficiently tested, that it had not been tested or sufficiently tested upon humans, or lacked adequate warnings, and these Defendants cooperated with others to obtain FDA approval of the drug in that form and otherwise assisted other persons and drug companies to bring DES to market a drug involving harmful results to users and the offspring of users, thereby breaching their duty to such users and aiding and assisting other persons and drug companies marketing DES to do the same.

69.    At this time, these Defendants and other persons and drug companies

16

with whom they were cooperating and exchanging mutual assistance in order to bring DES to the market and secure approval thereof, knew or should have known that DES, its components and in combination, had a potential to, could, and would cause severe and grievous injury to the user and to the offspring of the users of said product and that the drug was ineffective for the purpose for which it was marketed and sold and was inherently dangerous.

70.    These Defendants and other persons and drug companies, as a result of the mutual aid of each to other and in combination, secured FDA approval, brought DES to the market where it was produced by these Defendants and other drug companies with the same content and the same potential for harm, and these Defendants and the other persons and drug companies conferred and assisted in promoting and advertising, and said Defendants acted fraudulently, wantonly and maliciously to the detriment of the Plaintiffs.

71.    As a result of Defendants' fraudulent and deceitful conduct and representations, Plaintiffs were caused to sustain severe and grievous personal injuries, as set forth herein.

72.    By reason of Defendants' actions as aforementioned, Defendants are liable to Plaintiffs regardless of whether or not they manufactured the particular DES drug ingested by Plaintiffs' mothers.

73. By reason of the foregoing, Plaintiffs have been damaged as against each defendant in the sum of TEN MILLION DOLLARS ($10,000,000.00) in compensatory damages and TEN MILLION DOLLARS ($10,000,000.00) in punitive damages.

17

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Victoire Dumont demands judgment against each

Defendant on each cause of action with interest together with the costs and

disbursements of this action.

Dated: 9\17\07

AARON M. LEVINE & ASSOCIATES

Aaron M. Levine, #7864
Brandon J. Levine, #412130
1320 19th Street, N.W., Suite 500
Washington, D.C. 20036
(202) 833-8040
aaronlevinelaw@aol.com

and

Sybil Shainwald, Esq.
Roxanne DeFrancesco, Esq.
Law Offices of Sybil Shainwald
111 Broadway
4th Floor
New York, New York 10006
(212) 608-5863
shainwaldlaw@aol.com

Counsel for Plaintiff

18

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury as to all issues.

_____
Aaron M. Levine, Esq.

# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA



| | | |
|---|---|---|
| VICTOIRE DUMONT, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | Civil Action No.  07-CV-01635 (JR) |
| v. | ] | |
| | ] | |
| ABBOTT LABORATORIES, INC., et al., | ] | **NOTICE OF MORE DEFINITE** |
| | ] | **STATEMENT PURSUANT TO** |
| | ] | **F.R.C.P. 12(e)** |
| Defendants. | ] | |
| | ] | |

In response to E.R. Squibb & Sons, Inc.'s Motion for a More Definite Statement, Plaintiff Victoire Dumont, by her attorneys, Aaron M. Levine & Associates & The Law Offices of Sybil Shainwald, P.C., alleges the following:

1.     Plaintiff, Victoire Dumont, was exposed to the drug Diethylstilbestrol ("DES"), in France.

2.     Plaintiff, Victoire Dumont, has suffered injuries resulting from her exposure to DES and its components including, but not limited to, clear cell adenocarcinoma of the vagina and cervix.

3.     By reason of the foregoing, Plaintiff has been damaged as against each defendant, including E. R. Squibb & Sons, Inc., in the sum of TEN MILLION DOLLARS ($10,000,000.00) in compensatory damages and TEN MILLION DOLLARS ($10,000,000.00) in punitive damages.

Respectfully submitted,
AARON M. LEVINE & ASSOCIATES
_____ /s/     Brandon J. Levine_____
Aaron M. Levine, #7864
Brandon J. Levine, #412130
1320 19th St., N.W., Suite 500        -and-
Washington, D.C. 20036
(202) 833-8040
aaronlevinelaw@aol.com

Counsel for Plaintiff

Sybil Shainwald, Esq.
Roxanne DeFrancesco, Esq.
Law Offices of Sybil Shainwald, P.C.
111 Broadway, Suite 403
New York, NY 10006
(212) 425-5566
shainwaldlaw@aol.com

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VICTOIRE DUMONT, | ] |
| | ] |
| **Plaintiff,** | ] |
| | ] |
| v. | ] |
| | ] |
| THE ABBOTT LABORATORIES, INC., | ] |
| et al., | ] |
| | ] |
| **Defendant.** | ] |

Civil Action No.: 07-CV-01635 (JR)
Next Event:

### PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
### IN SUPPORT OF HER MOTION TO TRANSFER TO
### THE EASTERN DISTRICT OF NEW YORK

## I.    INTRODUCTION

Plaintiff Victoire Dumont brought this suit to compensate for cancer, infertility and other injuries caused by Plaintiff's exposure *in utero* to diethylstilbestrol ("DES"). New York is the most appropriate location for trial of this case, both for the convenience of the witnesses and for the interests of justice.

For the past three years of her life, Plaintiff has lived in the Eastern District of New York. *See* Exhibit A to Declaration of Brandon J. Levine, Esq., (hereinafter "Levine Dec."), the Affidavit of Plaintiff Victoire Dumont (hereinafter "Dumont Aff."). Plaintiff's currently treating physicians practice in New York, well within the subpoena power of the Eastern District. *See id.* Plaintiff was a resident of the Eastern District of New York when she filed this suit, and asserts claims under New York law. *See id.; see also* Levine Dec., Exhibit B (Complaint).

In <u>Albin v. Eli Lilly and Co.</u>, Civil Action No. 04-986 (D.D.C. July 30, 2004), *see* Levine Dec., Exhibit C (case law), the District Court for the District of Columbia granted a DES

1

plaintiff's motion to transfer to the Eastern District of New York where the plaintiff's exposure and some of her medical treatment took place in New York, although the plaintiff was a Canadian resident. Here, Plaintiff is currently a resident of the Eastern District of New York, and all of her recent treatment has taken place in New York. Hence, Plaintiff's connection to New York is stronger than that in Albin, and transfer should be granted.

## II.    STANDARD ON MOTION TO TRANSFER

A transfer under 28 U.S.C. § 1404(a) is to any district where the action might have been brought. Plaintiffs could have initially brought this suit in the Eastern District of New York. All defendants are corporations, which are deemed to reside in any district that can exercise personal jurisdiction over them. See 28 U.S.C. § 1391(c). A plaintiff may sue in any district that a defendant resides, if all defendants reside within a state. See 28 U.S.C. § 1391(a)(1).

In diversity, a District Court has the same jurisdiction as the state court in the same area. Defendants either currently conduct significant business within the state to subject them to jurisdiction or are subject to jurisdiction by virtue of having committed a tortious act against Plaintiff in New York, see N.Y. C.P.L.R. § 302. As all Defendants are subject to jurisdiction, and therefore reside, in the Eastern District of New York, this case could be brought there.

The standard for transfer of venue as set forth by statute is "[f]or the convenience of parties and witnesses, in the interest of justice," 28 U.S.C. § 1404(a), but "[c]ourts have considered various other factors, including the private interests of the parties and the public interests of the court" in construing § 1404. Trout Unlimited v. United States Dep't of Ag., 944 F. Supp. 13, 16 (D.D.C. 1996).

The private interest considerations include, but are not limited to the (1) plaintiff's choice of forum, (2) the defendants' choice of forum, (3) whether the claim arose elsewhere, (4) the

2

convenience of the parties, (5) the convenience of the witnesses, and (6) the ease of access to sources of proof. Trout Unlimited, 944 F. Supp. at 16. The public interest considerations include (1) the familiarity of the transferee forum with the governing laws, (2) the relative congestion of the court calendars, and (3) the local interest in deciding local controversies at home. Id.

## III.   THE EASTERN DISTRICT OF NEW YORK IS MOST CONVENIENT FOR THE WITNESSES

The courts "must afford some deference" to Plaintiffs' choice of forum.   Trout Unlimited, 944 F. Supp. at 17. Here, Plaintiffs elect to transfer; the weight of this factor is therefore militates in favor of transferring the case to the Eastern District of New York. When the current forum has few meaningful ties to or interest in a lawsuit, the court must be "especially cautious" in allowing a case to remain there. Trout Unlimited, 944 F. Supp. at 17. If the forum is not the plaintiff's home forum, and the injury and initial treatment occurred elsewhere, the balance of interests is in favor of transfer. Brannen v. National R.R. Passenger Corp., 403 F. Supp. 2d 89, 93 (D.D.C. 2005) (holding Maryland a more convenient forum where Texas residents were injured in Maryland and received treatment there). This is a New York products liability case where no parties are residents of the District of Columbia. The Eastern District of New York is the Plaintiff's home forum and the current injury and treatment have occurred in New York. This balance of interests favors transfer to a New York court.

The convenience of witnesses is often considered the most important factor in evaluating a motion to transfer. Altamont Pharmacy, Inc. v. Abbott Lab's, No. 94 C. 6282, 2002 U.S. Dist. LEXIS 759 at *7 (N.D. Ill. 2002). In evaluating the convenience of the witnesses, the court considers a number of factors, including "(1) the number of witnesses located in each district; (2) the relative ease of access to sources of proof; (3) the availability of compulsory process for the

3

attendance of witnesses; and (5) the situs of the material events." 2002 U.S. Dist. LEXIS 759 at *6-7 (N.D. Ill. 2002). Here, there are no witnesses in the District of Columbia. New York is the site of the material events involving a majority of the witnesses, including Plaintiff's medical treatment. *See* Dumont Aff. The Eastern District of New York is the more convenient jurisdiction.

A witness's inconvenience is material when the inconvenience may make the witness unavailable to testify. Brannen, 403 F. Supp. 2d at 94. It will be inconvenient to require Plaintiff's treating doctor to leave New York to testify in the District of Columbia. Should Dr. Brownstein, Dr. Yi-Shin Kuo, or Dr. Kelly need to be subpoenaed, this Court does not have the power to do so, unlike the Eastern District of New York.

## IV.   THE EASTERN DISTRICT OF NEW YORK IS THE MOST APPROPRIATE FORUM FOR THE INTERESTS OF JUSTICE

The Eastern District of New York is a much better forum regarding the local interest factors. "Controversies should be resolved in the locale where they arise." Trout Unlimited, 944 F. Supp. at 19. In a diversity case, the public interest factors weigh in favor of having a jury apply its local laws. See Brannen, 403 F. Supp. 2d at 96. As the Supreme Court noted:

> We pay great deference to the views of the judges of those courts who are familiar with the intricacies and trends of local law and practice . . .

Bishop v. Wood, 426 U.S. 341, 346 n. 10 (1976).

This Court has no close connection with this case, and with the exception of a single scheduling conference, this Court has not yet occupied itself with the disposition of this case.

New York, the place of Plaintiff's current injuries, applies a market share theory to DES cases. See Hymowitz v. Eli Lilly, 539 N.E.2d 1069 (N.Y. 1989). The Eastern District of New York has extensive experience in applying New York law regarding DES cases. See, e.g., In re

4

DES Cases, 789 F. Supp. 552 (E.D.N.Y. 1992) (discussing New York's DES cases in detail in reference to consolidated DES litigation). The case would be assigned to Judge Jack Weinstein, who has a Standing Order referring all Eastern District DES cases to him. Judge Weinstein has extensive experience in handling DES cases. See In re DES Cases, supra. The Eastern District of New York is the best district to interpret the market share law underpinning this case.

## IV. CONCLUSION

The Eastern District of New York is the most appropriate venue for this case. It has subpoena power over witnesses and documents relevant to Plaintiff Victoire Dumont's DES-related injuries and has more experience with the governing law. Therefore, Plaintiff requests to transfer this case to the Eastern District of New York.

Respectfully submitted,

/s/ Brandon J. Levine
BRANDON J. LEVINE (#412130)
1320 Nineteenth Street, N.W.
Suite 500
Washington, DC 20036
202-833-8040

and

LAW OFFICES OF SYBIL SHAINWALD,
P.C.
111 Broadway, Suite 403
New York, NY
212-425-5566

Co-counsel for Plaintiff

5

# EXHIBIT 4

ANNE NIEBERDING, et al.　　　　　*　　IN THE

　　　Plaintiffs　　　　　　　　*　　CIRCUIT COURT

v.　　　　　　　　　　　　　　　*　　FOR

ELI LILLY & COMPANY, et al.　　*　　BALTIMORE CITY

　　　Defendants　　　　　　　　*　　CASE NO:　91346061/
　　　　　　　　　　　　　　　　　　　　　　　　　　　CL141601

　　　　　　　　　　　　　　　　*

* * * * * * * * * * * * * * * * * * * *

## AFFIDAVIT OF DONALD A. KNIGHT

　　　　I, DONALD A. KNIGHT, on oath, depose and say as follows:

　　　　1.　I am over 18 years of age and am competent to testify. Except as otherwise stated, the facts set forth in this affidavit are based on my personal knowledge, experience and familiarity with Burroughs Wellcome Co. ("BW Co."). I have been employed by BW Co. since 1971. From 1971 to 1978, I was the Head of the Product Registration Department. From 1978 to 1990, I was the Associate Director of the Drug Regulatory Affairs Department. From 1990 to the beginning of 1992, I was the Director, Division of Drug Regulatory Affairs.

　　　　2.　I am presently the Vice President-Drug Regulatory Affairs and Scientific Administration. In that capacity I act as the liaison between BW Co. scientists and the scientists at the U.S. Food and Drug Administration ("FDA"). I have had this responsibility since I began working for BW Co. I am also responsible for the department

which serves as custodian of New Drug Applications ("NDAs"; an NDA is an application under the Federal Food, Drug & Cosmetic Act to market a new drug) filed with the FDA by BW Co. I have had custodial responsibility for the NDAs since I began working for BW Co.

3.  I have reviewed all applicable business records of BW Co., including its NDAs for diethylstilbestrol ("DES") and the letters received from the FDA approving these NDAs, materials provided to physicians concerning the clinical application of DES, and the Detail and Selling Booklets used by the detailmen of BW Co. from 1946 to 1957. These records were made in the regular course of business at the time the acts to which they relate were done or within a reasonable time afterwards and it was the regular course of business to make such records. The facts set forth below are based on my personal review of these records.

4.  Between 1939 and 1941, BW Co. submitted its own NDAs to the FDA requesting approval to market DES for use in treating the following conditions:

(1)  menopausal syndrome;

(2)  senile vaginitis;

(3)  gonorrheal vaginitis in children; and

(4)  suppression of lactation.

Upon approval of the NDAs, BW Co. produced the drug DES in relatively small dosages to be used over a brief time period for only those indications stated above.

-2-

5. BW Co. produced DES in only the following dosage forms:

        (1) injectable one-milligram in one cubic centimeter sesame oils;

        (2) tablets of .1 milligram, .25 milligram, .5 milligram, 1 milligram and 5 milligrams.

6. BW Co. never filed a supplement to its own NDAs to the FDA, nor did it join in the submission of an NDA with any other drug company, seeking permission to use DES to preserve pregnancies or to prevent accidents of pregnancy.

7. BW Co. never manufactured, marketed or distributed DES in a 25 milligram dosage form. The maximum dosage ever manufactured by BW Co. was 5 milligrams.

8. In 1957, BW Co. discontinued the sale of DES in all dosages.

9. BW Co. never joined with any other drug manufacturer in the marketing, testing or preparation of a common NDA for DES. Furthermore, BW Co. never joined with any other drug company in the marketing and advertising of DES.

10. BW Co. did not at any time sell or distribute or seek permission from the FDA to sell or distribute DES to prevent miscarriage or for any other accidents of pregnancy.

11. BW Co. was not a member of, nor did it ever participate in, the "Small Committee."

12.   BW Co. did not cooperate with any other drug company in the production or sale of DES.

13.   BW Co., in the preparation and filing of its NDAs, never participated in the pooling of any research or data, never engaged in any cross-referencing with NDAs filed by other companies, and never engaged in the filing of any joint application to the FDA.

14.   BW Co. did not sell bulk DES in any form.

15.   As documented in the Detail and Selling Booklets of BW Co. for the years 1946 through 1957, BW Co. detailed its DES to hospitals and not to physicians or pharmacists.

16.   I solemnly affirm under the penalties of perjury and upon my personal knowledge and personal knowledge of the business records of BW Co. that the contents of the foregoing document are true.

DONALD A. KNIGHT
Vice President
Drug Regulatory Affairs and
Scientific Administration
Burroughs Wellcome Co.

Dated: _____

sjs-1144

-4-

# EXHIBIT 5

STATE OF NEW YORK
SUPREME COURT:  COUNTY OF ERIE

```
                                    )
IN RE:  DES MARKET SHARE            )
        LITIGATION                  )
                                    )
                                    )
THIS DOCUMENT APPLIES TO ALL CASES)
                                    )
```

DES MARKET SHARE
LITIGATION MASTER FILE

Index No. 2225/90
     Erie County

ORDER

Upon reading the joint application for an Order to Show
Cause of Eli Lilly and Company, E.R. Squibb & Sons, Inc., and
plaintiffs represented by William Dinkes of the firm of
Dinkes & Morelli, seeking an order approving the settlement
among the settling parties, as defined below, as a fair and
reasonable resolution of the disputed market share issues and a
further order establishing procedures to effectuate the
settlement and govern further proceedings in this action, the
Affirmation of Charles J. Walsh dated August 13, 1992, the
Affidavit of Kenneth A. Cohen In Support of Approval of
Settlement dated August 17, 1992, the Affirmation In Opposition
of Arthur Luxenberg dated August 12, 1992, and upon all of the
pleadings and proceedings had in this case, and a hearing
having been held before this Court on August 21, 1992, pursuant
to an Order to Show Cause signed July 9, 1992, inviting the
participation of all settling parties to this consolidated
action and seeking evidence of any opposition to the Court's
approval of the settlement and issuance of related procedural

orders, and due deliberation having been had, the Court makes
the following findings and orders:

I.  Findings and Order Approving Settlement.

The Court after hearing, argument, and written filings or
presentations by counsel for Eli Lilly and Company, E.R.
Squibb & Sons, Inc., and plaintiffs finds:

1.  Following the decision of the Court of Appeals in
Hymowitz v. Eli Lilly & Co., 73 N.Y.2d 487, 502, 541 N.Y.S.2d
941, 944 (1989), which permitted plaintiffs who were unable to
identify the manufacturer of the diethylstilbestrol ("DES") to
which they were allegedly exposed to proceed against
manufacturers of DES under a "market share" theory, this case
was begun pursuant to an Order to Show Cause dated February 26,
1990 and an Order of Severance and Consolidation dated April 4,
1990.

