**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

VICTOIRE DUMONT

      Plaintiff               *

                                         Case No. 07-1635 (JR)

v.                           *

ELI LILLY AND COMPANY, et. al.    *

      Defendants         *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

<u>MALLINCKRODT, INC.'S MOTION FOR SUMMARY JUDGMENT</u>

Mallinckrodt Inc. ("Mallinckrodt") pursuant to F.R.C.P. 56, moves this Court for summary judgment in its favor.

In this pharmaceutical product liability case involving the pharmaceutical known as diethystilbestrol (DES), the evidence reveals that Mallinckrodt's predecessor Dumas-Wilson stopped the manufacture of any products containing DES many years before this plaintiff's alleged *in utero* exposure. Therefore, Mallinckrodt has no market share and cannot be liable under this or any other legal theory.

The accompanying Memorandum to this motion, which is hereby incorporated along with supporting Exhibits, more fully sets forth the reasons why this motion should be granted.

WHEREFORE, Mallinckrodt respectfully requests that this Court grant its motion for summary judgment.

Respectfully submitted,


_____/s/ Janet Coleman_____

Janet K. Coleman  (Bar No.: 497902)
WHITNEY & BOGRIS, LLP
401 Washington Avenue
Twelfth Floor
Towson, Maryland 21204
(410) 583-8000

**Attorneys for MALLINCKRODT, INC.**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and accurate copy of Mallinckrodt's Motion for Summary Judgment with Supporting Memorandum, Exhibits and Proposed Order was electronically filed with the Clerk of the Court using the CM/ECF system on February 25, 2008, which sent notification of such filing to all counsel of record who are registered with that system.  In addition, I caused a copy to be sent by United States postage-prepaid mail to:

Sybil Shainwald
Roxanne DeFrancesco
Law Offices of Sybil Shainwald
111 Broadway
4th Floor
New York, New York 10006

_____/s/_____
Janet  K. Coleman

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VICTOIRE DUMONT                          *

      Plaintiffs,                       *

v.                                       *          Case No. 07-1635 (JR)

ELI LILLY AND COMPANY, et al             *

      Defendants.                       *

 *    *    *    *    *    *    *    *    *    *    *    *    *

MALLINCKRODT, INC.'S MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT

     Mallinckrodt, Inc. ("Mallinckrodt"), pursuant to F.R.C.P. 56, submits this

Memorandum in Support of its Motion for Summary Judgment.

I. INTRODUCTION

     This is a product liability case in which plaintiff Victoire Dumont sues seventeen

companies that formerly manufactured and/or sold a pharmaceutical known as

Diethystilbestrol (DES) [1] a drug allegedly taken by Ms. Dumont's mother while she was

pregnant with the  plaintiff in 1970.  Ms. Dumont filed this action on September 17, 2007

under theories of  strict liability, negligence, breach of warranty and misrepresentation.

(Ex.1, Complaint). Ms. Dumont alleges that this *in utero* DES exposure caused clear cell

adenocarcinoma of the vagina and cervix.  (Ex. 2, More Definite Statement ¶ 2)

---

     [1] During the 25 years that DES was prescribed for use in treating problems of
pregnancy, it was produced by as many as 300 different companies.  *Smith v. Eli Lilly & Co.,*
560 N.E.2d 324, 328, 329 (1990).  *See Enright v. Eli Lilly & Co.,* 77 N.Y.2d 377, 570 N.E.2d
198, 200;  *Conley v. Boyle Drug Co.,* 570 So.2d 275; 279 n.2 (Fl. 1990); *Martin v. Abbott
Laboratories,* 102 Wash.2d 581, 689 P.2d 368, 381 (1984); *Collins v. Eli Lilly & Co.,* 116 Wis.2d
166, 342 N.W.2d 37, 44 *cert.  denied,* 469 U.S. 826 (1984).

Plaintiff's claims are premised on "market share liability," *See* Ex.1, ¶ 32, and Plaintiff's Memorandum of Points and Authorities in Support of Partial Consent Motion To Transfer to the Eastern District of New York, Ex. 3, pp. 4-5. The evidence shows that Mallinckrodt's predecessor had no share of the relevant DES market as it had ceased manufacture of any DES products years prior to this plaintiff's claimed exposure. Therefore, plaintiff could not have been exposed to DES manufactured by Mallinckrodt's predecessor and Mallinckrodt cannot be liable to this plaintiff under any legal theory.

II.    STATEMENT OF FACTS

Plaintiff alleges *in utero* exposure to DES prior to her birth in France on December 3, 1970 (Ex. 1, ¶¶ 2, 30; Ex. 2, ¶¶ 1-2). Plaintiff has not identified the manufacturer of the DES her mother allegedly ingested, but bases liability as to each defendant on market share theory. (*See* Ex. 1, ¶ 32, "Whether or not Plaintiffs (sic) prove which particular manufacturer produced the drug ingested by plaintiffs' mothers (sic), Defendants will be liable to them, based on market share liability, because they marketed the drug for pregnancy use"). Further, in her Motion to Transfer, plaintiff "asserts [her] claims under New York law", specifically relying on market share theory as adopted by the New York Court of Appeals in *Hymowitz v. Eli Lilly*, 539 N.E. 2d 1069 (1989) (Ex. 3, pp.1, 4-5). As plaintiff alleges exposure in France, her reliance on New York law is apparently based on her residency and recent medical treatment in New York. *Id*.

A.    Mallinckrodt's Predecessor  Ceased  Production of
Any  Products Containing DES  Years Before The
<u>Date This Plaintiff  Alleges DES Exposure</u>

Mallinckrodt never manufactured or sold DES. (Ex. 4, Affidavit of Frank Root, ¶ 5).  It is being sued as successor to Dumas-Wilson & Co. ("Dumas-Wilson"), a small pharmaceutical  entity located in St. Louis, Missouri  that for a short time manufactured and sold DES products in a very limited geographical area. [2]  (Ex.4, ¶¶ 3, 6).   Dumas-Wilson manufactured and sold DES products in small amounts, but discontinued the manufacture of any DES products during the *second quarter of 1963.* (Ex. 4,¶ 5). In 1965, when Mallinckrodt purchased the assets of Dumas-Wilson, neither Mallinckrodt nor Dumas-Wilson were manufacturing or marketing DES products.  Further, Dumas-Wilson's sales area for DES products was limited to a very few states (Ex. 4, ¶ 6). Mr. Root's affidavit is unequivocal and not limited to United States production and sales. Therefore, there is no evidence of widespread United States DES sales, let alone any sales in an international market.

Following the New York Court of Appeals' *Hymowitz* decision with its limited adoption of market share in instances when  manufacturer identification is impossible, *Hymowitz,* 539 N.E.2d at 1073,   litigation ensued to determine defendant-specific market share   on a national basis, relying on manufacturer's   DES sales and production information.   The Court recognized that the production and sales data defendants produced in that litigation was the "only data available" and that such data should be retained and available to parties in future DES cases. (Ex. 5, September 16,

---

[2] Mallinckrodt makes these statements without admitting any liability for the actions of Dumas- Wilson, and, in fact, explicitly reserving any and all defenses to the imposition of successor liability.

1992 Order in DES Market Share Litigation ¶ 28). The resulting matrix, issued as part of that Order, established  a "share" of the market for each manufacturer for every year the defendant was in the DES market. (Ex. 5)  The matrix took the DES "shelf life" following manufacture into account by providing that a defendant retained a share of the market for a period of time after the last date of production.

This plaintiff was born in December of 1970 (Ex.1, ¶2), meaning that all of the alleged *in utero* exposure necessarily occurred in 1970. Even with an additional time period allotted for "shelf-life", no DES product manufactured by Dumas-Wilson would have been in any market by 1970. Consistent with Dumas-Wilson ceasing manufacture of any DES product in 1963 and providing an additional period for "shelf life", Mallinckrodt has no market share in the New York matrix for *any year after 1965 for any dose of DES*. (Ex. 5, Matrix, pp.10, 20 and 26, page numbers supplied for ease of reference) [3]  Therefore, Mallinckrodt was not in the  "DES market" to which this plaintiff *claims exposure in 1970,* and had been out of the DES market for  four years.

Because Mallinckrodt's predecessor Dumas-Wilson was  not part of the DES market by the time of plaintiff's alleged exposure, this plaintiff could not have been exposed to DES manufactured by this entity and there is no basis for liability against. Mallinckrodt.  Therefore, summary judgment should be granted to Mallinckrodt.

---

[3] By referring to the New York national DES matrix, Mallinckrodt  does not concede that New York law or this matrix applies  to apportion the DES manufacturer's  liability  as to  this plaintiff who claims foreign DES exposure.  However, assuming *arguendo* that New York law applies, the matrix  is consistent with and substantiates the dates of manufacture as  stated in the Root affidavit, thereby barring  plaintiff's  claims  against Mallinckrodt under New York, or any other, law.

III.    SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The party seeking summary judgment must show  no genuine issue of material fact exists, by indicating to the Court that there is an absence of evidence to support the non-moving party's case.  *Id.* at 325-326.  The party opposing summary judgment is required to go beyond the pleadings to indicate specific facts showing a genuine issue for trial.  *Id*. at 323-324.

IV.  ARGUMENT

A.  Mallinckrodt Cannot Be Liable as Its Predecessor
     Was Not Part of the Relevant  DES Market

Under New York law, "identification of the exact defendant whose product injured the plaintiff is . . . generally required in a product liability action,"  *Hymowitz v. Eli Lilly & Co*., 542 N.Y.S. 2d 941, 945 (1989).    The *Hymowitz* court carved out a narrow exception  to this general principle for a plaintiff claiming injury from *in utero* exposure to DES when identification of the specific manufacturer of the DES the plaintiff's mother ingested is impossible, 542 N.Y.S. 2d at  945.  In that situation, the *Hymowitz* court adopted a market share theory using a national market.  As explained above, the New York DES market share proceedings culminated in an Order establishing each defendant's share of the market for the various dosage forms of DES for each year DES was on the market. (Ex. 5)  Discovery in that proceeding included the defendants' production of sales or production data, which the parties stipulated was the only data available (Ex. 5, ¶ 28) That data shows that  Mallinckrodt's predecessor was out of the DES market years before the date for which  this plaintiff claims exposure.

5

Therefore, even if market share liability is found applicable to this action, Mallinckrodt cannot be liable under this or any other legal theory as it had no share of any DES market for the year this plaintiff alleges exposure.  Prior decisions of this Court have recognized that under the applicable New York law, the DES plaintiff can seek relief under one of two different theories of liability. Under traditional products liability principles, the plaintiff must identify the specific product that actually caused the alleged injury. Alternatively, plaintiff can rely on market share liability, "under which product identification is removed from the plaintiff's causation burden *in exchange for relegating plaintiff to a recovery equal to the named defendants' share of the national DES market*", *Gassmann v. Eli Lilly*, 407 F Supp. 2d 203, 211 (D.D.C. 2005), emphasis added.  Here where Mallinckrodt had no "share" of the DES market for the year in question, plaintiff's claims as to this defendant cannot stand.

## V.  CONCLUSION

As there is no genuine dispute that Mallinckrodt was not part of the relevant DES market, Mallinckrodt is entitled to summary judgment in its favor as to all claims. Therefore, summary judgment should be granted in favor of Mallinckrodt.

Respectfully submitted,


_____/s/Janet K . Coleman_____

Janet K. Coleman (497902)
WHITNEY & BOGRIS, LLP
401 Washington Avenue
Twelfth Floor
Towson, Maryland 21204
(410) 583-8000

**Attorneys for Mallinckrodt, Inc.**

# EXHIBIT 1

RECEIVED

SEP 2 6 2007

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

VICTOIRE DUMONT                    ]
214 Harrison Drive                 ]
Centerport, NY 11721               ]
                                   ]
              Plaintiff,           ]
                                   ]
       v.                          ]
                                   ]
ABBOTT LABORATORIES, INC.          ]    Civil Action No.
100 Abbott Park Road               ]
Abbott Park, IL 60064              ]
w/s/o CT CORPORATION               ]
1025 Vermont Avenue, NW            ]
Washington, DC 20036               ]
                                   ]
          and                      ]
                                   ]
BURROUGHS-WELLCOME & CO.           ]
n/k/a GlaxoSmithKline, Inc.        ]
1500 K Street, N.W.                ]
Washington, DC 20036               ]
                                   ]
          and                      ]
                                   ]
S.E. MASSENGILL, CO.               ]
n/k/a GlaxoSmithKline, Inc.        ]
1500 K Street, N.W.                ]
Washington, DC 20036               ]
                                   ]
          and                      ]
                                   ]
CARNRICK LABORATORIES, INC.        ]
n/k/a Elan Pharmaceuticals, Inc.   ]
w/s/o National Registered Agents, Inc. ]
1090 Vermont Avenue, NW #910       ]
Washington, DC 20005               ]
                                   ]
          and                      ]
                                   ]

1

DART INDUSTRIES, INC.,   ]
p/k/a Rexall Drug Company, Inc.   ]
c/o Sheila Ann Marie Moeller, Esq.   ]
Gilbride, Tusa, Last & Spellane   ]
31 Brookside Drive   ]
Greenwich, CT 06830   ]
   ]
     and   ]
   ]
ELI LILLY AND COMPANY   ]
Lilly Corporate Center   ]
Indianapolis, Indiana 46285   ]
w/s/o National Registered Agents, Inc.   ]
1090 Vermont Ave, NW #910   ]
Washington, DC 20005   ]
   ]
     and   ]
   ]
KREMERS-URBAN CO.,   ]
n/k/a Mequon Company   ]
c/o Cooper, Kardaras & Scharf   ]
40 Wall Street   ]
New York, New York 10005-1303   ]
   ]
     and   ]
   ]
   ]
LANNETT CO., INC.   ]
c/o Fox & Rothschild   ]
2000 Market Street   ]
Philadelphia, PA 19103-3291   ]
   ]
     and   ]
   ]
MALLINCKRODT, INC.   ]
675 McDonnell Blvd.   ]
St. Louis, MO 63042   ]
   ]
     and   ]
   ]

MERCK & CO., INC.                                        ]
601 Pennsylvania Avenue NW                               ]
North Building, Suite 1200                              ]
Washington, DC 20004                                    ]
                                                        ]
        and                                             ]
                                                        ]
MERRELL DOW                                             ]
PHARMACEUTICALS, INC.                                  ]
c/o Corporation Trust Co.                              ]
820 Bear Tavern Road                                   ]
West Trenton, NJ 08268                                 ]
                                                        ]
        and                                             ]
                                                        ]
MCNEIL LAB, INC.,                                      ]
n/k/a Ortho-McNeil Pharmaceutical, Inc               ]
1000 U.S. Highway 202                                  ]
Raritan, NJ 08869                                      ]
                                                        ]
        and                                             ]
                                                        ]
PREMO PHARMACEUTICAL                                   ]
LABORATORIES, INC.                                    ]
p/k/a Lemmon Co. of NJ., Inc.                         ]
c/o Corporation Trust Co.                             ]
820 Bear Tavern Road                                   ]
West Trenton, NJ 08628                                ]
                                                        ]
        and                                             ]
                                                        ]
RHONE-POULENC RORER                                   ]
PHARMACEUTICALS, INC.                                ]
p/k/a William H. Rorer, Inc.                         ]
c/o Sanofi-Aventis                                    ]
55 Corporate Drive                                    ]
Bridgewater, NJ 08807                                 ]
                                                        ]
        and                                             ]
                                                        ]

3

ROWELL LABORATORIES, INC.,        ]
p/k/a Solvay Pharmaceuticals, Inc.  ]
c/o T.H. Rowell, Jr., President     ]
210 Main Street W.                  ]
Baudette, MN 56623                  ]
                                    ]
    **and**      ]
                                    ]
E.R. SQUIBB & SONS, INC.            ]
c/o The Corporation Trust Company   ]
1025 Vermont Ave, NW                ]
Washington, DC 20005                ]
                                    ]
    **and**      ]
                                    ]
THE UPJOHN COMPANY                  ]
c/o CT Corp. Systems                ]
1025 Vermont Ave, NW                ]
Washington, DC 20005                ]

COMPLAINT

Plaintiff, by her attorneys, **AARON M. LEVINE AND ASSOCIATES AND THE LAW OFFICES OF SYBIL SHAINWALD, P.C.,** upon information and belief, at all times hereinafter mentioned, allege as follows:

## JURISDICTION

1.      This Court has jurisdiction pursuant to 28 United States Code Section 1332, in that Plaintiffs are citizens of States and citizens of a foreign state which are different from the States where defendants are incorporated and have their principal places of business. The amount in controversy exceeds SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) as to each Plaintiff.

## PARTY PLAINTIFFS

2.      Plaintiff VICTOIRE DUMONT was born on December 3, 1970, and is a citizen and resident of the State of New York.

## PARTY DEFENDANTS

4

3.      The Abbott Laboratories is a corporation incorporated under the laws of the State of Illinois with its principal place of business in Illinois.

4.      Burroughs-Wellcome and Co., Inc., n/k/a GlaxoSmithKline, Inc. is a corporation under the laws of the State of North Carolina with its principal place of business in North Carolina.

5.      Carnrick Laboratories, Inc. n/k/a Elan Pharmaceuticals, Inc. is a corporation incorporated under the laws of the State of New Jersey with its principal place of business in New Jersey.

6.      Dart Industries, Inc., p/k/a Rexall Drug Company, Inc. is a corporation incorporated under the laws of Illinois with its principal place of business in Delaware.

7.      Eli Lilly and Company is a corporation incorporated under the laws of the State of Indiana with its principal place of business in Indiana.

8.      Kremers-Urban Co., n/k/a Mequon Company, is a corporation incorporated in the State of Wisconsin with its principal place of business in Wisconsin.

9.      Lannett Co., Inc., is a foreign corporation with its principal place of business in Pennsylvania.

10.     McNeilab, Inc., n/ka/ Ortho-McNeil Pharmaecutical, Inc. is a corporation incorporated under the laws of the State of Pennsylvania with its principal place of business in Pennsylvania.

11.     Mallinckrodt, Inc., is a corporation incorporated under the laws of the State of California with its principal place of business in California.

12.     S.E. Massengill, n/k/a GlaxoSmithKline Inc., is a corporation incorporated under the laws of the State of Tennessee with its principal place of business in

5

Tennessee.

13.    Merck & Co., Inc., is a corporation incorporated under the laws of the State of New Jersey with its principal place of business in New Jersey.

14.    Merrell Dow Pharmaceuticals, Inc., is a corporation incorporated under the laws of the State of Ohio with its principal place of business in Ohio.

15.    Premo Pharmaceutical Laboratories, Inc. p/k/a Lemmon Co. of N.J., Inc., is a corporation incorporated under the laws of the State of New Jersey with its principal place of business in New Jersey.

16.    Rhone-Poulenc Rorer Pharmaceuticals, Inc. p/k/a William H. Rorer, Inc., is a corporation incorporated under the laws of the State of Pennsylvania with its principal place of business in Pennsylvania.

17.    Rowell Laboratories, inc., n/k/a Solvay Pharmaceuticals is a corporation incorporated under the laws of the State of Minnesota with its principal place of business in Minnesota.

18.    E.R. Squibb & Sons, Inc. is a corporation incorporated in the State of New Jersey with its principal place of business in New Jersey.

19.    The Upjohn Company is a corporation incorporated under the laws of the State of Michigan with its principal place of business in Michigan.

### FACTUAL BACKGROUND

20.    At all relevant times, Defendants were in the business of and did create, design, manufacture, test, formulate, advertise, market, promote, sell, and/or distribute the drug DES.

21.    During the period in and about 1940 and prior and subsequent

6

thereto, Defendants assisted each other to prepare the drug DES, which thereupon became a generic drug manufactured by them and by other drug companies. Defendants also assisted each other to exploit, market and secure permission from the FDA to publicly sell DES for ingestion by humans. Defendants knew and were aware, or should have known, that the drug had been insufficiently tested; that it had not been sufficiently tested upon humans; and lacked adequate warnings. Nevertheless, these Defendants endeavored to obtain FDA approval of the drug in that form and otherwise assisted each other and other drug companies to bring DES to the market, thereby enabling such others and themselves to market a drug involving harmful results to users and the offspring of users.

22.     Defendants made certain claims and representations that were contained in their supplemental New Drug Application, some of which were that the new use of said DES in the prevention of miscarriages and accidents in pregnancy was both safe and efficacious.

23.     Defendants made certain claims that were distributed and circulated to the medical profession and to the general public through advertising, literature, detail men, brochures and other materials stating that DES was a safe and efficacious drug for the treatment of accidents in pregnancy.

24.     At the time, these Defendants knew or should have known that DES and its components had the potential to become harmful to users and offspring of users and knew or should have known that the drug was ineffective for the purpose for which it was marketed and sold.

25.     Upon information and belief, these Defendants and the other

7

persons and drug companies secured FDA approval; brought DES to the market where it was produced by these Defendants and/or other drug companies with the same content and same potential for harm; and distributed and marketed DES to the public so as to induce its use in the manner in which it was used by Plaintiffs' mothers.

26.    Upon information and belief, these Defendants and the other drug companies misrepresented the risks inherent in the use of DES in their applications to the FDA and to other governmental persons and/or agencies.

27.    Defendants knew, or should have known, of the above-mentioned risks based upon the state of knowledge as it existed at that time and upon generally accepted engineering, medical and research standards and principles.

