# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **VICTOIRE DUMONT,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION No. 07-CV-01635 (JR)** |
| ) | |
| **vs.** ) | |
| ) | |
| ) | |
| **THE ABBOT LABORATORIES, INC., et al.,** ) | |
| ) | |
| **Defendants**. ) | |

## DEFENDANT ELI LILLY AND COMPANY'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO TRANSFER

This is a prescription drug product liability action in which plaintiff claims that her alleged *in utero* exposure to the synthetic estrogen diethylstilbestrol ("DES") in 1970 caused her injuries. Plaintiff filed this action in the District of Columbia. Now, less than four months later, plaintiff seeks to transfer this case to the Eastern District of New York.

New York is not the most appropriate location for trial of this case, neither for the convenience of the witnesses nor for the interests of justice. In this particular case, despite plaintiff's allegations that she is a New York resident and has received recent treatment for her injuries in New York, transfer to the Eastern District of New York is improper because plaintiff's case primarily involves contacts with France, not New York. The French contacts include:

- Plaintiff is a citizen of France.

- Plaintiff's alleged exposure to DES occurred in France.

- Plaintiff was born in France.

- Plaintiff received treatment from a physician in France for her claimed clear cell adenocarcinoma.

- Both of the plaintiff's parents currently reside in France and are citizens of France.

- The alleged purchase and ingestion of DES by the plaintiff's mother occurred in France.

- The physician who allegedly prescribed DES to plaintiff's mother resides in France.

- The pharmacist who allegedly filled the DES prescription for plaintiff's mother resides in France.

- Pharmacy records, if any, related to the alleged purchase of DES by the plaintiff's mother would be located in France and would likely be written in French.

- Medical records, if any, related to the alleged prescription of DES would be located in France and would likely be written in French.

- Pharmacy records, if any, related to the drug inventory of the pharmacy would be located in France and would likely be written in French.

- Medical records, if any, related to the treatment that plaintiff allegedly received in France would be located in France and would likely be written in French.

- The vast majority of testimony and documentary evidence will be in French, requiring translation.

- French substantive law will apply to this case.

Further, plaintiff's conduct in first filing in the District of Columbia and, less than four months later, seeking to transfer her case to the Eastern District of New York constitutes blatant forum shopping. Surely, when plaintiff originally filed her case, she knew the facts that allegedly connect her claims to New York. Despite this knowledge, she engaged in forum shopping to avail herself of the District of Columbia's statute of limitations. Such conduct should not be condoned. Because plaintiff has engaged in improper forum shopping, because French substantive law applies to this case, and because this case and most of the critical fact witnesses and arguments are primarily located in and connected to France, the Court should deny plaintiff's Motion to Transfer to the Eastern District of New York.

2

## LAW AND ARGUMENT

Title 28 U.S.C. Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The moving party bears the burden of showing that transfer under this statute is proper. *Shenandoah Assocs. Ltd. P'ship v. Tirana*, 182 F. Supp. 2d 14, 25 (D.D.C. 2001). When a genuine choice of venue exists, the decision to transfer must be made "according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *see also Dean v. Eli Lilly and Company*, 515 F. Supp. 2d 18, 20 (D.D.C. 2007). In exercising their discretion under § 1404(a), courts must consider various case-specific factors, "including the private interests of the parties and the public interests of the court." *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996).

The private interest considerations include: (1) plaintiff's choice of forum, (2) the defendants' choice of forum, (3) whether the claims arose elsewhere, (4) the convenience of the parties, (5) the convenience of the witnesses, and (6) the ease of access to sources of proof. *Id.* In determining which venue is favored by the interest of justice, courts focus on the following public interest considerations: (1) the familiarity of the transferee forum with the governing laws, (2) the relative congestion of the court calendars, and (3) the local interest in deciding local controversies at home. *Id.* Conversely, <u>the possibility that the movant is forum shopping</u> is a public interest consideration that <u>weighs against transfer</u>. *Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124, 129 (D.D.C. 2001). Further, "[w]hen the plaintiff is foreign, the private and public interest factors need not so heavily favor the . . . forum [in which the case was initially filed]." *Gschwind v. Cessna Aircraft Co.*, No. 97-3164, 1998 WL 654174, at *2 (10th Cir. 1998) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981)).

I.    **PRIVATE INTEREST CONSIDERATIONS FAVOR DENIAL OF MOTION TO TRANSFER**

A.    **Plaintiff's Second Choice of Forum is Entitled to <u>No</u> Deference**

Despite the fact that plaintiff filed this case in the District of Columbia, she now claims that the Eastern District of New York is a more appropriate venue.[1]  *See* Plaintiff's Memorandum in Support of Motion to Transfer, at 5.  Plaintiff must have known where the relevant facts occurred in her case at the time that she filed in the District of Columbia.  Nonetheless, the defendants and this Court must now address plaintiff's claim that her second choice of forum is the most appropriate venue.

Courts do not favor such maneuvering and give <u>no</u> deference to a plaintiff's second choice of forum.   *Lagor v. Eli Lilly and Company*, No. 06-1967 (JDB), 2007 WL 1748888, slip. op. at 3 (D.D.C. June 18, 2007) ("this Court accords no weight to plaintiffs' second-choice forum") (*See* **Exhibit 1**); *see also Health Discovery Corp. v. Ciphergen Biosystems, Inc.*, No. 06-260, 2007 WL 128283, at *3 (E.D. Tex. Jan. 11, 2007) (plaintiff's "second or third choices of forum receive[ ] *no* deference."); *Tiffany v. Hometown Buffet, Inc.*, No. 06-2524, 2006 WL 2792868, at *2 (N.D. Cal. Sept. 28, 2006) ("there can be no presumption of deference for the plaintiff's second choice of forum in her motion to transfer, pursuant to 28 U.S.C. 1404(a)").   Additionally, plaintiff is a French citizen, *see* excerpts from Deposition

---

[1]    Plaintiff's heavy reliance on *Albin v. Eli Lilly and Company* is misplaced.  Plaintiff claims that "[her] connection to New York is stronger than that in *Albin* . . . ." *See* Plaintiff's Memorandum in Support of Motion to Transfer, at 2.  However, a cursory review of the plaintiff's motion to transfer in *Albin* reveals that, here, plaintiff's connection to New York is much weaker than the *Albin* plaintiff's connection to New York.  In the *Albin* motion to transfer, the plaintiff states that the operative facts occurred in New York; plaintiff's mother was prescribed and purchased DES in New York; plaintiff was born in New York and lived and received medical treatment for the first 32 years of her life in New York; plaintiff's mother lived in New York; plaintiff's mother purchased DES at a pharmacy in New York; the injury occurred in New York; and New York substantive law applied to the case.  Plaintiff's Motion to Transfer at 1-2, *Albin v. Eli Lilly and Company*, No. 04-986 (RBW) (D.D.C. July 16, 2004) (**Exhibit 2**).  *Albin* is clearly distinguishable from the present case where the operative events occurred in France.

4

Transcript of Victoire Dumont, attached hereto as **Exhibit 4**, at 7:19 - 9:19, and a foreign plaintiff's choice of forum is already entitled to less deference. *Piper Aircraft*, 454 U.S. at 255; *Gschwind*, 1998 WL 654174, at *2 ("A foreign plaintiff's choice of forum, however, warrants less deference.") (citing *Piper Aircraft*, 454 U.S. at 256). Courts hesitate to grant plaintiffs' motions to transfer cases from the forum that the plaintiffs originally selected to yet another forum on grounds of gamesmanship and forum shopping. *See Van Dusen v. Barrack*, 376 U.S. 612, 636 (1964) (stating that § 1404(a) was intended as a "judicial housekeeping measure" rather than a "forum-shopping instrument"); *Schmid Labs., Inc. v. Hartford Accident & Indem. Co.*, 654 F. Supp. 734, 737 (D.D.C. 1986) (stating that "the transfer provisions in the U.S. Code . . . were in part intended to prevent forum shopping"); *Tiffany*, 2006 WL 2792868, at *2 (plaintiffs' actions of initially filing suit in one jurisdiction, only to later move to transfer the case to yet another forum, were indicative of "forum shopping").

Plaintiff initially filed in the District of Columbia, presumably to take advantage of the District of Columbia's statute of limitation period. Plaintiff, a French citizen, asserts in her motion that she has lived in New York for three years and that her treating physicians practice in New York. *See* Plaintiff's Memorandum in Support of Motion to Transfer, at 1. However, this Court has held that, in deciding whether to transfer a case, little emphasis should be placed on the residence of a party. *Trout Unlimited*, 944 F. Supp. at 17 ("[C]ases decided under Section 1404(a), 'have laid much less emphasis on this residence factor.'"). Plaintiff's affidavit in support of her motion further asserts that her treatment by various health care providers in New York occurred as early as 2001. *See* Plaintiff's Exhibit A, at ¶ 2-5. Even if accepted as true, these assertions all relate to facts of which plaintiff was certainly aware on September 17, 2007 at the time that she filed her Complaint in the District of Columbia. Indeed,

plaintiff's Complaint references New York as the state of her residence.  *See* Complaint at 4, ¶ 2. Her attempt now to transfer this case to the Eastern District of New York is indicative of improper forum shopping, and the court should not award this second choice of forum any deference.  *See generally id.*

**B.      Plaintiff's Claims Arose in France**

Plaintiff's claims in this case arose in France – where DES was allegedly prescribed, purchased, and ingested.  *See Thompson v. Eli Lilly and Company*, No. 03-122, slip op. at 2 (D.D.C. June 27, 2003) (finding site where DES was prescribed, purchased, and ingested to be location giving rise to plaintiffs' claims) (**Exhibit 3**); *see also Dean v. Eli Lilly and Company*, No. 06-1375, 2007 WL 1589496, at *3 (D.D.C. June 1, 2007) (plaintiffs' claims arose in Massachusetts because the alleged prescription, purchase, and exposure to DES occurred in that state); *Clayton v. Eli Lilly and Company*, 421 F. Supp. 2d 77, 80 (D.D.C. 2006) (operative events regarding DES claim include not only site of DES ingestion and *in utero* exposure, but also place where DES prescription was filled).  Plaintiff's mother's physician allegedly prescribed DES in France.  *See* Plaintiff's Answers to Lilly's First Set of Interrogatories, attached hereto as **Exhibit 5**, at No. 20.  The alleged purchase and ingestion of DES by plaintiff's mother occurred in France.  *Id.* at Nos. 1, 2, 11, 17, 20.  Further, plaintiff was allegedly exposed to DES in France.  *Id.* at Nos. 11, 17, 20.  Additionally, the plaintiff received treatment from a physician in France for the alleged injuries that serve as the basis of her claims. *Id.* at No. 8.  Since the claims arose in France, not New York, this private interest factor weighs against transfer.

**C.    New York is an Inconvenient Forum for the Majority of the Anticipated Witnesses**

The convenience of the witnesses will not be enhanced by transferring the case to New York.[2] In this case, almost all of the non-party witnesses are located in France. Indeed, all of the *essential* non-party witnesses are in France. Both of plaintiff's parents are French citizens who reside in France. Exhibit 5, at Nos. 11, 17, 18. The physician who allegedly prescribed DES for plaintiff's mother resides in France. *Id.* at Nos. 11, 17, 20. The pharmacist who allegedly filled the DES prescription likely still resides in France. Additionally, physicians who have treated plaintiff, including the physician who treated her claimed clear cell adenocarcinoma, are located in France. *Id.* at No. 8. All of these non-party witnesses are outside of the subpoena power of the Eastern District of New York. A New York forum is no more convenient for these essential, non-party witnesses than is the District of Columbia. Because the vast majority of essential fact witnesses reside in France, this factor does not favor transfer.