2.  Pursuant to those orders, over 500 cases involving
more than 500 plaintiffs and approximately 50 defendants were
consolidated in this proceeding for discovery and a
determination of the market shares of each of the defendants.

3.  This Court determined, as a basis for issuing the
Order of Severance and Consolidation, that policies of
efficiency and consistency of results applied strongly to the
DES litigation in New York, and dictated that the market share
issue should be determined once for the hundreds of DES cases
that had been brought in the courts of New York.  The Court
noted that the Court of Appeals in Hymowitz chose the

particular market share remedy it did in part to avoid "the
injustices arising from ... inconsistent results." 73 N.Y.2d
at 511, 541 N.Y.S.2d at 950.

4.  Pursuant to the Court's Orders, cases in 18
different counties were consolidated. The cases had been
brought by over 80 counsel representing plaintiffs.

5.  When the initial severance and consolidation was
ordered, no party objected to the severance and consolidation
of the market share issue for trial in a single forum.  The
only objection was to the particular venue chosen.

6.  Subsequent to this Court's initial order of
severance and consolidation, the Court granted further motions
by the defendant Eli Lilly and Company to sever and consolidate
the market share issue in cases subsequently filed in the
Supreme Court in various counties.  Those motions were made on
December 21, 1990; February 11, 1992; and June 5, 1992.  The
Orders granting those motions added a further 46 cases to this
proceeding.  As a result of the original order of severance and
consolidation and the granting of the three subsequent motions,
the market share issue in the cases listed in Exhibit A to this
Order were consolidated in this proceeding.

7.  After consolidation, this Court ruled that it
would determine the market shares of the defendants, but would
not make any substantive rulings concerning plaintiffs'
underlying tort claims against the defendants.  Thus, the Court
did not grant motions to dismiss or other dispositive relief

3

based on such arguments as a defendant's assertion that it had sold DES but did not specifically recommend that its DES be used in pregnancy and thus should have no liability. Rather, this Court defined its task as solely to establish the market shares of the defendants. Later rulings on any liability-based defense and later applicability of the market share findings to be made in this case were left for the original transferor courts; it is up to the transferor court in any given case, and not this Court, to decide whether the market share remedy applies at all in the case, and to identify the year and dosage size for which market shares must be determined in a particular case.

8. The discovery proceedings in this case, conducted pursuant to a Case Management Order adopted by the Court after negotiation among the parties, submissions by various parties, and a hearing on May 22, 1990, have produced extensive factual and expert evidence on which market share findings can be based.

9. The relevant DES markets in which the defendants' market shares were to be measured were defined by the Court, after motion and hearing, by Order entered March 27, 1991. That Order required that this case establish separate market shares for the dosage sizes of DES found relevant to the use of DES in connection with pregnancy: the 5 mg. DES tablet market, the 25 mg. DES tablet market, the 100 mg. DES tablet market, and "blended" market shares for use when several different dosage sizes were involved in a particular case or when it was

4

impossible to determine to what dosage size a plaintiff had
been exposed in a particular case. The Order also required
that the defendants' market shares be established in each of
these dosage sizes separately for each year from 1947 through
1971. Plaintiffs and almost all defendants supported this
definition of the markets in which the defendants' market
shares would be measured. Pursuant to the Court's Order, the
market shares to be found for each relevant dosage size and
year by year for each company were then calculated by the
parties' experts in a series of market share "matrices" or
tables.

        10.  The Court appointed Goodwin, Procter & Hoar,
counsel for Eli Lilly and Company, and Dickson, Carlson &
Campillo, and later Sills Cummis Zuckerman Radin Tischman
Epstein & Gross, P.A., counsel for E.R. Squibb & Sons, Inc., as
liaison counsel for the defendants. The firm of Lester Schwab
Katz & Dwyer, counsel for Burroughs Wellcome Co., was
subsequently added as liaison counsel for defendants. The
Court appointed Roman M. Silberfeld of the firm of Simke,
Chodos, Silberfeld & Anteau as liaison counsel for plaintiffs.
Mr. Silberfeld was retained by a group of counsel for
plaintiffs, including Mr. Perry Weitz of the firm of Weitz &
Luxenberg, Ms. Sybil Shainwald of Law Offices of Sybil
Shainwald, Mr. William Dinkes of the firm of Dinkes & Morelli,
and Mr. Leonard Finz of the Law Offices of Leonard L. Finz,
P.C., who represented the plaintiffs in a substantial majority

                            5

of the consolidated cases, to try the market share case on
behalf of plaintiffs. These liaison counsel were appointed in
the Case Management Order entered by the Court on June 26, 1990
and served on all parties. The Case Management Order,
Section III, made it clear that liaison counsel had no
substantive power to bind any particular party, and that
counsel for any party had the right to file papers on behalf of
that party and to appear and be heard with respect to any issue
and the right to conduct discovery and appear at trial.
Liaison counsel were primarily appointed to keep the various
parties on each side apprised of proceedings, to attempt to
work toward consensus positions, and to present such consensus
positions where that was possible.

11. Mr. Silberfeld was retained in part because of
his prior experience with the market share issue. He had been
one of two trial counsel for plaintiffs in one of the two DES
market share cases tried prior to this case, Stapp, et al. v.
Abbott Laboratories, et al., No. C344407, Los Angeles County,
California.

12. Mr. Silberfeld took the lead for plaintiffs in
discovery and trial preparation. In addition, plaintiffs'
counsel William Fireman of the firm of Julien & Schlesinger,
P.C. participated in the briefing and argument of the jury
trial issue, and attorneys from the firm of Weitz & Luxenberg
participated in certain expert discovery. Mr. Silberfeld
represented, and the Court reasonably concluded, that counsel

for all plaintiffs were content to have Mr. Silberfeld conduct
discovery and try the matter for them.

13.  The Case Management Order directed all defendants
to produce sales or related production data which might show
the extent of their participation in the DES market.  Upon
completion of the initial disclosures by defendants, the Case
Management Order provided a period of 135 days during which
follow-up factual discovery could be conducted of any
defendant.  The time within such discovery had to be conducted
under the Court's Case Management Order ended 240 days after
the date of the Court's Order, or February 21, 1991.

14.  The Case Management Order required that parties
intending to present expert witnesses at trial disclose those
expert witnesses and their opinions at the end of the discovery
period.  The date for such disclosure was, by agreement of the
parties and with approval of the Court, moved to December 13,
1991.  On that date plaintiffs disclosed four expert witnesses
and their opinions.  Plaintiffs' expert witnesses disclosed on
that date were Dr. Peter Berck, Dr. Jeffrey Perloff, and
Dr. Larry Karp, each of whom is an economist and a professor at
the University of California at Berkeley, and Dr. David L.
Sunding, also an economist, of the Law and Economics Consulting
Group, Inc., of Berkeley, California.  Plaintiffs' expert
witnesses included witnesses who had previously testified about
defendants' market shares:  Dr. Perloff had testified for the
plaintiffs in the Los Angeles market share trial, Stapp v.

7

Abbott Laboratories, and Dr. Berck had testified for the
plaintiffs in the San Francisco market share trial, In re
Complex DES Litigation, No. 830109, Superior Court,
San Francisco, California. At the same time, the defendant Eli
Lilly and Company disclosed expert witnesses Mr. Raymond A.
Gosselin, Dr. Keith Leffler, Benjamin P. Sachs, M.D., and
Dr. Lynne Sylvia; the defendant E.R. Squibb & Sons, Inc.
disclosed expert witnesses Dr. Henry G. Grabowski and
Dr. W. Kip Viscusi; the defendant Boyle & Company disclosed
Dr. Walter J. Mead; the defendant Emons Industries disclosed
Professor L.G. Thomas, and a number of defendants including All
Putter Company, Inc., American Home Products Corporation, and
22 other defendants disclosed Dr. Thomas A. Barocci.  Most of
these experts were also economists; Dr. Grabowski and
Dr. Viscusi are Professors of Economics at Duke University, and
Dr. Leffler is a Professor of Economics at the University of
Washington; Dr. Sachs is a medical doctor specializing in
obstetrics and gynecology and in epidemiology; Dr. Sylvia has a
doctorate in pharmacy and is in charge of the Drug Information
Center at a large hospital in Boston; and Mr. Gosselin is a
former professor and President of the Massachusetts College of
Pharmacy, and developed the first national marketing survey of
prescription drugs in the early 1950s.

        15.  Pursuant to the provisions of the Case Management
Order, all parties who intended to present expert opinion at
trial were then required to make extensive disclosures of the

material relied on by their experts and the experts'
calculations. Defendants provided this material to plaintiffs'
liaison counsel and plaintiffs provided material to defendants
as to some of the experts plaintiffs had designated on
December 27, 1991.

16. Plaintiffs subsequently disclosed two further
experts: Dr. Robert J. Stillman, a medical doctor who was
prepared to testify about the history of the use of DES, in
response to similar testimony from the defendants' witness
Dr. Sachs, and Dr. Shanna Swan, a biostatistician who has some
years of experience testifying in DES litigation and who
planned to testify concerning the issue of the average dosage
of DES taken by women during pregnancy. Defendant Eli Lilly
and Company disclosed further expert witnesses Dr. Jerry
Hausman, an economist and professor of economics at MIT, and
Dr. Susan Ellerin, a statistician who also planned to testify
about the average dosage of DES taken by pregnant women; the
defendant E.R. Squibb & Sons, Inc. designated a further expert
witness, Dr. Stephen R. Brooks, an economist.

17. On March 3, 1992, Mr. Silberfeld notified the
Court, all plaintiffs' counsel and defendants' liaison counsel
that he sought to withdraw from the case as a result of
difficulties he had encountered in collecting legal fees from
other plaintiffs' counsel. His letter alerted plaintiffs'
counsel that they should protect their clients' rights by
participation in the case to the extent they deemed necessary.

9

Mr. Silberfeld's attempt to withdraw resulted in several hearings concerning his continued role in the case, and ultimately in orders by the Court adding as additional plaintiffs' liaison counsel Weitz & Luxenberg, Dinkes & Morelli, the Law Offices of Sybil Shainwald and the Law Offices of Leonard L. Finz. P.C. The Court later ordered Mr. Silberfeld to remain in the case, first to complete expert discovery and then for trial.

18. Mr. Silberfeld on behalf of plaintiffs deposed all but one of the expert witnesses disclosed by Lilly and Squibb and deposed Dr. Barocci. Mr. Silberfeld also defended the depositions of Dr. Perloff, Dr. Berck, Dr. Swan and Dr. Karp.

19. Throughout the discovery and other pre-trial proceedings, all plaintiffs' counsel have been free to participate in such discovery, including expert discovery, and to be heard by the Court on any pre-trial matter considered at the numerous hearings conducted by the Court. Representatives of the firm of Weitz & Luxenberg participated in discovery, taking the deposition of Lilly's witness Raymond Gosselin and defending the deposition of plaintiffs' witness Dr. Robert Stillman.

20. The Court granted extensions of time for disclosure of final expert opinions until May 5, 1992. The extensions allowed the experts to make further revisions based on information learned through the discovery of other experts,

10

if they felt revisions were appropriate. The Court also extended the trial date from May 18 until June 8. This extension was granted to resolve a conflict in Mr. Silberfeld's schedule, so that he would be able to try the case for plaintiffs.

21. With assistance of the Court, negotiations during May and June, 1992 between Mr. Dinkes, Mr. Silberfeld, Ms. Shainwald, Mr. Stuart Finz and counsel for Lilly produced a tentative settlement agreement. Four plaintiffs represented by attorney Ronald R. Benjamin (Linda Pike, Meryl Shier, Elaine Weinman and Caren Glickson) have been excluded from the settlement by prior ruling of this Court.

22. Mr. Finz agreed to the settlement on behalf of the plaintiffs whom his firm represents in cases listed in Exhibit A, on the record in Chambers and in open Court on June 1, 1992. Mr. Finz then filed an Affirmation, dated August 14, 1992, in which he requested that this Court order an in camera hearing to require attorney Ronald R. Benjamin to make an offer of proof to substantiate his allegations that Lilly's market share exceeded that shown in the settlement matrices. Attorney Ronald Berson on behalf of his clients then filed an affidavit in support of Mr. Finz's request, although Mr. Berson had previously filed an affirmation in support of the settlement. Both the filing made by Mr. Finz and the filing made by Mr. Berson were not served on and received by liaison counsel in this case on or before August 14, 1992, as

11

required by the terms of this Court's Order to Show Cause dated
July 9, 1992.

23.  By letter dated May 7, 1992, Arthur Luxenberg on
behalf of the firm of Weitz & Luxenberg notified this Court
that his firm had "effectuated a settlement in all our
then-pending DES cases, including those pending in the State
Court."  He further stated that "[i]n this regard, the issue of
a market share trial as it related to this firm has been
rendered moot."  Weitz & Luxenberg did not withdraw their cases
at that time from this proceeding despite the imminence of
trial.  In reliance upon the representation that the Weitz &
Luxenberg cases were settled and, therefore, had no need for a
market share determination, the parties with assistance of the
Court proceeded to negotiate a settlement.  Mr. Luxenberg filed
an Affirmation in Opposition dated August 12, 1992, in which he
requested that his firm's clients be excluded from the
settlement.  That Affirmation in Opposition was not served on
all liaison counsel in this case and received by them by
August 14, as required by the Court's Order to Show Cause dated
July 9, 1992.  In view of the facts stated above and based on
the arguments presented by defendants at the hearing on
August 21, 1992, the Court has concluded that Mr. Luxenberg's
clients are judicially estopped from excluding themselves from
the settlement.  After hearing on August 21, 1992,
Mr. Luxenberg's request was therefore denied.

12

24. The settlement is based on an agreement by all defendants and all of the plaintiffs in this proceeding (except those listed in paragraph 21 above represented by Mr. Benjamin and those represented by the attorneys listed in paragraphs 22 and 23 above) to accept as binding in their cases the market shares set forth in the several matrices attached as Exhibit B hereto, and on the facts found in paragraphs 22 and 23.

25. The settlement provides for market shares that are either equal to or greater than those found in the San Francisco market share trial, *In re Complex DES Litigation*, *supra*. In the years 1949-1960, when the majority of the plaintiffs were born, the agreement provides for market shares for most of the defendants that are 10% higher than those found after an extensive trial in the San Francisco market share case. A few defendants have reached different agreements with the plaintiffs which provide for slightly lower market shares, for example in years where plaintiffs' expert Dr. Perloff had reached conclusions showing lower shares than found in the San Francisco market share proceeding. Those agreements are also embodied in the matrices attached as Exhibit B.

26. The Court has been presented with and has reviewed evidence which shows that the settlement is fair and reasonable to all of the settling parties. That evidence includes the following:

a. Counsel for many of the plaintiffs, including Liaison Counsel Mr. Silberfeld, who has had extensive

13

experience with respect to the question of the defendants'
market shares and has been fully involved in discovery and the
preparation of plaintiffs' case, as well as counsel for
defendants, have represented to the Court that the market
shares contained in Exhibit B are within the range of
reasonable outcomes of a market share trial, and that the
expert testimony expected to be offered by the parties would
support both higher and lower figures than the ones contained
in Exhibit B.

      b. In settling, the plaintiffs and the
defendants each avoid not only the risks of an adverse outcome,
but also the certainty that very large transaction costs would
be incurred. This jury trial was estimated to last from 4 to 6
weeks, and could well have run longer. The San Francisco
market share trial, which was tried to a judge and not to a
jury, took between 5 and 6 weeks; the Los Angeles market share
trial, also tried to a judge and not a jury, took approximately
5 weeks.

      c. At trial, the defendants expected to offer
evidence including expert testimony supporting market shares
for defendants substantially below those found in the
San Francisco market share trial, and a fortiori substantially
below the market shares contained in the settlement. The
expert testimony which defendants planned to offer included
opinions relying on additional data and analysis not presented
in the San Francisco case, including expert testimony by

14

Dr. Ellerin concerning the average dosage of DES taken by pregnant women and extensive additional expert testimony by Dr. Sachs and Professor Viscusi analyzing the amount of DES taken by patients with medical conditions other than problems of pregnancy.

          d. The market shares incorporated in the settlement matrices are in most cases not as high as those that plaintiffs' experts were expected to present but are higher than those that defendants' experts would present. In addition, experts for some of the defendants other than Lilly and Squibb would have offered evidence that those defendants' shares were significantly less than the findings made in San Francisco.

          e. Some of plaintiffs' experts acknowledged during their depositions that there were additional corrections needed to be made in their opinions concerning market shares, which would have reduced the market shares of defendants to which these experts would have testified.

          f. In the San Francisco market share case, plaintiffs' expert Dr. Peter Berck testified, but the Court adopted the shares of Squibb's expert Dr. Grabowski.

          g. In the Los Angeles market share trial, plaintiffs' expert Jeffrey Perloff testified. While the basis for the Court's conclusions as to market shares is not completely clear, because in all but one case the Court, based on its view of the California market share rule, increased the

15

shares it found so that the defendants in any particular case would be responsible for 100% of the market, it is apparent that the Court did not rely on the opinions of Dr. Perloff; in the one case where the Court refused to increase the defendants' shares to equal 100%, the Court's finding of a market share for Lilly adopted the testimony of Lilly's experts, not that of Dr. Perloff. There is an obvious risk that the plaintiffs' experts whose opinions were not found reliable in earlier litigation would not be credited at another trial addressing the same issues.

h. Over 80 plaintiffs" counsel, experienced in tort litigation and representing literally hundreds of clients, have agreed to accept the matrices attached as Exhibit B in settlement of their clients' claims. Similarly experienced counsel for approximately 50 defendants have agreed to accept the settlement and thereby avoid the risks of litigation. (Some defendants have asserted defenses to individual cases based on lack of personal or subject matter jurisdiction; nothing in this Order should be construed as a waiver of those defenses.) The acceptance of the settlement by counsel for most plaintiffs and all defendants occurred on the eve of trial, at a time when all counsel could see that the alternative of an immediate trial was available.