28.    The Defendants, their agents, servants and/or employees, manufactured, produced, promoted, formulated, created or designed DES without testing it for use in pregnancy, without making proper and sufficient tests to determine the dangers and contra-indications thereof, and without warning the public and the medical profession of the dangers and contra-indications and side effects inherent in the aforesaid drug. The Defendants also negligently advertised and recommended the use of DES without sufficient knowledge as to its dangerous propensities; represented that the said drug was safe for use for its intended purpose, when, in fact, it was unsafe; and failed to conduct sufficient testing programs to determine whether or not the aforesaid drug was safe for use. Defendants knew or should have known that said drug was unsafe and unfit for use by reason of the dangerous effects, contra-indications and dangers to a fetus during the pregnancy of its mother. Defendants, their agents, servants and/or employees, improperly obtained the

8

approval of the FDA to market the drug by misrepresenting the risks of the drug to the FDA; knew that it was a substance, which crossed the placental barrier and therefore could cause injury to a fetus in utero; and were otherwise negligent.

29.    Defendants, by their agents, servants and/or employees were careless and negligent in the manufacturing, selling, distribution, merchandising, advertising, promotion, compounding, packaging, fabrication, analyzing, marketing, and recommendation of said drug DES without making proper and sufficient tests to determine the dangers thereof.

30.    In this action, Plaintiffs claim that they were exposed to DES in utero and that their mothers ingested DES, which was marketed by Defendants.

31.    By reason of the foregoing, those exposed to DES have developed, or are at extremely high risk for experiencing, certain cancers, infertility, ectopic pregnancies, as well as other serious injuries; and Plaintiffs herein have sustained severe, serious, permanent and personal injuries; will require extensive hospitalizations, medical care, surgeries, and lifelong attention; will be incapacitated from their normal functioning and will be unable to pursue normal means of livelihood; will be precluded from having a normal life, physically, intellectually, vocationally, emotionally, or psychologically; and Plaintiffs have been otherwise grossly damaged.

32.    Whether or not Plaintiffs prove which particular manufacturer produced the drug ingested by Plaintiffs' mothers, Defendants will be liable to them, based on market share liability, because they marketed the drug for pregnancy use.

### FIRST CLAIM FOR RELIEF

#### (Strict Products Liability)

33.    Plaintiffs repeat, reiterate and reallege each and every allegation

contained in the paragraphs numbered "1" through "35", inclusive, with the same force and effect as if hereinafter set forth at length.

34.    At all times herein mentioned, the Defendants, and each of them, manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted, sold, purchased, prescribed, and administered the aforesaid DES as hereinabove described and prior to the time that Plaintiffs or Plaintiffs' mothers, and thereby Plaintiffs, used said product.

35.    The said drug product, more particularly known as DES, was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by the Defendants.

36.    At those times, the said drug product DES, was in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, the general public and, in particular, the Plaintiffs herein.

37.    Defendants, while regularly engaged in the business activities aforementioned, did design, develop, manufacture, produce, test, sell, market and/or distribute a certain drug product, more particularly known as DES, which was ingested by Plaintiffs' mothers and thereby Plaintiffs.

38.    At all times herein mentioned, the said drug product DES was in a defective condition and unsafe and Defendants, individually, jointly and severally, knew or had reason to know that said product was defective and unsafe, especially when used as a miscarriage preventative.

39.    . The said drug product DES was inherently dangerous.

10

40.    At the time of the occurrence and ingestion by Plaintiffs' mothers, the said drug product, DES, was being used for the purposes and a manner normally intended.

41.    Neither Plaintiffs nor their mothers could, by the exercise of reasonable care, have discovered the defects herein mentioned and/or perceived their danger.

42.    As a direct and proximate result of the defective condition of DES manufactured and supplied by Defendants, Plaintiffs were caused to sustain severe and grievous personal injuries, as described herein.

43.    By reason of the foregoing, the Defendants have become strictly liable in tort to the Plaintiffs for the marketing of a defective product, regardless of whether they marketed the particular pill taken by Plaintiffs' mothers.

44.    By reason of the foregoing, Plaintiffs have been damaged as against each defendant in the sum of TEN MILLION DOLLARS ($10,000,000.00) in compensatory damages and TEN MILLION DOLLARS ($10,000,000.00) in punitive damages.

## SECOND CLAIM FOR RELIEF

### (Negligence)

45.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "47" inclusive, with the same force and effect as if more fully set forth herein.

46.    The negligence of the Defendants, their agents, servants, and/or employees, included but was not limited to the following acts or omissions:

(a) manufacturing, producing, promoting, formulating, creating, and/or designing DES without testing it for use in pregnancy;

11

(b) selling DES without making proper and sufficient tests to determine the dangers and contra-indications thereof;

(c) negligently failing to adequately and correctly warn the public and the medical profession of the dangers and contra-indications and side effects inherent in the aforesaid drug and failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with said product;

(d) negligently advertising and recommending the use of the aforesaid drug without sufficient knowledge as to its dangerous propensities;

(e) negligently representing that the said drug was safe for use for its intended purpose, when, in fact, it was unsafe;

(f) not conducting sufficient testing programs to determine whether or not the aforesaid drug was safe for use; in that Defendants herein knew or should have known that said drug was unsafe and unfit for use by reason of the dangerous effects, contra-indications and dangers to a fetus during the pregnancy of its mother; and

(g) improperly obtaining the approval of the FDA to market the drug by misrepresenting the risks of the drug to the FDA; in knowing that it was a substance that crossed the placental barrier and therefore could cause injury to a fetus in utero.

47.    As a direct and proximate result of the aforementioned negligence on the part of the Defendants, Plaintiffs were caused to sustain severe and grievous personal

injuries, as set forth herein.

48.    By reason of Defendants' actions as aforementioned, Defendants are liable to Plaintiffs regardless of whether or not they manufactured the particular DES drug ingested by Plaintiffs' mothers.

49.    By reason of the foregoing, Plaintiffs have been damaged as against each defendant in the sum of TEN MILLION DOLLARS ($10,000,000.00) in compensatory damages and TEN MILLION DOLLARS ($10,000,000.00) in punitive damages.

### THIRD CLAIM FOR RELIEF

#### (Breach of Express Warranty)

50.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "52" inclusive, with the same force and effect as if more fully set forth herein at length.

51.    Defendants, and each of them, expressly represented to the users and their physicians that said drug DES was safe and fit for use for the purposes intended, that it was of merchantable quality, and that it did not produce any side effects dangerous to life, and that it was adequately tested and fit for its intended use.

52.    Members of the medical community relied upon the representations and warranties of the Defendants for use and ingestion of said drug DES in prescribing, recommending and/or dispensing same.

53.    Defendants knew or should have known that, in fact, said representations and warranties were false, misleading and untrue in that said drug DES was not safe and fit for the use intended, and, in fact, produces serious injuries to the user and the offspring of the user. As a result of the aforementioned breach of warranties by Defendants,

13

Plaintiffs were caused to sustain severe and grievous personal injuries, as set forth herein.

54.    By reason of Defendants' actions as aforementioned, Defendants are liable to Plaintiffs regardless of whether or not they manufactured the particular DES drug ingested by Plaintiffs' mothers.

55.    By reason of the foregoing, Plaintiffs have been damaged as against each defendant in the sum of TEN MILLION DOLLARS ($10,000,000.00) in compensatory damages and TEN MILLION DOLLARS ($10,000,000.00) in punitive damages.

## FOURTH CLAIM FOR RELIEF

### (Breach of Implied Warranty)

56.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "58" inclusive, with the same force and effect as if more fully set forth herein.

57.    At all times herein mentioned, the Defendants, and each of them, manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted, sold, purchased, prescribed, and administered the aforesaid DES as described above and prior to the time that Plaintiffs' mothers, and thereby Plaintiffs, used said product.

58.    The Defendants, and each of them, impliedly represented and warranted to the users and their physicians that the aforementioned drug product, more particularly known as DES, was safe and of merchantable quality and fit for the ordinary purpose for which said product was to be used.

59.    The said representations and warranties aforementioned were false, misleading, and inaccurate in that said drug product DES, was unsafe, unreasonably

14

dangerous, improper, not of merchantable quality, and defective.

60.    DES products were injected into the stream of commerce by the Defendants in a defective, unsafe, and inherently dangerous condition and the products and materials were expected to and did reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

61.    As a result of the aforementioned breach of warranties by Defendants, Plaintiffs were caused to sustain severe and grievous personal injuries, as set forth herein.

62.    By reason of Defendants' actions as aforementioned, Defendants are liable to Plaintiffs regardless of whether or not they manufactured the particular DES drug ingested by Plaintiffs' mothers.

63.    By reason of the foregoing, Plaintiffs have been damaged as against each defendant in the sum of TEN MILLION DOLLARS ($10,000,000.00) in compensatory damages and TEN MILLION DOLLARS ($10,000,000.00) in punitive damages.

FIFTH CLAIM FOR RELIEF

(Fraudulent Misrepresentation)

64.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "67", inclusive, with the same force and effect as if more fully set forth herein at length.

65.    The Defendants falsely and fraudulently represented to the medical community and to the public in general that said drug DES was a drug that had been tested and found to be safe and effective for the prevention of miscarriages and other pregnancy related uses. The representations made by said Defendants were, in fact, false.

15

66.    When said representations were made by Defendants, they individually, jointly, and severally, knew those representations to be false, willfully, wantonly and recklessly disregarded whether the representations were true, and these representations were made by said Defendants with the intent of defrauding and deceiving the public in general, and the medical community in particular, and with the intent of inducing the public in general, and the medical community in particular, to prescribe, dispense and purchase said drug DES for the prevention of miscarriages, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of the Plaintiffs herein.

67.    At the time the aforesaid representations were made by the Defendants and, at the time that Plaintiffs' mothers ingested said drug DES, Plaintiffs' mothers and Plaintiffs were ignorant of the falsity of said representations and reasonably believed them to be true. In reliance upon said representations, Plaintiffs' mothers were induced to and did take DES during their pregnancies with their daughters, the Plaintiffs.

68.    As a result of the fraudulent misrepresentations of the Defendants set forth hereinabove, said Defendants knew and were aware or should have known that the drug had been insufficiently tested, that it had not been tested or sufficiently tested upon humans, or lacked adequate warnings, and these Defendants cooperated with others to obtain FDA approval of the drug in that form and otherwise assisted other persons and drug companies to bring DES to market a drug involving harmful results to users and the offspring of users, thereby breaching their duty to such users and aiding and assisting other persons and drug companies marketing DES to do the same.

69.    At this time, these Defendants and other persons and drug companies

16

with whom they were cooperating and exchanging mutual assistance in order to bring DES to the market and secure approval thereof, knew or should have known that DES, its components and in combination, had a potential to, could, and would cause severe and grievous injury to the user and to the offspring of the users of said product and that the drug was ineffective for the purpose for which it was marketed and sold and was inherently dangerous.

70.    These Defendants and other persons and drug companies, as a result of the mutual aid of each to other and in combination, secured FDA approval, brought DES to the market where it was produced by these Defendants and other drug companies with the same content and the same potential for harm, and these Defendants and the other persons and drug companies conferred and assisted in promoting and advertising, and said Defendants acted fraudulently, wantonly and maliciously to the detriment of the Plaintiffs.

71.    As a result of Defendants' fraudulent and deceitful conduct and representations, Plaintiffs were caused to sustain severe and grievous personal injuries, as set forth herein.

72.    By reason of Defendants' actions as aforementioned, Defendants are liable to Plaintiffs regardless of whether or not they manufactured the particular DES drug ingested by Plaintiffs' mothers.

73. By reason of the foregoing, Plaintiffs have been damaged as against each defendant in the sum of TEN MILLION DOLLARS ($10,000,000.00) in compensatory damages and TEN MILLION DOLLARS ($10,000,000.00) in punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Victoire Dumont demands judgment against each

Defendant on each cause of action with interest together with the costs and

disbursements of this action.

Dated: 9\17\07

AARON M. LEVINE & ASSOCIATES

Aaron M. Levine, #7864
Brandon J. Levine, #412130
1320 19th Street, N.W., Suite 500
Washington, D.C. 20036
(202) 833-8040
aaronlevinelaw@aol.com

and

Sybil Shainwald, Esq.
Roxanne DeFrancesco, Esq.
Law Offices of Sybil Shainwald
111 Broadway
4th Floor
New York, New York 10006
(212) 608-5863
shainwaldlaw@aol.com

Counsel for Plaintiff

18

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury as to all issues.

_____

Aaron M. Levine, Esq.

# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| VICTOIRE DUMONT, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | Civil Action No.  07-CV-01635 (JR) |
| v. | ] | |
| | ] | |
| ABBOTT LABORATORIES, INC., et al., | ] | **NOTICE OF MORE DEFINITE STATEMENT PURSUANT TO F.R.C.P. 12(e)** |
| | ] | |
| | ] | |
| Defendants. | ] | |
| | ] | |

In response to E.R. Squibb & Sons, Inc.'s Motion for a More Definite Statement, Plaintiff Victoire Dumont, by her attorneys, Aaron M. Levine & Associates & The Law Offices of Sybil Shainwald, P.C., alleges the following:

1.    Plaintiff, Victoire Dumont, was exposed to the drug Diethylstilbestrol ("DES"), in France.

2.    Plaintiff, Victoire Dumont, has suffered injuries resulting from her exposure to DES and its components including, but not limited to, clear cell adenocarcinoma of the vagina and cervix.

3.    By reason of the foregoing, Plaintiff has been damaged as against each defendant, including E. R. Squibb & Sons, Inc., in the sum of TEN MILLION DOLLARS ($10,000,000.00) in compensatory damages and TEN MILLION DOLLARS ($10,000,000.00) in punitive damages.

Respectfully submitted,
AARON M. LEVINE & ASSOCIATES
    /s/    Brandon J. Levine
Aaron M. Levine, #7864
Brandon J. Levine, #412130
1320 19th St., N.W., Suite 500        -and-
Washington, D.C. 20036
(202) 833-8040
aaronlevinelaw@aol.com

Counsel for Plaintiff

Sybil Shainwald, Esq.
Roxanne DeFrancesco, Esq.
Law Offices of Sybil Shainwald, P.C.
111 Broadway, Suite 403
New York, NY 10006
(212) 425-5566
shainwaldlaw@aol.com

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VICTOIRE DUMONT,                          ]
                                          ]
        Plaintiff,                        ]
                                          ]
                                          ]    Civil Action No.: 07-CV-01635 (JR)
    v.                                    ]    Next Event:
                                          ]
THE ABBOTT LABORATORIES, INC., ]
et al.,                                   ]
                                          ]
        Defendant.                        ]

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF HER MOTION TO TRANSFER TO
THE EASTERN DISTRICT OF NEW YORK

## I.    INTRODUCTION

Plaintiff Victoire Dumont brought this suit to compensate for cancer, infertility and other injuries caused by Plaintiff's exposure *in utero* to diethylstilbestrol ("DES"). New York is the most appropriate location for trial of this case, both for the convenience of the witnesses and for the interests of justice.

For the past three years of her life, Plaintiff has lived in the Eastern District of New York. *See* Exhibit A to Declaration of Brandon J. Levine, Esq., (hereinafter "Levine Dec."), the Affidavit of Plaintiff Victoire Dumont (hereinafter "Dumont Aff."). Plaintiff's currently treating physicians practice in New York, well within the subpoena power of the Eastern District. *See id.* Plaintiff was a resident of the Eastern District of New York when she filed this suit, and asserts claims under New York law. *See id.; see also* Levine Dec., Exhibit B (Complaint).

In <u>Albin v. Eli Lilly and Co.</u>, Civil Action No. 04-986 (D.D.C. July 30, 2004), *see* Levine Dec., Exhibit C (case law), the District Court for the District of Columbia granted a DES

1

plaintiff's motion to transfer to the Eastern District of New York where the plaintiff's exposure and some of her medical treatment took place in New York, although the plaintiff was a Canadian resident. Here, Plaintiff is currently a resident of the Eastern District of New York, and all of her recent treatment has taken place in New York. Hence, Plaintiff's connection to New York is stronger than that in Albin, and transfer should be granted.

## II.    STANDARD ON MOTION TO TRANSFER

A transfer under 28 U.S.C. § 1404(a) is to any district where the action might have been brought. Plaintiffs could have initially brought this suit in the Eastern District of New York. All defendants are corporations, which are deemed to reside in any district that can exercise personal jurisdiction over them. See 28 U.S.C. § 1391(c). A plaintiff may sue in any district that a defendant resides, if all defendants reside within a state. See 28 U.S.C. § 1391(a)(1).

In diversity, a District Court has the same jurisdiction as the state court in the same area. Defendants either currently conduct significant business within the state to subject them to jurisdiction or are subject to jurisdiction by virtue of having committed a tortious act against Plaintiff in New York, see N.Y. C.P.L.R. § 302. As all Defendants are subject to jurisdiction, and therefore reside, in the Eastern District of New York, this case could be brought there.

The standard for transfer of venue as set forth by statute is "[f]or the convenience of parties and witnesses, in the interest of justice," 28 U.S.C. § 1404(a), but "[c]ourts have considered various other factors, including the private interests of the parties and the public interests of the court" in construing § 1404. Trout Unlimited v. United States Dep't of Ag., 944 F. Supp. 13, 16 (D.D.C. 1996).

The private interest considerations include, but are not limited to the (1) plaintiff's choice of forum, (2) the defendants' choice of forum, (3) whether the claim arose elsewhere, (4) the

2

convenience of the parties, (5) the convenience of the witnesses, and (6) the ease of access to sources of proof. Trout Unlimited, 944 F. Supp. at 16. The public interest considerations include (1) the familiarity of the transferee forum with the governing laws, (2) the relative congestion of the court calendars, and (3) the local interest in deciding local controversies at home. Id.

## III. THE EASTERN DISTRICT OF NEW YORK IS MOST CONVENIENT FOR THE WITNESSES

The courts "must afford some deference" to Plaintiffs' choice of forum. Trout Unlimited, 944 F. Supp. at 17. Here, Plaintiffs elect to transfer; the weight of this factor is therefore militates in favor of transferring the case to the Eastern District of New York. When the current forum has few meaningful ties to or interest in a lawsuit, the court must be "especially cautious" in allowing a case to remain there. Trout Unlimited, 944 F. Supp. at 17. If the forum is not the plaintiff's home forum, and the injury and initial treatment occurred elsewhere, the balance of interests is in favor of transfer. Brannen v. National R.R. Passenger Corp., 403 F. Supp. 2d 89, 93 (D.D.C. 2005) (holding Maryland a more convenient forum where Texas residents were injured in Maryland and received treatment there). This is a New York products liability case where no parties are residents of the District of Columbia. The Eastern District of New York is the Plaintiff's home forum and the current injury and treatment have occurred in New York. This balance of interests favors transfer to a New York court.

The convenience of witnesses is often considered the most important factor in evaluating a motion to transfer. Altamont Pharmacy, Inc. v. Abbott Lab's, No. 94 C. 6282, 2002 U.S. Dist. LEXIS 759 at *7 (N.D. Ill. 2002). In evaluating the convenience of the witnesses, the court considers a number of factors, including "(1) the number of witnesses located in each district; (2) the relative ease of access to sources of proof; (3) the availability of compulsory process for the

3

attendance of witnesses; and (5) the situs of the material events." 2002 U.S. Dist. LEXIS 759 at

*6-7 (N.D. Ill. 2002). Here, there are no witnesses in the District of Columbia. New York is the

site of the material events involving a majority of the witnesses, including Plaintiff's medical

treatment. *See* Dumont Aff. The Eastern District of New York is the more convenient

jurisdiction.

A witness's inconvenience is material when the inconvenience may make the witness

unavailable to testify. Brannen, 403 F. Supp. 2d at 94. It will be inconvenient to require

Plaintiff's treating doctor to leave New York to testify in the District of Columbia. Should Dr.

Brownstein, Dr. Yi-Shin Kuo, or Dr. Kelly need to be subpoenaed, this Court does not have the

power to do so, unlike the Eastern District of New York.

## IV.    THE EASTERN DISTRICT OF NEW YORK IS THE MOST APPROPRIATE FORUM FOR THE INTERESTS OF JUSTICE

The Eastern District of New York is a much better forum regarding the local interest

factors. "Controversies should be resolved in the locale where they arise." Trout Unlimited, 944

F. Supp. at 19. In a diversity case, the public interest factors weigh in favor of having a jury

apply its local laws. See Brannen, 403 F. Supp. 2d at 96. As the Supreme Court noted:

> We pay great deference to the views of the judges of those courts
> who are familiar with the intricacies and trends of local law and
> practice . . .

Bishop v. Wood, 426 U.S. 341, 346 n. 10 (1976).

This Court has no close connection with this case, and with the exception of a single

scheduling conference, this Court has not yet occupied itself with the disposition of this case.

New York, the place of Plaintiff's current injuries, applies a market share theory to DES

cases. See Hymowitz v. Eli Lilly, 539 N.E.2d 1069 (N.Y. 1989). The Eastern District of New

York has extensive experience in applying New York law regarding DES cases. See, e.g., In re

4

DES Cases, 789 F. Supp. 552 (E.D.N.Y. 1992) (discussing New York's DES cases in detail in reference to consolidated DES litigation). The case would be assigned to Judge Jack Weinstein, who has a Standing Order referring all Eastern District DES cases to him. Judge Weinstein has extensive experience in handling DES cases. See In re DES Cases, supra. The Eastern District of New York is the best district to interpret the market share law underpinning this case.

## IV. CONCLUSION

The Eastern District of New York is the most appropriate venue for this case. It has subpoena power over witnesses and documents relevant to Plaintiff Victoire Dumont's DES-related injuries and has more experience with the governing law. Therefore, Plaintiff requests to transfer this case to the Eastern District of New York.