**D.    Transferring this Case to New York Would Not Provide Easier Access to Sources of Proof**

The vast majority of the sources of proof in this case are located in France, not New York. Pharmacy records, if any, related to the alleged purchase of DES by plaintiff's mother would be located in France and would likely be written in French. Medical records, if any, related to the alleged prescription of DES would be located in France and would likely be written in French. *Id.* at Nos. 11, 17, 20. Pharmacy records, if any, related to the drug inventory of the pharmacy would be located in France and would likely be written in French. All medical

---

[2] "[T]he convenience of the parties is accorded less weight in a transfer analysis than the convenience of non-party witnesses." *Ciphergen*, 2007 WL 128283, at *3. Furthermore, the convenience of the parties, more specifically of plaintiff, is a non-factor here. Because plaintiff initially filed suit in the District of Columbia, she made clear her willingness "to forego the convenience of a geographically nearby forum." *Dean*, 2007 WL 1589496, at *3; *see also Lagor,* No. 06-1967 (JDB), slip. op. at 4, Exhibit 1.

records, if any, related to the treatment that plaintiff allegedly received in France would be located in France and would likely be written in French. *Id.* at No. 8. As stated above, nearly all of the non-party witnesses are French citizens who are currently residing in France. The vast majority of testimony and documentary evidence is likely located in France and will be in French, requiring translation. Thus, the ease of access to sources of proof does not favor transfer of this case to New York, because the independent French witnesses and the relevant documents will not be readily available to defendants in a United States District Court. Therefore, New York does not provide a more convenient forum than the District of Columbia.

## II.  PUBLIC INTEREST CONSIDERATIONS FAVOR DENIAL OF MOTION TO TRANSFER

### A.  French Substantive Law Applies to Plaintiff's Claims

The interests of justice do not favor the transfer of this case to New York. "These interests are best served by having a case decided by the federal court in the state whose laws govern the interests at stake." *Trout Unlimited*, 944 F. Supp. at 19. The *Erie* doctrine requires courts to apply the choice of law rules of the state in which they sit. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). Courts in the District of Columbia apply a governmental interests approach, which balances the competing interests of the jurisdictions to determine which jurisdiction's substantive law applies. *Nix v. Hoke*, 139 F. Supp. 2d 125, 131 (D.D.C. 2001). In determining which jurisdiction has a greater interest in having its laws apply, the District of Columbia considers four factors: (1) the place of the injury; (2) the place where the conduct occurred; (3) the place where the relationship between the parties is centered; and (4) the domicile of the parties. *Id.* at 131-32. Weighing these factors in this case demonstrates that the Court should apply French law to the substantive issues of this case.

8

France is the place of plaintiff's alleged injury, the place where the alleged tortious conduct occurred, and the place where the relationship between the parties is centered. Specifically, Victoire Dumont's mother, Marie-Caroline Dumont, was pregnant with her in France. Exhibit 5, at Nos. 1, 2, 17, 18. Plaintiff alleges that her mother was prescribed DES, purchased DES, and ingested DES in France. *Id.* at Nos. 11, 17, 20. Finally, plaintiff alleges that she was exposed to DES *in utero* in France. *Id.* Accordingly, an analysis of these three factors requires application of French law.[3]

The fourth factor considered by the District of Columbia courts, the domicile of the parties, is at best a non-indicator. *See Herbert v. District of Columbia*, 808 A.2d 776, 780 (D.C. 2002) (determining that "residency is not dispositive in [the government interests] analysis" when residency is only a factor "weighing against an otherwise straightforward analysis" favoring the application of another state's laws.) Here the plaintiff, although a French citizen, is currently domiciled in New York. *See* caption of Complaint. Lilly is incorporated and has its principal place of business in Indiana. As in *Herbert*, the residency of the parties here weighs against an otherwise straightforward analysis and, thus, is a non-indicator.

Succinctly, an analysis of the four factors under the governmental interests approach applied by the courts in the District of Columbia establishes that French substantive law applies in this case. New York courts are no better equipped to deal with controversies

---

[3]    Courts have frequently applied the law of the place of exposure in cases involving injuries allegedly caused by DES. *See, e.g., In re DES Cases*, 789 F. Supp. 552, 567 (E.D.N.Y. 1992), *appeal dismissed*, 7 F.3d 20 (2d Cir. 1993) (holding that "the locus of the tort for choice-of-law purposes is 'the place where the last event necessary to make the actor liable occurred'" and finding the relevant "last event" to be the "ingestion of DES by plaintiffs' mothers or the birth of the injured child"); *see also Tidler v. Eli Lilly and Company*, 95 F.R.D. 332, 334-35 (D.D.C. 1982); *Besser v. E.R. Squibb & Sons, Inc.*, 146 A.D.2d 107, 112 n.3 (N.Y. App. Div. 1989), *aff'd*, 552 N.E.2d 171 (N.Y. 1990). *Cf. Hall v. Merck, Sharpe & Dohme*, 774 F. Supp. 601, 603 (D. Kan. 1991) (place of purported injury is where product was ingested, not where symptoms later manifested).

9

involving French law than this Court.  Therefore, this public interest factor supports denial of the motion to transfer.

**B.    The Local Interest of Having Localized Controversies Decided at Home Would Not be Better Served by Transferring this Case to New York**

The long list of French connections reveals that the citizens of France and the French legal system have the greater interest in adjudicating this dispute.  Transferring this case to New York would not change the fact that jurors would still be asked to listen to evidence and to render a verdict on a case involving a French plaintiff, where the alleged prescription and purchase of the product and the alleged injury occurred in France.  Certainly, states have an interest in adjudicating the claims of its own citizens under its own tort law.  *See Lentz v. Eli Lilly and Company*, 464 F. Supp. 2d 35, 38 (D.D.C. 2006).  However, the plaintiff in this lawsuit is a French citizen.  Thus, while New York has an interest in protecting its own citizens from defective products acquired in New York and causing injury there, the same is not true when the plaintiff is a citizen of a foreign country, the product was prescribed and purchased in a foreign country, and the alleged injury occurred in a foreign country.  *See Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 673 (5th Cir. 2003) ("Mexico has an interest in protecting its own citizens from defective products acquired in Mexico and causing injury there); *Delgado v. Shell Oil Co.*, 231 F.3d 165, 181 (5th Cir. 2000) ("[T]hose foreign countries [where plaintiffs hailed from and had suffered injury] obviously have an interest in protecting the rights and welfare of their citizens."); *Kazel v. Hill-Rom Co.*, 108 F.3d 799, 804-05 (7th Cir. 1997) (noting that Indiana residents "have a mere passing interest" where a foreign plaintiff is injured in a foreign land); *Torreblanca de Aguilar v. Boeing Co.*, 806 F. Supp. 139, 144 (E.D. Tex. 1992) (stating that Mexico has a "paramount interest" in resolving claims brought by Mexican

plaintiffs arising from an air crash in Mexico that was investigated by Mexican authorities). Therefore, New York has no greater interest in adjudicating plaintiff's claims than any other United States jurisdiction.    This dispute is local to France, not New York.    Therefore, the interest of justice would not be served by transferring this case from this Court to New York.

## **CONCLUSION**

Plaintiff chose to file suit in the District of Columbia.    Plaintiff now seeks to transfer to yet another jurisdiction, the Eastern District of New York, conduct indicative of forum shopping.    Because of this maneuvering, plaintiff's second choice of forum is entitled to no deference from this Court.

Unlike the Eastern District of New York, this case has a substantial connection to France.    None of the central events giving rise to plaintiff's claims in this case occurred in the Eastern District of New York, plaintiff's second choice of forum.    Few fact witnesses in this case reside in the Eastern District of New York.    In contrast, the critical witnesses are all located in France.    Plaintiff's mother was prescribed, purchased, and ingested DES in France.    Plaintiff was allegedly exposed to and claims to have been injured by DES in France.    Plaintiff is a French citizen who was born in France.    Plaintiff's parents reside in France.    Plaintiff's mother's prescribing physician was located in and likely resides in France.    The pharmacist who filled any claimed DES prescriptions likely still resides in France.    Plaintiff was treated for her alleged clear cell adenocarcinoma in France, and relevant medical and pharmaceutical records, if any, regarding plaintiff's alleged exposure to DES and treatment for many of her claimed injuries, are located in France.    For these reasons, this case has no greater connection to the Eastern District of New York than to the District of Columbia.

The interests of justice and the convenience of the parties and witnesses do not support transfer of this case. Accordingly, Lilly respectfully requests the Court enter its Order denying plaintiff's motion to transfer this action to the Eastern District of New York.

Respectfully submitted,

SHOOK, HARDY & BACON, L.L.P

/s/ John Chadwick Coots
Michelle R. Mangrum, USDC No. 473634
John Chadwick Coots, D.C. Bar No. 461979
SHOOK, HARDY & BACON, L.L.P
600 14TH Street, N.W., Suite 800
Washington, D.C. 20005-2004
Phone: (202) 783-8400; Fax: (202) 783-4211

and

David W. Brooks
Jonathan H. Gregor
SHOOK, HARDY & BACON, L.L.P.
2555 Grand Blvd.
Kansas City, Missouri 64108-2613
Phone: (816) 474-6550; Fax: (816) 421-5547

**ATTORNEYS FOR DEFENDANT
ELI LILLY AND COMPANY**

2927693v2

## CERTIFICATE OF SERVICE

   I, the undersigned, hereby certify that a true and accurate copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, this 8th day of May, 2008, which sent notification of such filing to all counsel of record listed below.

| | |
|---|---|
| Aaron M. Levine<br>Aaron M. Levine & Associates<br>1320 19th Street, N.W., Suite 500<br>Washington, D.C. 20036<br>**Attorneys for Plaintiff** | Sybil Shainwald<br>Roxanne DeFrancesco<br>Law Offices of Sybil Shainwald<br>111 Broadway, 4th Floor<br>New York, NY 10006<br>**Attorneys for Plaintiff** |
| John F. Anderson<br>Troutman Sanders, LLP<br>1660 International Drive<br>Suite 600, Tysons Corner<br>McLean, VA 22102<br>**Attorneys for Dart Industries, Inc.** | Elizabeth Ewert<br>Drinker, Biddle Reath, LLP<br>1500 K Street, N.W., Suite 1100<br>Washington, D.C. 2005-1209<br>**Attorneys for Upjohn Company** |
| Janet Coleman<br>Whitney & Bogris, LLP<br>401 Washington Avenue, 12th Floor<br>Towson, MD 21204<br>**Attorneys for S.E. Massengill Co.** | Kathleen M. Bustraan<br>Lord & Whip, P.A.<br>Charles Center South<br>36 South Charles Street, 10th Floor<br>Baltimore, MD 21201<br>**Attorneys for Lannett Company, Inc.** |
| Jennifer Gardner Levy<br>Kirkland & Ellis<br>655 15th Street, N.W.<br>Washington, D.C. 20005-5793<br>**Attorneys for Abbott Laboratories, Inc.** | Sarah S. Keast<br>Goodwin Proctor, LLP<br>901 New York Avenue, Suite 900<br>Washington, D.C. 20001<br>**Attorneys for Premo Pharmaceutical Laboratories, Inc.** |
| Robert M. Kelly<br>Jackson & Campbell, P.C.<br>1120 20th Street, N.W., Suite 300-South<br>Washington, D.C. 20036<br>**Attorneys for Kremers-Urban Co.** | Gerry H. Tostanoski<br>Jaime W. Luse<br>Tydings & Rosenberg, LLP<br>100 East Pratt Street, Suite 2600<br>Baltimore, MD 21202<br>**Attorneys for Carnick Laboratories, Inc. n/k/a/ Elan Pharmaceuticals** |

13

William David Sanders
McGivney & Kluger, P.C.
23 Vreeland Road, Suite 220
Florham, NJ 07932
**Attorneys for Rhone-Poulenc Rorer**
**Pharmaceuticals, Inc.**

/s/ John Chadwick Coots
**ATTORNEY FOR DEFENDANT**
**ELI LILLY AND COMPANY**

14

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **VICTOIRE DUMONT,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CIVIL ACTION No. 07-CV-01635 (JR)** |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| **THE ABBOTT LABORATORIES, INC., et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF JOHN C. COOTS IN SUPPORT OF
## DEFENDANT ELI LILLY AND COMPANY'S
## <u>OPPOSITION TO MOTION TO TRANSFER</u>

I, John C. Coots, being first sworn on oath, say that the following is true and correct:

1.     I am an attorney in the firm of Shook, Hardy & Bacon, LLP, counsel for defendant Eli Lilly and Company ("Lilly") in the above-captioned action.