Accordingly, the Court finds that the settlement is fair, reasonable, and in the interests of the settling parties, and protects the rights of all parties entering into it; and it is hereby

16

ORDERED that the settlement entered into by all defendants and by all plaintiffs in the cases listed in Exhibit A except plaintiffs Pike, Shier, Glickson and Weinman (collectively the "Settling Plaintiffs") is hereby approved and confirmed by this Court, and shall be binding on the parties thereto; and it is further

ORDERED that in all litigation between any of the Settling Plaintiffs and any of the defendants involving alleged injury caused by DES, any market share issue shall be determined according to the settling parties' agreement that the market shares of the defendants are as stated in the matrices attached to this Order as Exhibit B, and that those shares shall be the market shares of the defendants for all purposes relevant to the resolution of any such dispute or litigation; and it is further

ORDERED that all Settling Plaintiffs and all defendants will not dispute, in any litigation between them, that the market shares of defendants in such proceedings are the market shares contained in the matrices attached as Exhibit B. Notwithstanding the terms and conditions of this settlement or any order or judgment entered thereon, defendants reserve all defenses which they may have regarding lack of personal or subject matter jurisdiction.

II.  Defendants' Stipulation

As part of the consideration for plaintiffs' agreement to be bound by the settlement, the defendants have agreed that in

17

any future DES litigation brought by counsel for the Settling Plaintiffs in the courts of the state of New York and governed by the Hymowitz decision in which market shares must be determined, if the plaintiff in a particular case elects, within 30 days after receiving a copy of this Order pursuant to paragraph b. on page 20 of this Order, to stipulate and agree to the market shares embodied in the matrices attached hereto as Exhibit B and so informs the defendants in that case in writing, any of the settling defendants which are parties to that litigation will agree to be bound by the market shares contained in the matrices attached as Exhibit B in that litigation, in order to resolve the market share issues in that particular case.

III. Further Proceedings to Implement and Enforce the Settlement Agreement.

The Court further finds that:

27. With respect to future cases that may be brought in the courts of New York alleging harm from DES, the need to avoid repeated trials of the market share issue is compelling. The policies of efficiency and consistency of results identified above should be served in DES litigation in the future.

28. The discovery conducted in this proceeding, and in particular the production of sales or production data from the defendants, has created a resource that represents a significant step forward for any future trial of market share

18

in the New York courts. That material will be an important component of the factual basis of any subsequent DES market share litigation. In addition, the extensive expert discovery completed in this case is also a valuable resource. Further, the evidentiary stipulation entered into by the parties and confirmed by Order of this Court dated April 15, 1992 recognizes the experts' needs to rely on the data which discovery has shown is the only data available. In general, this material should be retained and should be available to parties in future DES cases.

29. The need to implement the parties' settlement, including supervision over any disputes that arise concerning the effect of that settlement; the need for supervision of the defendants' promise set out in Part II above, to enter into a stipulation in future cases based on the market shares shown in the matrices attached as Exhibit B; the need for supervision over the production and use of all discovery materials generated in this case; and the need to resolve the market share issue for the non-settling plaintiffs, have persuaded this Court to retain jurisdiction over future market share litigation.

30. The limited resources of the courts and of litigants require that the future consideration of market share issues be reserved to this Court, which has gained familiarity with many of the legal and factual matters which will recur in future disputes or proceedings related to market share issues.

19

31.  The need to have one location where future cases
can be consolidated to determine market share issues and where
the parties to such cases can have the benefit of work already
done to prepare the market share issue for trial dictates that,
so long as this case remains open, new cases in which market
share must be resolved should have that issue severed and
transferred to Erie County, and consolidated in this case, as
has happened with DES litigation to this point.

Therefore, it is ORDERED that this case will remain open
for any proceedings necessary or appropriate to enforce the
agreement of the settling parties, to enforce or modify this
Order, and for such other purposes, including supervision of
discovery and trial of future cases, as this Court may require;
and it is further

ORDERED that in any DES cases filed in the courts of New
York alleging recovery on a market share basis, other than
cases listed on Exhibit A, any party to such a case may move in
this Court to have the market share issue in such case severed
and transferred to Erie County, and consolidated with this
case, for pre-trial proceedings and trial; and, upon such a
motion, the Court will schedule a hearing to determine whether
the market share issue in that case should for any reason not
be severed and transferred to Erie County and consolidated with
this case; and it is further

ORDERED that in any DES case filed in the Supreme Court for
Erie County, the market share issue in such case shall be

severed and consolidated with this proceeding, unless all plaintiffs in such case stipulate within 30 days of the service of this Order, as required by section (b) below that they will accept the terms of the agreement entered into here; and it is further

ORDERED that if counsel for any of the Settling Plaintiffs in cases listed in Exhibit A presently or in the future become counsel of record for any other plaintiff alleging a right to recover under a market share theory from any defendant, and if the market share issue in such case is severed and transferred to this Court or consolidated with this proceeding for purposes of determining the market shares of the defendants in such case, discovery and pre-trial proceedings on the market share issue in such case shall be determined according to the following procedure and schedule:

a. All discovery completed in this consolidated proceeding shall be compiled and indexed by liaison counsel for the defendants, who shall file a copy of the index with the Court on or before October 1, 1992. Liaison counsel for plaintiffs shall review the index after it is filed, and shall notify the Court and defendants' liaison counsel if the index should contain or refer to additional discovery material. A copy of all voluntary disclosures of sales or production data made by the defendants, a copy of each expert designation and any subsequent amendment(s) thereto, a copy of each expert deposition and all exhibits thereto, and a copy of the index

shall be maintained, under the Court's supervision, at Hodgson, Russ, Andrews, Woods & Goodyear. This discovery shall be made available for inspection on reasonable notice and at reasonable times to all parties in future cases. Any party in any future cases shall be entitled to obtain a copy of any or all of this discovery at her own expense. Any photocopying will be arranged and supervised by Hodgson, Russ, Andrews, Woods & Goodyear. Hodgson, Russ, Andrews, Woods & Goodyear may submit to the Court bills for reasonable hourly charges incurred in making such discovery materials available for inspection to any party, and any such bill shall be paid in equal shares by liaison counsel for defendants and by counsel for the party seeking to inspect and copy such discovery documents.

In addition, Roman Silberfeld will make his market share files, housed in Los Angeles, California, available for inspection on reasonable notice and at reasonable times to counsel for any plaintiff. Any plaintiff's counsel shall be entitled to obtain a copy of any or all of Mr. Silberfeld's files relating to this market share case at his or her own expense.

b.  Within 30 days of entry of an order transferring the market share issue in any action to this Court, defendants shall serve upon plaintiffs in that action a copy of this Order and shall simultaneously notify this Court that such service has been made.

22

c. Within 60 days of entry of an order transferring the market share issue in any action to this Court, or as soon thereafter as is practicable, the Court shall schedule a conference to set a schedule for discovery which shall indclude deadlines for the designation of experts and the completion of expert discovery. Following the conference, the Court shall issue an Order to govern such discovery.

d. It is in the interests of the Court and the parties to expedite discovery in any future case, and to avoid duplicative discovery. Accordingly, any party that intends to depose an expert who has previously been deposed in this consolidated market share proceeding must move on notice for permission to conduct said deposition. Such motion will be granted only upon a showing of good cause, and will not normally be granted if the expert has not materially modified the opinions he or she has presented in this case during the expert depositions conducted in the spring of 1992.

Any party that intends to conduct any form of discovery (other than expert discovery) must move for permission to do so. Such motion will be granted only upon a showing of good cause, and further discovery, other than discovery needed to establish the dosage, form and size of the DES to which a plaintiff was exposed, will not normally be granted.

e. A plaintiff's failure to meet any of the deadlines set forth in the Order issued pursuant to ¶ c of this

23

Section or as may thereafter be modified by the Court shall constitute a waiver of that plaintiff's right to litigate the issue of market share, and shall constitute an agreement by the plaintiff to be bound by the market shares which are set forth in the matrices attached as Exhibit B.

    f. At any trial of the market share issue, the market shall be defined consistently with the orders and rulings already made in this case referred to in paragraph 9 of the Court's findings on pages 4-5 above. The trial shall establish market shares for the defendants sued by any plaintiff participating in the trial, for the year of that plaintiff's birth and the dosage form and size of DES to which she was exposed (e.g., the market of 25 mg. DES tablets in 1949) only.

    g. At any trial of the market share issue, the evidentiary stipulation entered into by the parties and approved by the Court on April 15, 1992, shall continue in full force and effect.

    Notwithstanding any other provision of this Order, this Order does not apply to the plaintiffs represented by Mr. Benjamin (Pike, Shier, Glickson and Weinman) who have chosen not to enter into this settlement. The Court will, at a later date, schedule a hearing to determine how to handle those plaintiffs' market share claims and to determine the extent to which they are bound by the Orders entered by the Court to date.

To carry out the effect of this Order, this Court will discuss with Justices of the Supreme Court in other counties in which DES litigation has been brought the advisability of entering in those counties standing orders which would automatically sever and transfer to this Court the market share issue in DES cases subsequently filed in those courts.

James B. Kane
Supreme Court Justice

DATED:   September/5, 1992
         Buffalo, New York

WP-0605/L

G R A N T E D
SEP 1 7 1992 19
COURT CLERK

25

# NY SETTLEMENT SHARES 5 MG

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding.
All shares are expressed as percentages.

| | 1947 | 1948 | 1949 | 1950 | 1951 | 1952 | 1953 | 1954 | 1955 | 1956 | 1957 | 1958 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ABBOTT | 3.6539 | 3.2275 | 2.9514 | 2.4001 | 2.3959 | 2.0859 | 1.8744 | 1.4097 | 1.2822 | 1.2962 | 1.2840 | 1.3087 |
| ALLPUTTER (APPROVED) | | | | | | | | | | | | |
| AMERICAN HOME PRODU | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| AMERICAN PHARM | 0.1600 | 1.3451 | 2.7831 | 4.0867 | 4.0867 | 4.0867 | 4.0867 | 4.0867 | 4.0867 | 4.0867 | 4.0867 | 4.0867 |
| AMES CO. | | | | | | | 0.0734 | 0.1466 | 0.2200 | 0.2200 | 0.2200 | 0.2200 |
| AMFRE GRANT (EMONS) | | 0.0074 | 0.0380 | 0.0686 | 0.0872 | 0.0947 | 0.0943 | 0.0900 | 0.0774 | 0.0651 | 0.0778 | 0.1009 |
| AYERST LABORATORIES | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BARRE | | | | | | | | | | | | 0.0234 |
| BOEHRINGER INGELHEIM | | | | | | | | | | | | |
| BOYLE | SJ | 0.0145 | 0.0395 | 0.0534 | 0.0537 | 0.0469 | 0.0386 | 0.0318 | 0.0261 | 0.0219 | 0.0144 | 0.0076 |
| BREON | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BREWER | | | | | | | | | | | 0.6522 | 1.4519 |
| BRYANT PHARM | | | | | | | | | | | | 0.3760 |
| BURROUGHS | 5.8082 | 4.6852 | 3.5518 | 2.4390 | 1.7168 | 1.2961 | 1.0156 | 0.8118 | 0.6483 | 0.5271 | 0.2507 | 0.2103 |
| CARNRICK | SJ | SJ | SJ | 0.7149 | 0.9288 | 0.8933 | 0.8026 | 0.5064 | 0.4183 | 0.2968 | 0.3736 | 0.2046 |
| CHASE | | 0.0667 | 0.1466 | 0.2200 | 1.4560 | 2.6060 | 2.4899 | 1.4186 | 0.2200 | 0.2200 | 0.2200 | 0.2200 |
| CIBA | 0.0271 | 0.0139 | 0.0080 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| COLE | | | | | 0.0249 | 0.0452 | 0.0651 | 0.0651 | 0.0651 | 0.0651 | 0.0651 | 0.0651 |
| DEXTER | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| DRUG PRODS. | 0.1600 | 0.1733 | 0.2054 | 0.2200 | 0.2200 | 0.2200 | 0.2200 | 0.2200 | 0.2200 | 0.1466 | 0.0734 | SJ |
| EVRON | | | 0.0421 | 0.0844 | 0.1265 | 0.1265 | 0.1265 | 0.1265 | 0.1265 | 0.1265 | 0.1265 | 0.1265 |
| HAACK LABS | | | | 0.2495 | 0.4990 | 0.7484 | 0.7484 | 0.7484 | 0.7484 | 0.7484 | 0.7484 | 0.7484 |
| HANCE & WHITE | | | | 1.1458 | 2.2915 | 3.4373 | 3.4373 | 3.4373 | 3.4373 | 3.4373 | 3.1418 | 2.8465 |
| HARVEY | | | | 0.0734 | 0.1466 | 0.2200 | 0.2200 | 0.2200 | 0.2200 | 0.2200 | 0.2200 | 0.2200 |

* For all dosage sizes, shares derived from Petloff 1 matrices, except for 100 mg, derived from Berck 100 mg matrix.

Exhibit B

# NY SETTLEMENT SHARES 5 MG

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| | 1959 | 1960 | 1961 | 1962 | 1963 | 1964 | 1965 | 1966 | 1967 | 1968 | 1969 | 1970 | 1971 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ABBOTT | 1.3050 | 1.2286 | 0.8228 | 0.3924 | 0.1136 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| ALLPUTTER (APPROVE | | 0.0295 | 0.1428 | 0.2040 | 0.2903 | 0.2605 | 0.2866 | 0.3266 | 0.2994 | 0.3193 | 0.2638 | 0.3411 | 0.3771 |
| AMERICAN HOME PROD | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| AMERICAN PHARM | 4.0867 | 4.0867 | 3.7152 | 3.7152 | 3.7152 | 3.7152 | 3.7152 | 3.7152 | 3.7152 | 3.7152 | 3.7152 | 3.7152 | 3.7152 |
| AMES CO. | 0.2200 | 0.2200 | 0.2000 | 0.2000 | 0.2000 | 0.2000 | 0.2000 | 0.2000 | 0.2000 | 0.1333 | 0.0667 | | |
| AMFRE GRANT (EMONS | 0.0920 | 0.0637 | 0.0631 | 0.1205 | 0.1220 | 0.0933 | 0.0721 | 0.0717 | 0.0519 | 0.0273 | 0.0287 | 0.0407 | 0.0343 |
| AYERST LABORATORIE | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BARRE | 0.0523 | 0.0965 | 0.0972 | 0.1049 | 0.1054 | 0.1119 | 0.1105 | 0.1125 | 0.1100 | 0.1157 | 0.1231 | 0.1357 | 0.1469 |
| BOEHRINGER INGELHEI | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BOYLE | 0.0062 | 0.0086 | 0.0086 | 0.0027 | | | | | | | | | |
| BREON | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BREWER | 1.6223 | 0.9738 | 0.7005 | 0.7550 | 0.7586 | | | | | | | | |
| BRYANT PHARM | 0.3760 | 0.3760 | 0.3418 | 0.3418 | 0.3418 | 0.3418 | 0.3418 | 0.3418 | 0.2279 | 0.1139 | | | |
| BURROUGHS | 0.0658 | | | | | | | | | | | | |
| CARNRICK | 0.1438 | 0.0836 | 0.0277 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| CHASE | 0.2200 | 0.2200 | 0.2000 | 0.2000 | 0.2000 | 0.2000 | 0.1333 | 0.0667 | SJ | SJ | SJ | SJ | SJ |
| CIBA | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| COLE | 0.0651 | 0.0651 | 0.0592 | 0.0403 | 0.0209 | | | | | | | | |
| DEXTER DRUG PRODS. | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| EVRON | 0.1265 | 0.1265 | 0.1150 | 0.1150 | 0.1150 | 0.1150 | 0.1150 | 0.1150 | 0.1150 | 0.1150 | 0.1150 | 0.0767 | 0.0383 |
| HAACK LABS | 0.7484 | 0.7484 | 0.6604 | 0.6804 | 0.6804 | 0.4536 | 0.2268 | | | | | | |
| HANCE & WHITE | 2.5510 | 2.5510 | 2.3191 | 2.3191 | 1.5461 | 0.7730 | | | | | | | |
| HARVEY | 0.2200 | 0.2200 | 0.2000 | 0.2000 | 0.2000 | 0.2000 | 0.2000 | 0.2000 | 0.2000 | 0.2000 | 0.2000 | 0.2000 | 0.2000 |

* For all dosage sizes, shares derived from Payoff I matrices, except for 100 mg, derived from Berck 100 mg matrix.