Respectfully submitted,

/s/ Brandon J. Levine
BRANDON J. LEVINE (#412130)
1320 Nineteenth Street, N.W.
Suite 500
Washington, DC 20036
202-833-8040

and

LAW OFFICES OF SYBIL SHAINWALD,
P.C.
111 Broadway, Suite 403
New York, NY
212-425-5566

Co-counsel for Plaintiff

5

# EXHIBIT 4

## AFFIDAVIT OE FRANK ROOT

STATE OF MISSOURI    )
                     )
COUNTY OF ST. LOUIS  )

FRANK ROOT, being duly sworn, deposes and says as follows:

1.  From 1950 until 1965, I was an employee at Dumas-Wilson &
    Co.; from 1953 until 1965, I was a Vice-President in charge
    of operations and Research and Development for Dumas-Wilson
    & Co., at which time I became an employee of Mallinckrodt,
    Inc.; I retired from Mallinckrodt, Inc. in 1976; and I make
    this Affidavit based upon my personal knowledge as a former
    employee and officer of Dumas-Wilson & Co., as confirmed by
    my review of surviving Dumas-Wilson & Co. records.

2.  At the time that Dumas-Wilson & Co. was acquired by
    Mallinckrodt, Inc., none of the officers and directors of
    Dumas-Wilson & Co. became officers or directors of
    Mallinckrodt, Inc., and Mallinckrodt, Inc. did not advertise
    or represent itself as the successor corporation to
    Dumas-Wilson & Co.

3.  Dumas-Wilson & Co. was a small pharmaceutical house located
    in St. Louis, Missouri. When Dumas-Wilson & Co.'s assets
    were purchased by Mallinckrodt, Inc., Dumas-Wilson & Co.
    employed a total of 44 to 45 employees.

- 1 -

4. Dumas-Wilson & Co. sold only to wholesalers in the St. Louis area.

5. During the second quarter of 1963, Dumas-Wilson & Co. discontinued the manufacturing of any DES products. Until such time, Dumas-Wilson & Co. did manufacture and sell DES in small amounts. In 1965, when Mallinckrodt purchased the assets of Dumas-Wilson & Co., neither Mallinckrodt, Inc. nor Dumas-Wilson & Co. were manufacturing or marketing DES products. To the best of my knowledge, at the time of Mallinckrodt, Inc.'s purchase of Dumas-Wilson & Co. assets, there were no remaining DES products in the Dumas-Wilson & Co. inventory. At no time between August 14, 1965, when Mallinckrodt, Inc. purchased Dumas-Wilson & Co.'s assets, and 1976 when I retired, did Mallinckrodt, Inc. manufacture or market any DES products.

6. The marketing and sales of DES products manufactured by Dumas-Wilson & Co. was limited solely to the States of Illinois and Missouri with a possibility of a small market in the State of Texas.

I declare under penalty of perjury that the foregoing is true and correct of my own personal knowledge, except as to those matters which are stated on my information and belief, and as to those matters, I believe them to be true.

- 2 -

Executed this 25ᵗʰ day of _January_ , 1988, at St. Louis, Missouri.

_Frank L. Root_
FRANK ROOT


STATE OF MISSOURI    )
                     ) SS
COUNTY OF ST. LOUIS)


Sworn before me this 25th day of _January, 1988_.

_Valerie J. Wright_
Notary


My Commission Expires:

VALERIE J. WRIGHT
NOTARY PUBLIC STATE OF MISSOURI
ST. LOUIS COUNTY
MY COMMISSION EXP. JULY 30,1991

- 3 -

# EXHIBIT 5 .

· pleading
ih /0        9/16/92

SEP 16 1992
ERIE COUNTY
CLERK'S OFFICE

STATE OF NEW YORK
SUPREME COURT:   COUNTY OF ERIE

IN RE: ~~DES MARKET SHARE~~ )
~~LITIGATION~~               )    DES MARKET SHARE-
                            )    LITIGATION MASTER FILE
_____)
                            )    Index No. 2225/90
THIS DOCUMENT APPLIES TO ALL CASES)   Erie County
_____)

## ORDER

Upon reading the joint application for an Order to Show
Cause of Eli Lilly and Company, E.R. Squibb & Sons, Inc., and
plaintiffs represented by William Dinkes of the firm of
Dinkes & Morelli, seeking an order approving the settlement
among the settling parties, as defined below, as a fair and
reasonable resolution of the disputed market share issues and a
further order establishing procedures to effectuate the
settlement and govern further proceedings in this action, the
Affirmation of Charles J. Walsh dated August 13, 1992, the
Affidavit of Kenneth A. Cohen In Support of Approval of
Settlement dated August 17, 1992, the Affirmation In Opposition
of Arthur Luxenberg dated August 12, 1992, and upon all of the
pleadings and proceedings had in this case, and a hearing
having been held before this Court on August 21, 1992, pursuant
to an Order to Show Cause signed July 9, 1992, inviting the
participation of all settling parties to this consolidated
action and seeking evidence of any opposition to the Court's
approval of the settlement and issuance of related procedural

orders, and due deliberation having been had, the Court makes the following findings and orders:

I. Findings and Order Approving Settlement.

The Court after hearing, argument, and written filings or presentations by counsel for Eli Lilly and Company, E.R. Squibb & Sons, Inc., and plaintiffs finds:

1. Following the decision of the Court of Appeals in Hymowitz v. Eli Lilly & Co., 73 N.Y.2d 487, 502, 541 N.Y.S.2d 941, 944 (1989), which permitted plaintiffs who were unable to identify the manufacturer of the diethylstilbestrol ("DES") to which they were allegedly exposed to proceed against manufacturers of DES under a "market share" theory, this case was begun pursuant to an Order to Show Cause dated February 26, 1990 and an Order of Severance and Consolidation dated April 4, 1990.

2. Pursuant to those orders, over 500 cases involving more than 500 plaintiffs and approximately 50 defendants were consolidated in this proceeding for discovery and a determination of the market shares of each of the defendants.

3. This Court determined, as a basis for issuing the Order of Severance and Consolidation, that policies of efficiency and consistency of results applied strongly to the DES litigation in New York, and dictated that the market share issue should be determined once for the hundreds of DES cases that had been brought in the courts of New York. The Court noted that the Court of Appeals in Hymowitz chose the

2

particular market share remedy it did in part to avoid "the
injustices arising from ... inconsistent results." 73 N.Y.2d
at 511, 541 N.Y.S.2d at 950.

4.  Pursuant to the Court's Orders, cases in 18
different counties were consolidated.  The cases had been
brought by over 80 counsel representing plaintiffs.

5.  When the initial severance and consolidation was
ordered, no party objected to the severance and consolidation
of the market share issue for trial in a single forum.  The
only objection was to the particular venue chosen.

6.  Subsequent to this Court's initial order of
severance and consolidation, the Court granted further motions
by the defendant Eli Lilly and Company to sever and consolidate
the market share issue in cases subsequently filed in the
Supreme Court in various counties.  Those motions were made on
December 21, 1990; February 11, 1992; and June 5, 1992.  The
Orders granting those motions added a further 46 cases to this
proceeding.  As a result of the original order of severance and
consolidation and the granting of the three subsequent motions,
the market share issue in the cases listed in Exhibit A to this
Order were consolidated in this proceeding.

7.  After consolidation, this Court ruled that it
would determine the market shares of the defendants, but would
not make any substantive rulings concerning plaintiffs'
underlying tort claims against the defendants.  Thus, the Court
did not grant motions to dismiss or other dispositive relief

3

based on such arguments as a defendant's assertion that it had sold DES but did not specifically recommend that its DES be used in pregnancy and thus should have no liability. Rather, this Court defined its task as solely to establish the market shares of the defendants. Later rulings on any liability-based defense and later applicability of the market share findings to be made in this case were left for the original transferor courts; it is up to the transferor court in any given case, and not this Court, to decide whether the market share remedy applies at all in the case, and to identify the year and dosage size for which market shares must be determined in a particular case.

8. The discovery proceedings in this case, conducted pursuant to a Case Management Order adopted by the Court after negotiation among the parties, submissions by various parties, and a hearing on May 22, 1990, have produced extensive factual and expert evidence on which market share findings can be based.

9. The relevant DES markets in which the defendants' market shares were to be measured were defined by the Court, after motion and hearing, by Order entered March 27, 1991. That Order required that this case establish separate market shares for the dosage sizes of DES found relevant to the use of DES in connection with pregnancy: the 5 mg. DES tablet market, the 25 mg. DES tablet market, the 100 mg. DES tablet market, and "blended" market shares for use when several different dosage sizes were involved in a particular case or when it was

impossible to determine to what dosage size a plaintiff had
been exposed in a particular case. The Order also required
that the defendants' market shares be established in each of
these dosage sizes separately for each year from 1947 through
1971. Plaintiffs and almost all defendants supported this
definition of the markets in which the defendants' market
shares would be measured. Pursuant to the Court's Order, the
market shares to be found for each relevant dosage size and
year by year for each company were then calculated by the
parties' experts in a series of market share "matrices" or
tables.

10. The Court appointed Goodwin, Procter & Hoar,
counsel for Eli Lilly and Company, and Dickson, Carlson &
Campillo, and later Sills Cummis Zuckerman Radin Tischman
Epstein & Gross, P.A., counsel for E.R. Squibb & Sons, Inc., as
liaison counsel for the defendants. The firm of Lester Schwab
Katz & Dwyer, counsel for Burroughs Wellcome Co., was
subsequently added as liaison counsel for defendants. The
Court appointed Roman M. Silberfeld of the firm of Simke,
Chodos, Silberfeld & Anteau as liaison counsel for plaintiffs.
Mr. Silberfeld was retained by a group of counsel for
plaintiffs, including Mr. Perry Weitz of the firm of Weitz &
Luxenberg, Ms. Sybil Shainwald of Law Offices of Sybil
Shainwald, Mr. William Dinkes of the firm of Dinkes & Morelli,
and Mr. Leonard Finz of the Law Offices of Leonard L. Finz,
P.C., who represented the plaintiffs in a substantial majority

of the consolidated cases, to try the market share case on behalf of plaintiffs. These liaison counsel were appointed in the Case Management Order entered by the Court on June 26, 1990 and served on all parties. The Case Management Order, Section III, made it clear that liaison counsel had no substantive power to bind any particular party, and that counsel for any party had the right to file papers on behalf of that party and to appear and be heard with respect to any issue and the right to conduct discovery and appear at trial. Liaison counsel were primarily appointed to keep the various parties on each side apprised of proceedings, to attempt to work toward consensus positions, and to present such consensus positions where that was possible.

11. Mr. Silberfeld was retained in part because of his prior experience with the market share issue. He had been one of two trial counsel for plaintiffs in one of the two DES market share cases tried prior to this case, Stapp, et al. v. Abbott Laboratories, et al., No. C344407, Los Angeles County, California.

12. Mr. Silberfeld took the lead for plaintiffs in discovery and trial preparation. In addition, plaintiffs' counsel William Fireman of the firm of Julien & Schlesinger, P.C. participated in the briefing and argument of the jury trial issue, and attorneys from the firm of Weitz & Luxenberg participated in certain expert discovery. Mr. Silberfeld represented, and the Court reasonably concluded, that counsel

for all plaintiffs were content to have Mr. Silberfeld conduct discovery and try the matter for them.

13.   The Case Management Order directed all defendants to produce sales or related production data which might show the extent of their participation in the DES market. Upon completion of the initial disclosures by defendants, the Case Management Order provided a period of 135 days during which follow-up factual discovery could be conducted of any defendant. The time within such discovery had to be conducted under the Court's Case Management Order ended 240 days after the date of the Court's Order, or February 21, 1991.

14.   The Case Management Order required that parties intending to present expert witnesses at trial disclose those expert witnesses and their opinions at the end of the discovery period. The date for such disclosure was, by agreement of the parties and with approval of the Court, moved to December 13, 1991. On that date plaintiffs disclosed four expert witnesses and their opinions. Plaintiffs' expert witnesses disclosed on that date were Dr. Peter Berck, Dr. Jeffrey Perloff, and Dr. Larry Karp, each of whom is an economist and a professor at the University of California at Berkeley, and Dr. David L. Sunding, also an economist, of the Law and Economics Consulting Group, Inc., of Berkeley, California. Plaintiffs' expert witnesses included witnesses who had previously testified about defendants' market shares: Dr. Perloff had testified for the plaintiffs in the Los Angeles market share trial, Stapp v.

7

Abbott Laboratories, and Dr. Berck had testified for the
plaintiffs in the San Francisco market share trial, In re
Complex DES Litigation, No. 830109, Superior Court,
San Francisco, California. At the same time, the defendant Eli
Lilly and Company disclosed expert witnesses Mr. Raymond A.
Gosselin, Dr. Keith Leffler, Benjamin P. Sachs, M.D., and
Dr. Lynne Sylvia; the defendant E.R. Squibb & Sons, Inc.
disclosed expert witnesses Dr. Henry G. Grabowski and
Dr. W. Kip Viscusi; the defendant Boyle & Company disclosed
Dr. Walter J. Mead; the defendant Emons Industries disclosed
Professor L.G. Thomas, and a number of defendants including All
Putter Company, Inc., American Home Products Corporation, and
22 other defendants disclosed Dr. Thomas A. Barocci. Most of
these experts were also economists: Dr. Grabowski and
Dr. Viscusi are Professors of Economics at Duke University, and
Dr. Leffler is a Professor of Economics at the University of
Washington; Dr. Sachs is a medical doctor specializing in
obstetrics and gynecology and in epidemiology; Dr. Sylvia has a
doctorate in pharmacy and is in charge of the Drug Information
Center at a large hospital in Boston; and Mr. Gosselin is a
former professor and President of the Massachusetts College of
Pharmacy, and developed the first national marketing survey of
prescription drugs in the early 1950s.

    15. Pursuant to the provisions of the Case Management
Order, all parties who intended to present expert opinion at
trial were then required to make extensive disclosures of the

material relied on by their experts and the experts'
calculations.  Defendants provided this material to plaintiffs'
liaison counsel and plaintiffs provided material to defendants
as to some of the experts plaintiffs had designated on
December 27, 1991.

16.  Plaintiffs subsequently disclosed two further
experts:  Dr. Robert J. Stillman, a medical doctor who was
prepared to testify about the history of the use of DES, in
response to similar testimony from the defendants' witness
Dr. Sachs, and Dr. Shanna Swan, a biostatistician who has some
years of experience testifying in DES litigation and who
planned to testify concerning the issue of the average dosage
of DES taken by women during pregnancy.  Defendant Eli Lilly
and Company disclosed further expert witnesses Dr. Jerry
Hausman, an economist and professor of economics at MIT, and
Dr. Susan Ellerin, a statistician who also planned to testify
about the average dosage of DES taken by pregnant women; the
defendant E.R. Squibb & Sons, Inc. designated a further expert
witness, Dr. Stephen R. Brooks, an economist.

17.  On March 3, 1992, Mr. Silberfeld notified the
Court, all plaintiffs' counsel and defendants' liaison counsel
that he sought to withdraw from the case as a result of
difficulties he had encountered in collecting legal fees from
other plaintiffs' counsel.  His letter alerted plaintiffs'
counsel that they should protect their clients' rights by
participation in the case to the extent they deemed necessary.

Mr. Silberfeld's attempt to withdraw resulted in several
hearings concerning his continued role in the case, and
ultimately in orders by the Court adding as additional
plaintiffs' liaison counsel Weitz & Luxenberg, Dinkes &
Morelli, the Law Offices of Sybil Shainwald and the Law Offices
of Leonard L. Finz. P.C. The Court later ordered
Mr. Silberfeld to remain in the case, first to complete expert
discovery and then for trial.

        18.   Mr. Silberfeld on behalf of plaintiffs deposed
all but one of the expert witnesses disclosed by Lilly and
Squibb and deposed Dr. Barocci. Mr. Silberfeld also defended
the depositions of Dr. Perloff, Dr. Berck, Dr. Swan and Dr.
Karp.

        19.   Throughout the discovery and other pre-trial
proceedings, all plaintiffs' counsel have been free to
participate in such discovery, including expert discovery, and
to be heard by the Court on any pre-trial matter considered at
the numerous hearings conducted by the Court. Representatives
of the firm of Weitz & Luxenberg participated in discovery,
taking the deposition of Lilly's witness Raymond Gosselin and
defending the deposition of plaintiffs' witness Dr. Robert
Stillman.

        20.   The Court granted extensions of time for
disclosure of final expert opinions until May 5, 1992. The
extensions allowed the experts to make further revisions based
on information learned through the discovery of other experts,

                                10

if they felt revisions were appropriate. The Court also
extended the trial date from May 18 until June 8. This
extension was granted to resolve a conflict in Mr. Silberfeld's
schedule, so that he would be able to try the case for
plaintiffs.

21. With assistance of the Court, negotiations during
May and June, 1992 between Mr. Dinkes, Mr. Silberfeld, Ms.
Shainwald, Mr. Stuart Finz and counsel for Lilly produced a
tentative settlement agreement. Four plaintiffs represented by
attorney Ronald R. Benjamin (Linda Pike, Meryl Shier, Elaine
Weinman and Caren Glickson) have been excluded from the
settlement by prior ruling of this Court.

22. Mr. Finz agreed to the settlement on behalf of
the plaintiffs whom his firm represents in cases listed in
Exhibit A, on the record in Chambers and in open Court on
June 1, 1992. Mr. Finz then filed an Affirmation, dated
August 14, 1992, in which he requested that this Court order an
in camera hearing to require attorney Ronald R. Benjamin to
make an offer of proof to substantiate his allegations that
Lilly's market share exceeded that shown in the settlement
matrices. Attorney Ronald Berson on behalf of his clients then
filed an affidavit in support of Mr. Finz's request, although
Mr. Berson had previously filed an affirmation in support of
the settlement. Both the filing made by Mr. Finz and the
filing made by Mr. Berson were not served on and received by
liaison counsel in this case on or before August 14, 1992, as

11

required by the terms of this Court's Order to Show Cause dated July 9, 1992.

23. By letter dated May 7, 1992, Arthur Luxenberg on behalf of the firm of Weitz & Luxenberg notified this Court that his firm had "effectuated a settlement in all our then-pending DES cases, including those pending in the State Court." He further stated that "[i]n this regard, the issue of a market share trial as it related to this firm has been rendered moot." Weitz & Luxenberg did not withdraw their cases at that time from this proceeding despite the imminence of trial. In reliance upon the representation that the Weitz & Luxenberg cases were settled and, therefore, had no need for a market share determination, the parties with assistance of the Court proceeded to negotiate a settlement. Mr. Luxenberg filed an Affirmation in Opposition dated August 12, 1992, in which he requested that his firm's clients be excluded from the settlement. That Affirmation in Opposition was not served on all liaison counsel in this case and received by them by August 14, as required by the Court's Order to Show Cause dated July 9, 1992. In view of the facts stated above and based on the arguments presented by defendants at the hearing on August 21, 1992, the Court has concluded that Mr. Luxenberg's clients are judicially estopped from excluding themselves from the settlement. After hearing on August 21, 1992, Mr. Luxenberg's request was therefore denied.

12

24. The settlement is based on an agreement by all defendants and all of the plaintiffs in this proceeding (except those listed in paragraph 21 above represented by Mr. Benjamin and those represented by the attorneys listed in paragraphs 22 and 23 above) to accept as binding in their cases the market shares set forth in the several matrices attached as Exhibit B hereto, and on the facts found in paragraphs 22 and 23.

25. The settlement provides for market shares that are either equal to or greater than those found in the San Francisco market share trial, In re Complex DES Litigation, supra. In the years 1949-1960, when the majority of the plaintiffs were born, the agreement provides for market shares for most of the defendants that are 10% higher than those found after an extensive trial in the San Francisco market share case. A few defendants have reached different agreements with the plaintiffs which provide for slightly lower market shares, for example in years where plaintiffs' expert Dr. Perloff had reached conclusions showing lower shares than found in the San Francisco market share proceeding. Those agreements are also embodied in the matrices attached as Exhibit B.

26. The Court has been presented with and has reviewed evidence which shows that the settlement is fair and reasonable to all of the settling parties. That evidence includes the following:

a. Counsel for many of the plaintiffs, including Liaison Counsel Mr. Silberfeld, who has had extensive

13

experience with respect to the question of the defendants' market shares and has been fully involved in discovery and the preparation of plaintiffs' case, as well as counsel for defendants, have represented to the Court that the market shares contained in Exhibit B are within the range of reasonable outcomes of a market share trial, and that the expert testimony expected to be offered by the parties would support both higher and lower figures than the ones contained in Exhibit B.

        b.  In settling, the plaintiffs and the defendants each avoid not only the risks of an adverse outcome, but also the certainty that very large transaction costs would be incurred.  This jury trial was estimated to last from 4 to 6 weeks, and could well have run longer.  The San Francisco market share trial, which was tried to a judge and not to a jury, took between 5 and 6 weeks; the Los Angeles market share trial, also tried to a judge and not a jury, took approximately 5 weeks.

        c.  At trial, the defendants expected to offer evidence including expert testimony supporting market shares for defendants substantially below those found in the San Francisco market share trial, and a fortiori substantially below the market shares contained in the settlement.  The expert testimony which defendants planned to offer included opinions relying on additional data and analysis not presented in the San Francisco case, including expert testimony by

Dr. Ellerin concerning the average dosage of DES taken by pregnant women and extensive additional expert testimony by Dr. Sachs and Professor Viscusi analyzing the amount of DES taken by patients with medical conditions other than problems of pregnancy.

d.  The market shares incorporated in the settlement matrices are in most cases not as high as those that plaintiffs' experts were expected to present but are higher than those that defendants' experts would present.  In addition, experts for some of the defendants other than Lilly and Squibb would have offered evidence that those defendants' shares were significantly less than the findings made in San Francisco.

e.  Some of plaintiffs' experts acknowledged during their depositions that there were additional corrections needed to be made in their opinions concerning market shares, which would have reduced the market shares of defendants to which these experts would have testified.

f.  In the San Francisco market share case, plaintiffs' expert Dr. Peter Berck testified, but the Court adopted the shares of Squibb's expert Dr. Grabowski.

g.  In the Los Angeles market share trial, plaintiffs' expert Jeffrey Perloff testified.  While the basis for the Court's conclusions as to market shares is not completely clear, because in all but one case the Court, based on its view of the California market share rule, increased the

15

shares it found so that the defendants in any particular case would be responsible for 100% of the market, it is apparent that the Court did not rely on the opinions of Dr. Perloff; in the one case where the Court refused to increase the defendants' shares to equal 100%, the Court's finding of a market share for Lilly adopted the testimony of Lilly's experts, not that of Dr. Perloff. There is an obvious risk that the plaintiffs' experts whose opinions were not found reliable in earlier litigation would not be credited at another trial addressing the same issues.

          h.   Over 80 plaintiffs" counsel, experienced in tort litigation and representing literally hundreds of clients, have agreed to accept the matrices attached as Exhibit B in settlement of their clients' claims. Similarly experienced counsel for approximately 50 defendants have agreed to accept the settlement and thereby avoid the risks of litigation. (Some defendants have asserted defenses to individual cases based on lack of personal or subject matter jurisdiction; nothing in this Order should be construed as a waiver of those defenses.) The acceptance of the settlement by counsel for most plaintiffs and all defendants occurred on the eve of trial, at a time when all counsel could see that the alternative of an immediate trial was available.