2.     **Exhibit 1** is a true and correct copy of this Court's decision in *Lagor v. Eli Lilly and Company*, No. 06-1967 (JDB), 2007 WL 1748888, slip. op. (D.D.C. June 18, 2007).

3.     **Exhibit 2** is a true and correct copy of the Plaintiff's Motion to Transfer in *Albin v. Eli Lilly and Company*, No. 04-986 (RBW) (D.D.C. July 16, 2004).

4.     **Exhibit 3** is a true and correct copy of this Court's decision in *Thompson v. Eli Lilly and Company*, No. 03-122, slip op. at 2 (D.D.C. June 27, 2003).

5.     **Exhibit 4** is a true and correct copy of excerpted pages from the Deposition Transcript of Victoire Dumont, April 29, 2008.

6.    **Exhibit 5** is a true and correct copy of Plaintiff's Answers to Lilly's First Set of Interrogatories.

Executed on May 8, 2008

_____
John C. Coots

DISTRICT OF            )
                       )ss.
COLUMBIA _____       )

On this 8th day of May, 2008, before me, a notary public in and for said jurisdiction, personally appeared John C. Coots, to me personally known, who being duly sworn, acknowledged that he had executed the foregoing instrument for purposes therein mentioned and set forth.

_____
NOTARY PUBLIC

My Commission Expires:

_____

ALAN ROBERT STARNER
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires January 14, 2013

2

2946024v1

Exhibit 1

Westlaw.

Slip Copy
Slip Copy, 2007 WL 1748888 (D.D.C.)
(Cite as: Slip Copy, 2007 WL 1748888)

Page 1

**C**Lagor v. Eli Lilly and Co.
D.D.C.,2007.
Only the Westlaw citation is currently available.
United States District Court,District of Columbia.
Katharine LAGOR, et al., Plaintiffs,
v.
ELI LILLY AND COMPANY, et al., Defendants.
**Civil Action No. 06-1967(JDB).**

June 18, 2007.

Aaron M. Levine, Brandon J. Levine, Renee Lynne Robinson-Meyer, Steven Jay Lewis, Aaron M. Levine & Associates, P.A., Washington, DC, for Plaintiffs.
Michelle R. Mangrum, Emily J. Laird, John Chadwick Coots, Judith L. O'Grady, Shook, Hardy & Bacon, L.L.P., Washington, DC, for Defendants.

### MEMORANDUM OPINION

JOHN D. BATES, United States District Judge.
*1 Plaintiffs Katharine Lagor and Timothy Lagor bring this products-liability action individually and on behalf of their minor daughter, Emily Grace Lagor, against defendant Eli Lilly and Company for injuries allegedly sustained as a result of Katharine Lagor's *in utero* exposure to diethylstilbestrol ("DES"). Both parties now move to transfer this action to a different venue pursuant to 28 U.S.C. § 1404(a). Plaintiffs seek transfer to the U.S. District Court for the District of Massachusetts, while defendants seek transfer to the U.S.

District Court for the District of Rhode Island. Upon consideration of the parties' submissions, and for the reasons set forth below, the Court will grant defendant's motion and deny plaintiffs' motion, and accordingly this case will be transferred to the District of Rhode Island.

### BACKGROUND

The parties agree as to the central facts relevant to the disposition of their respective motions to transfer. Plaintiffs reside in Seekonk, Massachusetts-a town located approximately five miles from the Massachusetts-Rhode Island border. Plaintiff Katharine Lagor's mother, Barbara Fahey, also lives in Seekonk. While pregnant with Katharine, Fahey was prescribed DES by her physicians in Providence, Rhode Island. Fahey purchased DES at a pharmacy in Rumford, Rhode Island and ingested the drug at her home in Seekonk. Fahey gave birth to plaintiff Katharine Lagor in Providence, Rhode Island in 1955.[FN*] As a result of her embryonic DES exposure, Katharine allegedly sustained cervical incompetency and was rendered incapable of carrying a child to full term. Consequently, Katharine's daughter, Emily Grace Lagor, was born prematurely and now suffers from cerebral palsy.

> FN* Contrary to plaintiffs' assertion that Katharine Lagor was born in Seekonk, Massachusetts, *see* Pls.' Mem. in Supp. of Mot. to Transfer ("Pls.' Mem.") at 1, Katharine Lagor identifies her place of birth as

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                      Page 2
Slip Copy, 2007 WL 1748888 (D.D.C.)
**(Cite as: Slip Copy, 2007 WL 1748888)**

Providence, Rhode Island. *See* Def's. Exh. 2 (Katharine Lagor's Answers to Interrogatories) at 2, No. 1.

Like her mother, Emily Grace Lagor was born in Providence, Rhode Island. All but one of the physicians identified as having diagnosed or treated Emily Grace and Katharine Lagor for their alleged DES-related injures are located in Rhode Island. Emily Grace has been hospitalized once in Boston, Massachusetts, and numerous times throughout Rhode Island. The operative facts of this case are thus connected to both the state of Rhode Island and the state of Massachusetts. Plaintiffs concede that this case has no connection to the District of Columbia "beyond that the Defendants conduct or have conducted significant business there."Pls.' Mot. to Transfer at 2.

### *ANALYSIS*

28 U.S.C. § 1404(a) authorizes a district court to transfer any civil action to any other district where it originally might have been brought "[f]or the convenience of parties and witnesses, [and] in the interest of justice."A party moving to transfer under 28 U .S.C. § 1404(a) bears the burden of establishing (1) that the plaintiff initially could have brought the action in the proposed transferee district, and (2) that considerations of convenience and the interests of justice weigh in favor of transfer. *See Brannen v. National R.R. Passenger Corp.,* 403 F.Supp.2d 89, 92 (D.D.C.2005); *see also Trout Unlimited v. Deppt of Agric.,* 944 F.Supp. 13, 16 (D.D.C.1996). Plaintiffs do not dispute that they could have brought this suit in the District of Rhode Island, nor do defendants dispute plaintiffs' contention that suit could have been filed in the District

of Massachusetts. Subject-matter jurisdiction, personal jurisdiction, and venue would be proper in both states. Because plaintiffs and defendants have both met the threshold requirement for transfer under § 1404(a), the Court must assess whether either party has satisfied its burden of showing that considerations of convenience and the interests of justice support transfer to the District of Massachusetts or to the District of Rhode Island.

**\*2** Section § 1404(a) grants district courts broad discretion "to adjudicate motions to transfer according to 'an individualized, case-by-case consideration of convenience and fairness.' " *Stewart Org., Inc v. Ricoh Corp.,* 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 622 (1964)). Specifically, courts weigh a number of "private-interest" and "public-interest" factors in order to evaluate whether transfer is warranted in a particular case. *Trout Unlimited,* 944 F.Supp. at 16. The private-interest considerations include: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses, but only to the extent that the witnesses may be unavailable for trial in one of the fora; and (6) the ease of access to the sources of proof. *Id.* (citations omitted). The public-interest considerations include: (1) the transferee court's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in adjudicating local controversies at home. *Id.*

### A. Private-Interest Factors

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 1748888 (D.D.C.)
**(Cite as: Slip Copy, 2007 WL 1748888)**

Here, the private-interest factors weigh in favor of transfer to the District of Rhode Island. With respect to the first private interest factor-the plaintiff's choice of forum-courts have recognized that the deference generally given to a plaintiff's choice of forum is reduced when the chosen forum is not the plaintiff's home forum, *see* *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255-56 (1981); *Boers v. United States,* 133 F.Supp.2d 64, 65 (D.D.C.2001), or when the chosen forum has "no factual nexus with the lawsuit," *Schmid Labs., Inc. v. Hartford Acc. & Indem. Co.,* 654 F.Supp. 734, 737 (D.D.C.1986). The showing a defendant must make to justify transfer is further diminished where transfer is sought to a "forum with which plaintiffs have substantial ties and ... the subject matter of the lawsuit is connected." *Trout Unlimited,* 944 F.Supp. at 17. Thus, in a DES case similar to this one, another judge in this district granted the defendant's motion to transfer from the District of Columbia both because the case was substantially connected to the transferee forum and because the District of Columbia had "no such connection" to the case. *Thompson v. Eli Lilly and Co.,* Civ. A. No. 03-122, slip. op. at 5 (D.D.C. June 27, 2003). Just like in *Thompson,* the only link between the present case and the District of Columbia is that Eli Lilly has conducted significant business in the District. Plaintiffs Katharine and Emily Grace Lagor were born in Rhode Island, all but one of plaintiffs' physicians are located in Rhode Island, and Barbara Fahey purchased and was prescribed DES in Rhode Island. Because the District of Columbia was not plaintiffs' home forum to begin with-nor the situs of any of the facts giving rise to this specific cause of action-plaintiffs' initial choice of forum merits little

deference.

**\*3** Several district courts have also recently held that where a plaintiff herself seeks transfer, the plaintiff's "second or third choices of forum receive[ ] *no* deference." *Health Discovery Corp. v. Ciphergen Biosystems, Inc.,* Civ. A. No. 06-260, 2007 WL 128283, at \*3 (E.D.Tex. Jan. 11, 2007) (emphasis added); *see also Tiffany v. Hometown Buffet, Inc.,* Civ. A. No. 06-2524, 2006 WL 2792868, at \*2 (N.D.Cal. Sept. 28, 2006). Although the record does not disclose plaintiffs' motivations for initially filing suit in the District of Columbia and then requesting transfer to the District of Massachusetts four months later (rather than bringing suit in Massachusetts originally), the Supreme Court has warned against allowing parties to use motions to transfer as veiled means of forum shopping. *See Van Dusen,* 376 U.S. at 636 (stating that § 1404(a) was intended as a "judicial housekeeping measure" rather than a "forum-shopping instrument"); *see also Schmid Labs,* 654 F.Supp. at 737 (stating that "the transfer provisions in the U.S.Code ... were in part intended to prevent forum shopping"); *Tiffany,* 2006 WL 2792868, at \*2 (denying plaintiffs' motion to transfer where filing suit in one jurisdiction and then moving to transfer was indicative of forum shopping). Regardless of whether, as defendants urge, plaintiffs' decision to sue in this district constituted a strategic attempt to avail themselves of the District of Columbia's "advantageous statute of limitations," *see* Def.'s Mem. in Supp. of Mot. to Transfer ("Def.'s Mem.") at 5, or reflected more practical concerns (such as the presence of plaintiffs' counsel here), this Court accords no weight to plaintiffs' second-choice forum.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The remaining private-interest factors likewise favor transferring the present action to the District of Rhode Island. First, there is a substantial nexus between defendants' forum choice and the facts of this case. As another member of this Court recently explained in *Dean v. Eli Lilly & Co.,* Civ. A. No. 06-1375, 2007 WL 1589496, at *2 (D.D.C. June 1, 2007), "the issues of whether the plaintiffs were exposed to Eli Lilly's product, the extent of the plaintiffs' injuries, and causation all center around Eli Lilly's sale of DES"-a sale that, in this case, occurred in Rhode Island.