# NY SETTLEMENT SHARES 5 MG.

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| | 1947 | 1948 | 1949 | 1950 | 1951 | 1952 | 1953 | 1954 | 1955 | 1956 | 1957 | 1958 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| HARTZ (FERNDALE) | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| IVES LABORATORY | SJ | SJ | SJ | | | | | | | | | |
| KEY | | | | 0.0097 | 0.0147 | 0.0196 | 0.0191 | 0.0199 | 0.0213 | 0.0227 | 0.0226 | 0.0222 |
| KIRKMAN | | 0.0499 | 0.0800 | 0.0825 | 0.0823 | 0.0745 | 0.0290 | 0.0535 | 0.0759 | 0.0752 | 0.0705 | 0.0683 |
| KREMERS URBAN | 0.0499 | 0.0405 | 0.0862 | | | . | 0.0596 | 0.0398 | 0.0299 | | | |
| LANNETT | 0.0405 | SJ | SJ | 0.1290 | 0.1364 | 0.1221 | 0.1025 | 0.0661 | 0.0659 | 0.0506 | 0.0329 | 0.0514 |
| LEDERLE | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| LILLY | 65.7713 | 60.6921 | 55.3012 | 44.4648 | 36.7561 | 32.2300 | 30.9009 | 28.5217 | 28.3723 | 27.9326 | 29.6112 | 31.1197 |
| LINCOLN | SJ | SJ | SJ | 0.0466 | 0.0935 | 0.1425 | 0.1801 | 0.1977 | 0.1950 | 0.1877 | 0.2024 | 0.2572 |
| MASSENGILL (SMITH KLIN) | 0.1799 | 0.3568 | 0.4874 | 0.4795 | 0.5574 | 0.6857 | 0.8271 | 0.8910 | 1.0473 | 1.0538 | 1.0629 | 1.0320 |
| MCKESSON LABS | | | | | | | | | | | | |
| MCNEIL | 0.3842 | 0.4865 | 0.4517 | 0.4013 | 0.3950 | 0.3875 | 0.3493 | 0.2650 | 0.2126 | 0.1921 | 0.1469 | 0.0969 |
| MERCK | 0.8266 | 1.6850 | 2.4701 | 2.6606 | 2.3354 | 1.9679 | 1.8769 | 1.7346 | 1.6781 | 1.5539 | 1.4615 | 1.3813 |
| MERRELL | | | | 0.4513 | 0.7169 | 0.6325 | 0.3061 | | | | | |
| MEYER | | | | 0.0068 | 0.0180 | 0.0506 | 0.0865 | 0.0997 | 0.0818 | 0.0619 | 0.0526 | 0.0421 |
| OTIS CLAPP | SJ | SJ | | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| PERSON & COVEY | | | 0.0853 | 0.1660 | 0.2563 | 0.2474 | 0.2292 | 0.2428 | 0.2295 | 0.2171 | 0.2211 | 0.2233 |
| PHYS'S DRUG & SUPPLY | | | | 0.2649 | 0.5298 | 0.7946 | 0.7946 | 0.7946 | 0.7946 | 0.7946 | 0.7946 | 0.7946 |
| PREMO | 0.7939 | 1.1059 | 1.3758 | 1.3399 | 1.3791 | 1.3314 | 1.2337 | 1.3067 | 1.2350 | 1.0605 | 0.9391 | 0.9492 |
| REID PROVIDENT | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | | | | |
| REPUBLIC | | | | | | | | | | 0.0032 | 0.0065 | 0.0109 |
| REXALL | 0.5553 | 1.1651 | 1.4700 | 1.3463 | 1.1364 | 1.0189 | 0.9803 | 0.9156 | 0.9055 | 0.9048 | 0.9367 | 0.9831 |

*

\* For all dosage sizes, shares derived from Perloff 1 matrices, except for 100 mg, derived from Berck 100 mg matrix.

3

# NY SETTLEMENT SHARES  5 MG

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| | 1959 | 1960 | 1961 | 1962 | 1963 | 1964 | 1965 | 1966 | 1967 | 1968 | 1969 | 1970 | 1971 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| * HARTZ (FERNDALE) | | | | | | | | | | | | | |
| IVES LABORATORY | SJ | SJ | SJ | SJ | 0.0314 | 0.0484 | 0.0476 | 0.0152 | | | | | |
| KEY | 0.0212 | 0.0217 | 0.0169 | 0.0125 | 0.0061 | 0.0022 | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| KIRKMAN | 0.0634 | 0.0773 | 0.0768 | 0.0740 | 0.0624 | 0.0641 | 0.0643 | 0.0575 | 0.0387 | 0.0249 | 0.0175 | 0.0193 | 0.0209 |
| KREMERS URBAN | | | | | | | | | | | | | |
| LANNETT | 0.0617 | 0.1092 | 0.1501 | 0.2185 | 0.2554 | 0.2561 | 0.2124 | 0.2217 | 0.1511 | 0.1057 | SJ | SJ | SJ |
| LEDERLE | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| LILLY | 33.6416 | 40.3435 | 41.6501 | 44.8745 | 45.0579 | 47.8120 | 48.9129 | 53.3802 | 53.9960 | 57.2142 | 59.6181 | 65.4205 | 71.3249 |
| LINCOLN | 0.2615 | 0.2572 | 0.2592 | 0.2797 | 0.2108 | 0.0746 | | | | | | | |
| MASSENGILL (SMITHKL) | 1.0384 | 1.2741 | 1.3299 | 1.2831 | 1.0855 | 1.0984 | 1.0820 | 0.9899 | 0.6469 | 0.3415 | 0.1215 | SJ | SJ |
| MCKESSON LABS | SJ | 2.3558 | 4.2831 | 6.4247 | 6.4247 | 6.4247 | 6.4247 | 6.4247 | 4.2831 | 2.1416 | SJ | SJ | SJ |
| MCNEIL | 0.0268 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| MERCK | 1.3124 | 1.2715 | 0.7486 | 0.2933 | | | | | | | | | |
| MERRELL | | | | | | | | | | | | | |
| MEYER | 0.0209 | | | | | | | | | | | | |
| OTIS CLAPP | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| PERSON & COVEY | 0.2257 | 0.2165 | 0.1722 | 0.1705 | 0.1376 | 0.0908 | 0.0358 | | | | | | |
| PHYS'S DRUG & SUPPL | 0.7946 | 0.7946 | 0.7224 | 0.7224 | 0.7224 | 0.4816 | 0.2408 | | | | | | |
| PREMO | 0.8314 | 0.9258 | 0.9331 | 1.1117 | 1.3207 | 1.5074 | 1.4961 | 1.4322 | 1.1996 | 0.9179 | 0.7308 | 0.6739 | 0.5878 |
| REID PROVIDENT | | | | | | | | | | | | | |
| REPUBLIC | 0.0103 | 0.0100 | 0.0054 | 0.0022 | | | | | | | | | |
| REXALL | 1.1407 | 1.2362 | 1.2994 | 1.3405 | 1.4246 | 1.6635 | 1.6656 | 1.6401 | 1.4732 | 1.3010 | 0.9116 | 0.4989 | 0.0971 |

* For all dosage sizes, shares derived from Period 1 matrices, except for 100 mg, derived from Berick 100 mg matrix.

# NY SETTLEMENT SHARES 5 MG

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding.
All shares are expressed as percentages.

|  | 1947 | 1948 | 1949 | 1950 | 1951 | 1952 | 1953 | 1954 | 1955 | 1956 | 1957 | 1958 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RITE-AID | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| RORER | 0.3856 | 0.3763 | 0.3814 | 0.3454 | 0.3748 | -0.4701 | 0.6136 | 0.6768 | 0.6707 | 0.6662 | 0.5781 | 0.4861 |
| ROWELL | SJ | SJ | SJ | 0.0025 | 0.0293 | 0.1035 | 0.1667 | 0.2110 | 0.2028 | 0.2319 | 0.2565 | 0.3105 |
| SMITH, CARROLL, DUNHA | 0.1600 | 0.3833 | 0.6672 | 0.9128 | 0.9128 | 0.9128 | 0.9128 | 0.9128 | 0.9128 | 0.9128 | 0.9128 | 0.6085 |
| SMITH DORSEY (SANDOZ) | 0.3978 | 0.3237 | 0.2072 | 0.1247 | 0.1041 | 0.0985 | 0.0686 | 0.0243 | SJ | SJ | SJ | SJ |
| SQUIBB | 11.5832 | 10.1373 | 8.9599 | 7.8750 | 7.3845 | 7.3596 | 7.5335 | 7.5792 | 7.6020 | 7.9044 | 7.8497 | 8.2534 |
| STANLEY | SJ | SJ | SJ | ·SJ | SJ | SJ | 0.0318 | 0.0930 | 0.1560 | 0.1979 | 0.3060 | 0.4956 |
| STRASENBURG | 0.0179 | 0.0358 | 0.0408 | 0.0395 | 0.0304 | 0.0189 | 0.0072 |  |  |  |  |  |
| * |  |  |  |  |  |  |  |  |  |  |  |  |
| SUCCESS |  |  |  |  | 0.0388 | 0.0715 | 0.1032 | 0.1007 | 0.1017 | 0.0982 | 0.0928 | 0.0860 |
| TESTAGAR |  | 0.1841 | 0.4051 | 0.6076 | 0.6076 | 0.6076 | 0.6076 | 0.6076 | 0.6076 | 0.6076 | 0.6076 | 0.6076 |
| TUTAG |  |  |  |  |  |  |  |  |  | 0.0563 | 0.1503 | 0.2628 |
| ULMER |  |  |  | 0.0206 | 0.0297 | 0.0319 | 0.0259 | 0.0174 | 0.0140 | 0.0207 | 0.0263 | 0.0268 |
| UPJOHN | 8.2261 | 6.6405 | 5.0932 | 3.8080 | 3.0670 | 2.7260 | 2.5407 | 2.3587 | 2.2069 | 2.1673 | 2.0848 | 2.1100 |
| VITAFORE |  |  |  |  | 0.0004 | 0.0007 | 0.0010 | 0.0010 | 0.0010 | 0.0010 | 0.0009 | 0.0009 |
| VITARINE | 0.0311 | 0.0552 | 0.0737 | 0.0719 | 0.0813 | 0.1031 | 0.1342 | 0.1481 | 0.1467 | 0.1454 | 0.1384 | 0.1322 |
| V.C.A. |  |  |  |  | 0.2754 | 0.5508 | 0.8262 | 0.8262 | 0.8262 | 0.8262 | 0.8262 | 0.8262 |
| WEBSTER |  |  |  |  |  | 0.0275 | 0.0551 | 0.0826 | 0.0551 | 0.0275 |  |  |
| WESTWARD | SJ | SJ | 0.7821 | 1.1426 | 1.1759 | 1.1353 | 1.0518 | 1.1142 | 1.0530 | 0.9964 | 1.0148 | 0.9578 |
| WINTHROP (STERLING) | 0.1600 | 0.1647 | 0.1862 | 0.1914 | 0.1914 | 0.1914 | 0.1914 | 0.1914 | SJ | SJ | SJ | SJ |
| WYETH | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| TOTAL | 99.2843 | 93.4163 | 88.3803 | 78.7469 | 72.7441 | 70.0215 | 68.1399 | 63.5125 | 61.2978 | 60.5736 | 62.2155 | 64.4132 |
| UNALLOCATED | 0.7157 | 6.5837 | 11.6197 | 21.2531 | 27.2559 | 29.9785 | 31.8601 | 36.4875 | 38.7022 | 39.4264 | 37.7845 | 35.5868 |

* For all dosage sizes, shares derived from Petloff 1 matrices, except for 100 mg, derived from Berck 100 mg matrix.

# NY SETTLEMENT SHARES  5 MG

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| | 1959 | 1960 | 1961 | 1962 | 1963 | 1964 | 1965 | 1966 | 1967 | 1968 | 1969 | 1970 | 1971 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RITE-AID | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| RORER | 0.4282 | 0.6384 | 0.6813 | 0.4929 | 0.1665 | | | | | | | | |
| ROWELL | 0.3539 | 0.4362 | 0.4234 | 0.3781 | 0.3258 | 0.2953 | 0.2668 | 0.2115 | 0.1204 | 0.0518 | 0.0007 | | |
| SMITH, CARROLL, DUNH | 0.3043 | | | | | | | | | | | | |
| SMITH DORSEY (SANDO | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| SQUIBB | 8.4598 | 9.7153 | 9.3534 | 9.7667 | 9.6025 | 9.8468 | 8.9777 | 7.8379 | 5.8495 | 4.4273 | 3.1259 | 2.0145 | 0.8917 |
| STANLEY | 0.8575 | 1.3414 | 1.6632 | 2.2471 | 2.6829 | 3.1066 | 2.9420 | 3.2108 | 4.6271 | 5.8904 | 5.5576 | 3.8726 | 1.9637 |
| STRASENBURG | | | | | | | | | | | | | |
| * SUCCESS | 0.0061 | 0.0917 | 0.0947 | 0.0945 | 0.0930 | 0.0938 | 0.0618 | 0.0304 | 0.1041 | 0.1762 | 0.1929 | 0.1641 | 0.0896 |
| TESTAGAR | 0.6076 | 0.6076 | 0.5524 | 0.5524 | 0.5524 | 0.5524 | 0.5524 | 0.3683 | 0.1731 | | | | |
| TUTAG | 0.2939 | 0.2900 | 0.2511 | 0.2447 | 0.2494 | 0.2873 | 0.2727 | 0.2212 | | | | | |
| ULMER | 0.0196 | 0.0177 | 0.0162 | 0.0122 | 0.0053 | | | | | | | | |
| UPJOHN | 2.0400 | 2.1992 | 2.0353 | 2.0529 | 1.9070 | 1.7941 | 1.5694 | 1.4314 | 1.5116 | 1.7360 | 1.9316 | 1.7024 | 1.0425 |
| VITAFORE | 0.0067 | 0.0072 | 0.0071 | 0.0083 | 0.0036 | 0.0033 | 0.0032 | 0.0030 | 0.0026 | 0.0021 | 0.0016 | 0.0011 | 0.0006 |
| VITARINE | 0.1227 | 0.1496 | 0.1485 | 0.1432 | 0.1210 | 0.1241 | 0.1244 | 0.1112 | 0.0749 | 0.0482 | 0.0337 | 0.0248 | 0.0134 |
| V.C.A. | 0.8262 | 0.8262 | 0.7511 | 0.7511 | 0.7511 | 0.7511 | 0.5007 | 0.2504 | | | | | |
| WEBSTER | | | | | | | | | | | | | |
| WESTWARD | 0.9478 | 0.8535 | 1.0017 | 1.0272 | 0.9918 | 0.9284 | 1.0174 | 1.0366 | 1.1416 | 1.1364 | 1.2556 | 1.4221 | 1.2559 |
| WINTHROP (STERLING) | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| WYETH | SJ | SJ | SJ | SJ | SJ | SJ | | 0.2089 | 0.4178 | 0.6267 | 0.6267 | 0.6267 | 0.6267 |
| TOTAL | 66.7059 | 77.1654 | 78.3260 | 83.9712 | 82.6011 | 83.7713 | 81.8660 | 84.2328 | 80.8109 | 80.8816 | 78.6383 | 80.9503 | 82.2466 |
| UNALLOCATED | 33.2941 | 22.8346 | 21.6740 | 16.0288 | 17.3989 | 16.2287 | 18.1340 | 15.7672 | 19.1891 | 19.1184 | 21.3617 | 19.0497 | 17.5534 |

* For all dosage sizes, shares derived from Perloff [ ] matrices, except for 100 mg, derived from Berck 100 mg matrix.

# NY SETTLEMENT SHARES 25 MG

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| | 1947 | 1948 | 1949 | 1950 | 1951 | 1952 | 1953 | 1954 | 1955 | 1956 | 1957 | 1958 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ABBOTT | 6.0345 | 7.9906 | 6.1276 | 4.5187 | 3.2087 | 2.7611 | 2.1263 | 1.7432 | 1.2636 | 1.1814 | 1.0034 | 0.9545 |
| AMERICAN HOME PRODU | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| AMERICAN PHARM | | 1.6734 | 3.6615 | 5.5222 | 5.5222 | 5.5222 | 5.5222 | 5.5222 | 5.5222 | 5.5222 | 5.5222 | 5.5222 |
| AMFRE GRANT (EMONS) | | 2.1174 | 5.0275 | 6.2192 | 6.2227 | 6.2680 | 6.0533 | 6.2092 | 5.6994 | 4.6173 | 4.3437 | 5.6958 |
| AYERST LABORATORIES | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BARRE | | | | | | | | | | | | 0.0502 |
| BOEHRINGER INGELHEIM | SJ | SJ | | | | | | | | | | |
| BOYLE | | 0.4167 | 0.6084 | 0.5897 | 0.4894 | 0.4422 | 0.3384 | 0.2974 | 0.2676 | 0.2511 | 0.2118 | 0.1983 |
| BREON | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BREWER | | | | | | | | | | | 1.8585 | -3.2498 |
| BRYANT PHARM | | | | | | | | | | | | 0.6406 |
| CARNRICK | SJ | SJ | SJ | 1.1793 | 1.1690 | 0.9941 | 0.8250 | 0.6197 | 0.4404 | 0.2135 | 0.4270 | 0.1679 |
| CHASE | | | | 0.0954 | 0.1906 | 0.2860 | 0.2860 | 0.2860 | 0.2860 | 0.2989 | 0.2313 | 0.2960 |
| CIBA | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| COLE | | | | 0.0569 | 0.0569 | 0.0894 | 0.1246 | 0.1246 | 0.0892 | 0.0477 | | |
| DEXTER | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| EVRON | | | | | | | 0.0482 | 0.0964 | 0.0964 | 0.1447 | 0.1447 | 0.1447 |
| HAACK LABS | | | | 0.4556 | 0.9112 | 1.3669 | 1.3669 | 1.3669 | 1.3669 | 1.3669 | 1.3669 | 1.3669 |
| HALSEY | | | | | | | | | | 0.0030 | 0.0178 | 0.0703 |
| HANCE & WHITE | | | | 1.2442 | 2.4983 | 3.7325 | 3.7325 | 3.7325 | 3.7325 | 3.7325 | 3.7248 | 3.7171 |

* For all dosage sizes, shares derived from Period 1 matrices, except for 100 mg, derived from Berck 100 mg matrix.