     Accordingly, the Court finds that the settlement is fair, reasonable, and in the interests of the settling parties, and protects the rights of all parties entering into it; and it is hereby

16

ORDERED that the settlement entered into by all defendants and by all plaintiffs in the cases listed in Exhibit A except plaintiffs Pike, Shier, Glickson and Weinman (collectively the "Settling Plaintiffs") is hereby approved and confirmed by this Court, and shall be binding on the parties thereto; and it is further

ORDERED that in all litigation between any of the Settling Plaintiffs and any of the defendants involving alleged injury caused by DES, any market share issue shall be determined according to the settling parties' agreement that the market shares of the defendants are as stated in the matrices attached to this Order as Exhibit B, and that those shares shall be the market shares of the defendants for all purposes relevant to the resolution of any such dispute or litigation; and it is further

ORDERED that all Settling Plaintiffs and all defendants will not dispute, in any litigation between them, that the market shares of defendants in such proceedings are the market shares contained in the matrices attached as Exhibit B. Notwithstanding the terms and conditions of this settlement or any order or judgment entered thereon, defendants reserve all defenses which they may have regarding lack of personal or subject matter jurisdiction.

II.  Defendants' Stipulation

As part of the consideration for plaintiffs' agreement to be bound by the settlement, the defendants have agreed that in

any future DES litigation brought by counsel for the Settling
Plaintiffs in the courts of the state of New York and governed
by the Hymowitz decision in which market shares must be
determined, if the plaintiff in a particular case elects,
within 30 days after receiving a copy of this Order pursuant to
paragraph b. on page 20 of this Order, to stipulate and agree
to the market shares embodied in the matrices attached hereto
as Exhibit B and so informs the defendants in that case in
writing, any of the settling defendants which are parties to
that litigation will agree to be bound by the market shares
contained in the matrices attached as Exhibit B in that
litigation, in order to resolve the market share issues in that
particular case.

III. Further Proceedings to Implement and Enforce the
     Settlement Agreement.

The Court further finds that:

27. With respect to future cases that may be brought
in the courts of New York alleging harm from DES, the need to
avoid repeated trials of the market share issue is compelling.
The policies of efficiency and consistency of results
identified above should be served in DES litigation in the
future.

28. The discovery conducted in this proceeding, and
in particular the production of sales or production data from
the defendants, has created a resource that represents a
significant step forward for any future trial of market share

18

in the New York courts. That material will be an important component of the factual basis of any subsequent DES market share litigation. In addition, the extensive expert discovery completed in this case is also a valuable resource. Further, the evidentiary stipulation entered into by the parties and confirmed by Order of this Court dated April 15, 1992 recognizes the experts' needs to rely on the data which discovery has shown is the only data available. In general, this material should be retained and should be available to parties in future DES cases.

29. The need to implement the parties' settlement, including supervision over any disputes that arise concerning • the effect of that settlement; the need for supervision of the defendants' promise set out in Part II above, to enter into a stipulation in future cases based on the market shares shown in the matrices attached as Exhibit B; the need for supervision over the production and use of all discovery materials generated in this case; and the need to resolve the market share issue for the non-settling plaintiffs, have persuaded this Court to retain jurisdiction over future market share litigation.

30. The limited resources of the courts and of litigants require that the future consideration of market share issues be reserved to this Court, which has gained familiarity with many of the legal and factual matters which will recur in future disputes or proceedings related to market share issues.

31.  The need to have one location where future cases
can be consolidated to determine market share issues and where
the parties to such cases can have the benefit of work already
done to prepare the market share issue for trial dictates that,
so long as this case remains open, new cases in which market
share must be resolved should have that issue severed and
transferred to Erie County, and consolidated in this case, as
has happened with DES litigation to this point.

Therefore, it is ORDERED that this case will remain open
for any proceedings necessary or appropriate to enforce the
agreement of the settling parties, to enforce or modify this
Order, and for such other purposes, including supervision of
discovery and trial of future cases, as this Court may require;
and it is further

ORDERED that in any DES cases filed in the courts of New
York alleging recovery on a market share basis, other than
cases listed on Exhibit A, any party to such a case may move in
this Court to have the market share issue in such case severed
and transferred to Erie County, and consolidated with this
case, for pre-trial proceedings and trial; and, upon such a
motion, the Court will schedule a hearing to determine whether
the market share issue in that case should for any reason not
be severed and transferred to Erie County and consolidated with
this case; and it is further

ORDERED that in any DES case filed in the Supreme Court for
Erie County, the market share issue in such case shall be

severed and consolidated with this proceeding, unless all plaintiffs in such case stipulate within 30 days of the service of this Order, as required by section (b) below that they will accept the terms of the agreement entered into here; and it is further

ORDERED that if counsel for any of the Settling Plaintiffs in cases listed in Exhibit A presently or in the future become counsel of record for any other plaintiff alleging a right to recover under a market share theory from any defendant, and if the market share issue in such case is severed and transferred to this Court or consolidated with this proceeding for purposes of determining the market shares of the defendants in such case, discovery and pre-trial proceedings on the market share issue in such case shall be determined according to the following procedure and schedule:

a.   All discovery completed in this consolidated proceeding shall be compiled and indexed by liaison counsel for the defendants, who shall file a copy of the index with the Court on or before October 1, 1992.  Liaison counsel for plaintiffs shall review the index after it is filed, and shall notify the Court and defendants' liaison counsel if the index should contain or refer to additional discovery material.  A copy of all voluntary disclosures of sales or production data made by the defendants, a copy of each expert designation and any subsequent amendment(s) thereto, a copy of each expert deposition and all exhibits thereto, and a copy of the index

shall be maintained, under the Court's supervision, at Hodgson, Russ, Andrews, Woods & Goodyear. This discovery shall be made available for inspection on reasonable notice and at reasonable times to all parties in future cases. Any party in any future cases shall be entitled to obtain a copy of any or all of this discovery at her own expense. Any photocopying will be arranged and supervised by Hodgson, Russ, Andrews, Woods & Goodyear. Hodgson, Russ, Andrews, Woods & Goodyear may submit to the Court bills for reasonable hourly charges incurred in making such discovery materials available for inspection to any party, and any such bill shall be paid in equal shares by liaison counsel for defendants and by counsel for the party seeking to inspect and copy such discovery documents.

In addition, Roman Silberfeld will make his market share files, housed in Los Angeles, California, available for inspection on reasonable notice and at reasonable times to counsel for any plaintiff. Any plaintiff's counsel shall be entitled to obtain a copy of any or all of Mr. Silberfeld's files relating to this market share case at his or her own expense.

b.   Within 30 days of entry of an order transferring the market share issue in any action to this Court, defendants shall serve upon plaintiffs in that action a copy of this Order and shall simultaneously notify this Court that such service has been made.

22

c. Within 60 days of entry of an order transferring the market share issue in any action to this Court, or as soon thereafter as is practicable, the Court shall schedule a conference to set a schedule for discovery which shall indclude deadlines for the designation of experts and the completion of expert discovery. Following the conference, the Court shall issue an Order to govern such discovery.

d. It is in the interests of the Court and the parties to expedite discovery in any future case, and to avoid duplicative discovery. Accordingly, any party that intends to depose an expert who has previously been deposed in this consolidated market share proceeding must move on notice for permission to conduct said deposition. Such motion will be granted only upon a showing of good cause, and will not normally be granted if the expert has not materially modified the opinions he or she has presented in this case during the expert depositions conducted in the spring of 1992.

Any party that intends to conduct any form of discovery (other than expert discovery) must move for permission to do so. Such motion will be granted only upon a showing of good cause, and further discovery, other than discovery needed to establish the dosage, form and size of the DES to which a plaintiff was exposed, will not normally be granted.

e. A plaintiff's failure to meet any of the deadlines set forth in the Order issued pursuant to ¶ c of this

Section or as may thereafter be modified by the Court shall constitute a waiver of that plaintiff's right to litigate the issue of market share, and shall constitute an agreement by the plaintiff to be bound by the market shares which are set forth in the matrices attached as Exhibit B.

    f.  At any trial of the market share issue, the market shall be defined consistently with the orders and rulings already made in this case referred to in paragraph 9 of the Court's findings on pages 4-5 above.  The trial shall establish market shares for the defendants sued by any plaintiff participating in the trial, for the year of that plaintiff's birth and the dosage form and size of DES to which she was exposed (e.g., the market of 25 mg. DES tablets in 1949) only.

    g.  At any trial of the market share issue, the evidentiary stipulation entered into by the parties and approved by the Court on April 15, 1992, shall continue in full force and effect.

    Notwithstanding any other provision of this Order, this Order does not apply to the plaintiffs represented by Mr. Benjamin (Pike, Shier, Glickson and Weinman) who have chosen not to enter into this settlement.  The Court will, at a later date, schedule a hearing to determine how to handle those plaintiffs' market share claims and to determine the extent to which they are bound by the Orders entered by the Court to date.

To carry out the effect of this Order, this Court will discuss with Justices of the Supreme Court in other counties in which DES litigation has been brought the advisability of entering in those counties standing orders which would automatically sever and transfer to this Court the market share issue in DES cases subsequently filed in those courts.

James B. Kane
Supreme Court Justice

DATED:   September /5, 1992
         Buffalo, New York

WP-0605/L

G R A N T E D
SEP 1  1992 19
COURT CLERK

# NY SETTLEMENT SHARES 5 MG

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding.
All shares are expressed as percentages.

| | 1947 | 1948 | 1949 | 1950 | 1951 | 1952 | 1953 | 1954 | 1955 | 1956 | 1957 | 1958 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ABBOTT | 3.6539 | 3.2275 | 2.9514 | 2.4001 | 2.3959 | 2.0859 | 1.8744 | 1.4097 | 1.2822 | 1.2962 | 1.2840 | 1.3087 |
| ALLPUTTER (APPROVED) | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| AMERICAN HOME PRODU | | | | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| AMERICAN PHARM | | | | | | | | | | | | |
| AMES CO. | 0.1600 | 1.3451 | 2.7631 | 4.0867 | 4.0867 | 4.0867 | 4.0867 | 4.0867 | 4.0867 | 4.0867 | 4.0967 | 4.0967 |
| AMFRE GRANT (EMONS) | | | | | | | 0.0734 | 0.1466 | 0.2200 | 0.2200 | 0.2200 | 0.2200 |
| AYERST LABORATORIES | SJ | 0.0074 | 0.0380 | 0.0666 | 0.0872 | 0.0947 | 0.0943 | 0.0900 | 0.0774 | 0.0651 | 0.0778 | 0.1009 |
| BARRE | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BOEHRINGER INGELHEIM | | | | | | | | | | | | 0.0234 |
| BOYLE | SJ | 0.0145 | 0.0395 | 0.0534 | 0.0537 | 0.0469 | 0.0386 | 0.0316 | 0.0261 | 0.0219 | 0.0144 | 0.0076 |
| BREON | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BREWER | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BRYANT PHARM | | | | | | | | | | 0.1253 | 0.6522 | 1.4519 |
| BURROUGHS | 5.8082 | 4.6852 | 3.5518 | 2.4390 | 1.7168 | 1.2961 | 1.0156 | 0.8118 | 0.6483 | 0.5271 | 0.2507 | 0.3760 |
| CARNRICK | SJ | SJ | SJ | 0.7149 | 0.9288 | 0.8933 | 0.8026 | 0.5864 | 0.4183 | 0.2968 | 0.3736 | 0.2103 |
| CHASE | 0.0271 | 0.0667 | 0.1466 | 0.2200 | 1.4560 | 2.6060 | 2.4699 | 1.4186 | 0.2200 | 0.2200 | 0.2484 | 0.2046 |
| CIBA | SJ | 0.0139 | 0.0060 | SJ | SJ | SJ | SJ | SJ | SJ | 0.2200 | 0.2200 | 0.2200 |
| COLE | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| DEXTER | | | | | 0.0249 | 0.0452 | 0.0651 | 0.0651 | 0.0651 | 0.0651 | 0.0651 | 0.0651 |
| DRUG PRODS. | SJ | SJ | 0.0421 | 0.2200 | 0.2200 | 0.2200 | 0.2200 | 0.2200 | 0.2200 | 0.2200 | 0.2200 | SJ |
| EVRON | 0.1600 | 0.1733 | 0.2054 | 0.0944 | 0.1265 | 0.1265 | 0.1265 | 0.1265 | 0.1265 | 0.1265 | 0.1265 | 0.1265 |
| HAACK LABS | | | | 0.2495 | 0.4990 | 0.7484 | 0.7484 | 0.7484 | 0.7484 | 0.7484 | 0.7484 | 0.7484 |
| HANCE & WHITE | | | | 1.1458 | 2.2915 | 3.4373 | 3.4373 | 3.4373 | 3.4373 | 3.4373 | 3.1418 | 2.8465 |
| HARVEY | | | | 0.0734 | 0.1466 | 0.2200 | 0.2200 | 0.2200 | 0.2200 | 0.2200 | 0.2200 | 0.2200 |

* For all dosage sizes, shares derived from Perloff 1 matrices, except for 100 mg, derived from Barck 100 mg matrix.

Exhibit B

# NY SETTLEMENT SHARES 5 MG

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding.
All shares are expressed as percentages.

| | 1959 | 1960 | 1961 | 1962 | 1963 | 1964 | 1965 | 1966 | 1967 | 1968 | 1969 | 1970 | 1971 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ABBOTT | 1.3050 | 1.2286 | 0.8228 | 0.3924 | 0.1136 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| ALLPUTTER (APPROVE | | 0.0295 | 0.1428 | 0.2040 | 0.2303 | 0.2605 | 0.2866 | 0.3269 | 0.2994 | 0.3193 | 0.2639 | 0.3411 | 0.3771 |
| AMERICAN HOME PROD | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| AMERICAN PHARM | 4.0867 | 4.0967 | 3.7152 | 3.7152 | 3.7152 | 3.7152 | 3.7152 | 3.7152 | 3.7152 | 3.7152 | 3.7152 | 3.7152 | 3.7152 |
| AMES CO. | 0.2200 | 0.2200 | 0.2000 | 0.2000 | 0.2000 | 0.2000 | 0.2000 | 0.2000 | 0.2000 | 0.1333 | 0.0667 | | |
| AMFRE GRANT (EMONS | 0.0920 | 0.0637 | 0.0631 | 0.1205 | 0.1220 | 0.0933 | 0.0721 | 0.0717 | 0.0519 | 0.0273 | 0.0287 | 0.0407 | 0.0343 |
| AYERST LABORATORIE | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BARRE | 0.0523 | 0.0965 | 0.0972 | 0.1049 | 0.1054 | 0.1119 | 0.1105 | 0.1125 | 0.1100 | 0.1157 | 0.1231 | 0.1357 | 0.1469 |
| BOEHRINGER INGELHEI | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BOYLE | 0.0062 | 0.0086 | 0.0086 | 0.0027 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BREON | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BREWER | 1.6223 | 0.9738 | 0.7005 | 0.7550 | 0.7586 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BRYANT PHARM | 0.3760 | 0.3760 | 0.3418 | 0.3418 | 0.3418 | 0.3418 | 0.3418 | 0.3418 | 0.2279 | 0.1139 | | | |
| BURROUGHS | 0.0658 | | | | | | | | | | | | |
| CARNRICK | 0.1438 | 0.0936 | 0.0277 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| CHASE | 0.2200 | 0.2200 | 0.2000 | 0.2000 | 0.2000 | 0.2000 | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| CIBA | SJ | SJ | SJ | SJ | SJ | SJ | 0.1333 | 0.0667 | SJ | SJ | SJ | SJ | SJ |
| COLE | 0.0651 | 0.0851 | 0.0592 | 0.0403 | 0.0209 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| DEXTER | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| DRUG PROPS. | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| EVRON | 0.1265 | 0.1265 | 0.1150 | 0.1150 | 0.1150 | 0.1150 | 0.1150 | 0.1150 | 0.1150 | 0.1150 | 0.1150 | 0.0767 | 0.0383 |
| HAACK LABS | 0.7484 | 0.7484 | 0.6804 | 0.6804 | 0.6804 | 0.4536 | 0.2268 | | | | | | |
| HANCE & WHITE | 2.5510 | 2.5510 | 2.3191 | 1.5461 | 0.7730 | | | | | | | | |
| HARVEY | 0.2200 | 0.2200 | 0.2000 | 0.2000 | 0.2000 | 0.2000 | 0.2000 | 0.2000 | 0.2000 | 0.2000 | 0.2000 | 0.2000 | 0.2000 |

* For all dosage sizes, shares derived from Perloff 1 matrices, except for 100 mg, derived from Berck 100 mg matrix.

2

# NY SETTLEMENT SHARES  5 MG

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| | 1947 | 1948 | 1949 | 1950 | 1951 | 1952 | 1953 | 1954 | 1955 | 1956 | 1957 | 1958 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| * HARTZ (FERNDALE) | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| IVES LABORATORY | SJ | SJ | SJ | SJ | | | | | | | | |
| KEY | | | | 0.0007 | 0.0147 | 0.0196 | 0.0191 | 0.0199 | 0.0213 | 0.0227 | 0.0226 | 0.0222 |
| KIRKMAN | | | | | | | | | | | | |
| KREMERS URBAN | | 0.0499 | 0.0800 | 0.0625 | 0.0823 | 0.0745 | 0.0290 | 0.0535 | 0.0759 | 0.0752 | 0.0705 | 0.0683 |
| LANNETT | | 0.0405 | 0.0862 | 0.1290 | 0.1364 | 0.1221 | 0.1025 | 0.0398 | 0.0299 | 0.0506 | 0.0329 | 0.0514 |
| LEDERLE | SJ | SJ | SJ | SJ | SJ | SJ | SJ | 0.0861 | 0.0659 | SJ | SJ | SJ |
| LILLY | 65.7713 | 60.8921 | 55.3012 | 44.4648 | 36.7561 | 32.2300 | 30.9009 | 28.5217 | 28.3723 | 27.9326 | 29.6112 | 31.1197 |
| LINCOLN | SJ | SJ | SJ | 0.0466 | 0.0935 | 0.1425 | 0.1801 | 0.1977 | 0.1950 | 0.1877 | 0.2024 | 0.2572 |
| MASSENGILL (SMITHKLIN) | 0.1799 | 0.3568 | 0.4874 | 0.4795 | 0.5574 | 0.6857 | 0.8271 | 0.8910 | 1.0473 | 1.0538 | 1.0629 | 1.0320 |
| MCKESSON LABS | | | | | | | | | | | | |
| MCNEIL | 0.3842 | 0.4665 | 0.4517 | 0.4013 | 0.3950 | 0.3875 | 0.3483 | 0.2650 | 0.2126 | 0.1021 | 0.1469 | 0.0069 |
| MERCK | 0.8298 | 1.6850 | 2.4701 | 2.6606 | 2.3354 | 1.9679 | 1.8769 | 1.7346 | 1.6781 | 1.5539 | 1.4615 | 1.3013 |
| MERRELL | | | | 0.4513 | 0.7169 | 0.6325 | 0.3091 | SJ | SJ | SJ | SJ | SJ |
| MEYER | | | | 0.0068 | 0.0180 | 0.0506 | 0.0665 | 0.0997 | 0.0818 | 0.0619 | 0.0526 | 0.0421 |
| OTIS CLAPP | SJ | SJ | | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| PERSON & COVEY | | | SJ | 0.1660 | 0.2563 | 0.2474 | 0.2292 | 0.2428 | 0.2295 | 0.2171 | 0.2211 | 0.2233 |
| PHYS'S DRUG & SUPPLY | | | 0.0853 | 0.2649 | 0.5298 | 0.7946 | 0.7946 | 0.7946 | 0.7946 | 0.7946 | 0.7946 | 0.7946 |
| PREMO | 0.7939 | 1.1059 | 1.3758 | 1.3399 | 1.3791 | 1.3314 | 1.2337 | 1.3067 | 1.2350 | 1.0605 | 0.9391 | 0.9492 |
| REID PROVIDENT | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | 0.0032 | 0.0065 | 0.0108 |
| REPUBLIC | | | | | | | | | | | | |
| REXALL | 0.5553 | 1.1651 | 1.4700 | 1.3463 | 1.1364 | 1.0189 | 0.9803 | 0.9156 | 0.9055 | 0.9048 | 0.9357 | 0.9831 |

For all dosage sizes, shares derived from Perloff matrices, except for 100 mg, derived from Berck 100 mg matrix.