The third private-interest factor the Court considers-where the claim arose-also leans in favor of transfer to Rhode Island. Not only was the DES prescribed to Fahey in Rhode Island, but she also purchased the drug and gave birth to her daughter Katharine there as well. Both Katharine and Emily Grace Lagor received diagnoses and treatment for their alleged DES-related injuries almost exclusively in Rhode Island. Although plaintiffs claim that Fahey's ingestion of DES in Massachusetts serves to make Massachusetts the place of the plaintiffs' injuries, *see* Pls.' Mem. at 6, and thus the site where their claims arose, plaintiffs have failed to cite any case where the mere fact of DES ingestion in a state warranted transfer to that state. Rather, in all of the cases cited by plaintiffs, the site of ingestion was *also* the site of the DES prescription, purchase, and usually, the birth of the afflicted child. *See Thompson,* Civ. A. No. 03-122, slip op. at 2 (finding site where DES was prescribed, purchased, and ingested to be location giving rise to plaintiffs' claims); *see also Dean,* 2007 WL 1589496, at *3 (plaintiffs' claims arose in

Massachusetts because the alleged prescription, purchase, and exposure to DES occurred in that state); *Clayton v. Eli Lilly & Co.,* 421 F.Supp.2d 77, 80 (D.D.C.2006) (operative events regarding DES claim include not only site of DES ingestion and *in utero* exposure, but also place where DES prescription was filled). Moreover, even though Massachusetts was the technical site of plaintiff Katharine Lagor's injuries, Rhode Island remains the place of plaintiff Emily Grace Lagor's injuries, since they occurred not during *in utero* DES exposure in Massachusetts, but from a premature birth in Rhode Island. Thus, the clear majority of the material events that constitute the factual basis of plaintiffs' claims occurred in Rhode Island.

**\*4** While plaintiffs argue that the fourth private-interest factor-the convenience of the parties-warrants transfer to Massachusetts, the Court does not find this factor dispositive. By initially filing suit in the District of Columbia, plaintiffs made clear their willingness "to forego the convenience of a geographically nearby forum."*Dean,* 2007 WL 1589496, at *3. In addition, defendants correctly point out that plaintiffs' hometown of Seekonk, Massachusetts is actually fifty miles closer to the federal courthouse in Providence, Rhode Island than to their requested federal courthouse in Boston, Massachusetts. *See* Def.'s Mem. at 8. The Court further notes that the parties' desired forums are in relatively close proximity, thereby minimizing any inconvenience to plaintiffs that could result from a transfer to Rhode Island as opposed to a transfer to Massachusetts. Although both parties are represented by counsel in the District of Columbia, the location of counsel "bears little, if any, weight in a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 1748888 (D.D.C.)
(Cite as: Slip Copy, 2007 WL 1748888)

court's determination of whether to transfer under § 1404(a)."*Dean,* 2007 WL 1589496, at \*3 n. 1 (citing *McClamrock v. Eli Lilly & Co.,* 267 F.Supp.2d 33, 40 (D.D.C.2003)).

Not only will transfer to Rhode Island result in minimal, if any, inconvenience to the parties, but "the most critical factor to examine under 28 U.S.C. § 1404(a) is the convenience of the witnesses," not the convenience of the parties. *Chung v. Chrysler Corp.,* 903 F.Supp. 160, 164 (D.D.C.1996); *see also Abramson v. Eli Lilly & Co.,* Civ. A. No. 03-2541, slip. op. at 3 (D.D.C.2004). An examination of the potential witnesses in this case demonstrates that the lawsuit best belongs in the District of Rhode Island. The central issues relevant in a DES products liability/personal injury action are "questions of exposure, product identification, and the nature and extent of [the plaintiffs'] alleged injuries." *Thompson,* Civ. A. No. 03-122, slip op. at 4 n. 1. Aside from deposing the plaintiffs, the resolution of these issues will involve deposing Barbara Fahey, Fahey's prescribing physicians and pharmacists, as well as the physicians who have diagnosed and treated plaintiffs Katharine and Emily Grace Lagor for their alleged DES-related injuries. As plaintiffs admitted in their interrogatory responses, both of Fahey's prescribing physicians, all of Katharine Lagor's named physicians, and all but one of Emily Grace Lagor's physicians are located in Rhode Island. *See* Def.'s Exh. 2 at 3-7, Nos. 7, 9, 10, 11, 17; Def.'s Exh. 3 (Emily Grace Lagor's Answers to Interrogatories) at 2-3, No. 5. The pharmacy where Fahey filled her DES prescription is also located in Rhode Island. *See* Def.'s Exh. 2 at 8-9, No. 20.By contrast, there are no essential non-party witnesses in the District of Columbia, and

only two potential non-party witnesses in Massachusetts (one of Emily Grace Lagor's seven identified physicians and Fahey herself). Although all of the potential witnesses are within the subpoena power of both Massachusetts and Rhode Island, the vast majority are located in Rhode Island, and consequently, transfer to Rhode Island will be the most convenient for the greatest number of potential witnesses. Finally, transfer to Rhode Island will best facilitate access to sources of proof, given that almost all of the relevant medical and pharmaceutical records are located there.

**B. Public-Interest Factors**

\*5 In addition to the private-interest factors weighing in favor of transfer, the relevant public-interest factors also suggest that this case should be transferred to Rhode Island. The first such factor that this Court considers is the proposed transferee district's familiarity with the governing law. Courts agree that the public interest is "best served by having a case decided by the federal court in the state whose laws govern the interests at stake."*Trout Unlimited,* 944 F.Supp. at 19;*see also Schmid Labs,* 654 F.Supp. at 737 n. 11. Although the issue has not yet been resolved, Rhode Island substantive law will most likely govern this case. Under the District of Columbia choice of law analysis for tort actions, a court must consider four factors to determine which state's substantive law will apply: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship between the parties, if any, is centered. *See Herbert v. District of*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 1748888 (D.D.C.)
(Cite as: Slip Copy, 2007 WL 1748888)

Page 6

*Columbia,* 808 A.2d 776, 779 (D.C.2002) (citing Restatement (Second) of Conflict of Laws § 145 cmt. d (1971)). The Court evaluates these factors for the ultimate purpose of determining which jurisdiction has the most significant relationship to the dispute. *See Jaffe v. Pallotta Teamworks,* 374 F.3d 1223, 1227 (D.C.Cir.2004); *see also Clayton,* 421 F.Supp. at 80;*Bortell v. Eli Lilly & Co.,* 406 F.Supp.2d 1, 5 (D .D.C.2005).

In this case, Rhode Island has the most significant relationship to the parties' dispute. Although plaintiffs reside in Massachusetts and Katharine Lagor's injuries technically "occurred" in Massachusetts (since the place of injury in DES cases is the location of *in utero* DES exposure, *see, e.g., Dean,* 2007 WL 1589496, at *4;*Bortell,* 406 F.Supp.2d at 5), Emily Grace Lagor's alleged injuries occurred in Rhode Island. Concretely, Emily Grace Lagor was harmed not when her grandmother ingested DES in Massachusetts in 1954-55, but instead, when she was born prematurely in Rhode Island in 1990. Rhode Island is also the place where most of the conduct causing both of the plaintiffs' injuries occurred-and where the relationship between the parties is centered. Barbara Fahey was prescribed DES by a doctor in Rhode Island and she purchased DES from a pharmacy in Rhode Island. The mere fortuity that ingestion of the drug, the "last act necessary to cause plaintiff's injuries,"*Bortell,* 406 F.Supp. at 5, occurred in Massachusetts does not negate the fact that *most* of the operative events giving rise to the plaintiffs' injuries transpired in Rhode Island. *See Clayton,* 421 F. Supp at 80 (stating that place where DES prescription was filled is a relevant factor in assessing

where conduct causing plaintiffs' injuries occurred); *Bortell,* 406 F.Supp. at 5 (examining not only place where DES was ingested, but also place where DES was prescribed and dispensed to determine where conduct causing plaintiffs' injuries occurred).

*6 Also favoring Rhode Island as a venue is the principle that a plaintiff's residence and place of injury-although both relevant in choice-of-law analyses-are by no means dispositive where most of the conduct leading to the injury occurred elsewhere. *See Long v. Sears Roebuck & Co.,* 877 F.Supp. 8 (D.D.C.1995). The court in *Long* found that District of Columbia law applied to a products liability action stemming from an accident involving a Maryland resident that had occurred in Maryland, since the conduct leading to the injury (that is, "the sale of the allegedly defective product") occurred in the District of Columbia, the "seller-purchaser relationship" between the parties was centered in the District of Columbia, and the defendants' "alleged misrepresentation" as to the safety of their product occurred in the District of Columbia. *Id.* at 12.Just as in *Long,* the conduct causing plaintiffs' injuries in this case-the prescription and sale of the DES-occurred in Rhode Island, the seller-purchaser relationship between the parties was consummated at a pharmacy in Rhode Island, and any alleged misrepresentation made by Eli Lilly to the plaintiffs' physicians and pharmacists also occurred in Rhode Island (where they were located). Hence, while Massachusetts certainly has an interest in the present litigation because it is the site of plaintiff Katharine Lagor's injuries and plaintiffs' place of residence, Rhode Island has a more significant interest in plaintiffs' claims and, consequently, its

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

substantive law will probably apply to this case. Because a Rhode Island court is best qualified to apply its own law, plaintiffs' claims should be heard in Rhode Island.

The second public-interest factor-the relative docket congestion in the transferor and transferee forums-also points towards transfer to Rhode Island. As this Court explained in *Abramson,* Civ. A. No. 03-2541, slip op. at 4-5,"given the very minimal connection of this lawsuit to the District of Columbia, it does not seem appropriate to burden this jurisdiction and its limited resources ... with this case."Not only is Rhode Island's court calendar less congested than the court calendar of the District of Columbia, but it is also less congested than the court calendar of Massachusetts. *See* James C. Duff, 2006 Annual Report of the Director of the United States Courts, App. C5 & C10, http://www.uscourts.gov/judbus2006/append ices/c5.pdf; http:// www.uscourts.gov/judbus2006/appendices/c 10.pdf. Moreover, since discovery in this case has just begun-and the Court has not yet familiarized itself with the underlying merits of the plaintiffs' claims-there would be relatively little delay associated with transfer to Rhode Island.

Finally, transfer to Rhode Island will support the compelling public interest in having controversies resolved in the locale where they arise. Although Massachusetts undoubtedly has an interest in adjudicating the personal injury claims of its own citizens, *see, e.g., Dean,* 2007 WL 1589496, at *5;*Lentz v. Eli Lilly and Co.,* 464 F.Supp.2d 35, 38 (D.D.C.2006), Rhode Island has an even greater interest in adjudicating DES cases in which the alleged

prescription of DES, sale of DES, and birth of the afflicted individuals all occurred within its borders.

### CONCLUSION

*7 For the foregoing reasons, defendants' motion to transfer this case to the U.S. District Court for the District of Rhode Island pursuant to 28 U.S.C. § 1404(a) is granted, and plaintiffs' motion to transfer this case to the U.S. District Court for the District of Massachusetts is denied. A separate order has been posted on this date.