# NY SETTLEMENT SHARES 25 MG

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| | 1959 | 1960 | 1961 | 1962 | 1963 | 1964 | 1965 | 1966 | 1967 | 1968 | 1969 | 1970 | 1971 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ABBOTT | 0.8067 | 0.5597 | 0.1218 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| AMERICAN HOME PROD | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| AMERICAN PHARM | 5.5222 | 5.5222 | 5.0202 | 5.0202 | 5.0202 | 5.0202 | 5.0202 | 5.0202 | 5.0202 | 5.0202 | 5.0202 | 5.0202 | 5.0202 |
| AMFRE GRANT (EMONS | 8.3067 | 9.1019 | 7.7403 | 6.3583 | 5.6276 | 4.9654 | 3.4402 | 3.8318 | 2.8454 | 1.5959 | 2.0129 | 4.3256 | 7.4664 |
| AYERST LABORATORIE | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BARRE | 0.1319 | 0.2833 | 0.3668 | 0.4275 | 0.4445 | 0.4712 | 0.4585 | 0.5149 | 0.5392 | 0.5032 | 0.5074 | 0.5110 | 0.6700 |
| BOEHRINGER INGELHEI | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BOYLE | 0.1744 | 0.1643 | 0.0778 | 0.0968 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BRECON | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BREWER | 4.2639 | 2.1864 | | | | | | | | | | | |
| BRYANT PHARM | 0.6406 | 0.6406 | 0.5824 | 0.5824 | 0.5824 | 0.5824 | 0.5824 | 0.5824 | 0.3882 | 0.1941 | SJ | SJ | SJ |
| CARNRICK | 0.1205 | 0.0675 | 0.0265 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| CHASE | 0.2860 | 0.2860 | 0.2600 | 0.2600 | 0.2600 | 0.2600 | 0.1733 | 0.0867 | SJ | SJ | SJ | SJ | SJ |
| CIBA | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| COLE | | | | | | | | | | | | | |
| DEXTER | | | | | | | | | | | | | |
| EVRON | 0.1447 | 0.1447 | 0.1315 | 0.1315 | 0.1315 | 0.1315 | 0.1315 | 0.1315 | 0.1315 | 0.1315 | 0.1315 | 0.0976 | 0.0439 |
| HAACK LABS | 1.3669 | 1.3669 | 1.2426 | 1.2426 | 1.2426 | 0.8284 | 0.4142 | SJ | SJ | SJ | SJ | SJ | SJ |
| HALSEY | 0.1450 | 0.2361 | 0.3057 | 0.2850 | 0.2222 | 0.0785 | 0.0459 | 0.1888 | 0.5033 | 0.6206 | 0.4995 | 0.2044 | |
| HANCE & WHITE | 3.7094 | 3.7094 | 3.3722 | 3.3722 | 2.2481 | 1.1241 | | | | | | | |

* For all dosage sizes, shares derived from Perloff 1 matrices, except for 100 mg, derived from Berick 100 mg matrix.

# NY SETTLEMENT SHARES  25 MG

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| | 1947 | 1948 | 1949 | 1950 | 1951 | 1952 | 1953 | 1954 | 1955 | 1956 | 1957 | 1958 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| HARTZ (FERNDALE) | SJ | SJ | SJ | SJ | SJ | | 0.0204 | 0.0429 | 0.0987 | 0.1588 | 0.1654 | 0.1442 |
| IVES LABORATORY | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| KEY | | | | 0.0132 | 0.0182 | 0.0235 | 0.0219 | 0.0202 | 0.0186 | 0.0195 | 0.0200 | 0.0195 |
| KIRKMAN | | | | | | | 0.0356 | 0.0624 | 0.0901 | 0.0870 | 0.0846 | 0.0806 |
| KREMERS URBAN | | 0.1157 | 0.3230 | 0.2917 | 0.2831 | 0.2562 | 0.2396 | 0.2095 | 0.2198 | 0.2367 | 0.2449 | 0.2561 |
| LANNETT | | | 0.0261 | 0.0418 | 0.0498 | 0.0763 | 0.0925 | 0.0983 | 0.0872 | 0.0781 | 0.0782 | 0.0788 |
| LEDERLE | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| LILLY | 51.9114 | 38.5962 | 30.5865 | 24.2387 | 21.2632 | 19.9098 | 19.2982 | 20.1512 | 21.4213 | 23.6121 | 22.9552 | 22.1288 |
| LINCOLN | SJ | SJ | SJ | SJ | 0.1427 | 0.2335 | 0.2484 | 0.1814 | 0.0737 | 0.1624 | 0.2673 | 0.3012 |
| MALLINCKRODT | | | | | | | | 0.0580 | 0.1950 | 0.4159 | 0.6471 | 0.8039 |
| MASSENGILL (SMITHKLIN E BEECHAM) | SJ | 0.5894 | 0.3922 | 0.5144 | 0.7552 | 1.2051 | 1.6247 | 1.9026 | 1.9513 | 1.6288 | 1.4168 | 1.4515 |
| MCNEIL | | | 1.2014 | 1.7298 | 1.4627 | 1.3871 | 1.0058 | 0.8857 | 0.6327 | 0.4941 | 0.3626 | 0.2021 |
| MERCK | | | | 0.2677 | 0.5056 | 0.6886 | 0.7141 | 0.7081 | 0.6556 | 0.6889 | 0.6056 | 0.6078 |
| MEYER | | | 0.1730 | 0.2375 | 0.3119 | 0.3883 | 0.4310 | 0.4292 | 0.3478 | 0.2507 | 0.1728 | 0.1978 |
| NATL DRUG | | | | | | | | | 0.0202 | 0.0457 | 0.0507 | 0.0286 |
| NORWICH-EATON | | | | | | 2.3345 | 2.1536 | 2.2501 | | | | |
| OTIS CLAPP | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| PERSON & COVEY | SJ | SJ | 0.4056 | 0.5470 | 0.7608 | 0.7134 | 0.6696 | 0.6416 | 0.5611 | 0.5161 | 0.5418 | 0.7306 |
| PHYS'S DRUG & SUPPLY | | | | | 0.2673 | 0.5345 | 0.8018 | 0.8018 | 0.8018 | 0.8018 | 0.8018 | 0.8018 |
| PREMO | | 0.5529 | 0.9172 | 1.3399 | 1.3791 | 1.3314 | 1.2337 | 1.3067 | 1.2350 | 1.0605 | 0.9391 | 0.9492 |
| REID PROVIDENT | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | | | | |
| REPUBLIC | | | | | | | | | | 0.0045 | 0.0078 | 0.0177 |
| REXALL | SJ | SJ | 0.6866 | 0.8160 | 0.8598 | 0.8149 | 0.7662 | 0.7493 | 0.7334 | 0.7718 | 0.7940 | 0.8489 |

* For all dosage sizes, shares derived from Perjoff ] matrices, except for 100 mg, derived from Berck 100 mg matrix.

# NY SETTLEMENT SHARES 25 MG

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| | 1959 | 1960 | 1961 | 1962 | 1963 | 1964 | 1965 | 1966 | 1967 | 1968 | 1969 | 1970 | 1971 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| HARTZ (FERNDALE) | 0.1721 | 0.3160 | 0.4377 | 0.3111 | 0.0888 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| IVES LABORATORY | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| KEY | 0.6678 | 0.1607 | 0.1956 | 0.1140 | | 0.0351 | 0.0250 | 0.0222 | 0.0175 | 0.0121 | 0.0081 | 0.0082 | 0.0107 |
| KIRKMAN | 0.0748 | 0.0724 | 0.0719 | 0.0587 | 0.0535 | 0.0130 | | | | | | | |
| KREMERS URBAN | 0.3122 | 0.3752 | 0.3914 | 0.2603 | 0.0727 | 0.2004 | 0.2543 | 0.4277 | 0.4005 | 0.1986 | SJ | SJ | SJ |
| LANNETT | 0.0672 | 0.0699 | 0.0225 | 0.1112 | 0.1505 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| LEDERLE | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| LILLY | 23.2730 | 28.2838 | 31.6982 | 31.7605 | 29.2634 | 28.9453 | 27.5400 | 33.4141 | 36.1415 | 35.1788 | 33.5739 | 34.3265 | 43.4455 |
| LINCOLN | 0.1978 | | | | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| MALLINCKRODT | 0.9859 | 1.1406 | 1.0931 | 0.8738 | 0.5026 | 0.2042 | 0.0477 | | | | | | |
| MASSENGILL (SMITHKL) | 1.5290 | 1.6480 | 1.6531 | 1.3663 | 0.9980 | 0.3050 | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| MCNEIL | 0.0891 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| MERCK | 0.5933 | 0.6430 | 0.4232 | 0.2179 | 0.0406 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| MEYER | 0.2610 | 0.2814 | 0.1223 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| NATL DRUG | | | | | | | | | | | | | |
| NORWICH-EATON | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| OTIS CLAPP | | | | | | | | | | | | | |
| PERSON & COVEY | 0.7025 | 0.4352 | 0.3006 | 0.2111 | 0.1097 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| PHYS'S DRUG & SUPPL | 0.8018 | 0.8018 | 0.7289 | 0.7289 | 0.4859 | 0.2430 | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| PREMO | 0.8314 | 0.9258 | 0.9331 | 1.1117 | 1.3207 | 1.5074 | 0.9974 | 0.4774 | SJ | SJ | SJ | SJ | SJ |
| REID PROVIDENT | | | | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| REPUBLIC | 0.0166 | 0.0264 | 0.0127 | 0.0131 | | | | | | | | | |
| REXALL | 0.7714 | 0.7595 | 0.6006 | 0.5626 | 0.4812 | 0.4756 | 0.4109 | 0.3776 | 0.2955 | 0.1925 | 0.1137 | 0.0456 | SJ |

* For all dosage sizes, shares derived from Petloff 1 matrices, except for 100 mg, derived from Berck 100 mg matrix.

# NY SETTLEMENT SHARES 25 MG

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding.
All shares are expressed as percentages.

| | 1947 | 1948 | 1949 | 1950 | 1951 | 1952 | 1953 | 1954 | 1955 | 1956 | 1957 | 1958 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RITE-AID | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| RORER | SJ | | 0.1158 | 0.1788 | 0.2518 | 0.3160 | 0.3105 | 0.2649 | 0.2269 | 0.2572 | 0.2495 | 0.1907 |
| ROWELL | SJ | SJ | SJ | | 0.0139 | 0.1111 | 0.1976 | 0.2778 | 0.2791 | 0.3265 | 0.3550 | 0.3994 |
| SMITH CARROLL DUNHAM | | 0.3025 | 0.6655 | 0.9983 | 0.9983 | 0.9983 | 0.9983 | 0.9983 | 0.9983 | 0.9983 | 0.9983 | 0.6655 |
| SMITH DORSEY (SANDOZ) | | 1.1668 | 1.1153 | 0.7700 | 0.5289 | 0.3607 | 0.2440 | 0.1390 | 0.0496 | 0.0282 | SJ | SJ |
| SQUIBB | 42.0541 | 34.0036 | 22.9499 | 15.4136 | 11.6720 | 10.2956 | 9.1603 | 8.1500 | 7.3431 | 6.9083 | 6.3399 | 5.7250 |
| STANLEY | SJ | SJ | SJ | SJ | SJ | SJ | SJ | 0.0689 | 0.1234 | 0.1719 | 0.2352 | 0.3797 |
| * SUCCESS | | | | | 0.0354 | 0.0525 | 0.0741 | 0.0727 | 0.0776 | 0.0775 | 0.0698 | 0.0618 |
| TUTAG | | | | | | | | | 0.0249 | 0.1125 | 0.2406 | 0.3165 |
| UPJOHN | SJ | SJ | SJ | 0.0926 | 0.2880 | 0.4583 | 0.5519 | 0.5709 | 0.5609 | 0.5860 | 0.5709 | 0.5539 |
| VITAFORE | | | | | 0.0317 | 0.0302 | 0.0270 | 0.0227 | 0.0184 | 0.0161 | 0.0142 | 0.0118 |
| VITARINE | | | 0.0563 | 0.0869 | 0.1312 | 0.1800 | 0.2207 | 0.2215. | 0.1695 | 0.1629 | 0.1780 | 0.1696 |
| V.C.A. | | | | | | 0.2660 | 0.5320 | 0.7981 | 0.7981 | 0.7981 | 0.7981 | 0.7981 |
| WEBSTER | SJ | SJ | SJ | | | 0.0266 | 0.0532 | 0.0798 | 0.0798 | 0.0532 | 0.0266 | |
| WESTWARD | SJ | SJ | SJ | SJ | 0.5639 | 0.5287 | 0.4963 | 0.4755 | 0.4159 | 0.3826 | 0.4016 | 0.4015 |
| WINTHROP (STERLING) | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| WYETH | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| TOTAL | 100 | 88.3232 | 75.0600 | 67.4022 | 62.8331 | 64.9614 | 62.6448 | 62.6171 | 59.1411 | 59.6028 | 59.8490 | 61.3765 |
| UNALLOCATED | 0 | 11.6768 | 24.9400 | 32.5978 | 37.1669 | 35.0386 | 37.3552 | 37.3829 | 40.8590 | 40.3972 | 40.1510 | 38.6235 |

*For all dosage sizes, shares derived from Perloff 1 matrices, except for 100 mg, derived from Berick 100 mg matrix.

# NY SETTLEMENT SHARES 25 MG

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding.
All shares are expressed as percentages.

| | 1959 | 1960 | 1961 | 1962 | 1963 | 1964 | 1965 | 1966 | 1967 | 1968 | 1969 | 1970 | 1971 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RITE-AID | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| RORER | 0.1319 | 0.1133 | 0.0734 | | | | | | | | | | |
| ROWELL | 0.3636 | 0.3950 | 0.2988 | 0.2792 | 0.1826 | 0.1336 | 0.1023 | 0.0680 | 0.0412 | SJ | SJ | SJ | SJ |
| SMITH, CARROLL DUNH | 0.3328 | | | | | | | | | | | | |
| SMITH DORSEY (SANDO | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| SQUIBB | 6.0585 | 7.0066 | 7.6307 | 7.5925 | 6.6379 | 6.7075 | 6.0069 | 6.4449 | 5.8396 | 4.4386 | 3.3974 | 2.3314 | 1.6789 |
| STANLEY | 0.6233 | 0.8309 | 1.1836 | 1.7613 | 2.2461 | 2.2490 | 1.8158 | 2.1831 | 3.3719 | 3.8106 | 3.4096 | 2.1733 | 1.3506 |
| SUCCESS | 0.0594 | 0.0650 | 0.0768 | 0.0811 | 0.0822 | 0.0847 | 0.0563 | 0.0279 | | | | | |
| TUTAG | 0.3385 | 0.3038 | 0.2851 | 0.1887 | 0.2987 | 0.2984 | 0.2629 | 0.2471 | 0.1669 | 0.1208 | 0.0744 | 0.0477 | 0.0179 |
| UPJOHN | 0.6577 | 0.7006 | 0.5445 | 0.3270 | 0.0450 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| VITAFORE | 0.2042 | 0.2405 | 0.2354 | | 0.1173 | 0.1245 | 0.0960 | 0.1198 | 0.1105 | 0.1074 | 0.0893 | 0.0619 | -0.0405 |
| VITARINE | 0.1574 | 0.1524 | 0.1514 | 0.1236 | 0.1144 | 0.0797 | 0.0584 | 0.0512 | 0.0368 | 0.0256 | 0.0170 | 0.0114 | 0.0075 |
| V.C.A. | 0.7981 | 0.7981 | 0.7255 | 0.7255 | 0.7255 | 0.4636 | 0.2416 | | | | | | |
| WEBSTER | | | | | | | | | | | | | |
| WESTWARD | 0.4151 | 0.3970 | 0.4162 | 0.4749 | 0.4891 | 0.5222 | 0.6011 | 0.6146 | 0.6403 | 0.8950 | 0.7855 | 0.4544 | 0.2075 |
| WINTHROP (STERLING) | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| WYETH | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| TOTAL | 66.5041 | 71.2115 | 69.5441 | 67.2453 | 60.4755 | 56.0739 | 48.7850 | 54.8319 | 56.5090 | 53.0455 | 49.6314 | 49.6092 | 59.9603 |
| UNALLOCATED | 33.4960 | 28.7885 | 30.4559 | 32.7547 | 39.5245 | 43.9261 | 51.2150 | 45.1681 | 43.4910 | 46.9545 | 50.3686 | 50.3908 | 40.0397 |

* For all dosage sizes, shares derived from Period 1 matrices, except for 100 mg, derived from Berck 100 mg matrix.

# NY SETTLEMENT SHARES  100 MG

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| | 1947 | 1948 | 1949 | 1950 | 1951 | 1952 | 1953 | 1954 | 1955 | 1956 | 1957 | 1958 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ABBOTT | SJ | SJ | SJ | SJ | SJ | 1.7241 | 1.5178 | 2.2225 | 1.7655 | 2.0440 | 1.2209 | 0.7258 |
| AMERICAN HOME PRODU | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| AMFRE GRANT (EMONS) | | | | | 2.5192 | 3.1654 | 3.2330 | 3.4935 | 3.1851 | 2.4409 | 2.7895 | 3.7991 |
| AYERST LABORATORIES | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BOEHRINGER INGELHEIM | | | | | | | | | | | | |
| BREON | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| CARNRICK | | | | | | | | | | | | |
| CIBA | | | | | | | | | | | | |
| DEXTER | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| IVES LABORATORY | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| KEY | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| KIRKMAN | | | | | | | | | | | | |
| LEDERLE | | | | | | | 0.0681 | 0.1139 | 0.1678 | 0.1722 | 0.1716 | 0.1642 |
| LINCOLN | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| MCNEIL | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| MERCK | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| OTIS CLAPP | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |

* For all dosage sizes, shares derived from Perloff 1 matrices, except for 100 mg, derived from Berck 100 mg matrix.

# NY SETTLEMENT SHARES  100 MG

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| | 1959 | 1960 | 1961 | 1962 | 1963 | 1964 | 1965 | 1966 | 1967 | 1968 | 1969 | 1970 | 1971 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ABBOTT | 0.0278 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| AMERICAN HOME PROD | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| AMFRE GRANT (EMONS | 4.4324 | 5.1796 | 4.7726 | 4.5574 | 2.7649 | 1.4577 | 1.6700 | 1.1829 | 0.5988 | 0.5925 | 0.3526 | SJ | SJ |
| AYERST LABORATORIE | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BOEHRINGER INGELHEI | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BREON | | | | | | | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| CARNRICK | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| CIBA | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| DEXTER | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| IVES LABORATORY | | | | | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| KEY | | | | | | | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| KIRKMAN | 0.1464 | 0.1507 | 0.1442 | 0.1327 | 0.1169 | 0.1137 | 0.1286 | 0.1219 | 0.0918 | 0.0553 | 0.0423 | 0.0349 | 0.0230 |
| LEDERLE | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| LINCOLN | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| MCNEIL | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| MERCK | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| OTIS CLAPP | SJ | SJ | SJ | SJ | SJ | | | | | | | | |

* For all dosage sizes, shares derived from Payoff 1 matrices, except for 100 mg, derived from Berck 100 mg matrix.