# NY SETTLEMENT SHARES 5 MG

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| | 1959 | 1960 | 1961 | 1962 | 1963 | 1964 | 1965 | 1966 | 1967 | 1968 | 1969 | 1970 | 1971 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| * HARTZ (FERNDALE) | | | | | | | | | | | | | |
| IVES LABORATORY | | | | | | | | | | | | | |
| KEY | SJ | SJ | SJ | SJ | 0.0314 | 0.0484 | 0.0476 | 0.0152 | SJ | SJ | SJ | SJ | SJ |
| KIRKMAN | 0.0212 | 0.0217 | 0.0169 | 0.0125 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| KREMERS URBAN | 0.0634 | 0.0773 | 0.0768 | 0.0740 | 0.0624 | 0.0641 | 0.0643 | 0.0575 | 0.0387 | 0.0249 | 0.0175 | 0.0193 | 0.0209 |
| LANNETT | | | | | 0.0061 | 0.0022 | | | | | | | |
| LEDERLE | 0.0617 | 0.1092 | 0.1501 | 0.2195 | 0.2554 | 0.2561 | 0.2124 | 0.2217 | 0.1511 | 0.1057 | SJ | SJ | SJ |
| LILLY | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| LINCOLN | 33.6416 | 40.3435 | 41.6501 | 44.0745 | 45.0579 | 47.8120 | 48.9129 | 53.3602 | 53.9960 | 57.2142 | 59.6181 | 65.4205 | 71.3249 |
| MASSENGILL (SMITHKL) | 0.2815 | 0.2572 | 0.2592 | 0.2797 | 0.2108 | 0.0746 | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| MCKESSON LABS | 1.0384 | 1.2741 | 1.3299 | 1.2831 | 1.0855 | 1.0984 | 1.0820 | 0.9999 | 0.6469 | 0.3415 | 0.1215 | SJ | SJ |
| MCNEIL | | 2.3558 | 4.2831 | 6.4247 | 6.4247 | 6.4247 | 6.4247 | 6.4247 | 4.2831 | 2.1416 | SJ | SJ | SJ |
| MERCK | 0.0268 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| MERRELL | 1.3124 | 1.2715 | 0.7466 | 0.2933 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| MEYER | 0.0209 | | | | | | | | | | | | |
| OTIS CLAPP | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| PERSON & COVEY | 0.2257 | 0.2185 | 0.1722 | 0.1705 | 0.1376 | 0.0908 | 0.0358 | | | | | | |
| PHYS'S DRUG & SUPPL | 0.7946 | 0.7946 | 0.7224 | 0.7224 | 0.7224 | 0.4816 | 0.2408 | | | | | | |
| PREMO | 0.8314 | 0.9258 | 0.9331 | 1.1117 | 1.3207 | 1.5074 | 1.4961 | 1.4322 | 1.1996 | 0.9179 | 0.7300 | 0.6739 | 0.5878 |
| REID PROVIDENT | | | | | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| REPUBLIC | 0.0103 | 0.0100 | 0.0054 | 0.0022 | | | | | | | | | |
| REXALL | 1.1407 | 1.2362 | 1.2994 | 1.3405 | 1.4246 | 1.6635 | 1.6656 | 1.6401 | 1.4732 | 1.3010 | 0.9116 | 0.4989 | 0.0971 |

* For all dosage sizes, shares derived from Perloff I matrices, except for 100 mg, derived from Berck 100 mg matrix.

# NY SETTLEMENT SHARES 5 MG

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| | 1947 | 1948 | 1949 | 1950 | 1951 | 1952 | 1953 | 1954 | 1955 | 1956 | 1957 | 1958 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RITE-AID | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| RORER | 0.3856 | 0.3763 | 0.3814 | 0.3454 | 0.3748 | 0.4701 | 0.6136 | 0.6769 | 0.6707 | 0.6662 | 0.5781 | 0.4861 |
| ROWELL | SJ | SJ | SJ | 0.0025 | 0.0293 | 0.1035 | 0.1667 | 0.2110 | 0.2028 | 0.2319 | 0.2565 | 0.3105 |
| SMITH, CARROLL, DUNHA | 0.1600 | 0.3833 | 0.6672 | 0.9128 | 0.9128 | 0.9128 | 0.9128 | 0.9128 | 0.9128 | 0.9128 | 0.9128 | 0.6095 |
| SMITH DORSEY (SANDOZ | 0.3978 | 0.3237 | 0.2072 | 0.1247 | 0.1041 | 0.0985 | 0.0686 | 0.0243 | SJ | SJ | SJ | SJ |
| SQUIBB | 11.5832 | 10.1373 | 8.9599 | 7.8750 | 7.3845 | 7.3596 | 7.5335 | 7.5792 | 7.6020 | 7.0044 | 7.8497 | 8.2534 |
| STANLEY | SJ | SJ | SJ | SJ | SJ | SJ | 0.0318 | 0.0930 | 0.1560 | 0.1079 | 0.3060 | 0.4956 |
| STRASENBURG | 0.0179 | 0.0358 | 0.0408 | 0.0395 | 0.0304 | 0.0199 | 0.0072 | | | | | |
| * SUCCESS | | | | | 0.0388 | 0.0715 | 0.1032 | 0.1097 | 0.1017 | 0.0982 | 0.0928 | 0.0860 |
| TESTAGAR | | 0.1641 | 0.4051 | 0.6076 | 0.6076 | 0.6076 | 0.6076 | 0.6076 | 0.6076 | 0.6076 | 0.6076 | 0.6076 |
| TUTAG | | | | | | | | | | 0.0563 | 0.1503 | 0.2628 |
| ULMER | | | 0.0099 | 0.0206 | 0.0297 | 0.0319 | 0.0259 | 0.0174 | 0.0140 | 0.0207 | 0.0263 | 0.0268 |
| UPJOHN | 8.2261 | 6.6405 | 5.0932 | 3.8080 | 3.0670 | 2.7260 | 2.5407 | 2.3587 | 2.2069 | 2.1673 | 2.0848 | 2.1100 |
| VITAFORE | | | | | 0.0004 | 0.0007 | 0.0010 | 0.0010 | 0.0010 | 0.0010 | 0.0009 | 0.0009 |
| VITAPINE | 0.0311 | 0.0552 | 0.0737 | 0.0719 | 0.0813 | 0.1031 | 0.1342 | 0.1481 | 0.1467 | 0.1454 | 0.1364 | 0.1322 |
| V.C.A. | | | | | 0.2754 | 0.5508 | 0.8262 | 0.8262 | 0.8262 | 0.8262 | 0.8262 | 0.8262 |
| WEBSTER | | | | | | 0.0275 | 0.0551 | 0.0826 | 0.0551 | 0.0275 | | |
| WESTWARD | SJ | SJ | 0.7821 | 1.1426 | 1.1759 | 1.1353 | 1.0518 | 1.1142 | 1.0530 | 0.9964 | 1.0148 | 0.9578 |
| WINTHROP (STERLING) | 0.1600 | 0.1647 | 0.1862 | 0.1914 | 0.1914 | 0.1914 | 0.1914 | 0.1914 | SJ | SJ | SJ | SJ |
| WYETH | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| TOTAL | 99.2943 | 93.4163 | 88.3803 | 78.7469 | 72.7441 | 70.0215 | 68.1399 | 63.5125 | 61.2978 | 60.5736 | 62.2155 | 64.4132 |
| UNALLOCATED | 0.7157 | 6.5837 | 11.6197 | 21.2531 | 27.2559 | 29.9785 | 31.8601 | 36.4875 | 38.7022 | 39.4264 | 37.7845 | 35.5868 |

* For all dosage sizes, shares derived from Palloff 1 matrices, except for 100 mg, derived from Berck 100 mg matrix.

## NY SETTLEMENT SHARES  5 MG

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| | 1959 | 1960 | 1961 | 1962 | 1963 | 1964 | 1965 | 1966 | 1967 | 1968 | 1969 | 1970 | 1971 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RITE-AID | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| RORER | 0.4282 | 0.6384 | 0.6813 | 0.4929 | 0.1665 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| ROWELL | 0.3539 | 0.4362 | 0.4234 | 0.3761 | 0.3258 | 0.2953 | 0.2668 | 0.2115 | 0.1204 | 0.0518 | 0.0007 | SJ | SJ |
| SMITH, CARROLL, DUNH | 0.3043 | | | | | SJ | | | | | | | |
| SMITH DORSEY (SANDO | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| SQUIBB | 8.4598 | 9.7153 | 9.3534 | 9.7667 | 9.6025 | 9.8468 | 0.9717 | 7.8379 | 5.8495 | 4.4273 | 3.1259 | 2.0145 | 0.8917 |
| STANLEY | 0.8575 | 1.3414 | 1.6692 | 2.2471 | 2.6029 | 3.1066 | 2.9420 | 3.2108 | 4.6271 | 5.8904 | 5.5576 | 3.8726 | 1.9037 |
| STRASENBURG | | | | | | | | | | | | | |
| SUCCESS | 0.0861 | 0.0917 | 0.0947 | 0.0945 | 0.0930 | 0.0938 | 0.0618 | 0.0304 | | | | | |
| TESTAGAR | 0.6076 | 0.6076 | 0.5524 | 0.5524 | 0.5524 | 0.5524 | 0.5524 | 0.3683 | 0.1841 | 0.1762 | 0.1929 | 0.1641 | 0.0896 |
| TUTAG | 0.2939 | 0.2900 | 0.2511 | 0.2447 | 0.2494 | 0.2873 | 0.2727 | 0.2212 | 0.1731 | | | | |
| ULMER | 0.0196 | 0.0177 | 0.0162 | 0.0122 | 0.0053 | | | | | | | | |
| UPJOHN | 2.0400 | 2.1992 | 2.0353 | 2.0529 | 1.9070 | 1.7941 | 1.5694 | 1.4314 | 1.5118 | 1.7360 | 1.9316 | 1.7024 | 1.0425 |
| VITAFORE | 0.0067 | 0.0072 | 0.0071 | 0.0093 | 0.0036 | 0.0033 | 0.0032 | 0.0030 | 0.0026 | 0.0021 | 0.0016 | 0.0011 | 0.0006 |
| VITARINE | 0.1227 | 0.1496 | 0.1405 | 0.1432 | 0.1210 | 0.1241 | 0.1244 | 0.1112 | 0.0749 | 0.0482 | 0.0337 | 0.0248 | 0.0134 |
| V.C.A. | 0.0262 | 0.0262 | 0.7511 | 0.7511 | 0.7511 | 0.7511 | 0.5007 | 0.2504 | | | | | |
| WEBSTER | | | | | | | | | | | | | |
| WESTWARD | 0.9476 | 0.8535 | 1.0017 | 1.0272 | 0.9918 | 0.9284 | 1.0174 | 1.0366 | 1.1416 | 1.1364 | 1.2556 | 1.4221 | 1.2559 |
| WINTHROP (STERLING) | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| WYETH | SJ | SJ | SJ | SJ | SJ | SJ | SJ | 0.2089 | 0.4178 | 0.6267 | 0.6267 | 0.6267 | 0.6267 |
| TOTAL | 66.7059 | 77.1654 | 78.3260 | 83.9712 | 82.6011 | 83.7713 | 81.8660 | 84.2328 | 80.8109 | 80.8916 | 78.6383 | 80.9503 | 82.4466 |
| UNALLOCATED | 33.2941 | 22.8346 | 21.6740 | 16.0280 | 17.3989 | 16.2287 | 18.1340 | 15.7672 | 19.1091 | 19.1184 | 21.3617 | 19.0497 | 17.5534 |

* For all dosage sizes, shares derived from Petloff 1 matrices, except for 100 mg, derived from Berck 100 mg matrix.

# NY SETTLEMENT SHARES 25 MG

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| | 1947 | 1948 | 1949 | 1950 | 1951 | 1952 | 1953 | 1954 | 1955 | 1956 | 1957 | 1950 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ABBOTT | 6.0345 | 7.9096 | 6.1276 | 4.5187 | 3.2087 | 2.7611 | 2.1263 | 1.7432 | 1.2636 | 1.1814 | 1.0834 | 0.9545 |
| AMERICAN HOME PRODU | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| AMERICAN PHARM | | 1.6734 | 3.6815 | 5.5222 | 5.5222 | 5.5222 | 5.5222 | 5.5222 | 5.5222 | 5.5222 | 5.5222 | 5.5222 |
| AMFRE GRANT (EMONS) | | 2.1174 | 5.0275 | 6.2192 | 6.2227 | 6.2660 | 6.0533 | 6.2092 | 5.6994 | 4.6173 | 4.3437 | 5.6958 |
| AYERST LABORATORIES | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BARRE | | SJ | SJ | | | | | | | | | 0.0502 |
| BOEHRINGER INGELHEIM | SJ | 0.4167 | 0.6084 | 0.5897 | 0.4894 | 0.4122 | 0.3364 | 0.2974 | 0.2676 | 0.2511 | 0.2118 | 0.1083 |
| BOYLE | | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BREON | SJ | SJ | | | | | | | | | 1.8585 | 3.2498 |
| BREWER | | | | | | | | | | 0.2135 | 0.4270 | 0.6406 |
| BRYANT PHARM | SJ | SJ | SJ | 1.1793 | 1.1690 | 0.9941 | 0.8258 | 0.6197 | 0.4404 | 0.2989 | 0.2313 | 0.1679 |
| CARNRICK | | | SJ | 0.0954 | 0.1906 | 0.2860 | 0.2860 | 0.2860 | 0.2860 | 0.2860 | 0.2860 | 0.2060 |
| CHASE | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| CIBA | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| COLE | SJ | | | | 0.0569 | 0.0894 | 0.1246 | 0.1246 | 0.0892 | 0.0477 | | |
| DEXTER | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| EVRON | | | | | | | 0.0482 | 0.0984 | 0.1447 | 0.1447 | 0.1447 | 0.1447 |
| HAACK LABS | | | | 0.4556 | 0.9112 | 1.3669 | 1.3669 | 1.3669 | 1.3669 | 1.3669 | 1.3669 | 1.3669 |
| HALSEY | | | | | | | | | | 0.0080 | 0.0178 | 0.0703 |
| HANCE & WHITE | | | | 1.2442 | 2.4883 | 3.7325 | 3.7325 | 3.7325 | 3.7325 | 3.7325 | 3.7248 | 3.7171 |

* For all dosage sizes, shares derived from Perloff [1] matrices, except for 100 mg, derived from Berck 100 mg matrix.

# NY SETTLEMENT SHARES 25 MG

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| | 1959 | 1960 | 1961 | 1962 | 1963 | 1964 | 1965 | 1966 | 1967 | 1968 | 1969 | 1970 | 1971 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ABBOTT | 0.8067 | 0.5597 | 0.1218 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| AMERICAN HOME PROD | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| AMERICAN PHARM | 5.5222 | 5.5222 | 5.0202 | 5.0202 | 5.0202 | 5.0202 | 5.0202 | 5.0202 | 5.0202 | 5.0202 | 5.0202 | 5.0202 | 5.0202 |
| AMFRE GRANT (EMONS | 8.3367 | 9.1019 | 7.7403 | 6.3593 | 5.6276 | 4.9954 | 3.4402 | 3.8318 | 2.8454 | 1.5959 | 2.0129 | 4.3256 | 7.4664 |
| AYERST LABORATORIE | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BARRE | 0.1319 | 0.2833 | 0.3668 | 0.4275 | 0.4445 | 0.4712 | 0.4585 | 0.5149 | 0.5392 | 0.5032 | 0.5074 | 0.5110 | 0.6709 |
| BOEHRINGER INGELHEI | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BOYLE | 0.1744 | 0.1643 | 0.0778 | 0.0068 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BREON | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BREWER | 4.2639 | 2.1864 | | | | | | | | | | | |
| BRYANT PHARM | 0.6406 | 0.6406 | 0.5824 | 0.5824 | 0.5824 | 0.5824 | 0.5824 | 0.5824 | 0.3882 | 0.1941 | SJ | SJ | SJ |
| CARNRICK | 0.1205 | 0.0675 | 0.0265 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| CHASE | 0.2860 | 0.2860 | 0.2600 | 0.2600 | 0.2600 | 0.2600 | 0.1733 | 0.0867 | SJ | SJ | SJ | SJ | SJ |
| CIBA | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| COLE | | | | | | | | | | | | | |
| DEXTER | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| EVRON | 0.1447 | 0.1447 | 0.1315 | 0.1315 | 0.1315 | 0.1315 | 0.1315 | 0.1315 | 0.1315 | 0.1315 | 0.1315 | 0.0876 | 0.0438 |
| HAACK LABS | 1.3669 | 1.3669 | 1.2426 | 1.2426 | 1.2426 | 0.8204 | 0.4142 | 0.1888 | 0.5033 | 0.6206 | 0.4595 | 0.2044 | |
| HALSEY | 0.1450 | 0.2361 | 0.3057 | 0.2850 | 0.2222 | 0.0785 | 0.0459 | | | | | | |
| HANCE & WHITE | 3.7094 | 3.7094 | 3.3722 | 3.3722 | 2.2481 | 1.1241 | | | | | | | |

* For all dosage sizes, shares derived from Peiloff 1 matrices, except for 100 mg, derived from Berck 100 mg matrix.

# NY SETTLEMENT SHARES 25 MG

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding.
All shares are expressed as percentages.

| | 1947 | 1948 | 1949 | 1950 | 1951 | 1952 | 1953 | 1954 | 1955 | 1956 | 1957 | 1958 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| HARTZ (FERNDALE) * | | | | | | | | 0.0429 | 0.0967 | 0.1588 | 0.1654 | 0.1442 |
| IVES LABORATORY | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| KEY | SJ | SJ | SJ | 0.0132 | 0.0182 | 0.0235 | 0.0219 | 0.0202 | 0.0186 | 0.0195 | 0.0200 | 0.0195 |
| KIRKMAN | | | | | | | 0.0356 | 0.0624 | 0.0901 | 0.0870 | 0.0846 | 0.0806 |
| KREMERS URBAN | | 0.1157 | 0.3230 | 0.2917 | 0.2831 | 0.2562 | 0.2396 | 0.2095 | 0.2198 | 0.2367 | 0.2449 | 0.2561 |
| LANNETT | | | 0.0261 | 0.0418 | 0.0498 | 0.0763 | 0.0925 | 0.0993 | 0.0872 | 0.0781 | 0.0762 | 0.0788 |
| LEDERLE | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| LILLY | 51.9114 | 38.5982 | 30.5865 | 24.2387 | 21.2632 | 19.9098 | 19.2982 | 20.1512 | 21.4219 | 23.6121 | 22.9552 | 22.1200 |
| LINCOLN | SJ | SJ | SJ | | 0.1427 | 0.2335 | 0.2484 | 0.1814 | 0.0737 | 0.1624 | 0.2673 | 0.3012 |
| MALLINCKRODT | | | | | | | | 0.0580 | 0.1950 | 0.4159 | 0.6471 | 0.8039 |
| MASSENGILL (SMITHKLIN E BEECHAM) | SJ | 0.5884 | 0.3922 | 0.5144 | 0.7552 | 1.2051 | 1.6247 | 1.9926 | 1.9513 | 1.6288 | 1.4168 | 1.4515 |
| MCNEIL | | | 1.2014 | 1.7298 | 1.4627 | 1.3871 | 1.0058 | 0.8657 | 0.6327 | 0.4941 | 0.3628 | 0.2021 |
| MERCK | | | | 0.2677 | 0.5056 | 0.6896 | 0.7141 | 0.7081 | 0.6556 | 0.6899 | 0.6056 | 0.6078 |
| MEYER | | | 0.1736 | 0.2375 | 0.3119 | 0.3883 | 0.4310 | 0.4292 | 0.3478 | 0.2507 | 0.1728 | 0.1978 |
| NATL DRUG | | | | | | | | | 0.0202 | 0.0457 | 0.0507 | 0.0286 |
| NORWICH-EATON | SJ | SJ | SJ | SJ | SJ | 2.3345 | 2.1536 | 2.2501 | | | | |
| OTIS CLAPP | | | | | | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| PERSON & COVEY | SJ | | 0.4056 | 0.5470 | 0.7608 | 0.7134 | 0.6696 | 0.6416 | 0.5611 | 0.5161 | 0.5418 | 0.7306 |
| PHYS'S DRUG & SUPPLY | | | | | 0.2673 | 0.5345 | 0.8018 | 0.8018 | 0.8018 | 0.8018 | 0.8018 | 0.8018 |
| PREMO | | 0.5529 | 0.9172 | 1.3399 | 1.3791 | 1.3314 | 1.2337 | 1.3067 | 1.2350 | 1.0605 | 0.9391 | 0.9492 |
| REID PROVIDENT | SJ | | SJ | SJ | SJ | SJ | SJ | SJ | | 0.0045 | 0.0078 | 0.0177 |
| REPUBLIC | | | | | | | | | | | | |
| REXALL | | | 0.6866 | 0.8160 | 0.8598 | 0.8149 | 0.7662 | 0.7493 | 0.7334 | 0.7718 | 0.7940 | 0.8489 |

* For all dosage sizes, shares derived from Period 1 matrices, except for 100 mg, derived from Berck 100 mg matrix.