D.D.C.,2007.
Lagor v. Eli Lilly and Co.
Slip Copy, 2007 WL 1748888 (D.D.C.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MYRA D. ALBIN, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| v. | ] | Civil Action No.: 04-986(RBW) |
| | ] | |
| ELI LILLY AND COMPANY, et. al. | ] | |
| | ] | |
| Defendants. | ] | |

### PLAINTIFF'S MOTION TO TRANSFER
### PURSUANT TO 28 U.S.C. § 1404(A)

COMES NOW the plaintiff, by and through counsel, and moves, pursuant to 28 U.S.C. § 1404(a), that this Court transfer this action to the United States District Court for the Eastern District of New York, in Brooklyn, New York, and as grounds therefore states:

1.    This is a products liability/personal injury case for injuries sustained by the plaintiff, including, but not limited to, uterine abnormalities as a result of her embryonic exposure to diethylstilbestrol ("DES").

2.    Although Plaintiff currently is a resident of Canada, the operative facts occurred in New York. Plaintiff's mother was prescribed DES in New York, purchased the DES in New York, Plaintiff was born in New York and lived and received medical treatment for the first thirty-two (32) years of her life in New York. Plaintiff's mother, in 1959, lived and purchased the DES in a pharmacy in Hicksville, New York, a city in Nassau County New York. Nassau County is covered by the United States District Court for the Eastern District of New York. 28 U.S.C. §12(c). The injury (malformation of the uterus and infertility) occurred in New York.

3.    This case was originally filed in the Superior Court of the District of Columbia on November 12, 2003, and subsequently removed by Defendants to this Court on June 16, 2004.

4.    28 U.S.C. § 1404(a) provides that:

> For the convenience of the parties and witnesses, in
> the interest of justice, a District Court may transfer
> any civil action to any other district or division where
> it might have been brought.

5.    The interests of justice would best be served in this case by having this action

transferred to the United States District Court for the Eastern District of New York, as discovery

efforts, convenience and costs would be best served.  Furthermore, New York substantive law

applies to this case.  Plaintiff is unable to identify the manufacturers of the DES to which she was

exposed and New York market share applies.  Hymowitz v. Eli Lilly, 73 N.Y. 2d 487, 539 N.E.2d

1069, 541 N.Y. S.2d 941 (1989).  A New York judge would be in the best position to determine and

interpret New York law.

6.    This cause has no contacts with the District of Columbia, other than that the

Defendants conduct significant business here.

WHEREFORE, plaintiff respectfully requests that this Court, in accordance with 28 U.S.C. §

1404(a), enter an Order transferring, pursuant to 28 U.S.C. §1404(a) to the United States District

Court for the Eastern District of New York, at Brooklyn, New York.

Respectfully submitted,


 /s/ Aaron M. Levine
Aaron M. Levine, #7864
1320 19th Street, N.W., Suite 500
Washington, DC   20036
202/833-8040

Counsel for Plaintiff

## LOCAL RULE 7(m) CERTIFICATION

Plaintiff attempted to seek consent to the foregoing Motion but no consent was forthcoming.

Respectfully submitted,

**/s/ Aaron M. Levine**

Aaron M. Levine, #7864
1320 19th Street, N.W., Suite 500
Washington, DC   20036
202/833-8040

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MYRA D. ALBIN,** | ] |
| | ] |
| **Plaintiff,** | ] |
| | ] |
| **v.** | ]     **Civil Action No.: 04-986 (RBW)** |
| | ] |
| **ELI LILLY AND COMPANY, et. al.** | ] |
| | ] |
| **Defendants.** | ] |

**STATEMENT OF POINTS AND AUTHORITIES**

1.    28 U.S.C. § 1404(a)

2.    The record herein.

Respectfully submitted,


  **/s/ Aaron M. Levine**        
Aaron M. Levine, #7864
1320 19th Street, N.W., Suite 500
Washington, DC  20036
202/833-8040

Exhibit 3

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NANCY THOMPSON and <br> MARK A. THOMPSON, <br><br> Plaintiffs, <br><br> v. <br><br> ELI LILLY AND COMPANY, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    Civil Action No. 03-122 (RBW) <br> ) <br> ) <br> ) |

## **ORDER**

The plaintiffs, Nancy and Mark Thompson, have brought this product liability action against the defendant, Eli Lilly and Company, for injuries that Mrs. Thompson alleges she suffered as a result of her mother's use of diethylstilbestrol ("DES") during her mother's pregnancy with Mrs. Thompson. The defendant seeks to have this case transferred to the District of Massachusetts "[b]ecause it would be more convenient for the parties to litigate this action in the District of Massachusetts -- where the alleged exposure in utero to (DES) took place, where almost all of the fact witnesses reside -- and because there is absolutely no connection between the District of Columbia and plaintiffs' claims." Motion of Defendant Eli Lilly and Company to Transfer Action, Memorandum of Points and Authorities in Support of Eli Lilly and Company's Motion to Transfer ("Def.'s Mem.") at 2-3. Upon consideration of the parties' submissions and for the reasons set forth below, the Court will transfer this case to the District of Massachusetts.

1

28 U.S.C. § 1404(a) (2000) provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A district court is given broad discretion when considering whether to grant or deny a motion to transfer, which entails first determining whether the action could have been brought in the proposed transferee district and, if so, examining several private and public interest factors. While deference is typically given to a plaintiff's choice of forum and the moving party "bears the burden of demonstrating that transfer pursuant to Section 1404(a) is warranted[,]" Gemological Institute of America v. Thi-Dai Phan, 145 F. Supp. 2d 68, 71 (D.D.C. 2001), courts recognize that less deference is given when the chosen forum is not the plaintiff's home forum, Boers v. United States, 133 F. Supp. 2d 64, 65 (D.D.C. 2001). With these considerations in mind, the Court will first examine whether this case could have been brought in the District of Massachusetts.

**(A)     Could This Action Have Been Brought in the District of Massachusetts?**

Before a case may be transferred to another judicial district, a court must determine whether the transferee district is a proper venue and can exercise personal jurisdiction. Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred…" In this case, it is undisputed that this action could have been brought in Massachusetts. This is because the alleged events that gave rise to the plaintiffs' claims occurred there, as Mrs. Thompson's mother received and ingested the DES in Massachusetts. Def.'s Mem. at 1. And, pursuant to Massachusetts' long-arm statute, it is also undisputed that a federal court in Massachusetts would be able to exercise personal jurisdiction over the defendant,

2

as Eli Lilly acknowledges that it had sufficient contacts with Massachusetts through its

sales of DES in that jurisdiction. Id. at 3. (citing Mass. Gen. Laws ch. 223A, § 3

(Massachusetts long-arm statute governing torts allegedly committed in Massachusetts)).

Having concluded that this action could have been brought in Massachusetts, the Court

will now evaluate whether the private and public interest factors favor the transfer of this

action.

**(B)    Do the Interests of the Parties and the Public Favor of Transferring this Case
        to the District of Massachusetts?**

In considering a motion to transfer, a Court must examine several factors, such as:

"[t]he convenience of the witnesses of plaintiff and defendant; ease of access to sources

of proof; availability of compulsory processes to compel the attendance of unwilling

witnesses; the amount of expense for the willing witnesses; the relative congestion of the

calendars of potential transferor and transferee courts; and other practical aspects of

expeditiously and conveniently conducting a trial." Boers, 133 F. Supp. 2d at 65 (D.D.C.

2001) (citation omitted).

Upon evaluating these factors, it is abundantly clear that this case should be

transferred to the District of Massachusetts. Massachusetts is the situs where the DES

was ingested and therefore the location where any injury resulting from its use occurred.

Nearly all of the fact witnesses reside in Massachusetts, including the plaintiffs, Mrs.

Thompson's mother, all of the physicians who have treated Mrs. Thompson for the injury

she allegedly sustained, and Mrs. Thompson's primary care physicians. Def.'s Mem. at

1-2. Furthermore, the ability to access much of the physical proof with the least effort

favors transfer to Massachusetts, as that is where Mrs. Thompson and her mother's

3

medical records are located. And, the pharmacies that sold Mrs. Thompson's mother the DES are also located there.[1]

In addition, because the majority, if not all of the witnesses reside in Massachusetts, any concerns regarding the availability of compulsory process and the expense of securing the presence of the witnesses also favor transfer to Massachusetts. While the plaintiffs focus on the relative congestion of the two courts' calendars as grounds for the case not being transferred,[2] the Court notes that this case is at an early stage of the litigation[3] and this Court's calendar is actually quite congested.[4]

Other relevant factors also weigh in favor of transferring this case to Massachusetts. Not only do the local interests in this matter strongly favor transferring

---

[1] Defendant notes that the three major issues in DES cases are: the questions of exposure, product identification, and the nature and extent of Mrs. Thompson's alleged injuries. Regarding exposure, defendant anticipates the need to obtain relevant medical records and to depose the physicians that are still alive who treated plaintiff's mother during her pregnancy. Def.'s Mem. at 5. As for product identification, defendant maintains it will need to depose the dispensing pharmacist or other pharmacy employees regarding the dispensing practices of the pharmacy or pharmacies in question. Id. Finally, regarding Mrs. Thompson's injuries, defendant contends that proof of the alleged injuries will come to the fact-finder in the form of medical records located in Massachusetts and from the testimony of Mrs. Thompson's and her mother's physicians. Three of the seven physicians identified by the plaintiffs who treated Mrs. Thomson are still living and believed to currently practice in Massachusetts. Id. at 6. In addition, most, if not all of the other witnesses and non-witness evidence are also located in Massachusetts.

[2] Plaintiffs' counsel seeks to make a comparison between the efficiency and speed of this Court and the District of Massachusetts in resolving DES cases. The basis offered for this comparison is two DES cases originally filed in this Court on October 7, 2002. Compare Christine Foti et ux v. Eli Lilly and Company, Civ.A. No. 02-1977, with Hillary Blank et ux v. Eli Lilly and Company, Civ.A. No. 02-1976. In the first case a motion to transfer the case to Massachusetts was granted on November 22, 2002, and according to the plaintiffs, no action has yet been taken by the Massachusetts district court. And, in an effort to make a comparison between the two jurisdictions, the plaintiffs assert that in the second case a settlement conference has been scheduled for August 5, 2003, before another member of this Court.

[3] This case is currently in the early stages of litigation as the close of discovery is not scheduled to occur until October 15, 2003.

[4] Neither party disputes that the assigned judicial settlement officer, Magistrate Judge Kay, has experience settling DES cases, which admittedly could contribute to the expeditious resolution of this action. However, the District of Massachusetts has been exposed to substantial DES litigation as well, see, e.g., Payton v. Abbott Labs., 100 F.R.D. 336 (D. Mass. 1983), and has had at least five DES cases transferred to it from this district in the last year and a half. Defendant's Reply in Support of its Motion to Transfer ("Def.'s Reply") at 4. Therefore, the plaintiffs have failed to demonstrate that calender congestion in the District of Massachusetts would unduly delay the resolution of this case or that this court is better equipped to ensure the timely processing of a DES case.

this case to Massachusetts, but it also appears that Massachusetts state law will govern

the plaintiffs' claims.[5] And a Massachusetts court is better equipped to apply

Massachusetts law, as another member of this Court has commented, the interests of

justice "[a]re best served by having a case decided by the federal court in the state whose

laws govern the interests at stake." Trout Unlimited v. United States Dep't of

Agriculture, 944 F. Supp. 13, 19 (D.D.C. 1996).