# NY SETTLEMENT SHARES  100 MG

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| | 1947 | 1948 | 1949 | 1950 | 1951 | 1952 | 1953 | 1954 | 1955 | 1956 | 1957 | 1958 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| REID PROVIDENT | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| REPUBLIC | | | | | | | | | | | | |
| RITE-AID | SJ | SJ | SJ | SJ | SJ | | | | | | | |
| ROWELL | SJ | SJ | SJ | SJ | SJ | 0.5982 | 0.3866 | 0.5547 | 0.2289 | 0.2628 | 0.0468 | 0.1065 |
| SMITH DORSEY (SANDOZ) | | | | | SJ | SJ | | | | SJ | SJ | SJ |
| SQUIBB | SJ | SJ | SJ | SJ | 81.2354 | 84.4186 | 82.2217 | 84.6684 | 78.6571 | 65.6801 | 45.7075 | 32.9922 |
| STANLEY | SJ | SJ | SJ | SJ | SJ | | | | | | | |
| SUCCESS | | | | | | | | | 0.0347 | 0.0719 | 0.1366 | 0.1181 |
| * SUMMERS LABS | | | | | | | | | | | | |
| UP-JOHN | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| VITARINE | | | | | | | 0.6976 | 1.4025 | 1.7019 | 0.9752 | | 7.5417 |
| WINTHROP | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| WYETH | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| TOTAL | | | | | 83.7546 | 89.9063 | 88.1048 | 92.5355 | 85.7410 | 71.6470 | 50.1532 | 45.4477 |
| UNALLOCATED | | | | | 16.2454 | 10.0937 | 11.8952 | 7.4645 | 14.2590 | 28.3530 | 49.8468 | 54.5523 |

* For all dosage sizes, shares derived from Pellof 1 matrices, except for 100 mg, derived from Berck 100 mg matrix.

# NY SETTLEMENT SHARES 100 MG

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| | 1959 | 1960 | 1961 | 1962 | 1963 | 1964 | 1965 | 1966 | 1967 | 1968 | 1969 | 1970 | 1971 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| REID PROVIDENT | | | | | | | | | | | | | |
| REPUBLIC | 0.0101 | 0.0118 | 0.0121 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| RITE-AID | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| ROWELL | 0.1212 | 0.0706 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| SMITH DORSEY (SANDO | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| SQUIBB | 32.3952 | 32.9317 | 30.7855 | 32.5324 | 34.0914 | 38.2430 | 43.2699 | 45.5766 | 48.3306 | 46.2434 | 49.6494 | 35.8243 | 18.2246 |
| * STANLEY | 0.3671 | 1.0702 | 2.1805 | 3.4152 | 4.2859 | 4.6647 | 5.0100 | 6.0055 | 9.7804 | 11.6532 | 12.2267 | 9.6098 | 6.1397 |
| SUCCESS | 0.1096 | 0.1044 | 0.1011 | 0.0654 | 0.0348 | | | | | | | | |
| SUMMERS LABS | 17.1532 | 30.0007 | 30.8712 | 33.4746 | 23.4888 | 12.3830 | | | | | | | |
| UPJOHN | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| VITARINE | | | | | | | | | | | | | |
| WINTHROP | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| WYETH | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| TOTAL | 54.7630 | 69.5196 | 68.8671 | 74.1777 | 64.7848 | 56.8622 | 50.0785 | 52.8869 | 58.8016 | 58.5443 | 62.2710 | 45.4690 | 24.3873 |
| UNALLOCATED | 45.2370 | 30.4804 | 31.1329 | 25.8223 | 35.2152 | 43.1378 | 49.9215 | 47.1131 | 41.1984 | 41.4557 | 37.7290 | 54.5310 | 75.6127 |

* For all dosage sizes, shares derived from Perloff 1 matrices, except for 100 mg, derived from Berck 100 mg matrix.



# NY SETTLEMENT SHARES   5-25 MG BLEND

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding.
All shares are expressed as percentages.

| | 1947 | 1948 | 1949 | 1950 | 1951 | 1952 | 1953 | 1954 | 1955 | 1956 | 1957 | 1958 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ABBOTT | 4.3680 | 5.1003 | 4.1268 | 3.3375 | 2.6835 | 2.4911 | 2.0255 | 1.6097 | 1.2711 | 1.2274 | 1.1637 | 1.0962 |
| ALLPUTTER (APPROVED) | | | | | | | | | | | | |
| AMERICAN HOME PRODU | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| AMERICAN PHARM | 0.1120 | 1.4764 | 3.2324 | 4.9480 | 4.9480 | 4.9480 | 4.9480 | 4.9480 | 4.9480 | 4.9480 | 4.9480 | 4.9480 |
| AMES CO. | | | | | | | 0.0294 | 0.0586 | 0.0080 | 0.0880 | 0.0880 | 0.0880 |
| AMFRE GRANT (EMONS) | | 0.8505 | 2.5276 | 3.7514 | 3.7590 | 3.7893 | 3.6594 | 3.7518 | 3.4422 | 2.7893 | 2.6289 | 3.4468 |
| AYERST LABORATORIES | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BARRE | | | | | | | | | | | | |
| BOEHRINGER INGELHEIM | | SJ | | | | | | | | | | 0.0395 |
| BOYLE | SJ | 0.1754 | 0.3240 | 0.3752 | 0.3152 | 0.2661 | 0.2173 | 0.1912 | 0.1711 | 0.1594 | 0.1328 | 0.1161 |
| BREON | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BREWER | | | | | | | | | | | 1.3759 | 2.5307 |
| BRYANT PHARM | | | | | | | | | | 0.1782 | 0.3565 | 0.5347 |
| BURROUGHS | 4.0657 | 2.8111 | 1.7760 | 0.9756 | 0.6867 | 0.5184 | 0.4062 | 0.3247 | 0.2594 | 0.2109 | 0.1495 | 0.0842 |
| CARNRICK | SJ | SJ | SJ | 0.9935 | 1.0729 | 0.9538 | 0.8164 | 0.6064 | 0.4315 | 0.2980 | 0.2382 | 0.1826 |
| CHASE | | 0.0400 | 0.0734 | 0.1452 | 0.6969 | 1.2140 | 1.1675 | 0.7390 | 0.2596 | 0.2596 | 0.2596 | 0.2596 |
| CIBA | 0.0190 | 0.0083 | 0.0040 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| COLE | | | | | 0.0441 | 0.0717 | 0.1008 | 0.1008 | 0.0795 | 0.0547 | 0.0261 | 0.0261 |
| DEXTER | | | | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| DRUG PRODS. | SJ | SJ | SJ | 0.0880 | 0.0880 | 0.0880 | 0.0880 | 0.0800 | 0.0880 | 0.0586 | 0.0294 | |
| EVRON | 0.1120 | 0.1040 | 0.1027 | 0.0338 | 0.0506 | 0.0506 | 0.0795 | 0.1085 | 0.1374 | 0.1374 | 0.1374 | 0.1374 |
| HAACK LABS | | | 0.0211 | 0.3731 | 0.7464 | 1.1195 | 1.1195 | 1.1195 | 1.1195 | 1.1374 | 1.1195 | 1.1195 |
| HALSEY | | | | | | | | | | 0.0048 | 0.0107 | 0.0421 |
| HANCE & WHITE | | | | 1.2048 | 2.4097 | 3.6144 | 3.6144 | 3.6144 | 3.6144 | 3.6144 | 3.4916 | 3.3689 |
| HARVEY | | | | 0.0294 | 0.0586 | 0.0880 | 0.0880 | 0.0880 | 0.0880 | 0.0880 | 0.0880 | 0.0880 |

* For all dosage sizes, shares derived from Perloff 1 matrices, except for 100 mg, derived from Berck 100 mg matrix.

# NY SETTLEMENT SHARES   5-25 MG BLEND

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| | 1959 | 1960 | 1961 | 1962 | 1963 | 1964 | 1965 | 1966 | 1967 | 1968 | 1969 | 1970 | 1971 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ABBOTT | 1.0061 | 0.8272 | 0.4022 | 0.1570 | 0.0454 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| ALLPUTTER (APPROVE | | 0.0253 | 0.1272 | 0.2318 | 0.2667 | 0.2408 | 0.2665 | 0.3039 | 0.2780 | 0.2966 | 0.2455 | 0.3179 | 0.3508 |
| AMERICAN HOME PROD | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| AMERICAN PHARM | 4.9480 | 4.9480 | 4.4982 | 4.4982 | 4.4982 | 4.4982 | 4.4982 | 4.4982 | 4.4982 | 4.4982 | 4.4982 | 4.4982 | 4.4982 |
| AMES CO. | 0.0880 | 0.0880 | 0.0600 | 0.0800 | 0.0600 | 0.0800 | 0.0800 | 0.0800 | 0.0600 | 0.0533 | 0.0267 | | |
| AMFRE GRANT (EMONS | 5.0108 | 5.4797 | 4.6644 | 3.8535 | 3.4156 | 3.0091 | 2.0872 | 2.3220 | 1.7238 | 0.9662 | 1.2170 | 2.6084 | 4.4908 |
| AYERST LABORATORIE | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BARRE | 0.1000 | 0.2086 | 0.2590 | 0.2985 | 0.3088 | 0.3275 | 0.3193 | 0.3539 | 0.3675 | 0.3482 | 0.3537 | 0.3608 | 0.4613 |
| BOEHRINGER INGELHEI | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BOYLE | 0.1070 | 0.1020 | 0.0501 | 0.0052 | | | | | | | | | |
| BREON | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BREWER | 3.2073 | 1.7014 | 0.2802 | 0.3020 | 0.3034 | | | | | | | | |
| BRYANT PHARM | 0.5347 | 0.5347 | 0.4861 | 0.4961 | 0.4961 | 0.4961 | 0.4961 | 0.4861 | 0.3241 | 0.1620 | | | |
| BURROUGHS | 0.0263 | | | | | | | | | | | | |
| CARNRICK | 0.1298 | 0.0739 | 0.0270 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| CHASE | 0.2596 | 0.2596 | 0.2360 | 0.2360 | 0.2360 | 0.2360 | 0.1573 | 0.0787 | SJ | SJ | SJ | SJ | SJ |
| CIBA | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| COLE | 0.0261 | 0.0261 | 0.0237 | 0.0161 | 0.0084 | | | | | | | | |
| DEXTER DRUG PRODS. | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| EVRON | 0.1374 | 0.1374 | 0.1249 | 0.1249 | 0.1249 | 0.1249 | 0.1249 | 0.1249 | 0.1249 | 0.1249 | 0.1249 | 0.0833 | 0.0416 |
| HAACK LABS | 1.1195 | 1.1195 | 1.0177 | 1.0177 | 1.0177 | 0.6785 | 0.3392 | 0.1133 | 0.3020 | 0.3723 | 0.2943 | 0.1226 | |
| HALSEY | 0.0870 | 0.1417 | 0.1834 | 0.1710 | 0.1333 | 0.0471 | 0.0275 | | | | | | |
| HANCE & WHITE | 3.2460 | 3.2460 | 2.9509 | 2.9509 | 1.9673 | 0.9836 | | | | | | | |
| HARVEY | 0.0680 | 0.0880 | 0.0800 | 0.0800 | 0.0800 | 0.0800 | 0.0800 | 0.0800 | 0.0600 | 0.0800 | 0.0800 | 0.0800 | 0.0800 |

* For all dosage sizes, shares derived from Perloff matrices, except for 100 mg, derived from Berck 100 mg matrix.

# NY SETTLEMENT SHARES     5-25 MG BLEND

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| | 1947 | 1948 | 1949 | 1950 | 1951 | 1952 | 1953 | 1954 | 1955 | 1956 | 1957 | 1958 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| * HARTZ (FERNDALE) | SJ | SJ | SJ | SJ | SJ | | 0.0045 | 0.0091 | 0.0191 | 0.0301 | 0.0300 | 0.0255 |
| IVES LABORATORY | SJ | SJ | SJ | 0.0118 | 0.0168 | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| KEY | | | | | | 0.0219 | 0.0208 | 0.0201 | 0.0197 | 0.0208 | 0.0210 | 0.0206 |
| KIRKMAN | | | | | | | 0.0330 | 0.0587 | 0.0844 | 0.0823 | 0.0790 | 0.0757 |
| KREMERS URBAN | | 0.0762 | 0.2015 | 0.2080 | 0.2028 | 0.1635 | 0.1676 | 0.1416 | 0.1438 | 0.1538 | 0.1571 | 0.1639 |
| LANNETT | | 0.0243 | 0.0562 | 0.0767 | 0.0845 | 0.0946 | 0.0965 | 0.0935 | 0.0787 | 0.0671 | 0.0589 | 0.0678 |
| LEDERLE | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| LILLY | 61.6133 | 51.8538 | 42.9438 | 32.3291 | 27.4604 | 24.8379 | 23.9393 | 23.4594 | 24.2018 | 25.3403 | 25.6177 | 25.7252 |
| LINCOLN | SJ | SJ | SJ | 0.0187 | 0.1230 | 0.1971 | 0.2211 | 0.1879 | 0.1222 | 0.1725 | 0.2413 | 0.2836 |
| MALLINCKRODT | 0.1259 | 0.2141 | 0.4398 | 0.5004 | 0.6761 | 0.9973 | 1.3056 | 0.0348 | 0.1170 | 0.2496 | 0.3883 | 0.4624 |
| MASSENGILL (SMITHKLIN | 0.2690 | 0.5272 | 0.7514 | 1.0894 | 0.9415 | 0.8975 | 0.6752 | 1.4979 | 1.5897 | 1.3988 | 1.2752 | 1.2837 |
| MCKESSON LABS | 0.5802 | 1.0110 | 1.2351 | 1.2249 | 1.2375 | 1.2003 | 1.1792 | | | | | |
| MCNEIL | | | | | | | | 0.5665 | 0.4225 | 0.3394 | 0.2511 | 0.1455 |
| MERCK | | | | | | | | 1.1186 | 1.0646 | 1.0350 | 0.9479 | 0.9172 |
| MERRELL | | | | 0.1805 | 0.2868 | 0.2530 | 0.1232 | | | | | |
| MEYER | | | 0.0869 | 0.1452 | 0.1944 | 0.2532 | 0.2932 | 0.2974 | 0.2415 | 0.1752 | 0.1247 | 0.1355 |
| NATL DRUG | | | | | | | | | 0.0121 | 0.0274 | 0.0304 | 0.0171 |
| NORWICH-EATON | | | | | | 1.4007 | 1.2922 | 1.3500 | | | | |
| OTIS CLAPP | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| PERSON & COVEY | | | 0.2454 | 0.3947 | 0.5590 | 0.5270 | 0.4935 | 0.4821 | 0.4285 | 0.3966 | 0.4135 | 0.5277 |
| PHYS'S DRUG & SUPPLY | | | | 0.1059 | 0.3722 | 0.6386 | 0.7989 | 0.7999 | 0.7989 | 0.7989 | 0.7989 | 0.7989 |
| PREMO | 0.5557 | 0.8847 | 1.1465 | 1.3399 | 1.3791 | 1.3314 | 1.2337 | 1.3067 | 1.2350 | 1.0605 | 0.9391 | 0.9492 |
| REID PROVIDENT | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | | | | |
| REPUBLIC | | | | | | | | | | 0.0040 | 0.0073 | 0.0150 |
| REXALL | 0.3887 | 0.6990 | 1.0763 | 1.0281 | 0.9704 | 0.8965 | 0.8518 | 0.8159 | 0.8022 | 0.8250 | 0.8511 | 0.9026 |

* For all dosage sizes, shares derived from Peloff 1 matrices, except for 100 mg, derived from Berck 100 mg matrix.

# NY SETTLEMENT SHARES  5-25 MG BLEND

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| | 1959 | 1960 | 1961 | 1962 | 1963 | 1964 | 1965 | 1966 | 1967 | 1968 | 1969 | 1970 | 1971 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| HARTZ (FERNDALE) | 0.0277 | 0.0447 | 0.0478 | 0.0284 | 0.0361 | 0.0447 | 0.0442 | 0.0142 | | | | | |
| IVES LABORATORY | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| KEY | 0.0491 | 0.1051 | 0.1241 | 0.0734 | 0.0025 | 0.0009 | 0.0407 | 0.0363 | 0.0260 | 0.6172 | 0.0119 | 0.0126 | 0.0148 |
| KIRKMAN | 0.0702 | 0.0744 | 0.0780 | 0.0640 | 0.0571 | 0.0467 | | | | | | | |
| KREMERS URBAN | 0.1971 | 0.2360 | 0.2446 | 0.1628 | 0.0458 | 0.0078 | | | | | | | |
| LANNETT | 0.0550 | 0.0856 | 0.0735 | 0.3545 | 0.1025 | 0.2227 | 0.2975 | 0.3453 | 0.3007 | 0.1614 | | | |
| LEDERLE | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| LILLY | 27.4205 | 33.1077 | 35.6790 | 37.6061 | 35.5752 | 36.4820 | 36.0692 | 41.4006 | 43.2033 | 43.9930 | 43.9916 | 46.7641 | 54.5973 |
| LINCOLN | 0.2232 | 0.1029 | 0.1037 | 0.1119 | 0.0943 | 0.0299 | 0.0286 | | | | | | |
| MALLINCKRODT | 0.5916 | 0.8043 | 0.6558 | 0.5243 | 0.3015 | 0.1225 | 0.4328 | 0.3950 | 0.2587 | 0.1366 | 0.0406 | | |
| MASSENGILL (SMITH) | 1.3328 | 1.4994 | 1.5238 | 1.3330 | 1.0330 | 0.6824 | 2.5699 | 2.5999 | 1.7133 | 0.0566 | | | |
| MCKESSON LABS | 0.9423 | | | | | | | | | | | | |
| MCNEIL | 0.0684 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| MERCK | 0.6910 | 0.8943 | 0.5534 | 0.2401 | 0.0244 | | | | | | | | |
| MERRELL | | | | | | | | | | | | | |
| MEYER | 0.1650 | 0.1609 | 0.0784 | | | | | | | | | | |
| NAT'L DRUG | | | | | | | | | | | | | |
| NORWICH-EATON | SJ | | | | | SJ | SJ | | | SJ | | | |
| OTIS CLAPP | 0.5118 | 0.3477 | 0.2492 | 0.1949 | 0.4209 | 0.0368 | 0.0143 | SJ | SJ | SJ | SJ | SJ | SJ |
| PERSON & COVEY | 0.7969 | 0.7209 | 0.7263 | 0.7263 | 0.5005 | 0.3394 | 0.0963 | 0.6593 | 0.4798 | 0.8671 | 0.2923 | 0.2695 | 0.2351 |
| PHYS'S DRUG & SUPPL | 0.8314 | 0.6256 | 0.6331 | 1.1117 | 1.3207 | 1.5074 | 1.1969 | | | | | | |
| PREMO | | | | | | | | | | | | | |
| REID PROVIDENT | 0.1441 | 0.0199 | 0.6093 | 0.6097 | 0.0596 | 0.9508 | 0.9128 | 0.8626 | 0.7668 | 0.6359 | 0.4320 | 0.2270 | 0.0368 |
| REPUBLIC | | | | | | | | | | | | | |
| REXALL | 0.8654 | 1.0451 | 0.8901 | 0.8737 | | | | | | | | | |

* Case # designates Stryes, derived from Period 1 markets, except for 100 mg, derived from Block 100 mg matrix.