# NY SETTLEMENT SHARES 25 MG

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| | 1959 | 1960 | 1961 | 1962 | 1963 | 1964 | 1965 | 1966 | 1967 | 1968 | 1969 | 1970 | 1971 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| * HARTZ (FERNDALE) | 0.1721 | 0.3160 | 0.4377 | 0.3111 | 0.0808 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| IVES LABORATORY | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| KEY | 0.0678 | 0.1607 | 0.1956 | 0.1140 | 0.0535 | 0.0351 | 0.0250 | 0.0222 | 0.0175 | 0.0121 | 0.0081 | 0.0082 | 0.0107 |
| KIRKMAN | 0.0748 | 0.0724 | 0.0719 | 0.0587 | 0.0727 | 0.0130 | | | | | | | |
| KREMERS URBAN | 0.3122 | 0.3752 | 0.3914 | 0.2603 | 0.1505 | 0.2004 | 0.2543 | 0.4277 | 0.4005 | 0.1986 | SJ | SJ | SJ |
| LANNETT | 0.0672 | 0.0699 | 0.0225 | 0.1112 | | | | | | | | | |
| LEDERLE | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| LILLY | 23.2730 | 28.2838 | 31.6882 | 31.7605 | 29.2534 | 28.9453 | 27.5400 | 33.4141 | 36.1415 | 35.1788 | 33.5739 | 34.3265 | 43.4455 |
| LINCOLN | 0.1978 | | | | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| MALLINCKRODT | 0.9859 | 1.1406 | 1.0931 | 0.8738 | 0.5026 | 0.2042 | 0.0477 | SJ | SJ | SJ | SJ | SJ | SJ |
| MASSENGILL (SMITHKL) | 1.5290 | 1.6480 | 1.6531 | 1.3663 | 0.9980 | 0.3050 | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| MCNEIL | 0.0091 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| MERCK | 0.5933 | 0.6430 | 0.4232 | 0.2179 | 0.0406 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| MEYER | 0.2610 | 0.2814 | 0.1223 | | | | | | | | | | |
| NATL DRUG | | | | | | | | | | | | | |
| NORWICH-EATON | | | | | | | | | | | | | |
| OTIS CLAPP | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| PERSON & COVEY | 0.7025 | 0.4352 | 0.3006 | 0.2111 | 0.1097 | 0.2430 | | | | | | | |
| PHYS'S DRUG & SUPPL | 0.8010 | 0.6018 | 0.7269 | 0.7269 | 0.4859 | | | | | | | | |
| PREMO | 0.6314 | 0.9258 | 0.9331 | 1.1117 | 1.3207 | 1.5074 | 0.9974 | 0.4774 | | | | | |
| REID PROVIDENT | | | | SJ | SJ | SJ | SJ | SJ | | | | | |
| REPUBLIC | 0.0166 | 0.0264 | 0.0127 | 0.0131 | | | | | | | | | |
| REXALL | 0.7714 | 0.7595 | 0.6006 | 0.5626 | 0.4812 | 0.4756 | 0.4109 | 0.3776 | 0.2955 | 0.1925 | 0.1137 | 0.0456 | |

* For all dosage sizes, shares derived from Perloff 1 matrices, except for 100 mg, derived from Barck 100 mg matrix.

# NY SETTLEMENT SHARES  25 MG

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| | 1947 | 1948 | 1949 | 1950 | 1951 | 1952 | 1953 | 1954 | 1955 | 1956 | 1957 | 1958 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RITE-AID | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| RORER | | | 0.1158 | 0.1788 | 0.2518 | 0.3160 | 0.3105 | 0.2649 | 0.2269 | 0.2572 | 0.2495 | 0.1907 |
| ROWELL | SJ | SJ | SJ | | 0.0139 | 0.1111 | 0.1976 | 0.2778 | 0.2791 | 0.3265 | 0.3550 | 0.3994 |
| SMITH, CARROLL, DUNHAM | | 0.3025 | 0.6655 | 0.9983 | 0.9983 | 0.9983 | 0.9983 | 0.9983 | 0.9983 | 0.9983 | 0.9983 | 0.6655 |
| SMITH DORSEY (SANDOZ) | | 1.1668 | 1.1153 | 0.7700 | 0.5289 | 0.3607 | 0.2440 | 0.1390 | 0.0496 | 0.0282 | SJ | SJ |
| SQUIBB | 42.0541 | 34.8836 | 22.9499 | 15.4136 | 11.6720 | 10.2956 | 9.1603 | 8.1500 | 7.3431 | 6.9083 | 6.3399 | 5.7250 |
| STANLEY | SJ | SJ | SJ | SJ | SJ | SJ | SJ | 0.0689 | 0.1234 | 0.1719 | 0.2352 | 0.3797 |
| SUCCESS | | | | | 0.0354 | 0.0525 | 0.0741 | 0.0727 | 0.0776 | 0.0775 | 0.0698 | 0.0618 |
| TUTAG | | | | | | | | | | 0.1125 | 0.2406 | 0.3165 |
| UPJOHN | SJ | SJ | SJ | 0.0926 | 0.2080 | 0.4583 | 0.5519 | 0.5709 | 0.5609 | 0.5860 | 0.5709 | 0.5539 |
| VITAFORE | | | | | 0.0317 | 0.0302 | 0.0270 | 0.0227 | 0.0184 | 0.0161 | 0.0142 | 0.0118 |
| VITARINE | | | | | 0.1312 | 0.1880 | 0.2207 | 0.2215 | 0.1895 | 0.1829 | 0.1780 | 0.1696 |
| V.C.A. | | | 0.0563 | 0.0869 | | 0.2660 | 0.5320 | 0.7981 | 0.7981 | 0.7981 | 0.7981 | 0.7981 |
| WEBSTER | SJ | SJ | SJ | SJ | | 0.0266 | 0.0532 | 0.0798 | 0.0798 | 0.0532 | 0.0266 | |
| WESTWARD | SJ | SJ | SJ | SJ | 0.5639 | 0.5287 | 0.4963 | 0.4755 | 0.4159 | 0.3826 | 0.4016 | 0.4015 |
| WINTHROP (STERLING) | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| WYETH | SJ | SJ | SJ | | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| TOTAL | 100 | 88.3232 | 75.0600 | 67.4022 | 62.8031 | 64.9614 | 62.6448 | 62.6171 | 59.1411 | 59.6028 | 59.8490 | 61.3765 |
| UNALLOCATED | 0 | 11.6768 | 24.9400 | 32.5970 | 37.1669 | 35.0386 | 37.3552 | 37.3829 | 40.8590 | 40.3972 | 40.1510 | 38.6235 |

* For all dosage sizes, shares derived from Perloff 1 matrices, except for 100 mg, derived from Berck 100 mg matrix.

## NY SETTLEMENT SHARES 25 MG

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| | 1959 | 1960 | 1961 | 1962 | 1963 | 1964 | 1965 | 1966 | 1967 | 1968 | 1969 | 1970 | 1971 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RITE-AID | SJ | SJ | SJ | SJ | SJ | | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| RORER | 0.1319 | 0.1133 | 0.0734 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| ROWELL | 0.3636 | 0.3950 | 0.2088 | 0.2792 | 0.1826 | 0.1336 | 0.1023 | 0.0680 | 0.0412 | | | | |
| SMITH, CARROLL, DUNH | 0.3328 | | | | | | | | | | | | |
| SMITH DORSEY (SANDO | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| SQUIBB | 6.0585 | 7.0066 | 7.6307 | 7.5925 | 6.8379 | 6.7075 | 6.0069 | 6.4449 | 5.6386 | 4.4386 | 3.3974 | 2.3314 | 1.6789 |
| STANLEY | 0.6233 | 0.8309 | 1.1836 | 1.7613 | 2.2461 | 2.2490 | 1.8158 | 2.1831 | 3.3719 | 3.6106 | 3.4096 | 2.1733 | 1.3506 |
| SUCCESS | 0.0594 | 0.0650 | 0.0768 | 0.0811 | 0.0822 | 0.0847 | -0.0583 | 0.0279 | | | | | |
| TUTAG | 0.3365 | 0.3038 | 0.2851 | 0.3038 | 0.2987 | 0.2994 | 0.2629 | 0.2471 | 0.1869 | 0.1208 | 0.0744 | 0.0477 | 0.0179 |
| UPJOHN | 0.6577 | 0.7006 | 0.5445 | 0.1897 | 0.0450 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| VITAFORE | 0.2042 | 0.2405 | 0.2354 | 0.3270 | 0.1173 | 0.1245 | 0.0960 | 0.1198 | 0.1105 | 0.1074 | 0.0893 | 0.0619 | 0.0405 |
| VITARINE | 0.1574 | 0.1524 | 0.1514 | 0.1236 | 0.1144 | 0.0797 | 0.0584 | 0.0512 | 0.0368 | 0.0256 | 0.0170 | 0.0114 | 0.0075 |
| V.C.A. | 0.7981 | 0.7981 | 0.7255 | 0.7255 | 0.7255 | 0.4836 | 0.2418 | | | | | | |
| WEBSTER | | | | | | | | | | | | | |
| WESTWARD | 0.4151 | 0.3970 | 0.4162 | 0.4749 | 0.4891 | 0.5222 | 0.6011 | 0.6146 | 0.6403 | 0.6950 | 0.7855 | 0.4544 | 0.2075 |
| WINTHROP (STERLING) | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| WYETH | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| TOTAL | 66.5041 | 71.2115 | 69.5441 | 67.2453 | 60.4755 | 56.0739 | 49.7850 | 54.8319 | 56.5090 | 53.0455 | 49.6314 | 49.6092 | 59.9603 |
| UNALLOCATED | 33.4960 | 28.7885 | 30.4559 | 32.7547 | 39.5245 | 43.9261 | 51.2150 | 45.1681 | 43.4910 | 46.9545 | 50.3686 | 50.3908 | 40.0397 |

* For all dosage sizes, shares derived from Peijoff 1 matrices, except for 100 mg, derived from Berck 100 mg matrix.

# NY SETTLEMENT SHARES  100 MG

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding.
All shares are expressed as percentages.

| | 1947 | 1948 | 1949 | 1950 | 1951 | 1952 | 1953 | 1954 | 1955 | 1956 | 1957 | 1958 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ABBOTT | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| AMERICAN HOME PRODU | SJ | SJ | SJ | SJ | SJ | 1.7241 | 1.5178 | 2.2225 | 1.7655 | 2.0440 | 1.2209 | 0.7258 |
| AMFRE GRANT (EMONS) | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| AYERST LABORATORIES | SJ | SJ | SJ | SJ | 2.5192 | 3.1654 | 3.2330 | 3.4935 | 3.1851 | 2.4409 | 2.7895 | 3.7991 |
| BOEHRINGER INGELHEIM | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BREON | SJ | SJ | SJ | | | | | | | | | |
| CARNRICK | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| CIBA | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| DEXTER | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| IVES LABORATORY | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| KEY | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| KIRKMAN | SJ | SJ | SJ | | | | | | | | | |
| LEDERLE | SJ | SJ | SJ | SJ | SJ | SJ | 0.0681 | 0.1139 | 0.1678 | 0.1722 | 0.1716 | 0.1642 |
| LINCOLN | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| MCNEIL | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| MERCK | SJ | SJ | SJ | | | | | | | | | |
| OTIS CLAPP | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |

43

* For all dosage sizes, shares derived from Perloff † matrices, except for 100 mg, derived from Berck 100 mg matrix.

# NY SETTLEMENT SHARES  100 MG

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| | 1959 | 1960 | 1961 | 1962 | 1963 | 1964 | 1965 | 1966 | 1967 | 1968 | 1969 | 1970 | 1971 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ABBOTT | 0.0278 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| AMERICAN HOME PROD | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| AMFRE GRANT (EMONS | 4.4324 | 5.1796 | 4.7726 | 4.5574 | 2.7649 | 1.4577 | 1.6700 | 1.1829 | 0.5988 | 0.5925 | 0.3526 | | |
| AYERST LABORATORIE | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BOEHRINGER INGELHEI | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BREON | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| CARNRICK | | | | | | | | | | | | | |
| CIBA | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| DEXTER | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| IVES LABORATORY | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| KEY | | | | | | | | | SJ | SJ | SJ | SJ | SJ |
| KIRKMAN | 0.1464 | 0.1507 | 0.1442 | 0.1327 | 0.1109 | 0.1137 | 0.1286 | 0.1219 | 0.0918 | 0.0563 | 0.0423 | 0.0349 | 0.0230 |
| LEDERLE | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| LINCOLN | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| MCNEIL | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| MERCK | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| OTIS CLAPP | SJ | SJ | SJ | SJ | SJ | | | | | | | | |

\* For all dosage sizes, shares derived from Perloff 1 matrices, except for 100 mg, derived from Berck 100 mg matrix.

# NY SETTLEMENT SHARES  100 MG

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding.
All shares are expressed as percentages.

| | 1947 | 1948 | 1949 | 1950 | 1951 | 1952 | 1953 | 1954 | 1955 | 1956 | 1957 | 1958 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| REID PROVIDENT | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | | | | |
| REPUBLIC | SJ | SJ | SJ | SJ | SJ | SJ | | | | | | |
| RITE-AID | SJ | SJ | SJ | SJ | SJ | SJ | | | | | | |
| ROWELL | | | | | | | | | | | | |
| SMITH DORSEY (SANDOZ) | | | | | | 0.5982 | 0.3686 | 0.5547 | 0.2289 | 0.2628 | 0.0468 | 0.1065 |
| SQUIBB | | | | | | | SJ | SJ | SJ | SJ | SJ | SJ |
| STANLEY | SJ | SJ | SJ | SJ | 81.2354 | 84.4186 | 82.2217 | 84.6684 | 78.6571 | 65.6601 | 45.7675 | 32.9922 |
| * SUCCESS | | | | | SJ | SJ | | | | | | SJ |
| SUMMERS LABS | | | | | | | | | 0.0347 | 0.0719 | 0.1368 | 0.1181 |
| UP-JOHN | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | 7.5417 |
| VITARINE | | | | | | | SJ | SJ | SJ | SJ | SJ | SJ |
| WINTHROP | SJ | SJ | SJ | SJ | SJ | SJ | 0.6976 | 1.4825 | 1.7019 | 0.9752 | | |
| WYETH | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| TOTAL | | | | | 83.7546 | 89.9063 | 88.1048 | 92.5355 | 85.7410 | 71.6470 | 50.1532 | 45.4477 |
| UNALLOCATED | | | | | 16.2454 | 10.0937 | 11.8952 | 7.4645 | 14.2590 | 28.3530 | 49.8468 | 54.5523 |

15

* For all dosage sizes, shares derived from Period 1 matrices, except for 100 mg, derived from Berck 100 mg matrix.

# NY SETTLEMENT SHARES  100 MG

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding.
All shares are expressed as percentages.

| | 1959 | 1960 | 1961 | 1962 | 1963 | 1964 | 1965 | 1966 | 1967 | 1968 | 1969 | 1970 | 1971 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| REID PROVIDENT | | | | | | | | | | | | | |
| REPUBLIC | 0.0101 | 0.0118 | 0.0121 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| RITE-AID | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| ROWELL | 0.1212 | 0.0706 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| SMITH DORSEY (SANDO | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| SQUIBB | 32.3952 | 32.9317 | 30.7855 | 32.5324 | 34.0914 | 38.2430 | 43.2699 | 45.5766 | 48.3306 | 46.2434 | 49.6494 | 35.8243 | 18.2246 |
| STANLEY | 0.3671 | 1.0702 | 2.1805 | 3.4152 | 4.2859 | 4.6647 | 5.0100 | 6.0955 | 9.7004 | 11.6532 | 12.2267 | 9.6098 | 6.1397 |
| SUCCESS | 0.1096 | 0.1044 | 0.1011 | 0.0654 | 0.0348 | | | | | | | | |
| SUMMERS LABS | 17.1532 | 30.0007 | 30.8712 | 33.4746 | 23.4880 | 12.3830 | | | | | | | |
| UPJOHN | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| VITARINE | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| WINTHROP | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| WYETH | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| TOTAL | 54.7630 | 69.5196 | 68.8671 | 74.1777 | 64.7848 | 56.8622 | 50.0785 | 52.8869 | 58.9016 | 58.5443 | 62.2710 | 45.4690 | 24.3873 |
| UNALLOCATED | 45.2370 | 30.4804 | 31.1329 | 25.8223 | 35.2152 | 43.1378 | 49.9215 | 47.1131 | 41.1984 | 41.4557 | 37.7290 | 54.5310 | 75.6127 |

For all dosage sizes, shares derived from Petloff 1 matrices, except for 100 mg, derived from Berck 100 mg matrix.

# NY SETTLEMENT SHARES  5-25 MG BLEND

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| | 1947 | 1948 | 1949 | 1950 | 1951 | 1952 | 1953 | 1954 | 1955 | 1956 | 1957 | 1958 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ABBOTT | 4.3680 | 5.1003 | 4.1268 | 3.3375 | 2.8635 | 2.4911 | 2.0255 | 1.6097 | 1.2711 | 1.2274 | 1.1637 | 1.0962 |
| ALLPUTTER (APPROVED) | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| AMERICAN HOME PRODU | | | | | | | | | | | | |
| AMERICAN PHARM | 0.1120 | 1.4784 | 3.2324 | 4.9480 | 4.9480 | 4.9480 | 4.9480 | 4.9480 | 4.9480 | 4.9480 | 4.9480 | 4.9480 |
| AMES CO. | | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| AMFRE GRANT (EMONS) | | 0.8505 | 2.5276 | 3.7514 | 3.7590 | 3.7883 | 3.6594 | 3.7518 | 3.4422 | 2.7893 | 2.6289 | 3.4468 |
| AYERST LABORATORIES | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BARRE | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BOEHRINGER INGELHEIM | | SJ | | SJ | | | | | | | | 0.0395 |
| BOYLE | SJ | 0.1754 | 0.3240 | 0.3752 | 0.3152 | 0.2661 | 0.2173 | 0.1912 | 0.1711 | 0.1594 | 0.1320 | 0.1161 |
| BREON | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BREWER | | | | | | | | | | | | |
| BRYANT PHARM | | | | | | | | | | | 1.3759 | 2.5307 |
| BURROUGHS | 4.0657 | 2.8111 | 1.7760 | 0.9756 | 0.6067 | 0.5184 | 0.4062 | 0.3247 | 0.2594 | 0.1782 | 0.3535 | 0.5347 |
| CARNRICK | SJ | SJ | SJ | 0.9935 | 1.0729 | 0.9538 | 0.8164 | 0.6064 | 0.4315 | 0.2109 | 0.1495 | 0.0842 |
| CHASE | | 0.0400 | 0.0734 | 0.1452 | 0.6969 | 1.2140 | 1.1675 | 0.7390 | 0.2596 | 0.2980 | 0.2382 | 0.1826 |
| CIBA | 0.0190 | 0.0063 | 0.0040 | SJ | SJ | SJ | SJ | SJ | SJ | 0.2596 | 0.2596 | 0.2596 |
| COLE | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| DEXTER | | | | | 0.0441 | 0.9717 | 0.1008 | 0.1009 | 0.0795 | 0.0547 | 0.0261 | 0.0261 |
| DRUG PRODS. | 0.1120 | 0.1040 | 0.1027 | 0.0880 | 0.0880 | 0.0880 | 0.0880 | 0.0880 | 0.0880 | 0.0586 | 0.0294 | SJ |
| EVRON | | | 0.0211 | | | | | | | | | |
| HAACK LABS | | | | 0.0338 | 0.0506 | 0.0506 | 0.0795 | 0.1085 | 0.1374 | 0.1374 | 0.1374 | 0.1374 |
| HALSEY | | | | 0.3731 | 0.7464 | 1.1195 | 1.1195 | 1.1195 | 1.1195 | 1.1195 | 1.1195 | 1.1195 |
| HANCE & WHITE | | | | 1.2048 | 2.4097 | 3.6144 | 3.6144 | 3.6144 | 3.6144 | 3.6144 | 3.4916 | 3.3689 |
| HARVEY | | | | 0.0294 | 0.0586 | 0.0880 | 0.0880 | 0.0880 | 0.0880 | 0.0880 | 0.0880 | 0.0880 |

17

* For all dosage sizes, shares derived from Peatoff 1 matrices, except for 100 mg, derived from Berck 100 mg matrix.