    While this Court finds it significant that Massachusetts has such strong

connections to this case, equally significant is that the District of Columbia has no such

connection to this matter. The plaintiffs assert that there is a connection between the

District of Columbia and their claims because this jurisdiction is where the original

industry wide promotion of DES occurred and where defendant lobbied and applied for

Food and Drug Administration approval to sell and promote DES. Plaintiffs' Opposition

to Defendant's Motion to Transfer ("Pls' Opp'n") at 4. Plaintiffs also argue that the

defendant spent over $6,500,000 in 2001 on marketing and lobbying efforts in the

District of Columbia and currently employs at least 58 lobbyists in this jurisdiction. Id.

at 5. Plaintiffs further note that the defendant itself has selected the District of Columbia

as its home forum in litigation against its insurers involving coverage of the DES claims

that have been filed against it. Id. This Court is unconvinced that these contacts, which

have no direct connection to this case, favor maintaining this case in the District of

Columbia.

---

[5] If this case remained in the District of Columbia, Massachusetts substantive law would most likely govern
this litigation. To determine what law this Court would have to apply, it must use the District of
Columbia's choice of law analysis. See Ideal Electronic Security Co. v. International Fidelity Ins. Co., 129
F.3d 143, 148 (D.D.C. 1997). And this analysis would seemingly compel this court to apply
Massachusetts law.

Finally, the Court notes that this case is clearly distinguishable from a recent DES

case in which this Court denied transfer pursuant to 28 U.S.C. § 1404(a). In <u>Ingram v.</u>

<u>Eli Lilly & Co.</u>, No. Civ.A. 02-2023, 2003 U.S. Dist. LEXIS 1619, (D.D.C. January 28,

2003) (Walton, J.), the plaintiff's injuries arose in Seattle, Washington. <u>Id.</u> at *5.

However, the plaintiff's mother lived in Oklahoma; the prescribing obstetrician was

located in California; plaintiff's expert witnesses resided in Texas, Arkansas,

Pennsylvania and Alabama; and none of the expert witnesses that the defendant

customarily used were located in the State of Washington State. <u>Id.</u> Thus, although the

State of Washington was the location where the DES was prescribed and ingested, none

of the vital witnesses remained in that jurisdiction. <u>Id.</u> In this case, there is no such

concern over a lack of a substantial connection to one particular jurisdiction. Therefore,

the plaintiffs' reliance on <u>Ingram</u> is misplaced.

Accordingly, it is, hereby this 27th day of June, 2003,

**ORDERED** that the defendant's motion to transfer the case is **GRANTED**. It is

**FURTHER ORDERED** that this case shall be transferred to the District of

Massachusetts.

REGGIE B. WALTON
United States District Judge

6

Exhibit 4

Page 1

```
1                IN THE UNITED STATES DISTRICT COURT

2                   FOR THE DISTRICT OF COLUMBIA

3

4   VICTOIRE DUMONT,

5            Plaintiff      Civil Action No.: 07-CV-01635

6   vs.

7   ABBOTT LABORATORIES, INC.,

8   et al.,

9            Defendants

10  _____/

11

12            The deposition of VICTOIRE DUMONT was held

13  on Tuesday, April 29, 2008, commencing at 10:00 a.m. at

14  the Law Offices of Aaron M. Levine & Associates, P.A.,

15  1320 19th Street, N.W., Suite 500, Washington, D.C. 20006,

16  before Steven Poulakos, Notary Public in and for the

17  District of Columbia.

18

19

20

21  REPORTED BY:  Steven Poulakos
```

Towson Reporting Co.
410-828-4148

GORE BROTHERS
410-837-3027

Whitman Reporting - Rockville
301-279-7599

Page 2

```
 1   APPEARANCES:

 2

 3       ON BEHALF OF THE PLAINTIFF:

 4           AARON M. LEVINE, ESQUIRE

 5           Aaron M. Levine & Associates, P.A.

 6           1320 19th Street, N.W., Suite 500

 7           Washington, D.C. 20006

 8           202-833-8040

 9           202-833-8046 (fax)

10

11       ON BEHALF OF THE DEFENDANT, E.R. SQUIBB

12       & SONS, INC.:

13           SIDNEY G. LEECH, ESQUIRE

14           Goodell, DeVries, Leech & Dann, LLP

15           One South Street, 20th Floor

16           Baltimore, Maryland 21202

17           410-783-4000

18           410-783-4040 (fax)

19           sgl@gdldlaw.com

20

21   (APPEARANCES continued on next page.)
```

Page 3

```
 1   (APPEARANCES continued.)

 2       ON BEHALF OF THE DEFENDANT, ELI LILLY &

 3       COMPANY:

 4           ERICKA L. KLEIMAN, ESQUIRE

 5           Shook, Hardy & Bacon

 6           600 14th Street, N.W., Suite 800

 7           Washington, D.C. 20005

 8           202-783-8400

 9           202-783-4211 (fax)

10           ekleiman@shb.com

11

12       ON BEHALF OF THE DEFENDANT, UPJOHN COMPANY,

13       MCNEIL LAB, INC.; MERCK & COMPANY:

14           ELIZABETH EWERT, ESQUIRE

15           Drinker, Biddle & Reath

16           1500 K Street, N.W., Suite 1100

17           Washington, D.C. 20005

18           202-842-8800

19           202-842-8465 (fax)

20           elizabeth.ewert@dbr.com

21   (APPEARANCES continued on next page.)
```

1   Baumann and recently Victoire DuMont Babbit.

2        Q    Do you use your hyphenated name,

3   Dumont-Babbit, on your license or in legal documents?

4        A    Not yet, no.

5        Q    How long have you lived at your present

6   address?

7        A    Four years.

8        Q    Is that a home you're purchasing?

9        A    Yes.

10       Q    On Long Island?

11       A    Yes, sir.

12       Q    Have you ever voted in France?

13       A    Yes, I believe so.

14       Q    When was the last time you voted in France?

15       A    I can't recall, honestly.

16       Q    Ten years ago?

17       A    More than that.

18       Q    Have you ever voted in New York?

19       A    No.  I'm not an American citizen, so I

20   cannot vote.

21       Q    What is your immigration status at the

Towson Reporting Co.
410-828-4148

GORE BROTHERS
410-837-3027

Whitman Reporting - Rockville
301-279-7599

1   present time?

2          A      Green card.

3          Q      And how long is the green card good for?

4          A      I believe until two thousand -- don't quote

5   me.  It's more than --

6          Q      Do you have it with you.

7          A      No, I don't, but it's -- don't quote me.

8          Q      Have you had more than one green card?

9          A      One.

10         Q      Just one?

11         A      Just one, yes.

12         Q      But it's currently current?

13         A      Yes, it is.

14         Q      Have you ever been in the United States

15  under any other status other than with a green card?

16         A      Yes, I have.  It was a working visa at the

17  beginning.

18         Q      Working visa?

19         A      Yes.

20         Q      When was that issued?

21         A      When I first -- I don't remember the dates,

Towson Reporting Co.
410-828-4148

GORE BROTHERS
410-837-3027

Whitman Reporting - Rockville
301-279-7599

1    to be honest.

2         Q    I don't need the date, but give me an

3    approximation.

4         A    I would say 1998 approximately.

5         Q    Then after the working visa is when you got

6    the green card?

7         A    Right.   That was correct.

8         Q    Have you applied for citizenship in the

9    United States?

10        A    I'm going to.

11        Q    But you haven't done it yet?

12        A    No.

13        Q    You currently have a French passport?

14        A    I do.

15        Q    So you've never had a U.S. passport?

16        A    No.

17        Q    Have you been a citizen of any country

18   other than France?

19        A    No.

20        Q    Now, you were previously married to John

21   Baumann?

Page 37

```
 1        A      In Hoboken.

 2        Q      What was the timeframe when you lived

 3   there?

 4        A      I believe it was '02/'03, 2002/2003.

 5        Q      Thank you.

 6               MR. STEINER:  I don't have anymore

 7   questions.

 8               MR. LEECH:  Anybody else?

 9               MR. LEVINE:  Thank you.

10               MR. LEECH:  If you would give your attorney

11   the thing you identified on the record for us which

12   were marriage certificates, divorce papers, and the

13   prescription.

14               MR. LEVINE:  Give it to Sybil.

15    (Whereupon, at 10:49 a.m., deposition was adjourned.)

16     (By stipulation of counsel with the consent of the

17          witness, reading and signature waived.)

18

19

20

21
```

Towson Reporting Co.
410-828-4148

GORE BROTHERS
410-837-3027

Whitman Reporting - Rockville
301-279-7599

1    District of Columbia,

2    To wit:

3            I, Steven Poulakos, registered Professional

4    Reporter, the officer before whom the foregoing

5    proceedings were taken, do hereby certify that the

6    foregoing transcript is a true and correct record of

7    the proceedings; that said proceedings were taken by me

8    stenographically and thereafter reduced to typewriting

9    under my supervision; and that I am neither counsel

10   for, related to, nor employed by any of the parties to

11   this case and have no interest, financial or otherwise,

12   in its outcome.

13           In witness whereof, I have hereunto set my

14   hand and affixed my notarial seal this 2nd day of

15   May, 2008.

16

17                    _____

18                         Steven Poulakos

19                         Notary Public

20   My commission expires:

21   June 17, 2009

Exhibit 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| VICTOIRE DUMONT, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| v. | ] | Civil Action No.: 07-CV-01635 (JR) |
| | ] | |
| THE ABBOTT LABORATORIES, INC., et al., | ] | |
| | ] | |
| Defendants. | ] | |

*FEB 11 2008*

## ANSWERS TO DEFENDANT ELI LILLY AND COMPANY'S
## FIRST SET OF INTERROGATORIES TO THE PLAINTIFF

Plaintiff Victoire Dumont ("Plaintiff" or "Dumont") hereby responds to the First Set of

Interrogatories of Defendant Eli Lilly and Company ("Defendant" or "Lilly") as follows:

### GENERAL OBJECTIONS

Plaintiff makes the following General Objections to Defendant's Interrogatories.

These General Objections set forth below are incorporated, as appropriate, into each of

Plaintiff's responses to the Interrogatories and are not waived, or in any way limited, by any

specific objections.

### A. Scope and Relevance

Plaintiff objects to Defendant's Interrogatories on the grounds that they are vague,

ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the

discovery of admissible evidence. Plaintiff further objects to the Interrogatories on the

grounds that they are not stated with reasonable particularity and attempt to impose

obligations beyond those authorized by the applicable law and Federal Rules of Civil

Procedure. For example, Defendant's Interrogatories contain twenty-five (25) separate

138228/ 3-2

interrogatories; however, many of these interrogatories have multiple parts and/or subparts. In this regard, Plaintiff objects because the interrogatories are beyond the scope of those permitted by the Federal Rules of Civil Procedure. Moreover, many of the Interrogatories seek information or documents that are neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence.

**B.     Privilege**

Defendant's Interrogatories by their terms do not exclude privileged or otherwise protected communications from the information and documents sought. Plaintiff objects to Defendant's Interrogatories to the extent they seek information and documents protected from discovery by reason of the attorney-client privilege, the work product doctrine, the common interest privilege, and any other applicable privilege, protection, exception or immunity. Inadvertent disclosure of any information or documents shall not be a waiver of any claim of privilege, protection, exemption or immunity.

**C.     Activities Protected by the First Amendment and Other Immunities**

Plaintiff objects to the Interrogatories to the extent that they seek information related to activities protected by the First Amendment f the Untied States Constitution, comparable provisions of the applicable state and/or local Constitutions, and the *Noerr-Pennington* Doctrine.

**D.     Information not in Plaintiff's Possession, Custody or Control**

Plaintiff objects to the Interrogatories to the extent that they seek information or documents not within Plaintiff's possession, custody or control and/or seek information or documents within the possession, custody or control of other parties or third parties.

2

### E.    Time Frame

Plaintiff objects to the Interrogatories to the extent that they seek information or documents not within Plaintiff's possession, custody or control and/or seek information or documents within the possession, custody or control of other parties or third parties.