# NY SETTLEMENT SHARES    5-25 MG BLEND

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| | 1947 | 1948 | 1949 | 1950 | 1951 | 1952 | 1953 | 1954 | 1955 | 1956 | 1957 | 1958 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RITE-AID | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| RORER | 0.2699 | 0.2258 | 0.2486 | 0.2454 | 0.3010 | 0.3776 | 0.4318 | 0.4297 | 0.4044 | 0.4208 | 0.3609 | 0.3069 |
| ROWELL | SJ | SJ | SJ | 0.0010 | 0.0200 | 0.1090 | 0.1851 | 0.2511 | 0.2466 | 0.2886 | 0.3156 | 0.3639 |
| SMITH, CARROLL, DUNHA | 0.1120 | 0.3510 | 0.6664 | 0.9640 | 0.9640 | 0.9640 | 0.9640 | 0.9640 | 0.9640 | 0.9640 | 0.9640 | 0.6427 |
| SMITH DORSEY (SANDOZ | 0.2785 | 0.6609 | 0.6613 | 0.5119 | 0.3589 | 0.2558 | 0.1738 | 0.0932 | 0.0298 | 0.0169 | SJ | SJ |
| SQUIBB | 20.7245 | 20.0358 | 15.9548 | 12.3982 | 9.9570 | 9.1212 | 8.5095 | 7.9217 | 7.4467 | 7.3068 | 6.9438 | 6.7353 |
| STANLEY | SJ | SJ | SJ | SJ | SJ | SJ | 0.0256 | 0.0785 | 0.1364 | 0.1823 | 0.2636 | 0.4261 |
| STRASENBURG | 0.0125 | 0.0215 | 0.0205 | 0.0157 | 0.0121 | -0.0076 | 0.0029 | | | | | |
| * SUCCESS | | 0.1105 | 0.2025 | | 0.0382 | 0.0672 | 0.0968 | 0.0947 | 0.0970 | 0.0943 | 0.0886 | 0.0817 |
| TESTAGAR | | | | 0.2431 | 0.2431 | 0.2431 | 0.2431 | 0.2431 | 0.2431 | 0.2431 | 0.2431 | 0.2431 |
| TUTAG | | | | | | | | | 0.0149 | 0.0900 | 0.2077 | 0.2950 |
| ULMER | | | 0.0050 | 0.0083 | 0.0119 | 0.0128 | 0.0103 | 0.0069 | 0.0056 | 0.0083 | 0.0106 | 0.0108 |
| UPJOHN | 5.7583 | 3.9943 | 2.5466 | 1.5787 | 1.3996 | 1.3653 | 1.3474 | 1.2860 | 1.2192 | 1.2186 | 1.1765 | 1.1763 |
| VITAFORE | 0.0218 | 0.0331 | | | 0.0192 | 0.0184 | 0.0166 | 0.0140 | 0.0114 | 0.0100 | 0.0069 | 0.0075 |
| VITARINE | | | 0.0650 | 0.0810 | 0.1113 | 0.1540 | 0.1661 | 0.1922 | 0.1724 | 0.1679 | 0.1614 | 0.1547 |
| V.C.A. | | | | | 0.1102 | 0.3799 | 0.6497 | 0.8093 | 0.8093 | 0.8093 | 0.8093 | 0.8093 |
| WEBSTER | | | | | | 0.0270 | 0.0539 | 0.0810 | 0.0700 | 0.0429 | 0.0160 | |
| WESTWARD | SJ | SJ | 0.5848 | 0.7511 | 0.8609 | 0.8218 | 0.7652 | 0.7805 | 0.7175 | 0.6724 | 0.6918 | 0.6666 |
| WINTHROP (STERLING) | 0.1120 | 0.0988 | 0.0932 | 0.0766 | 0.0766 | 0.0766 | 0.0766 | 0.0766 | SJ | SJ | SJ | SJ |
| WYETH | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| TOTAL | 99.4990 | 91.3780 | 81.4214 | 71.7838 | 66.7481 | 66.9427 | 64.8275 | 62.9521 | 59.9693 | 59.9493 | 60.7575 | 62.5678 |
| UNALLOCATED | 0.5010 | 8.6220 | 18.5786 | 28.2162 | 33.2519 | 33.0573 | 35.1725 | 37.0479 | 40.0307 | 40.0508 | 39.2425 | 37.4322 |

* For all dosage sizes, shares derived from Period 1 matrices, except for 100 mg, derived from Berck 100 mg matrix.

# NY SETTLEMENT SHARES    5-25 MG BLEND

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding.
All shares are expressed as percentages.

| | 1959 | 1960 | 1961 | 1962 | 1963 | 1964 | 1965 | 1966 | 1967 | 1968 | 1969 | 1970 | 1971 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RITE-AID | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| RORER | 0.2504 | 0.3234 | 0.3166 | 0.1972 | 0.0666 | | | | | | | | |
| ROWELL | 0.3597 | 0.4114 | 0.3426 | 0.3187 | 0.2399 | 0.1983 | 0.1691 | 0.1254 | 0.0729 | 0.0207 | 0.0003 | SJ | SJ |
| SMITH, CARROLL, DUNH | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| SMITH DORSEY (SANDO | 0.3213 | | | | | | | | | | | | |
| SQUIBB | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| STANLEY | 7.0190 | 8.0901 | 8.3198 | 8.4622 | 7.9438 | 7.9632 | 7.1929 | 7.0021 | 5.8430 | 4.4341 | 3.2888 | 2.2046 | 1.3640 |
| STRASENBURG | 0.7170 | 1.0351 | 1.3778 | 1.9557 | 2.4209 | 2.5921 | 2.2663 | 2.5942 | 3.8740 | 4.6425 | 4.2608 | 2.8530 | 1.6039 |
| * SUCCESS | 0.0818 | 0.0880 | 0.0928 | 0.0932 | 0.0922 | 0.0931 | 0.0616 | 0.0302 | 0.0737 | | | | |
| TESTAGAR | 0.2431 | 0.2431 | 0.2210 | 0.2210 | 0.2210 | 0.2210 | 0.2210 | 0.1473 | 0.1814 | 0.1429 | 0.1218 | 0.0943 | 0.0466 |
| TUTAG | 0.3194 | 0.2983 | 0.2715 | 0.2802 | 0.2790 | 0.2940 | 0.2668 | 0.2368 | | | | | |
| ULMER | 0.0078 | 0.0070 | 0.0065 | 0.0049 | 0.0021 | | | | | | | | |
| UPJOHN | 1.2106 | 1.3001 | 1.1408 | 0.9344 | 0.7898 | 0.7177 | 0.6278 | 0.5725 | 0.6047 | 0.6344 | 0.7726 | 0.6810 | 0.4170 |
| VITAFORE | 0.0410 | 0.0579 | 0.0510 | 0.0682 | 0.0718 | 0.0760 | 0.0589 | 0.0731 | 0.0674 | 0.0653 | 0.0542 | 0.0376 | 0.0246 |
| VITARINE | 0.1434 | 0.1513 | 0.1502 | 0.1315 | 0.1171 | 0.0975 | 0.0848 | 0.0752 | 0.0520 | 0.0346 | 0.0237 | 0.0168 | 0.0099 |
| V.C.A. | 0.8093 | 0.8093 | 0.7357 | 0.7357 | 0.7357 | 0.5906 | 0.3454 | 0.1001 | | | | | |
| WEBSTER | | | | | | | | | | | | | |
| WESTWARD | 0.6703 | 0.6175 | 0.6504 | 0.6958 | 0.6902 | 0.6847 | 0.7676 | 0.7834 | 0.8409 | 0.9916 | 0.9735 | 0.8415 | 0.6269 |
| WINTHROP (STERLING) | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| WYETH | SJ | SJ | SJ | SJ | SJ | SJ | SJ | 0.0836 | 0.1671 | 0.2507 | 0.2507 | 0.2507 | 0.2507 |
| TOTAL | 66.5186 | 73.5208 | 72.8328 | 73.7999 | 69.4449 | 67.3124 | 62.1906 | 66.7691 | 66.3840 | 64.3463 | 61.3719 | 62.3239 | 69.1523 |
| UNALLOCATED | 33.4814 | 26.4792 | 27.1672 | 26.2001 | 30.5551 | 32.6876 | 37.8094 | 33.2309 | 33.6160 | 35.6537 | 38.6281 | 37.6761 | 30.8477 |

* For all dosage sizes, shares derived from Perloff 1 matrices, except for 100 mg, derived from Berck 100 mg matrix.

# NY SETTLEMENT SHARES  5-25-100 MG BLEND

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| | 1947 | 1948 | 1949 | 1950 | 1951 | 1952 | 1953 | 1954 | 1955 | 1956 | 1957 | 1958 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ABBOTT | 4.3680 | 5.1003 | 4.5395 | 3.6713 | 2.8491 | 2.4426 | 1.9612 | 1.5874 | 1.2527 | 1.2232 | 1.1310 | 1.0484 |
| ALL PUTTER (APPROVED) | | | | | | | | | | | | |
| AMERICAN HOME PRODU | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| AMERICAN PHARM | 0.1120 | 1.4764 | 3.2324 | 4.9480 | 4.8890 | 4.7900 | 4.6759 | 4.6264 | 4.6016 | 4.6016 | 4.6016 | 4.6016 |
| AMES CO. | | | | | | | 0.0277 | 0.0549 | 0.0818 | 0.0818 | 0.0818 | 0.0818 |
| AMFRE GRANT (EMONS) | SJ | 0.8505 | 2.5276 | 3.7514 | 3.7279 | 3.7098 | 3.5310 | 3.6018 | 3.2938 | 2.6650 | 2.5260 | 3.3161 |
| AYERST LABORATORIES | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BARRE | | SJ | | | | | | | | | | |
| BOEHRINGER INGELHEIM | SJ | SJ | | | | | | | | | | |
| BOYLE | SJ | 0.1754 | 0.3240 | 0.3752 | 0.3114 | 0.2576 | 0.2054 | 0.1788 | 0.1591 | 0.1483 | 0.1235 | 0.1079 |
| BREON | | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BREWER | | | | | | | | | | | 1.2796 | 2.3535 |
| BRYANT PHARM | | | | | | | | | | 0.1658 | 0.3315 | 0.4973 |
| BURROUGHS | 4.0657 | 2.8111 | 1.7760 | 0.9756 | 0.6782 | 0.5016 | 0.3839 | 0.3036 | 0.2412 | 0.1961 | 0.1389 | 0.0782 |
| CAFNRICK | SJ | SJ | SJ | 0.9935 | 1.0601 | 0.9233 | 0.7715 | 0.5669 | 0.4014 | 0.2771 | 0.2215 | 0.1698 |
| CHASE | | 0.0400 | 0.0734 | 0.1452 | 0.6082 | 1.1747 | 1.1033 | 0.6910 | 0.2415 | 0.2415 | 0.2415 | 0.2415 |
| CIBA | 0.0190 | 0.0083 | 0.0040 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| COLE | | | | | 0.0436 | 0.0694 | 0.0953 | 0.0943 | 0.0740 | 0.0508 | 0.0242 | 0.0242 |
| DEXTER | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| DRUG PRODS. | 0.1120 | 0.1040 | 0.1027 | 0.0850 | 0.0869 | 0.0851 | 0.0832 | 0.0823 | 0.0818 | 0.0546 | 0.0273 | |
| EVRON | | | 0.0211 | 0.0338 | 0.0499 | 0.0490 | 0.0751 | 0.1014 | 0.1277 | 0.1277 | 0.1277 | 0.1277 |
| HAACK LABS | | | | 0.3731 | 0.7374 | 1.0838 | 1.0580 | 1.0468 | 1.0412 | 1.0412 | 1.0412 | 1.0412 |
| HALSEY | | | | | | | | | | 0.0045 | 0.0099 | 0.0393 |
| HANCE & WHITE | | | | 1.2048 | 2.3807 | 3.4988 | 3.4156 | 3.3795 | 3.3614 | 3.3614 | 3.2472 | 3.1330 |
| HARVEY | | | | 0.0294 | 0.0580 | 0.0851 | 0.0832 | 0.0823 | 0.0818 | 0.0818 | 0.0818 | 0.0818 |

23

* Berck/Perloff did not calculate a 5-25-100 mg blend, thus blend derived from Berck/Perloff data using San Francisco 5-25-100 mg blend calculation.

# NY SETTLEMENT SHARES  5-25-100 MG BLEND

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| | 1959 | 1960 | 1961 | 1962 | 1963 | 1964 | 1965 | 1966 | 1967 | 1968 | 1969 | 1970 | 1971 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ABBOTT | 0.9368 | 0.7693 | 0.3740 | 0.1460 | 0.0423 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| ALLPUTTER (APPROVE | SJ | 0.0110 | 0.0531 | 0.0949 | 0.1350 | 0.1211 | 0.1333 | 0.1520 | 0.1392 | 0.1485 | 0.1226 | 0.1586 | 0.1754 |
| AMERICAN HOME PROD | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| AMERICAN PHARM | 4.6016 | 4.6016 | 4.1833 | 4.1833 | 4.1833 | 4.1833 | 4.1833 | 4.1833 | 4.1833 | 4.1833 | 4.1833 | 4.1833 | 4.1833 |
| AMES CO. | 0.0818 | 0.0818 | 0.0744 | 0.0744 | 0.0744 | 0.0744 | 0.0744 | 0.0744 | 0.0744 | 0.0496 | 0.0248 | | |
| AMFRE GRANT (EMONS | 4.7890 | 5.2468 | 4.4906 | 3.7296 | 3.2650 | 2.8451 | 1.9946 | 2.1974 | 1.6223 | 0.9176 | 1.1430 | 2.4258 | 4.1765 |
| AYERST LABORATORIE | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BARRE | 0.0931 | 0.1939 | 0.2403 | 0.2776 | 0.2872 | 0.3045 | 0.2970 | 0.3291 | 0.3418 | 0.3238 | 0.3209 | 0.3356 | 0.4290 |
| BOEHRINGER INGELHEI | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BOYLE | 0.0396 | 0.0948 | 0.0466 | 0.0048 | | | | | | | | | |
| BREON | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BREWER | 2.9828 | 1.5822 | 0.2606 | 0.2809 | 0.2822 | | | | | | | | |
| BRYANT PHARM | 0.4973 | 0.4973 | 0.4521 | 0.4521 | 0.4521 | 0.4521 | 0.4521 | 0.4521 | 0.3014 | 0.1507 | | | |
| BURROUGHS | 0.0245 | | | | | | | | | | | | |
| CARNRICK | 0.1207 | 0.0688 | 0.0251 | | | | | | | | | | |
| CHASE | 0.2415 | 0.2415 | 0.2195 | 0.2195 | 0.2195 | 0.2195 | 0.1463 | 0.0732 | | | | | |
| CIBA | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| COLE | 0.0342 | 0.0242 | 0.0220 | 0.0150 | 0.0078 | | | | | | | | |
| DEXTER DRUG PRODS. | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| EVRON | 0.1277 | 0.1277 | 0.1161 | 0.1161 | 0.1161 | 0.1161 | 0.1161 | 0.1161 | 0.1161 | 0.1161 | 0.1161 | 0.0774 | 0.0387 |
| HAACK LABS | 1.0412 | 1.0412 | 0.9465 | 0.9465 | 0.9465 | 0.6310 | 0.3155 | | | | | | |
| HALSEY | 0.0810 | 0.1317 | 0.1706 | 0.1590 | 0.1240 | 0.0438 | 0.0256 | 0.1053 | 0.2008 | 0.3463 | 0.2737 | 0.1140 | |
| HANCE & WHITE | 3.0188 | 3.0188 | 2.7444 | 2.7444 | 1.8296 | 0.9148 | | | | | | | |
| HARVEY | 0.0818 | 0.0818 | 0.0744 | 0.0744 | 0.0744 | 0.0744 | 0.0744 | 0.0744 | 0.0744 | 0.0744 | 0.0744 | 0.0744 | 0.0744 |

* Berck/Petoff did not calculate a 5-25-100 mg blend, thus blend derived from Berck/Petoff data using San Francisco 5-25-100 mg blend calculation.