# NY SETTLEMENT SHARES   5-25 MG BLEND

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| | 1959 | 1960 | 1961 | 1962 | 1963 | 1964 | 1965 | 1966 | 1967 | 1968 | 1969 | 1970 | 1971 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ABBOTT | 1.0061 | 0.0272 | 0.4022 | 0.1570 | 0.0454 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| ALLPUTTER (APPROVE | SJ | 0.0253 | 0.1272 | 0.2318 | 0.2667 | 0.2408 | 0.2685 | 0.3039 | 0.2780 | 0.2966 | 0.2455 | 0.3179 | 0.3508 |
| AMERICAN HOME PROD | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| AMERICAN PHARM | 4.9480 | 4.9480 | 4.4982 | 4.4982 | 4.4982 | 4.4982 | 4.4982 | 4.4982 | 4.4982 | 4.4982 | 4.4982 | 4.4982 | 4.4982 |
| AMES CO. | 0.0080 | 0.0880 | 0.0300 | 0.0800 | 0.0800 | 0.0800 | 0.0800 | 0.0800 | 0.0800 | 0.0800 | 0.0533 | 0.0267 | |
| AMFRE GRANT (EMCNS | 5.0106 | 5.4797 | 4.6644 | 3.8535 | 3.4156 | 3.0091 | 2.0972 | 2.3220 | 1.7238 | 0.9662 | 1.2170 | 2.6084 | 4.4906 |
| AYERST LABORATORIE | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BARRE | 0.1000 | 0.2066 | 0.2590 | 0.2985 | 0.3088 | 0.3275 | 0.3183 | 0.3539 | 0.3675 | 0.3482 | 0.3537 | 0.3508 | 0.4613 |
| BOEHRINGER INGELHEI | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BOYLE | 0.1070 | 0.1020 | 0.0501 | 0.0052 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BREON | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BREWER | 3.2073 | 1.7014 | 0.2802 | 0.3020 | 0.3034 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BRYANT PHARM | 0.5347 | 0.5347 | 0.4861 | 0.4861 | 0.4861 | 0.4061 | 0.4061 | 0.4061 | 0.3241 | 0.1620 | | | |
| BURROUGHS | 0.0263 | 0.0739 | 0.0270 | SJ | | | | | | | | | |
| CARNRICK | 0.1298 | | | | | | | | | | | | |
| CHASE | 0.2596 | 0.2596 | 0.2360 | 0.2360 | 0.2360 | 0.2336 | 0.1573 | 0.0787 | SJ | SJ | SJ | SJ | SJ |
| CIBA | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| COLE | 0.0261 | 0.0261 | 0.0237 | 0.0161 | 0.0084 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| DEXTER | SJ | | | | | | | | | | | | |
| DRUG PRODS. | | | | | | | | | | | | | |
| EVRON | 0.1374 | 0.1374 | 0.1249 | 0.1249 | 0.1249 | 0.1249 | 0.1249 | 0.1249 | 0.1249 | 0.1249 | 0.1249 | 0.0833 | 0.0416 |
| HAACK LABS | 1.1195 | 1.1195 | 1.0177 | 1.0177 | 1.0177 | 0.6785 | 0.3392 | | | | | | |
| HALSEY | 0.0870 | 0.1417 | 0.1834 | 0.1710 | 0.1333 | 0.0471 | 0.0275 | | | | | | |
| HANCE & WHITE | 3.2460 | 3.2460 | 2.9509 | 2.9509 | 1.9673 | 0.9836 | | 0.1133 | 0.3020 | 0.3723 | 0.2943 | 0.1226 | |
| HARVEY | 0.0980 | 0.0980 | 0.0800 | 0.0800 | 0.0800 | 0.0800 | 0.0800 | 0.0800 | 0.0800 | 0.0800 | 0.0800 | 0.0800 | 0.0800 |

18

* For all dosage sizes, shares derived from Perloff 1 matrices, except for 100 mg, derived from Berck 100 mg matrix.

# NY SETTLEMENT SHARES   5-25 MG BLEND

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| | 1947 | 1948 | 1949 | 1950 | 1951 | 1952 | 1953 | 1954 | 1955 | 1956 | 1957 | 1958 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| * HARTZ (FERNDALE) | | | | | | | | | | | | |
| IVES LABORATORY | SJ | SJ | SJ | SJ | SJ | SJ | 0.0045 | 0.0091 | 0.0191 | 0.0301 | 0.0300 | 0.0255 |
| KEY | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| KIRKMAN | | | | 0.0118 | 0.0168 | 0.0219 | 0.0208 | 0.0201 | 0.0197 | 0.0208 | 0.0210 | 0.0206 |
| KREMERS URBAN | | 0.0762 | 0.2015 | 0.2060 | 0.2028 | 0.1835 | 0.0330 | 0.0587 | 0.0844 | 0.0823 | 0.0790 | 0.0757 |
| LANNETT | | 0.0243 | 0.0562 | 0.0767 | 0.0845 | 0.0946 | 0.1676 | 0.1416 | 0.1438 | 0.1530 | 0.1571 | 0.1639 |
| LEDERLE | SJ | SJ | SJ | SJ | SJ | SJ | 0.0965 | 0.0935 | 0.0787 | 0.0671 | 0.0589 | 0.0678 |
| LILLY | 61.6133 | 51.8538 | 42.9438 | 32.3291 | 27.4604 | 24.8379 | 23.9393 | 23.4994 | 24.2018 | 25.3403 | 25.6177 | 25.7252 |
| LINCOLN | SJ | SJ | SJ | 0.0187 | 0.1230 | 0.1971 | 0.2211 | 0.1879 | 0.1222 | 0.1725 | 0.2413 | 0.2836 |
| MALLINCKRODT | | | | | | | | 0.0348 | 0.1170 | 0.2496 | 0.3883 | 0.4824 |
| MASSENGILL (SMITH-KLIN) | 0.1259 | 0.2141 | 0.4398 | 0.5004 | 0.6761 | 0.9973 | 1.3056 | 1.4979 | 1.5897 | 1.3980 | 1.2752 | 1.2837 |
| MCKESSON LABS | | | | | | | | | | | | |
| MCNEIL | 0.2690 | 0.5272 | 0.7514 | 1.0694 | 0.9415 | 0.8975 | 0.6752 | 0.5585 | 0.4225 | 0.3394 | 0.2511 | 0.1455 |
| MERCK | 0.5802 | 1.0110 | 1.2351 | 1.2249 | 1.2375 | 1.2003 | 1.7792 | 1.1186 | 1.0646 | 1.0350 | 0.9479 | 0.9172 |
| MERRELL | | | | 0.1605 | 0.2868 | 0.2530 | 0.1232 | | | | | |
| MEYER | | | 0.0869 | 0.1452 | 0.1944 | 0.2532 | 0.2932 | 0.2974 | 0.2415 | 0.1752 | 0.1247 | 0.1355 |
| NATL DRUG | | | | | | | | | 0.0121 | 0.0274 | 0.0304 | 0.0171 |
| NORWICH-EATON | | | | | | | | | | | | |
| OTIS CLAPP | SJ | SJ | SJ | SJ | SJ | 1.4007 | 1.2922 | 1.3500 | SJ | SJ | SJ | SJ |
| PERSON & COVEY | SJ | SJ | 0.2454 | 0.3947 | 0.5590 | 0.5270 | 0.4935 | 0.4021 | 0.4285 | 0.3966 | 0.4135 | |
| PHYS'S DRUG & SUPPLY | | | | 0.1059 | 0.3722 | 0.6386 | 0.7989 | 0.7989 | 0.7989 | 0.7989 | 0.7989 | |
| PREMO | 0.5557 | 0.8847 | 1.1465 | 1.3399 | 1.3791 | 1.3314 | 1.2337 | 1.3067 | 1.2350 | 1.0605 | 0.9391 | 0.9492 |
| REID PROVIDENT | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | | | | |
| REPUBLIC | | | | | | | | | | | | |
| REXALL | 0.3887 | 0.6990 | 1.0783 | 1.0281 | 0.9704 | 0.8965 | 0.8518 | 0.8159 | 0.8022 | 0.8250 | 0.8511 | 0.9026 |

* For all dosage sizes, shares derived from Perloff 1 matrices, except for 100 mg, derived from Berck 100 mg matrix.

# NY SETTLEMENT SHARES  5-25 MG BLEND

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| | 1959 | 1960 | 1961 | 1962 | 1963 | 1964 | 1965 | 1966 | 1967 | 1968 | 1969 | 1970 | 1971 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| HARTZ (FERNDALE) | 0.0277 | 0.0443 | 0.0470 | 0.0204 | 0.0361 | 0.0447 | 0.0442 | 0.0142 | | | | | |
| WES LABORATORY | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| KEY | 0.0491 | 0.1051 | 0.1241 | 0.0784 | 0.0525 | 0.0089 | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| KIRKMAN | 0.0702 | 0.0746 | 0.0739 | 0.0640 | 0.0571 | 0.0467 | 0.0407 | 0.0363 | 0.0260 | 0.0172 | 0.0119 | 0.0125 | 0.0140 |
| FARMERS URBAN | 0.1971 | 0.2360 | 0.2464 | 0.1626 | 0.0458 | 0.0078 | | | | | | | |
| LANNETT | 0.0650 | 0.0656 | 0.0705 | 0.1545 | 0.1825 | 0.2227 | 0.2576 | 0.3453 | 0.3807 | 0.1614 | | | |
| LEDERLE | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| LILLY | 27.4205 | 33.1077 | 35.5780 | 37.0061 | 35.5752 | 36.4920 | 36.3682 | 41.4006 | 43.2833 | 49.9980 | 43.9916 | 45.7841 | 54.5973 |
| LINCOLN | 0.2232 | 0.1929 | 0.1037 | 0.1119 | 0.0449 | 0.0296 | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| MALLINCKRODT | 0.5916 | 0.8943 | 0.8556 | 0.5243 | 0.3813 | 0.1225 | 0.0286 | | | | | | |
| MASSENGILL (SMITHKL) | 1.3228 | 1.4994 | 1.5230 | 1.3390 | 1.0330 | 0.6224 | 0.4326 | 0.3060 | 0.2597 | 0.1363 | 0.0408 | | |
| MCKESSON LABS | 1.9423 | | 1.7133 | 2.5699 | 2.5599 | 2.5699 | 2.5699 | 2.5699 | 1.7133 | 0.8588 | | | |
| MCNEIL | 0.0504 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| MERCK | 0.8810 | 0.8943 | 0.5534 | 0.2401 | 0.0244 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| MERRELL | | | | | | | | | | | | | |
| MEYER | 0.1650 | 0.1669 | 0.0736 | | | | | | | | | | |
| NAT'L DRUG | | | | | | | | | | | | | |
| NORWICH-EATON | | | | | | | | | | | | | |
| OTIS CLAPP | SJ | SJ | | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| PERSON & COVEY | 0.5118 | 0.3477 | 0.2402 | 0.1949 | 0.4269 | 0.6363 | 0.6043 | | | | | | |
| PHYS'S DRUG & SUPPL | 0.7899 | 0.7909 | 0.7263 | 0.7263 | 0.5805 | 0.3304 | 0.0063 | | | | | | |
| PREMO | 0.8414 | 0.8258 | 0.6331 | 1.1117 | 1.3207 | 1.5074 | 1.1668 | 0.8533 | 0.4799 | 0.3871 | 0.2923 | 0.2695 | 0.2351 |
| REID PROVIDENT | | | | | | | | | | | | | |
| REPUBLIC | 0.0141 | 0.0169 | 0.0098 | 0.0007 | 0.0536 | 0.0506 | 0.5128 | 0.8826 | 0.7666 | 0.6859 | 0.4320 | 0.2270 | 0.0388 |
| REXALL | 0.0854 | 1.0251 | 0.0061 | 0.8737 | | | | | | | | | |

Source of data... shares derived from Parfoff's numbers, except for 10/mg, derived from Borck 10/mg matrix.

# NY SETTLEMENT SHARES   5-25 MG BLEND

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding.
All shares are expressed as percentages.

| | 1947 | 1948 | 1949 | 1950 | 1951 | 1952 | 1953 | 1954 | 1955 | 1956 | 1957 | 1958 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RITE-AID | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| RORER | 0.2699 | 0.2258 | 0.2486 | 0.2454 | 0.3010 | 0.3776 | 0.4318 | 0.4297 | 0.4044 | 0.4208 | 0.3809 | 0.3089 |
| ROWELL | SJ | SJ | SJ | 0.0010 | 0.0200 | 0.1080 | 0.1851 | 0.2511 | 0.2486 | 0.2986 | 0.3156 | 0.3639 |
| SMITH, CARROLL, DUNHA | 0.1120 | 0.3510 | 0.6664 | 0.9640 | 0.9640 | 0.9640 | 0.9640 | 0.9640 | 0.9640 | 0.9640 | 0.9640 | 0.6427 |
| SMITH DORSEY (SANDOZ) | 0.2785 | 0.6609 | 0.6613 | 0.5119 | 0.3589 | 0.2558 | 0.1738 | 0.0932 | 0.0293 | 0.0169 | SJ | SJ |
| SQUIBB | 20.7245 | 20.0358 | 15.9548 | 12.3902 | 9.9570 | 9.1212 | 8.5095 | 7.9217 | 7.4467 | 7.3068 | 6.9438 | 6.7363 |
| STANLEY | SJ | SJ | SJ | SJ | SJ | SJ | 0.0256 | SJ | SJ | SJ | SJ | SJ |
| STRASENBURG | 0.0125 | 0.0215 | 0.0205 | 0.0157 | 0.0121 | 0.0076 | 0.0029 | 0.0785 | 0.1364 | 0.1823 | 0.2636 | 0.4261 |
| * SUCCESS | | | | | | | | | | | | |
| TESTAGAR | | 0.1105 | 0.2025 | 0.2431 | 0.2431 | 0.2431 | 0.2431 | 0.2431 | 0.2431 | 0.2431 | 0.2431 | 0.2431 |
| TUTAG | | | | | 0.0382 | 0.0672 | 0.0968 | 0.0947 | 0.0970 | 0.0943 | 0.0886 | 0.0817 |
| ULMER | | | | | | | | | 0.0149 | 0.0900 | 0.2077 | 0.2950 |
| UPJOHN | | | 0.0050 | 0.0083 | 0.0119 | 0.0128 | 0.0103 | 0.0069 | 0.0056 | 0.0083 | 0.0106 | 0.0108 |
| VITAFORE | 5.7533 | 3.9843 | 2.5466 | 1.5787 | 1.3996 | 1.3653 | 1.3474 | 1.2860 | 1.2192 | 1.2186 | 1.1765 | 1.1763 |
| VITARINE | 0.0218 | 0.0331 | 0.0650 | 0.0810 | 0.0192 | 0.0184 | 0.0166 | 0.0140 | 0.0114 | 0.0100 | 0.0089 | 0.0075 |
| V.C.A. | | | | | 0.1113 | 0.1540 | 0.1661 | 0.1922 | 0.1724 | 0.1679 | 0.1614 | 0.1547 |
| WEBSTER | | | | | 0.1102 | 0.0270 | 0.0539 | 0.0810 | 0.0700 | 0.0429 | 0.0160 | 0.0160 |
| WESTWARD | | | 0.5848 | 0.7511 | 0.8609 | 0.8218 | 0.7652 | 0.8093 | 0.8093 | 0.8093 | 0.8093 | 0.8093 |
| WINTHROP (STERLING) | 0.1120 | 0.0988 | 0.0932 | 0.0766 | 0.0766 | 0.0766 | 0.0766 | 0.7805 | 0.7175 | 0.6724 | 0.6918 | 0.6666 |
| WYETH | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| TOTAL | 99.4990 | 91.3780 | 81.4214 | 71.7838 | 66.7481 | 66.9427 | 64.8275 | 62.9521 | 59.9693 | 59.9493 | 60.7575 | 62.5678 |
| UNALLOCATED | 0.5010 | 8.6220 | 18.5786 | 28.2162 | 33.2519 | 33.0573 | 35.1725 | 37.0479 | 40.0307 | 40.0508 | 39.2425 | 37.4322 |



* For all dosage sizes, shares derived from Period 1 matrices, except for 100 mg, derived from Berck 100 mg matrix.

# NY SETTLEMENT SHARES   5-25 MG BLEND

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| | 1959 | 1960 | 1961 | 1962 | 1963 | 1964 | 1965 | 1966 | 1967 | 1968 | 1969 | 1970 | 1971 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RITE-AID | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| RORER | 0.2504 | 0.3234 | 0.3166 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| FLOWELL | 0.3597 | 0.4114 | 0.3426 | 0.3187 | 0.2399 | 0.1983 | 0.1681 | 0.1254 | 0.0729 | 0.0207 | 0.0003 | SJ | SJ |
| SMITH, CARROLL, DUNH | 0.3213 | SJ | SJ | 0.1972 | 0.0666 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| SMITH DORSEY (SANDO | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| SQUIBB | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| STANLEY | 7.0190 | 8.0901 | 8.3190 | 8.4622 | 7.9438 | 7.9632 | 7.1929 | 7.0021 | 5.8430 | 4.4341 | 3.2898 | 2.2046 | 1.3540 |
| STRASENBURG | 0.7770 | 1.0351 | 1.3778 | 1.9557 | 2.4209 | 2.5921 | 2.2663 | 2.5942 | 3.8740 | 4.6425 | 4.2688 | 2.8530 | 1.6039 |
| *SUCCESS | 0.0818 | 0.0800 | 0.0928 | 0.0932 | 0.0622 | 0.0931 | 0.0616 | 0.0302 | | | | | |
| TESTAGAR | 0.2431 | 0.2431 | 0.2210 | 0.2210 | 0.2210 | 0.2210 | 0.2210 | 0.1473 | 0.0737 | | | | |
| TUTAG | 0.3194 | 0.2983 | 0.2715 | 0.2802 | 0.2790 | 0.2940 | 0.2668 | 0.2368 | 0.1814 | 0.1429 | 0.1216 | 0.0943 | 0.0466 |
| ULMER | 0.0078 | 0.0070 | 0.0065 | 0.0049 | 0.0021 | | | | | | | | |
| UPJOHN | 1.2106 | 1.3001 | 1.1408 | 0.9344 | 0.7898 | 0.7177 | 0.6278 | 0.5725 | 0.6047 | 0.6944 | 0.7726 | 0.6810 | 0.4170 |
| VITAFORE | 0.0410 | 0.0579 | 0.0510 | 0.0682 | 0.0718 | 0.0760 | 0.0569 | 0.0731 | 0.0674 | 0.0653 | 0.0542 | 0.0376 | 0.0246 |
| VITARINE | 0.1434 | 0.1513 | 0.1502 | 0.1315 | 0.1171 | 0.0975 | 0.0848 | 0.0762 | 0.0520 | 0.0346 | 0.0237 | 0.0168 | 0.0099 |
| V.C.A. | 0.8093 | 0.8993 | 0.7357 | 0.7357 | 0.7357 | 0.5906 | 0.3454 | 0.1001 | | | | | |
| WEBSTER | | | | | | | | | | | | | |
| WESTWARD | 0.6703 | 0.6175 | 0.6504 | 0.6958 | 0.6902 | 0.6647 | 0.7676 | 0.7834 | 0.8409 | 0.9916 | 0.9735 | 0.8415 | 0.6269 |
| WINTHROP (STERLING) | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| WYETH | SJ | SJ | SJ | SJ | SJ | SJ | SJ | 0.0836 | 0.1671 | 0.2507 | 0.2507 | 0.2507 | 0.2507 |
| TOTAL | 66.5186 | 73.5208 | 72.8328 | 73.7999 | 69.4449 | 67.3124 | 62.1906 | 66.7691 | 66.3840 | 64.3463 | 61.3719 | 62.3239 | 69.1523 |
| UNALLOCATED | 33.4814 | 26.4792 | 27.1672 | 26.2001 | 30.5551 | 32.6876 | 37.8094 | 33.2309 | 33.6160 | 35.6537 | 38.6281 | 37.6761 | 30.8477 |

* For all dosage sizes, shares derived from Perioff 1 matrices, except for 100 mg, derived from Berck 100 mg matrix.

# NY SETTLEMENT SHARES  5-25-100 MG BLEND

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| Company | 1947 | 1948 | 1949 | 1950 | 1951 | 1952 | 1953 | 1954 | 1955 | 1956 | 1957 | 1958 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ABBOTT | 4.3680 | 5.1003 | 4.5395 | 3.6713 | 2.8491 | 2.4426 | 1.9612 | 1.5874 | 1.2527 | 1.2232 | 1.1310 | 1.0484 |
| ALLPUTTER (APPROVED) | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| AMERICAN HOME PRODU | 0.1120 | 1.4764 | 3.2324 | 4.9480 | 4.8890 | 4.7900 | 4.6759 | 4.6284 | 4.6016 | 4.6016 | 4.6016 | 4.6016 |
| AMERICAN PHARM | | | | | | | | | | | | |
| AMES CO. | | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| AMFRE GRANT (EMONS) | | 0.8505 | 2.5276 | 3.7514 | 3.7279 | 3.7098 | 3.5310 | 3.6018 | 3.2938 | 2.6650 | 2.5260 | 3.3161 |
| AYERST LABORATORIES | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BARRE | | | | | | | | | | | | |
| BOEHRINGER INGELHEIM | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BOYLE | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BREON | | 0.1754 | 0.3240 | 0.3752 | 0.3114 | 0.2576 | 0.2054 | 0.1788 | 0.1591 | 0.1483 | 0.1235 | 0.1079 |
| BREWER | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BRYANT PHARM | | | | | | | | | | | | |
| BURROUGHS | 4.0657 | 2.8111 | 1.7760 | 0.9756 | 0.5782 | 0.5016 | 0.3839 | 0.3036 | 0.2412 | 0.1658 | 0.1389 | 0.0762 |
| CARNRICK | SJ | SJ | SJ | 0.9935 | 1.0601 | 0.9233 | 0.7715 | 0.5669 | 0.4014 | 0.1961 | 0.3315 | 0.4973 |
| CHASE | | 0.0400 | 0.0734 | 0.1452 | 0.6882 | 1.1747 | 1.1033 | 0.6910 | 0.2412 | 0.2771 | 0.2215 | 0.1698 |
| CIBA | | 0.0083 | 0.0040 | | | | | | | | | |
| COLE | 0.0190 | | | | | | | | 0.2415 | 0.2415 | 0.2415 | 0.2415 |
| DEXTER | | | | | 0.0436 | 0.0694 | 0.0953 | 0.0943 | 0.0740 | 0.0508 | 0.0242 | |
| DRUG PRODS. | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| EVRON | 0.1120 | 0.1040 | 0.1027 | 0.0880 | 0.0669 | 0.0851 | 0.0632 | 0.0823 | 0.0818 | 0.0546 | 0.0273 | 0.0242 |
| HAACK LABS | | | 0.0211 | 0.0338 | 0.0499 | 0.0490 | 0.0751 | 0.1014 | 0.1277 | 0.1277 | 0.1277 | 0.1277 |
| HALSEY | | | | 0.3731 | 0.7374 | 1.0638 | 1.0500 | 1.0468 | 1.0412 | 1.0412 | 1.0412 | 1.0412 |
| | | | | | | | | | | 0.0045 | 0.0099 | 0.0393 |
| HANCE & WHITE | | | | 1.2048 | 2.3807 | 3.4988 | 3.4156 | 3.3795 | 3.3614 | 3.3614 | 3.2472 | 3.1330 |
| HARVEY | | | | 0.0294 | 0.0580 | 0.0851 | 0.0832 | 0.0823 | 0.0818 | 0.0818 | 0.0618 | 0.0818 |

*

* Berck/Petloff did not calculate a 5-25-100 mg blend, thus blend derived from Berck/Petloff data using San Francisco 5-25-100 mg blend calculation.