### F.    Defendant's Instructions

Plaintiff objects to Defendant's instructions on the grounds that they are vague, ambiguous, overly broad, unduly burdensome, seek information that is neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence and attempt to impose obligations beyond those authorized by the Federal Rules of Civil Procedure or other applicable authority.

### G.    Supplementation & Reservation of Rights

Plaintiff reserves the right to amend or supplement these responses following further discovery and to present further information at trial.

### INTERROGATORY #1:

Please state your present name, date and place of birth, Social Security number, and all other names you have used or been known by, including the period during which you were known by such other names.

ANSWER:

> Victoire Dumont
> 214 Harrison Drive
> Centerport, New York  11721
> SSN:  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
> DOB:  12/03/70
> POB:  Paris, France
>
> Previous/other names of Plaintiff:    Marie-Victoire  Dumont;  Victoire  Baumann;
> Victoire Dumont-Babbit

**INTERROGATORY #2:**

Please state in chronological order the full address for each residence at which you have resided for a period thirty (30) days or more, and state the date each such residency was commenced and terminated.

ANSWER:

214 Harrison Drive
Centerport, NY 11721
(2004-present)

321 East 92nd Street
New York, NY 10128
(2003-2004)

1500 Hudson Street
Apt. 6D
Hoboken, NJ 07030
(2002-2003)

25-40 Shore Boulevard
Apt. 16M
Astoria, NY 11102
(1999-2002)

101 Crosby Street
3rd Floor
New York, NY 10012
(1995-1998)

354 Broome Street
Apt. 4C
New York, NY 10013
(1994)

rue du Vieil Armand, Studio 140 – 67100 Strasbourg France
(1992 to 1994)

4

9 rue Jean Ferrandi – 75006 Paris – France
(1984 to 1992)

47 rue des murs – 45300 Escrennes – France
(1970 to 1984)

## INTERROGATORY #3:

Please state whether you have ever been married and, if so, for each marriage identify the full name and present address of your spouse, the date and place of marriage and the date, place and manner of the termination of any such marriage including the date, place and court where any divorce or dissolution was granted.

ANSWER:    See General Objections.  Subject to, but without limitation thereto, Plaintiff answers: Plaintiff is currently married to Douglas Babbit.  This marriage began on October 29, 2006 in Centerport, NY.  Plaintiff had been in a previous marriage that began on June 22, 2002 in the town of Escrennes, County of Loiret, France.  This first marriage was terminated on August 3, 2004.

## INTERROGATORY #4:

Please state your education background including colleges attended, years of such attendance and any degrees or diplomas obtained from such colleges.

ANSWER:    See General Objections.  Subject to, but without limitation thereto, Plaintiff answers:

**Strasbourg,** France
Bachelors Degree in Marketing and Management, 1992 to 1994

5

**Paris,** France
Associate Degree in International Trade, 1990 to 1992

**Paris,** France
High school degree in Economics, 1985 to 1990
Lycee Paul Claudel


## INTERROGATORY #5:

Please state the name and address of your present and past employers and/or any periods of self-employment, including the job title, nature of duties, length or period of employment or self-employment, average monthly earnings and reason for leaving employ of each such employer or period of self-employment.

ANSWER:    See General Objections.   Subject to, but without limitation thereto, Plaintiff answers:

December 2007 to present
**Peoples Liberation/William Rast**
150 W Jefferson Blvd
Los Angeles, CA
VP of Sales
Manage a team of 15 people and a $35.0m business. Clothing line represented by Justin Timberlake

January 2006 to November 2007
**Liz Claiborne Inc.**
40 west 34th street
New York, NY 10016
Director of Sales
Managed a $16.0 million business and a team of 8 people
Reason for leaving: Sale of Division

June 2005 to January 2007
**BCBG MAXAZRIA**
1440 Broadway
New York NY
Director of Sales

6

Run a $25.0m division and manage a sales team of 7 people
Reason for leaving: New opportunity

November 2004 to June 2005
**Mark Ecko Enterprises**
40 East 23rd street
New York, NY
Sales manager
Managed Macy's accounts
Reason for leaving:  to go back to management

December 2001 to November 2004
**Diesel USA**
Lexington Avenue
New York NY
Key account manager
Managed the department stores business $15.0m
Reason for leaving: bigger business

1995 to 2001
**Hugo Boss USA,**
23rd street and 11th avenue
Lehigh building
New York, NY
Sales Director, sportswear
Reason for leaving:  great opportunity


**INTERROGATORY #6:**

Except for the present lawsuit, if you ever made any claim or filed any lawsuit for

personal injury or disability, please provide details, including the approximate date each such

claim or other lawsuit was filed; the nature of your claimed injury, disability or condition, the

name and address or each person, firm or corporation against whom such claim or suit was

made or filed; the amount received by way of settlement, payment or judgment for each such

claim or suit; the approximate date, location and circumstances of the occurrence causing any

injury, disease or disability for each such suit or claim; and the name and address of the court,

7

commission or other body before which such claim or suit was filed, if any, and the number assigned to each such claim or suit.

ANSWER:    See General Objections.  Subject to, but without limitation thereto, Plaintiff answers that she has never before filed another lawsuit.

**INTERROGATORY #7:**

Please state the name and address of each physician or other health care provider who has treated you for any reason which you do not attribute to your alleged exposure to the diethylstilbestrol (DES) referred to in your Complaint including the nature, date, location, of any such treatment, the name and address of each hospital, clinic or other health care facility where you were confined, treated or examined, and the dates of such confinement, treatment or examination.

ANSWER:    See General Objections.  Subject to, but without limitation thereto, Plaintiff answers: unknown at this time.

**INTERROGATORY #8:**

In regard to your menstrual history, please state your age at the onset of menstruation, whether menstruation was regular, and if not, describe menstruation (such as excessive or prolonged flow), and if you have consulted a physician or other health care provider regarding any of these irregularities or difficulties, please state the name and address of the physician, the approximate dates consulted and the reason for any such consultation, examination or treatment.

ANSWER:    See General Objections.  Subject to, but without limitation thereto, Plaintiff

answers:  see medical records for which authorizations will be provided.  Plaintiff further

answers:  First period age 14; irregularities and cramping; had to be on pill to regulate my

period and pain.  Doctors consulted:

**Dr. Patrick Jeanmougin**
1 avenue d'Alsace – 67000 Strasbourg – France
1992-1994--consulted on various occasions because of extreme pain.

**Dr. Christine Haie Meder**
Institut de cancerologie Gustave Roussy – 39 rue Caille-Desmouslins 94805 Villejuif Cedex
France
1992-1997--consulted on various occasions to address pain and clear cell adenocarcinoma of
vagina and cervix.
July 5th, 2006

**Hackensack University Medical Center, Emergency Room**
August 11, 2001--Extreme pain
October 2002--Extreme pain

**Dr. Ilana Browstein**
525 east 68th street – New York NY 10021
2001-present--medical monitoring
June 22, 2006-Hysterogram requested by Dr. Brownstein.  Due to distortion of Plaintiff's
anatomy the cervix could not be well visualized or cannulated and the hysterosalpingogram
could not be performed.

**INTERROGATORY #9:**

        If you have ever attempted to become pregnant, but been unable to conceive, and the

name and address of any physician or other health care provider consulted and the date(s) of

each consultation.

ANSWER:

Plaintiff tried to conceive in the past 2 years.  See medical records for which authorizations
will be provided.  Plaintiff consulted the following two health care providers regarding her
inability to conceive:

1.)    Dr Ilana Brownstein New York NY

9

2.)    Dr Glenn Schattman – Weil Cornell hospital – 1/24/07, 1/31/07, 2/8/07, 2/28/07, 9/10/07, 10/3/07, 10/12/07.

## INTERROGATORY #10:

If you have ever been pregnant, please state the number of months or years you attempted to conceive before becoming pregnant and the approximate date of conception; the date of termination of the pregnancy and the result (e.g., childbirth, miscarriage, spontaneous abortion, therapeutic abortion, etc.); the name and address of each physician or other health care

ANSWER:    Plaintiff has never been pregnant.

## INTERROGATORY #11:

Please state the inclusive dates of your mother's pregnancy with you, your mother's and father's names as of your date of birth, your mother's address during her pregnancy with you, the name and address of the doctor and/or other persons who delivered you, the name and address of the hospital or other place where you were delivered, including a description of the location is not delivered in a hospital.

ANSWER:

Parents: Marie-Caroline and Bernard Dumont
Lived at 47 rue des murs, 45300 Escrennes, France when Plaintiff was born and Plaintiff's parents still reside there.

Doctor who prescribed DES and who delivered Plaintiff:
Dr. Michel CHIRIE at 26 avenue Lowendal 75015 Paris

## INTERROGATORY #12:

10

Please list the names of all drugs and medications used by you within the last ten (10) years, including, but not limited to, antibiotics, contraceptives, tranquilizers, sleeping pills, antihypertensives, diet aids or hormones; the inclusive dates each such drug or medication was used; the purpose for which each such drug or medication was used; and the name of the physician or other health care provider, if any, who prescribed such drug or medication for your use.

ANSWER:    See General Objections.  Subject to, but without limitation thereto, Plaintiff answers that plaintiff has taken Levora and used Tylenol codene 3 prescribed by Dr Brownstein.

**INTERROGATORY #13**:

Please describe with specificity the injuries, disabilities and/or conditions which you allege to have resulted from your alleged exposure to the drug identified in your Complaint, including any complaints of injury, disability, or condition which have now subsided and when you last had those complaints, and if you are claiming any aggravation of any injury, disability, or condition, describe such condition, and the manner in which you claim such condition was aggravated by your alleged exposure to the drug identified in the Complaint.

ANSWER:

Clear cell adenocarcinoma of vagina and cervix
Deformed uterus
Infertility
Painful ovarian cysts--fifteen years of monthly pain resulting from cysts on ovaries
Ongoing emotional stress as a result of ongoing inability to conceive and bear children
Ongoing fear of occurrence of other DES-related cancers, including breast cancer
Need for lifelong medical surveillance  .
Emotional pain and suffering

**INTERROGATORY #14**:

If you have been confined, examined, x-rayed or treated in any hospital or clinic or physician's office or have consulted any physician or other health care provider as a result of any injury, disability, or condition which you allege to have resulted from your alleged exposure to the drug identified in your Complaint, please state the name and address of each such hospital or clinic or office, the name and address of each treating physician or other health care provider, and the nature of the treatment received by you, including the date of each such confinement, examination, x-ray or treatment.

ANSWER: See answers to Interrogatories #8 and #9. In addition, see medical records to be obtained.

**INTERROGATORY #15**:

Please itemize any and all special damages you claim to have incurred as a result of your alleged exposure to the drug identified in your Complaint, including but not limited to, doctor and hospital bills, prescription bills, counseling services, nursing services, and other employed help, including the name and address of the person or company performing the service, the amount of each bill and the nature of the services rendered.

ANSWER:    To be supplied.

12

**INTERROGATORY #16**:

If you are claiming any loss of income or earnings as a result of any injuries, disabilities or conditions attributed to your alleged exposure to the drug identified in your Complaint, please state the total amount claimed, the dates of employment missed and the reasons therefore; and for the last 5 years in which you filed federal income tax returns, state as to each return filed, your name as it appeared on the federal return, whether the return was a joint return, and the name of your spouse as it appeared on the return in a joint return was filed, and your address as it appeared on the return.

ANSWER:    To be supplied.