# NY SETTLEMENT SHARES    5-25-100 MG BLEND

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding.
All shares are expressed as percentages.

| | 1947 | 1948 | 1949 | 1950 | 1951 | 1952 | 1953 | 1954 | 1955 | 1956 | 1957 | 1958 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| * HARTZ (FERNDALE) | SJ | SJ | SJ | SJ | SJ | SJ | 0.0116 | 0.0241 | 0.0551 | 0.6686 | 0.0923 | 0.0805 |
| IVES LABORATORY | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| KEY | | | | 0.0118 | 0.0166 | 0.0212 | 0.0197 | 0.0188 | 0.0184 | 0.0194 | 0.0196 | 0.0191 |
| KIRKMAN | | | | | | | 0.0333 | 0.0592 | 0.0853 | 0.0834 | 0.0903 | 0.0770 |
| KREMERS URBAN | | 0.0762 | 0.2015 | 0.2080 | 0.2004 | 0.1777 | 0.1584 | 0.1324 | 0.1338 | 0.1430 | 0.1461 | 0.1524 |
| LANNETT | | 0.0243 | 0.0562 | 0.0767 | 0.0834 | 0.0916 | 0.0912 | 0.0873 | 0.0732 | 0.0624 | 0.0548 | 0.0630 |
| LEDERLE | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| LILLY | 61.6133 | 51.8538 | 42.9438 | 32.3291 | 27.1278 | 24.0406 | 22.6226 | 21.9720 | 22.5077 | 23.5665 | 23.8245 | 23.9243 |
| LINCOLN | SJ | SJ | SJ | 0.0186 | 0.1216 | 0.1909 | 0.2069 | 0.1757 | 0.1136 | 0.1604 | 0.2244 | 0.2638 |
| MALLINCKRODT | | | | | | | | 0.0326 | 0.1088 | 0.2321 | 0.3611 | 0.4486 |
| MASSENGILL (SMITHKLIN) | 0.1259 | 0.2141 | 0.4398 | 0.5004 | 0.6679 | 0.9655 | 1.2338 | 1.4006 | 1.4784 | 1.3009 | 1.1860 | 1.1938 |
| MCKESSON LABS | | | | | | | | | | | | |
| MCNEIL | 0.2690 | 0.5272 | 0.8265 | 1.1993 | 1.0234 | 0.9559 | 0.7019 | 0.5848 | 0.4322 | 0.3472 | 0.2569 | 0.1488 |
| MERCK | 0.5802 | 1.0110 | 1.2351 | 1.2249 | 1.2222 | 1.1617 | 1.1144 | 1.0459 | 0.9901 | 0.9625 | 0.8815 | 0.8529 |
| MERRELL | | | | 0.1905 | 0.2831 | 0.2448 | 0.1165 | | | | | |
| MEYER | | | 0.0869 | 0.1452 | 0.1921 | 0.2452 | 0.2771 | 0.2781 | 0.2245 | 0.1629 | 0.1161 | 0.1261 |
| NATL DRUG | | | | | | | | | 0.0113 | 0.0255 | 0.0203 | 0.0159 |
| NORWICH-EATON | | | | | | 1.3564 | 1.2211 | 1.2623 | | | | |
| OTIS CLAPP | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| PERSON & COVEY | | | 0.2454 | 0.3947 | 0.5524 | 0.5102 | 0.4663 | 0.4508 | 0.3984 | 0.3688 | 0.3846 | 0.4907 |
| PHYS'S DRUG & SUPPLY | | | | 0.1059 | 0.3677 | 0.6181 | 0.7550 | 0.7470 | 0.7431 | 0.7431 | 0.7431 | 0.7431 |
| PREMO | 0.5557 | 0.8847 | 1.1465 | 1.3399 | 1.3625 | 1.2888 | 1.1658 | 1.2218 | 1.1485 | 0.9863 | 0.8734 | 0.8828 |
| REID PROVIDENT | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | | 0.0037 | 0.0068 | 0.0139 |
| REPUBLIC | | | | | | | | | | | | |
| REXALL | 0.3897 | 0.6990 | 1.0783 | 1.0281 | 0.9567 | 0.8678 | 0.8050 | 0.7629 | 0.7460 | 0.7673 | 0.7915 | 0.8394 |

* Berck/Perloff did not calculate a 5-25-100 mg blend, thus blend derived from Berck/Perloff data using San Francisco 5-25-100 mg blend calculation.

# NY SETTLEMENT SHARES  5-25-100 MG BLEND

"S.J." represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| | 1959 | 1960 | 1961 | 1962 | 1963 | 1964 | 1965 | 1966 | 1967 | 1968 | 1969 | 1970 | 1971 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| HARTZ (FERNDALE) | 0.0960 | 0.1763 | 0.2442 | 0.1736 | 0.6612 | 0.0180 | 0.0177 | 0.0057 | | | | | |
| IVES LABORATORY | SJ | SJ | SJ | SJ | SJ | SJ | | | | | | | |
| KEY | 0.0457 | 0.0977 | 0.1155 | 0.0682 | 0.0023 | 0.0008 | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| KIRKMAN | 0.0712 | 0.0752 | 0.0745 | 0.0656 | 0.0578 | 0.0480 | 0.0430 | 0.0387 | 0.0278 | 0.0183 | 0.0127 | 0.0131 | 0.0147 |
| KREMERS URBAN | 0.1833 | 0.2195 | 0.2277 | 0.1512 | 0.0426 | 0.0072 | | | | | | | |
| LANNETT | 0.0605 | 0.0796 | 0.0684 | 0.1437 | 0.1790 | 0.2071 | 0.2209 | 0.3211 | 0.2797 | 0.1501 | | | |
| LEDERLE | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| LILLY | 25.5010 | 30.7901 | 33.1814 | 34.4157 | 33.0849 | 33.9375 | 33.5629 | 38.5025 | 40.2534 | 40.9135 | 40.9122 | 43.4906 | 50.7754 |
| LINCOLN | 0.2076 | 0.0957 | 0.0984 | 0.1040 | 0.0784 | 0.0278 | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| MALLINCKRODT | 0.5502 | 0.6365 | 0.6100 | 0.4876 | 0.2804 | 0.1139 | 0.0266 | | | | | | |
| MASSENGILL (SMITHKL) | 1.2395 | 1.3936 | 1.4172 | 1.2397 | 0.9607 | 0.5788 | 0.4025 | 0.3683 | 0.2406 | 0.1270 | 0.0452 | | |
| MCKESSON LABS | | 0.8764 | 1.5933 | 2.3900 | 2.3900 | 2.3900 | 2.3900 | 2.3900 | 1.5933 | 0.7987 | | | |
| MCNEIL | 0.0597 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| MERCK | 0.8193 | 0.0317 | 0.5147 | 0.2307 | 0.0227 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| MERRELL | | | | | | | | | | | | | |
| MEYER | 0.1535 | 0.1570 | 0.0682 | | | | | | | | | | |
| NATL DRUG | | | | | | | | | | | | | |
| NORWICH-EATON | | | | | | | | | | | | | |
| OTIS CLAPP | SJ | SJ | SJ | SJ | SJ | SJ | 0.0133 | | | | | | |
| PERSON & COVEY | 0.4760 | 0.3233 | 0.2318 | 0.1812 | 0.1124 | 0.0338 | 0.0096 | | | | | | |
| PHYS'S DRUG & SUPPL | 0.7431 | 0.7431 | 0.6755 | 0.6755 | 0.5399 | 0.3147 | | | | | | | |
| PREMO | 0.7732 | 0.8610 | 0.8678 | 1.0339 | 1.2283 | 1.4019 | 1.1131 | 0.7992 | 0.4462 | 0.3414 | 0.2719 | 0.2507 | 0.2187 |
| REID PROVIDENT | | | | | | | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| REPUBLIC | 0.0135 | 0.0189 | 0.0096 | 0.0081 | | | | | | | | | |
| REXALL | 0.8978 | 0.9720 | 0.8185 | 0.8126 | 0.7985 | 0.8842 | 0.8489 | 0.8208 | 0.7129 | 0.5914 | 0.4025 | 0.2111 | 0.0361 |

\* Berck/Perloff did not calculate a 5-25-100 mg blend, thus blend derived from Berck/Perloff data using San Francisco 5-25-100 mg blend calculation.

# NY SETTLEMENT SHARES    5-25-100 MG BLEND

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| | 1947 | 1948 | 1949 | 1950 | 1951 | 1952 | 1953 | 1954 | 1955 | 1956 | 1957 | 1958 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RITE-AID | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| RORER | 0.2699 | 0.2258 | 0.2466 | 0.2454 | 0.2973 | 0.3655 | 0.4080 | 0.4017 | 0.3761 | 0.3913 | 0.3542 | 0.2872 |
| ROWELL | SJ | SJ | SJ | 0.0010 | 0.0198 | 0.1154 | 0.1863 | 0.2553 | 0.2404 | 0.2790 | 0.2954 | 0.3427 |
| SMITH CARROLL DUNHA | 0.1120 | 0.3510 | 0.6664 | 0.9640 | 0.9525 | 0.9332 | 0.9110 | 0.9015 | 0.8966 | 0.8966 | 0.8966 | 0.5977 |
| SMITH DORSEY (SANDOZ) | 0.2705 | 0.6609 | 0.6613 | 0.5119 | 0.3548 | 0.2476 | 0.1642 | 0.0871 | 0.0277 | 0.0157 | SJ | SJ |
| SQUIBB | 20.7245 | 20.0358 | 15.9550 | 12.3982 | 10.4070 | 10.3495 | 10.5994 | 10.5395 | 10.0716 | 9.4225 | 8.2893 | 7.5845 |
| STANLEY | SJ | SJ | SJ | SJ | SJ | SJ | 0.0242 | 0.0734 | 0.1268 | 0.1695 | 0.2451 | 0.3963 |
| STRASENBURG | 0.0125 | 0.0215 | 0.0205 | 0.0157 | 0.0120 | 0.0074 | 0.0028 | | | | | |
| * SUCCESS | | | | | 0.0363 | 0.0592 | 0.0810 | 0.0794 | 0.0825 | 0.0827 | 0.0789 | 0.0712 |
| SUMMERS | | | | | | | | | | | | 0.3016 |
| TESTAGAR | | 0.1105 | 0.2025 | 0.2431 | 0.2400 | 0.2352 | 0.2297 | 0.2273 | 0.2261 | 0.2261 | 0.2261 | 0.2261 |
| TUTAG | | | | | | | | | 0.0139 | 0.0837 | 0.1932 | 0.2743 |
| ULMER | | | 0.0050 | 0.0083 | 0.0118 | 0.0123 | 0.0098 | 0.0065 | 0.0052 | 0.0077 | 0.0098 | 0.0100 |
| UPJOHN | 5.7583 | 3.9843 | 2.5466 | 1.5788 | 1.3823 | 1.3212 | 1.2733 | 1.2024 | 1.1339 | 1.1332 | 1.0942 | 1.0940 |
| VITAFORE | | | | | 0.0190 | 0.0178 | 0.0157 | 0.0131 | 0.0106 | 0.0093 | 0.0083 | 0.0069 |
| VITARINE | 0.0218 | 0.0331 | 0.0650 | 0.0809 | 0.1100 | 0.1491 | 0.1975 | 0.2345 | 0.2284 | 0.1951 | 0.1500 | 0.1438 |
| V.C.A. | | | | | 0.1088 | 0.3677 | 0.6139 | 0.7567 | 0.7526 | 0.7526 | 0.7526 | 0.7526 |
| WEBSTER | | | | | | 0.0261 | 0.0510 | 0.0757 | 0.0650 | 0.0399 | 0.0149 | |
| WESTWARD | SJ | SJ | 0.6433 | 0.8262 | 0.9356 | 0.8749 | 0.7955 | 0.8028 | 0.7340 | 0.6878 | 0.7079 | 0.6819 |
| WINTHROP (STERLING) | 0.1120 | 0.0988 | 0.0932 | 0.0766 | 0.0756 | 0.0740 | 0.0724 | 0.0716 | SJ | SJ | SJ | SJ |
| WYETH | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| TOTAL | 99.4990 | 91.3780 | 81.9678 | 72.3015 | 66.7027 | 66.5622 | 64.0994 | 62.3808 | 59.3006 | 58.7389 | 58.6237 | 60.0866 |
| UNALLOCATED | 0.5010 | 8.6220 | 18.0322 | 27.6985 | 33.2973 | 33.4378 | 35.9006 | 37.6192 | 40.6994 | 41.2611 | 41.3763 | 39.9132 |

* Berck/Perloff did not calculate a 5-25-100 mg blend, thus blend derived from San Francisco 5-25-100 mg blend calculation.

## NY SETTLEMENT SHARES    5-25-100 MG BLEND

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| | 1959 | 1960 | 1961 | 1962 | 1963 | 1964 | 1965 | 1966 | 1967 | 1968 | 1969 | 1970 | 1971 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RITE-AID | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| RORER | 0.2329 | 0.3007 | 0.2944 | 0.1834 | 0.0619 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| ROWELL | 0.3394 | 0.3854 | 0.3186 | 0.2964 | 0.2231 | 0.1844 | 0.1563 | 0.1166 | 0.0678 | 0.0193 | 0.0002 | 0.0077 | |
| SMITH, CARROLL, DUNN | 0.2989 | SJ | | | | | | | | | | | |
| SMITH DORSEY (SANDO) | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| SQUIBB | 7.8235 | 8.8410 | 8.9688 | 9.1711 | 8.7514 | 8.9355 | 8.4202 | 8.3350 | 7.3672 | 5.9734 | 5.0446 | 3.4633 | 1.9975 |
| STANLEY | 0.6815 | 1.0054 | 1.3686 | 1.9554 | 2.4228 | 2.5972 | 2.3081 | 2.6528 | 3.9940 | 4.7837 | 4.4591 | 3.0377 | 1.7372 |
| STRASENBURG | | | | | | | | | | | | | |
| * | | | | | | | | | | | | | |
| SUCCESS | 0.0696 | 0.0746 | 0.0821 | 0.0630 | 0.0819 | 0.0822 | 0.0555 | 0.0269 | | | | | |
| SUMMERS | 0.6662 | 1.2000 | 1.2348 | 1.3390 | 0.9396 | 0.4953 | | | | | | | |
| TESTAGAR | 0.2261 | 0.2261 | 0.2055 | 0.2055 | 0.2055 | 0.2055 | 0.2055 | 0.1370 | 0.0685 | | | | |
| TUTAG | 0.2971 | 0.2774 | 0.2525 | 0.2606 | 0.2594 | 0.2734 | 0.2481 | 0.2202 | 0.1687 | 0.1329 | 0.1133 | | 0.0493 |
| ULMER | 0.0073 | 0.0066 | 0.0060 | 0.0046 | 0.0020 | | | | | | | | |
| UPJOHN | 1.1259 | 1.2091 | 1.0609 | 0.8690 | 0.7345 | 0.6674 | 0.5838 | 0.5325 | 0.5624 | 0.6450 | 0.7185 | 0.6333 | 0.3976 |
| VITAFORE | 0.1164 | 0.1369 | 0.1350 | 0.1856 | 0.0668 | 0.0707 | 0.0547 | 0.0660 | 0.0627 | 0.0607 | 0.0505 | 0.0349 | 0.0228 |
| VITARINE | 0.1334 | 0.1407 | 0.1397 | 0.1223 | 0.1099 | 0.0907 | 0.0789 | 0.0699 | 0.0484 | 0.0322 | 0.0221 | 0.0156 | 0.0092 |
| V.C.A. | 0.7526 | 0.7526 | 0.6842 | 0.6842 | 0.6842 | 0.5493 | 0.3212 | 0.0931 | | | | | |
| WEBSTER | | | | | | | | | | | | | |
| WESTWARD | 0.6857 | 0.6317 | 0.6049 | 0.6471 | 0.6419 | 0.6367 | 0.7139 | 0.7285 | 0.7820 | 0.9222 | 0.9054 | 0.7826 | 0.5930 |
| WINTHROP (STERLING) | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| WYETH | SJ | SJ | SJ | SJ | SJ | SJ | SJ | 0.0777 | 0.1554 | 0.2331 | 0.2331 | 0.2331 | -0.2331 |
| TOTAL | 64.2104 | 71.3503 | 70.6649 | 71.7070 | 67.0624 | 64.7321 | 59.6873 | 64.0617 | 63.9647 | 62.0520 | 59.4591 | 59.6428 | 65.1361 |
| UNALLOCATED | 35.7896 | 28.6497 | 29.3351 | 28.2930 | 32.9376 | 35.2679 | 40.3127 | 35.9383 | 36.0353 | 37.9480 | 40.5419 | 40.3572 | 34.8639 |

* Berck/Perloff did not calculate a 5-25-100 mg blend, thus blend derived from Berck/Perloff data using San Francisco 5-25-100 mg blend calculation.

# EXHIBIT 6

## AFFIDAVIT CONCERNING MASSENGILL'S DES

I, Donald F. Parman have reviewed the applicable records of the SmithKline Beecham Corporation d/b/a GlaxoSmithKline ("GSK") including business records of the S.E. Massengill Company ("Massengill") and hereby state that this declaration is being made based on my review of these records. I am over 18 years of age and competent to give testimony.

1.    I am presently GlaxoSmithKline's Vice President, Legal Operations, Corporate Functions - US.

2.    In 1971, Massengill merged into Beecham Inc. Beecham Inc. was merged into SmithKline Beecham Corporation, effective January 1, 1992.

3.    Based on Massengill documents, Massengill, in 1942, submitted a New Drug Application ("NDA") to the U.S. Food and Drug Administration ("FDA") requesting approval to market diethylstilbestrol ("DES").

4.    According to the Massengill documents, Massengill manufactured DES in 5 mg. tablet form from July 28, 1944 until April 12, 1966. The 5 mg. tablets were round, purple-coated, without markings, code numbers or scorings.

5.    Massengill manufactured DES in 25 mg. tablet form from June 23, 1949 to November 9, 1961. The 25 mg. tablets were round, white, uncoated, without markings, code numbers or scorings.

6.    I hereby declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

6/24/05
Date

Donald F. Parman
Donald F. Parman
GlaxoSmithKline

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

VICTOIRE DUMONT                              *

                                             *

    Plaintiff                               *        Case No. 07 CV 01635 (JR)

v.                                           *

ELI LILLY & CO., et. al.                     *

                                             *

    Defendants
    *    *    *    *    *    *    *    *    *    *    *

<u>[PROPOSED] ORDER</u>

    Having considered the Motion for Summary Judgment and supporting documents of GlaxoSmithKline, sued as Burroughs Wellcome Co. and S.E. Massengill, Co. and opposition thereto,

    IT IS HEREBY ORDERED that this Motion is granted and the action is dismissed in its entirety as to Defendant GlaxoSmithKlline, sued as Burroughs Wellcome Co.and S.E. Massengill, Co.

    SO ORDERED, this _____day of ____, 2008.


_____

JUDGE JAMES ROBERTSON