## NY SETTLEMENT SHARES  5-25-100 MG BLEND

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| Company | 1959 | 1960 | 1961 | 1962 | 1963 | 1964 | 1965 | 1966 | 1967 | 1968 | 1969 | 1970 | 1971 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ABBOTT | 0.9368 | 0.7693 | 0.3740 | 0.1460 | 0.0423 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| ALLPUTTER (APPROVE | | 0.0110 | 0.0531 | 0.0949 | 0.1350 | 0.1211 | 0.1333 | 0.1520 | 0.1392 | 0.1485 | 0.1226 | 0.1586 | 0.1754 |
| AMERICAN HOME PROD | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| AMERICAN PHARM | 4.6016 | 4.6016 | 4.1833 | 4.1833 | 4.1833 | 4.1833 | 4.1833 | 4.1833 | 4.1833 | 4.1833 | 4.1833 | 4.1833 | 4.1833 |
| AMES CO. | 0.0818 | 0.0818 | 0.0744 | 0.0744 | 0.0744 | 0.0744 | 0.0744 | 0.0744 | 0.0744 | 0.0496 | 0.0248 | | |
| AMFRE GRANT (EMONS | 4.7890 | 5.2468 | 4.4906 | 3.7296 | 3.2650 | 2.8451 | 1.9946 | 2.1974 | 1.6223 | 0.9176 | 1.1430 | 2.4250 | |
| AYERST LABORATORIE | 0.0931 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BARRE | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | 4.1765 |
| BOEHRINGER INGELHEI | 0.0996 | 0.0948 | 0.0466 | 0.0040 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BOYLE | SJ | 0.1939 | 0.2408 | 0.2776 | 0.2672 | 0.3045 | 0.2970 | 0.3291 | 0.3418 | 0.3238 | 0.3269 | 0.3356 | 0.4290 |
| BREON | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BREWER | 2.9928 | 1.5822 | 0.2606 | 0.2809 | 0.2822 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| BRYANT PHARM | 0.4973 | 0.4973 | 0.4521 | 0.4521 | 0.4521 | 0.4521 | 0.4521 | 0.4521 | 0.3014 | 0.1507 | | | |
| BURROUGHS | 0.0245 | 0.0688 | 0.0251 | 0.0150 | 0.0078 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| CARNRICK | 0.1207 | 0.2415 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| CHASE | 0.2415 | 0.2415 | 0.2195 | 0.2195 | 0.2195 | 0.2195 | 0.1463 | 0.0732 | SJ | SJ | SJ | SJ | SJ |
| CIBA | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| COLE | 0.0242 | 0.0242 | 0.0220 | 0.0150 | 0.0078 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| DEXTER | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| DRUG PRODS. | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| EVRON | 0.1277 | 0.1277 | 0.1161 | 0.1161 | 0.1161 | 0.1161 | 0.1161 | 0.1161 | 0.1161 | 0.1161 | 0.1161 | 0.0774 | 0.0387 |
| HAACK LABS | 1.0412 | 1.0412 | 0.9465 | 0.9465 | 0.9465 | 0.6310 | 0.3155 | | | | | | |
| HALSEY | 0.0810 | 0.1317 | 0.1708 | 0.1590 | 0.1240 | 0.0439 | 0.0256 | 0.1053 | 0.2098 | 0.3463 | 0.2737 | 0.1140 | |
| HANCE & WHITE | 3.0188 | 3.0188 | 2.7444 | 2.7444 | 1.8236 | 0.9148 | | | | | | | |
| HARVEY | 0.0818 | 0.0818 | 0.0744 | 0.0744 | 0.0744 | 0.0744 | 0.0744 | 0.0744 | 0.0744 | 0.0744 | 0.0744 | 0.0744 | 0.0744 |

* Berck/Perloff did not calculate a 5-25-100 mg blend, thus blend derived from Berck/Perloff data using San Francisco 5-25-100 mg blend calculation.

# NY SETTLEMENT SHARES  5-25-100 MG BLEND

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| | 1947 | 1948 | 1949 | 1950 | 1951 | 1952 | 1953 | 1954 | 1955 | 1956 | 1957 | 1958 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| *; HARTZ (FERNDALE) | SJ | SJ | SJ | SJ | SJ | SJ | 0.0116 | 0.0241 | 0.0551 | 0.0886 | 0.0923 | 0.0805 |
| IVES LABORATORY | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| KEY | SJ | SJ | SJ | 0.0118 | 0.0166 | 0.0212 | 0.0197 | 0.0188 | 0.0184 | 0.0194 | 0.0196 | 0.0191 |
| KIRKMAN | | | | | | | 0.0333 | 0.0592 | 0.0853 | 0.0834 | 0.0803 | 0.0770 |
| KREMERS URBAN | | 0.0762 | 0.2015 | 0.2080 | 0.2004 | 0.1777 | 0.1584 | 0.1324 | 0.1339 | 0.1430 | 0.1461 | 0.1524 |
| LANNETT | | 0.0243 | 0.0562 | 0.0767 | 0.0834 | 0.0916 | 0.0912 | 0.0873 | 0.0732 | 0.0624 | 0.0548 | 0.0630 |
| LEDERLE | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| LILLY | 61.6133 | 51.8538 | 42.9438 | 32.3291 | 27.1270 | 24.0406 | 22.6226 | 21.9720 | 22.5077 | 23.5665 | 23.6245 | 23.9243 |
| LINCOLN | SJ | SJ | SJ | 0.0106 | 0.1216 | 0.1909 | 0.2089 | 0.1757 | 0.1136 | 0.1604 | 0.2244 | 0.2638 |
| MALLINCKRODT | SJ | SJ | SJ | SJ | SJ | SJ | SJ | 0.0326 | 0.1099 | 0.2321 | 0.3611 | 0.4486 |
| MASSENGILL (SMITHKLIN) | 0.1259 | 0.2141 | 0.4398 | 0.5304 | 0.6679 | 0.9655 | 1.2338 | 1.4006 | 1.4784 | 1.3009 | 1.1660 | 1.1938 |
| MCKESSON LABS | | | | | | | | | | | | |
| MCNEIL | | | | | | | | | | | | |
| MERCK | 0.2690 | 0.5272 | 0.8265 | 1.1983 | 1.0234 | 0.9559 | 0.7019 | 0.5848 | 0.4322 | 0.3472 | 0.2569 | 0.1488 |
| MERRELL | 0.5802 | 1.0110 | 1.2351 | 1.2249 | 1.2222 | 1.1617 | 1.1144 | 1.0459 | 0.9901 | 0.9625 | 0.8815 | 0.8529 |
| MEYER | | | 0.0869 | 0.1452 | 0.1921 | 0.2452 | 0.2771 | 0.2781 | 0.2245 | 0.1629 | 0.1161 | 0.1261 |
| NATL DRUG | | | | 0.1805 | 0.2831 | 0.2448 | 0.1165 | | | | | |
| NORWICH-EATON | SJ | | | | | | | | 0.0113 | 0.0255 | 0.0283 | 0.0159 |
| OTIS CLAPP | | | | | | | | | | | | |
| PERSON & COVEY | SJ | SJ | 0.2454 | 0.3947 | 0.5524 | 0.5102 | 0.4663 | 0.4508 | 0.3984 | 0.3688 | 0.3846 | 0.4907 |
| PHYS'S DRUG & SUPPLY | 0.5557 | 0.8847 | 1.1465 | 1.3399 | 1.3625 | 1.2888 | 1.1658 | 1.2218 | 1.1485 | 0.9863 | 0.8734 | 0.8828 |
| PREMO | SJ | SJ | SJ | 0.1059 | 0.3677 | 0.6181 | 0.7550 | 0.7470 | 0.7431 | 0.7431 | 0.7431 | 0.7431 |
| REID PROVIDENT | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| REPUBLIC | | | | | | | | | | 0.0037 | 0.0068 | 0.0139 |
| REXALL | 0.3887 | 0.6990 | 1.0783 | 1.0281 | 0.9507 | 0.6678 | 0.8050 | 0.7629 | 0.7460 | 0.7673 | 0.7915 | 0.8394 |

25

* Berck/Perloff did not calculate a 5-25-100 mg blend, thus blend derived from Berck/Perloff data using San Francisco 5-25-100 mg blend calculation.

# NY SETTLEMENT SHARES  5-25-100 MG BLEND

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| Company | 1959 | 1960 | 1961 | 1962 | 1963 | 1964 | 1965 | 1966 | 1967 | 1968 | 1969 | 1970 | 1971 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| * HARTZ (FERNDALE) | 0.0960 | 0.1763 | 0.2442 | 0.1736 | 0.0612 | 0.0180 | 0.0177 | 0.0057 | SJ | SJ | SJ | SJ | SJ |
| IVES LABORATORY | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| KEY | 0.0457 | 0.0977 | 0.1155 | 0.0682 | 0.0023 | 0.0008 | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| KIRKMAN | 0.0712 | 0.0752 | 0.0745 | 0.0656 | 0.0578 | 0.0480 | 0.0430 | 0.0387 | 0.0278 | 0.0183 | 0.0127 | 0.0131 | 0.0147 |
| KREMERS URBAN | 0.1833 | 0.2195 | 0.2277 | 0.1512 | 0.0426 | 0.0072 | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| LANNETT | 0.0605 | 0.0796 | 0.0684 | 0.1437 | 0.1790 | 0.2071 | 0.2209 | 0.3211 | 0.2797 | 0.1501 | SJ | SJ | SJ |
| LEDERLE | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| LILLY | 25.5010 | 30.7901 | 33.1014 | 34.4157 | 33.0849 | 33.9375 | 33.5629 | 38.5025 | 40.2534 | 40.9135 | 40.9122 | 43.4906 | 50.7754 |
| LINCOLN | 0.2076 | 0.0957 | 0.0964 | 0.1040 | 0.0784 | 0.0278 | 0.0266 | SJ | SJ | SJ | SJ | SJ | SJ |
| MALLINCKRODT | 0.5502 | 0.6365 | 0.6100 | 0.4876 | 0.2804 | 0.1139 | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| MASSENGILL (SMITHKLI) | 1.2395 | 1.3936 | 1.4172 | 1.2397 | 0.9607 | 0.5788 | 0.4025 | 0.3683 | 0.2406 | 0.1270 | 0.0452 | SJ | SJ |
| MCKESSON LABS | | 0.8764 | 1.5933 | 2.3900 | 2.3900 | 2.3900 | 2.3900 | 2.3900 | 1.5933 | 0.7967 | | | |
| MCNEIL | 0.0597 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| MERCK | 0.8193 | 0.8317 | 0.5147 | 0.2307 | 0.0227 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| MERRELL | | | | | | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| MEYER | 0.1535 | 0.1570 | 0.0682 | | | | | | | | | | |
| NAT'L DRUG | | | | | | | | | | | | | |
| NORWICH-EATON | | | | | | | | | | | | | |
| OTIS CLAPP | | | | | | | | | | | | | |
| PERSON & COVEY | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| PHYS'S DRUG & SUPPL | 0.4760 | 0.3233 | 0.2318 | 0.1812 | 0.1124 | 0.0338 | 0.0133 | SJ | SJ | SJ | SJ | SJ | SJ |
| PREMO | 0.7431 | 0.7431 | 0.6755 | 0.6755 | 0.5359 | 0.3147 | 0.0896 | SJ | SJ | SJ | SJ | SJ | SJ |
| REID PROVIDENT | 0.7732 | 0.8610 | 0.8678 | 1.0339 | 1.2283 | 1.4019 | 1.1131 | 0.7992 | 0.4462 | 0.3414 | 0.2719 | 0.2507 | 0.2187 |
| REPUBLIC | 0.0135 | 0.0189 | 0.0096 | 0.0081 | | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| REXALL | 0.8978 | 0.9720 | 0.8185 | 0.8126 | 0.7985 | 0.8842 | 0.8489 | 0.8208 | 0.7129 | 0.5914 | 0.4025 | 0.2111 | 0.0361 |

26

* Berck/Perloff did not calculate a 5-25-100 mg blend, thus blend derived from Berck/Perloff data using San Francisco 5-25-100 mg blend calculation.

# NY SETTLEMENT SHARES  5-25-100 MG BLEND

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding.
All shares are expressed as percentages.

| | 1947 | 1948 | 1949 | 1950 | 1951 | 1952 | 1953 | 1954 | 1955 | 1956 | 1957 | 1959 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RITE-AID | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| RORER | .2699 | .2259 | .2486 | .2454 | .2973 | .3655 | .4000 | .4017 | .3761 | .3913 | .3542 | .2872 |
| ROWELL | SJ | SJ | SJ | .0010 | .0190 | .1154 | .1863 | .2553 | .2404 | .2790 | .2954 | .3427 |
| SMITH, CARROLL, DUNHA | .1120 | .3510 | .6664 | .9640 | .9525 | .9332 | .9110 | .9015 | .8966 | .8966 | .8866 | .5977 |
| SMITH DORSEY (SANDOZ) | .2785 | .6609 | .6613 | .5119 | .3548 | .2476 | .1642 | .0871 | .0277 | .0157 | SJ | SJ |
| SQUIBB | 20.7245 | 20.0358 | 15.9550 | 12.3902 | 10.4070 | 10.3495 | 10.5904 | 10.5395 | 10.0716 | 9.4425 | 8.2893 | 7.5845 |
| STANLEY | SJ | SJ | SJ | SJ | SJ | SJ | .0242 | .0734 | .1268 | .1695 | .2451 | .3963 |
| STRASENBURGH | .0125 | .0215 | .0205 | .0157 | .0120 | .0074 | .0028 | | | | | |
| * SUCCESS | | | | | | | | | | | | |
| SUMMERS | | | | | | | | | | | | |
| TESTAGAR | | | | | .0363 | .0582 | .0810 | .0784 | .0625 | .0827 | .0769 | .0712 |
| TUTAG | | | | | | | | | | | | .3016 |
| ULMER | | .1105 | .2025 | .2431 | .2400 | .2352 | .2297 | .2273 | .2261 | .2261 | .2261 | .2261 |
| UPJOHN | | | | | .0118 | .0123 | .0098 | .0065 | .0052 | .0077 | .1032 | .2743 |
| VITAFORE | | | .0050 | .0003 | | | .0157 | .0131 | .0139 | .0093 | .0098 | .0100 |
| VITAFINE | 5.7583 | 3.9843 | 2.5466 | 1.5798 | 1.3823 | 1.3212 | 1.2733 | 1.2024 | 1.1339 | 1.1332 | 1.0942 | 1.0940 |
| V.C.A. | .0218 | .0331 | .0650 | .0809 | .0190 | | | | | | | .0069 |
| WEBSTER | | | | | .1100 | .1491 | .1975 | .2345 | .2294 | .1951 | .1500 | .1438 |
| WESTWARD | SJ | SJ | .6433 | .8262 | .9356 | .8749 | .6139 | .7567 | .7526 | .7526 | .7526 | .7526 |
| WINTHROP (STERLING) | .1120 | .0988 | .0932 | .0766 | .0756 | .0740 | .0724 | .0716 | .0650 | .0399 | .0149 | |
| WYETH | SJ | SJ | SJ | SJ | SJ | SJ | SJ | .8028 | .7340 | .6878 | .7079 | .6819 |
| TOTAL | 99.4990 | 91.3780 | 81.9678 | 72.3015 | 66.7027 | 66.5622 | 64.0994 | 62.3809 | 59.3006 | 58.7389 | 58.6237 | 60.0868 |
| UNALLOCATED | .5010 | 8.6220 | 18.0322 | 27.6985 | 33.2973 | 33.4378 | 35.9006 | 37.6192 | 40.6994 | 41.2611 | 41.3763 | 39.9132 |

27

* Berck/Perloff did not calculate a 5-25-100 mg blend, thus blend derived from Berck/Perloff data using San Francisco 5-25-100 mg blend calculation.

# NY SETTLEMENT SHARES   5-25-100 MG BLEND

"SJ" represents that the corresponding company has been granted summary judgment in the NY Market Share proceeding. All shares are expressed as percentages.

| | 1959 | 1960 | 1961 | 1962 | 1963 | 1964 | 1965 | 1966 | 1967 | 1968 | 1969 | 1970 | 1971 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RITE-AID | SJ | | | | | | | | | | | | SJ |
| RORER | 0.2329 | 0.3007 | 0.2944 | 0.1834 | 0.0619 | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| ROWELL | 0.3394 | 0.3854 | 0.3186 | 0.2964 | 0.2231 | 0.1844 | 0.1563 | 0.1166 | 0.0678 | 0.0193 | 0.0002 | | |
| SMITH CARROLL DUNH | 0.2989 | | | | | | | | | | | | |
| SMITH DORSEY (SANDO | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| SQUIBB | 7.8235 | 8.0410 | 8.0680 | 9.1711 | 8.7514 | 8.9355 | 8.4202 | 8.3350 | 7.3672 | 5.9734 | 5.0446 | 3.4833 | 1.9975 |
| STANLEY | | | | | | | | | | | | | |
| STRASENBURG | 0.6815 | 1.0054 | 1.3686 | 1.9554 | 2.4228 | 2.5972 | 2.3081 | 2.6528 | 3.9940 | 4.7837 | 4.4591 | 3.0077 | 1.7372 |
| * | | | | | | | | | | | | | |
| SUCCESS | 0.0696 | 0.0746 | 0.0821 | 0.0830 | 0.0819 | 0.0822 | 0.0555 | 0.0269 | | | | | |
| SUMMERS | 0.6862 | 1.2000 | 1.2349 | 1.3390 | 0.9996 | 0.4953 | | | | | | | |
| TESTAGAR | 0.2261 | 0.2261 | 0.2055 | 0.2055 | 0.2055 | 0.2055 | 0.2055 | 0.1370 | 0.0685 | | | | |
| TUTAG | 0.2971 | 0.2774 | 0.2525 | 0.2606 | 0.2594 | 0.2734 | 0.2481 | 0.2202 | 0.1687 | 0.1329 | 0.1133 | 0.0877 | 0.0493 |
| ULMER | 0.0073 | 0.0066 | 0.0060 | 0.0046 | 0.0020 | | | | | | | | |
| UPJOHN | 1.1259 | 1.2091 | 1.0609 | 0.8690 | 0.7345 | 0.6674 | 0.5039 | 0.5325 | 0.5624 | 0.6450 | 0.7185 | 0.6333 | 0.3978 |
| VITAFORE | 0.1164 | 0.1369 | 0.1350 | 0.1856 | 0.0668 | 0.0707 | 0.0547 | 0.0680 | 0.0627 | 0.0607 | 0.0505 | 0.0349 | 0.0228 |
| VITARINE | 0.1334 | 0.1407 | 0.1397 | 0.1223 | 0.1089 | 0.0907 | 0.0789 | 0.0699 | 0.0494 | 0.0322 | 0.0221 | 0.0156 | 0.0092 |
| V.C.A. | 0.7526 | 0.7526 | 0.6842 | 0.6842 | 0.6842 | 0.5493 | 0.3212 | 0.0931 | | | | | |
| WEBSTER | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| WESTWARD | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ | SJ |
| WINTHROP (STERLING) | 0.6857 | 0.6317 | 0.6049 | 0.6471 | 0.6419 | 0.6367 | 0.7139 | 0.7285 | 0.7820 | 0.9222 | 0.9054 | 0.7826 | 0.5830 |
| WYETH | SJ | SJ | SJ | SJ | SJ | SJ | SJ | 0.0777 | 0.1554 | 0.2331 | 0.2331 | 0.2331 | 0.2331 |
| TOTAL | 64.2104 | 71.3503 | 70.6649 | 71.7070 | 67.0624 | 64.7321 | 59.6873 | 64.0617 | 63.9647 | 62.0520 | 59.4581 | 59.6429 | 65.1361 |
| UNALLOCATED | 35.7896 | 28.6497 | 29.3351 | 28.2930 | 32.9376 | 35.2679 | 40.3127 | 35.9303 | 36.0353 | 37.9480 | 40.5419 | 40.3572 | 34.8639 |

* Berck/Perloff did not calculate a 5-25-100 mg blend, thus blend derived from Berck/Perloff data using San Francisco 5-25-100 mg blend calculation.

28

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VICTOIRE DUMONT                              *

      Plaintiff                              *

v.                                           *          Case No. 07-1635(JR)

ELI LILLY AND COMPANY, et al                 *

      Defendants                             *

*    *    *    *    *    *    *    *    *    *    *    *    *

[PROPOSED] ORDER

      Having considered Mallinckrodt, Inc.'s Motion for Summary Judgment and supporting documents and Plaintiff's Opposition to the same, Mallinckrodt's Motion for Summary Judgment is hereby granted and the action is dismissed in its entirety as to defendant Mallinckrodt, Inc.


_____                    _____
Date                                     Judge James Robertson