**INTERROGATORY #17**:

As to your mother, please state her current full name, maiden name, and any other names used; her date and place of birth; her present address if living, the date and cause of death if deceased; all residences at which your mother lived for a period of more than thirty (30) days since her pregnancy with you was diagnosis; any and all major illnesses, disease and/or conditions your mother has or has had and the approximate dates of such illness, disease and/or condition; the approximate date of each of your mother's pregnancies; the outcome of each of your mother's pregnancies; what drugs, including diethylstilbestrol (DES), were administered in each of your mother's pregnancies; any medical problems developed during your mother's pregnancies; the name and address of each physician or other health care provider your mother consulted during each pregnancy; the name and address of the hospital or clinic where your mother was confined during each such pregnancy; your mother's present marital state and, if married, the name and address of her spouse.

13

ANSWER:

Marie-Caroline Dumont
Maiden name: Victor-Michel
47 rue des murs – 45300 Escrennes - France

Other pregnancies of Marie-Caroline Dumont:

Jean-Philippe Dumont  born in 27 july 1968 –
Mother took DES during pregnancy
Has 3 children.

Victoire Dumont born in December 3rd, 1970
Mother took DES during pregnancy
No children, unable to conceive

Antoine Dumont born in 28 August 1977
Mother did not take DES
No children

Julien Dumont born in 10 December 1978
Mother did not take DES
No children

Docteur who prescribed DES and who delivered Victoire Dumont:
Dr. Michel CHIRIE at 26 avenue Lowendal 75015 Paris

Plaintiff's mother and father have been married since November 1966.
Plaintiff's mother's spouse:  Bernard Dumont
Both live at 47 rue des murs – 45300 Escrennes – France


**INTERROGATORY #18**:

As to your father, please state his full name; his place and date of birth; his present

address if living, the date and cause of death if deceased; all residences at which your father

lived for a period of more than thirty (30) days since the date of your birth; all major illnesses,

diseases and/or conditions which your father has or has had and the approximate dates of such

14

illness, disease and/or condition; his present marital status and, if married, the name and address of his spouse.

ANSWER:    See General Objections.  Subject to, and without limitation thereto, Plaintiff answers:

Father Bernard Dumont has been living all his married life at 47 rue des murs – 45300 Escrennes – France
Marital status: married to Plaintiff's mother, Marie-Caroline Dumont
No major illness to report.

**INTERROGATORY #19:**

As to your brothers and sisters, please state their names at birth; their present names if different from their names at birth and any other names used; their present addresses if living, the date and cause of their deaths if deceased; all major illnesses, diseases and/or conditions which each has or has had and the dates of each such illness, disease and/or condition; the date of each of their births and their relationship to you (natural brother. Step-sister, adopted, etc.).

ANSWER:    See General Objections.  Subject to, but without limitation thereto, Plaintiff answers:  see answer to interrogatory #17.

Brother: Jean-Philippe Dumont  born in 27 july 1968 –
131 avenue achille Perreti – 92200 Neuilly sur Seine – France
No disease to report.

Brother: Antoine Dumont born in 28 August 1977
mentally handicapped

Brother: Julien Dumont born in 10 December 1978
Paris - France
No disease to report.

**INTERROGATORY #20**:

As to your allegation that your mother ingested diethylstilbestrol (DES) during her pregnancy with you, and that such diethylstilbestrol (DES) was manufactured by Lilly, please state all dates when diethylstilbestrol (DES) was prescribed for your mother, the names and addresses of each physician who prescribed diethylstilbestrol (DES) for your mother, the names and addresses of all pharmacies, physician's offices, hospitals, clinics or other places at which your mother obtained diethylstilbestrol (DES) or it was obtained for her, the name and address of each person known to you or your representatives who has knowledge of the facts which support such allegations and please identify each fact and each document which support such allegations.

ANSWER:

Docteur Michel CHIRIE at 26 avenue Lowendal 75015 Paris
Prescription of DES on:
23 April 1970
25 May 1970

Pharmacy to be provided.

**INTERROGATORY #21**:

Describe in detail the physical appearance of the diethylstilbestrol you allege your mother ingested, including its form (for example, pill, injections, capsule), the shape, color, or size or any pill, table or capsule, the dosage of the DES your mother took, the number of times it was taken per day, and any markings that may have appeared on the product.

ANSWER: To be supplied.

**INTERROGATORY #22**:

Please state the date on which you first believed that your mother took DES during her pregnancy with you, the date you first discovered any injury you claim to be due to your exposure to DES, and the date you first discovered any injury you claim to be due to your exposure to DES, and the date you first believed that DES manufacturers in general or any DES manufacturer in particular acted in any way wrongly, negligently, or tortiously in the manufacture or distribution of DES or in the warning about the use of DES.

ANSWER: First trimester. Plaintiff learned of the DES manufacturers' negligence and wrongdoing in 2007.

**INTERROGATORY #23**:

For each document, letter, written statement, memorandum or other written material from Lilly that you, your attorneys or other representatives may have, please state the exact description of each such item, the date appearing on each such item, the location where each such item was obtained, the name and address of the person to whom such written material was directed, the name and address of the person who obtained each such item, the name and address of the person who provided each such item and the name and address of the person known to Plaintiff to have custody of the written material.

ANSWER:    See General Objections. Information sought is subject to attorney-client and/or work product privilege.

17

**INTERROGATORY #24**:

If you ever received, or if you have in your possession any documents, correspondence or publications from the national DESAD Project or any DES action organization please identify each such document, item or correspondence, or publication and indicate the date you received each such item and the source of each such item; and if not provided by the above-named organizations, please state the name and address of the person who gave you the item.

ANSWER:    See General Objections. Information sought is subject to attorney-client and/or work product privilege.

**INTERROGATORY #25**:

Please identify all other persons having personal knowledge of any of the facts bearing on your claim, and for each such person state his or her address, telephone number and relationship to you, if any.

ANSWER:    Plaintiff, Douglas Babbit (husband), Marie-Caroline Dumont (mother) and Bernard Dumont (father). Mr. Babbit's address is 214 Harrison Drive, Centerport, NY 11721. See also answer to interrogatory #11.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of February 2008 a copy of Plaintiff's Answers to Defendant Eli Lilly and Company's First Set of Interrogatories to the Plaintiff were mailed first-class, postage prepaid, to:

Michelle R. Mangrum, Esq.
John Chadwick Coots, Esq.
Brandon J. Waggoner, Esq.
Shook Hardy & Bacon, LLP
600 14th St., N.W., Suite 800
Washington, D.C. 20005-2004

David W. Brooks, Esq.
Shook Hardy & Bacon, LLP
2555 Grand Blvd.
Kansas City, Missouri 64109; *Attorneys for Defendant Eli Lilly & Company*

Sidney G. Leech, Esq.
Goodell, DeVries, Leech & Dann, LLP
One South Street, 20th Floor
Baltimore, MD 21202; *Attorney for E.R. Squibb & Sons, Inc.*

Elizabeth Ewert, Esq.
Stephanie Albert, Esq.
Drinker, Biddle & Reath LLP
1500 K Street, N.W., Suite 1100
Washington, D.C. 20005-1209; *Attorneys for Upjohn Company; McNeil Lab, Inc.; Merck & Company*

John F. Anderson, Esq.
Troutman Sanders, LLP
1660 International Drive
Suite 600, Tysons Corner
McLean, Virginia 22102; *Attorneys for Dart Industries, Inc.*

Kathleen M. Bustraan, Esq.
Lord & Whip, P.A.
Charles Center South
36 South Charles Street--10th Floor
Baltimore, MD 21201; *Attorneys for Lannett Company, Inc.*

Janet Coleman, Esq.
Whitney & Bogris, LLP
401 Washington Avenue, 12th Floor

Towson, MD 21204; **Attorneys for Mallinckrodt, Inc.; Burroughs-Wellcome & Co.; S.E. Massengill Co.**

Sarah S. Keast, Esq.
Goodwin Proctor, LLP
901 New York Avenue, Suite 900
Washington, D.C. 20001; **Attorney for Premo Pharmaceutical Laboratories, Inc.**

Jennifer Gardner Levy, Esq.
Kirkland & Ellis
655 15th Street., N.W.
Washington, D.C. 20005-5793; **Attorney for Abbott Laboratories, Inc.**

Jaime W. Luse, Esq.
Tidings & Rosenberg, LLP
100 East Pratt St., Suite 2600
Baltimore, MD 21202; **Attorney for Carnrick Laboratories, inc. n/k/a Elan Pharmaceuticals**

Robert N. Kelly, Esq.
Jackson & Campbell, PC
1120 20th St., N.W., Suite 300-South
Washington, D.C. 20036; **Attorneys for Kremers-Urban Co.**

Roxanne DeFrancesco

# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| **VICTOIRE DUMONT,** ) | |
| ) | |
| **Plaintiff,** ) | **CIVIL ACTION No. 07-CV-01635 (JR)** |
| ) | |
| **vs.** ) | |
| ) | |
| **THE ABBOTT LABORATORIES, INC., et al.,** ) | |
| ) | |
| **Defendants**. ) | |

## ORDER

UPON CONSIDERATION of Plaintiff's Motion to Transfer to the Eastern District of New York, the related briefing and the record herein, pursuant to 28 U.S.C. § 1404(a),

IT IS HEREBY ORDERED that Plaintiff's Motion is DENIED.

Dated: _____, 2008    _____
United States District Judge

cc:    Appended list of counsel of record

## COUNSEL OF RECORD

Aaron M. Levine
Aaron M. Levine & Associates
1320 19th Street, N.W., Suite 500
Washington, D.C.  20036
**Attorneys for Plaintiff**

Sybil Shainwald
Roxanne DeFrancesco
Law Offices of Sybil Shainwald
111 Broadway, 4th Floor
New York, NY 10006
**Attorneys for Plaintiff**

John F. Anderson
Troutman Sanders, LLP
1660 International Drive
Suite 600, Tysons Corner
McLean, VA 22102
**Attorneys for Dart Industries, Inc.**

Elizabeth Ewert
Drinker, Biddle Reath, LLP
1500 K Street, N.W., Suite 1100
Washington, D.C. 2005-1209
**Attorneys for Upjohn Company**

Janet Coleman
Whitney & Bogris, LLP
401 Washington Avenue, 12th Floor
Towson, MD 21204
**Attorneys for S.E. Massengill Co.**

Kathleen M. Bustraan
Lord & Whip, P.A.
Charles Center South
36 South Charles Street, 10th Floor
Baltimore, MD 21201
**Attorneys for Lannett Company, Inc.**

Jennifer Gardner Levy
Kirkland & Ellis
655 15th Street, N.W.
Washington, D.C. 20005-5793
**Attorneys for Abbott Laboratories, Inc.**

Sarah S. Keast
Goodwin Proctor, LLP
901 New York Avenue, Suite 900
Washington, D.C. 20001
**Attorneys for Premo Pharmaceutical Laboratories, Inc.**

Robert M. Kelly
Jackson & Campbell, P.C.
1120 20th Street, N.W., Suite 300-South
Washington, D.C. 20036
**Attorneys for Kremers-Urban Co.**

Gerry H. Tostanoski
Jaime W. Luse
Tydings & Rosenberg, LLP
100 East Pratt Street, Suite 2600
Baltimore, MD 21202
**Attorneys for Carnick Laboratories, Inc. n/k/a/ Elan Pharmaceuticals**

2945983v1

William David Sanders
McGivney & Kluger, P.C.
23 Vreeland Road, Suite 220
Florham, NJ 07932
**Attorneys for Rhone-Poulenc Rorer Pharmaceuticals, Inc.**

Michelle R. Mangrum
John Chadwick Coots
Shook, Hardy & Bacon, L.L.P.
600 14th Street, N.W., Suite 800
Washington, D.C. 20005-2004
**Attorneys for Eli Lilly and Company**

2945983v1