# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| VICTOIRE DUMONT, | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | Civil Action No.  07-CV-01635 (JR) |
| **v.** | ] | |
| | ] | |
| ABBOTT LABORATORIES, INC., et al., | ] | **REPLY MEMORANDUM IN** |
| | ] | **FURTHER SUPPORT OF** |
| | ] | **PLAINTIFF'S MOTION TO** |
| | ] | **TRANSFER** |
| **Defendants.** | ] | |
| | ] | |

_____

Plaintiff Victoire Dumont ("Plaintiff") submits this memorandum of law in further support of her motion to transfer this case to the Eastern District of New York. For the convenience of the parties and in the interests of justice, this case should be transferred to the Eastern District of New York :

(1)     where Plaintiff currently resides, has resided for years and where Lilly concedes Plaintiff is domiciled;

(2)     where the majority of Plaintiff's DES-related injuries have been diagnosed, treated, and/or monitored;

(3)     where the Court has subpoena power to compel the testimony of all of Plaintiff's current treating physicians and medical providers;

(4)     which is located in the same city as a majority of fact and expert witnesses in this case, and to where any of Plaintiff's remaining witnesses are willing to travel;

(5)     which is located in the same city where a majority of Plaintiff's medical records are located;

(6)    where dozens of other DES lawsuits involving the exact same defendants, including Eli Lilly & Co. ("Lilly" or "Defendant"), are currently pending;

(7)    where one District Court Judge and one Magistrate Judge are assigned to all DES cases, and where a Special Master has been appointed by Senior Judge Jack B. Weinstein;

(8)    where, in the interests of efficiency and judicial economy, Plaintiff could move the Court to join for trial all the cases in which the DES manufacturers named in this suit are also named Defendants in the dozens of other DES lawsuits pending in that District; and

(9)    which is most familiar with New York substantive law, which applies in this case.

Notably, Lilly's memorandum, while lengthy, is bereft of an address of any of the aforementioned material circumstances.  Rather, Defendant rests its sole opposition to the within motion on the theory that the case involves contacts with France.  Nowhere in Defendant's memorandum in opposition is there a single mention of a material contact to the District of Columbia.[1]  Accordingly, in light of the numerous contacts with the Eastern District of New York, the interests of convenience and fairness dictate that Plaintiff's motion to transfer this case to the Eastern District of New York should be granted.

Defendant Lilly does not dispute that this case could have been brought in the Eastern District of New York.  Thus, the relevant analysis under 28 U.S.C. § 1404(a) is "an individualized case-by-case consideration of convenience and fairness."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)(quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622

---

[1] Remarkably, at Defendants' deposition of Plaintiff on April 29, 2008, which was held for the express purpose of opposing this motion to transfer from the District of Columbia to the Eastern District of New York, Defendants did not ask a single question about Plaintiff's contacts with the District of Columbia.

(1964)).  Both Defendant Lilly and Plaintiff agree that in addition to convenience and fairness, some courts weigh a number of "private-interest" and "public interests" to evaluate whether the transfer is warranted in a particular case.  *Trout Unlimited v. U.S. Dep't of Agriculture*, 944 F.Supp. 13, 16 (1996).  Under any relevant analysis, this case should be transferred to the Eastern District of New York.

## I.    PRIVATE INTEREST CONSIDERATIONS MILITATE IN FAVOR OF TRANSFER TO THE EASTERN DISTRICT OF NEW YORK.

### A.    Plaintiff has Substantial Ties and the Subject Matter of this Lawsuit is Connected to New York.

The case law cited by Lilly to support an argument that the private interests in this case favor denial of the motion to transfer, and outlines factual scenarios where cases have been transferred to districts possessing substantial ties to the plaintiff and the subject matter of the lawsuit, much like the Eastern District of New York has substantial ties to Plaintiff and her DES claims in this case.  *See Lagor v. Eli Lilly & Compan*y, Slip Copy, 2007 WL 1748888. As the Court held in *Lagor*, a party seeking transfer need only make a "diminished" showing to justify transfer to a "forum with which [a] plaintiff[] ha[s] substantial ties and…the subject matter of the lawsuit is connected."  *Lagor v. Eli Lilly & Compan*y, Slip Copy, 2007 WL 1748888 at *2 *referencing Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-256 (1981). Specifically, in *Lagor*, the Court held that a DES case should be transferred from the District of Columbia to another United States District, where the plaintiffs received diagnoses and treatment for their DES-related injuries almost exclusively, and where a plaintiff's injuries occurred.  Indeed, in *Lagor* this Court characterized such connections as a "substantial

nexus."[2]

Similar to the facts in *Lagor*, in the instant case, Plaintiff has a substantial nexus to New York City, where the Eastern District of New York is located, since she received diagnoses and treatment for her DES-related gynecological and fertility injuries almost exclusively in New York.  *See* Declaration of Brandon Levine ("Levine Dec."), Exhibit A (Affidavit of Plaintiff Victoire Dumont in Support of Plaintiff's Motion to Transfer); Affidavit of John C. Coots in Support of Lilly's Opposition to Motion to Transfer (Coots Aff.), Ex. 5 (Transcript of Deposition of Victoire Dumont, p. 35, 38-39).  In addition, Plaintiff is a long-time resident of the Eastern District of New York and Defendant concedes that plaintiff is currently domiciled in New York.  *See id.*; *see also* Lilly's Memorandum in Opposition at p. 9.

Indeed, when the current forum has few meaningful ties to or interest in a lawsuit, the court must be "especially cautious" in allowing a case to remain there.  Trout Unlimited, 944 F. Supp. at 17.  If the forum is not the plaintiff's home forum, and the injury and initial treatment occurred elsewhere, the balance of interests is in favor of transfer.  Brannen v. National R.R. Passenger Corp., 403 F. Supp. 2d 89, 93 (D.D.C. 2005) (holding Maryland a more convenient forum where Texas residents were injured in Maryland and received treatment there). In the instant case, Plaintiff seeks to transfer this case to the Eastern District of New York, a district in which she has been residing for the past four years and where, among other connections, the vast majority of her DES-related injuries have occurred. [3]

---

[2] In light of the substantial nexus to the transferee forum that existed in the *Lagor* case, which is akin to the substantial nexus in the instant case, the Court did not indulge a forum shopping analysis and chose to accord no weight to the Plaintiff's second choice of forum.

[3] By implication, the *Lagor* case suggests that plaintiff's choice of forum is entitled to deference when the plaintiff's choice of forum is the plaintiff's home forum ("With respect to the first private interest factor-the plaintiff's choice of forum--courts have recognized that the deference generally given to a plaintiff's choice of

**B.      The District of Columbia Has No Substantial Connection to This Case.**

Defendant Lilly has not marshaled a <u>single</u> direct connection to the District of

Columbia in this case justifying that the District of Columbia maintain the case.  Rather, Lilly

has obfuscated the issue by arguing that this case also has some contacts to France.  In

*Thompson v. Eli Lilly and Co*., 2003 U.S. Dist. 27443 (D.D.C.), this Court specifically held

that even where some indirect connections to the District of Columbia are asserted by the

party opposing transfer in a DES case, such contacts do not favor maintaining the case in the

District of Columbia.  Here, rather than addressing each of the connections to the Eastern

District of New York that Plaintiff delineates in her moving papers, and despite having had

the opportunity to question plaintiff in her deposition (which was Ordered for the express and

limited purpose of opposing this motion) Lilly simply speculates as to the location of certain

fact witnesses in this case and wrongly states that the relevant medical records for "many" of

her claimed injuries are located in France.[4]  Because there is <u>not a single direct connection to</u>

<u>the District of Columbia</u> in this case,[5]  both private and public interests do not favor

maintaining the case there.  *See Thompson*, at *8 (holding that while the Court finds it

significant that the transferee court has strong connection to the case, "equally significant is

that the District of Columbia has no such connection to this matter").

---

forum is reduced when the chosen forum is not the plaintiff's home forum.")  2007 WL 1748888 at *2; *see also Thompson v. Eli Lilly & Co*., 2003 U.S. Dist. 27443 at *2 (D.D.C.) (transferring a DES case from the District of Columbia both because the case was substantially connected to the transferee forum and because the District of Columbia has no such connection to the case).

[4] Lilly ignores the Affidavit of Plaintiff, which was submitted in support of this motion and explicitly delineates the numerous medical providers who have treated Plaintiff in New York.  *See* Levine Dec., Ex. A.  Furthermore, none of the defendants in this case asked Plaintiff a single question regarding her contacts with the District of Columbia at her limited deposition which was ordered by this Court expressly so that Defendants could oppose the within motion.

[5] The case is indirectly connected to the District of Columbia in that Defendants conduct significant business here.

**C.    Plaintiff's Claims Arose in New York.**

Because the majority of Plaintiff's injuries which serve as the basis of Plaintiff's claims and for which Plaintiff received medical diagnoses, monitoring or treatment occurred in New York, Plaintiff's claims arose in New York.  *See Lagor*, Slip Copy 2007 WL 1748888 at *3 (holding that material facts in determining where a plaintiff's DES claims arose include where the plaintiff(s) received diagnoses and treatment for their DES-related injuries); *see also* Levine Dec., Ex. A. (Affidavit of Plaintiff Victoire Dumont); *see also* DeFrancesco Dec., Ex. A (Transcript of Deposition of Victoire Dumont, p. 35, 38-39); *see also* Coots Aff., Ex. 5 (Plaintiff's Answers to Lilly's First Interrogatories).  As such, venue in the Eastern District of New York is proper because a substantial part of the events giving rise to the claims occurred there.  *See* 28 U.S.C. § 1391(a)(2).

**D.    The convenience of the parties and witnesses, and the ease of access to sources of proof favor transfer to the Eastern District of New York.**

As was the case in *Thompson*, which is relied upon by Lilly in its Memorandum in Opposition, concerns regarding the availability of compulsory process and the expense of securing the presence of witnesses favor transfer in this case. *See* 2003 U.S. Dist. 27443 (D.D.C.).  Indeed, no less than five (5) of Plaintiff's treating physicians and medical providers are located in New York City and within the compulsory subpoena power of the Eastern District of New York.  *See* Levine Dec., Ex. A. (Affidavit of Plaintiff Victoire Dumont) and DeFrancesco Dec., Ex. A (Transcript of Deposition of Victoire Dumont, p. 35, 38-39).  *See Armco Steel Co. v. CSX Corp.*, 790 F.Supp., 311, 324 (D.D.C. 1991) (holding that transfer is favored where many of the fact witnesses reside in the transferee forum, even if only witnesses who will probably testify concerning damages asserted by the plaintiff where some

of the injuries continue to the present day).  By transferring this case to the Eastern District of

New York there will be less expense involved with securing the presence of these medical

professionals who are non-party witnesses.

In addition, the corresponding medical records maintained by each of these providers

are located in New York.  *See id.*  Thus, by transferring this case to the Eastern District of

New York access to the sources of proof will be overall easier and more convenient. *See*

*McClamrock v. Eli Lilly & Co*., 267 F.Supp. 2d 33, 40 (D.D.C. 2003)(granting Lilly's motion

to transfer and holding "…surely plaintiff…and plaintiff's treating physicians…will be far less

inconvenienced by having their testimony taken in the [transferee jurisdiction] rather than

having to endure the inconvenience of traveling to the District of Columbia, which is the most

critical factor to examine under 28 U.S.C. § 1404(a)…")(internal quotations omitted).  Lilly

fails to address these facts <u>anywhere</u> in its opposition papers.

Not only does Lilly fail to address these facts, it disregards them to the point that it

recklessly and wrongly concludes "Indeed, all of the essential non-party witnesses are in

France" and that "[a]ll of these non-party witnesses are outside of the subpoena power of the

Eastern District of New York."  *See* Lilly's Memorandum in Opposition at p. 7.  Lilly

continues mistakenly to assert "[a]s stated above, nearly all of the non-party witnesses are

French citizens who are currently residing in France.  The vast majority of testimony and

documentary evidence is likely located in France and will be in French, requiring

translation…the relevant documents will not be readily available to defendants in a United

States District Court."  As Plaintiff's Affidavit and deposition testimony and responses to

discovery indicate, the majority of Plaintiff's DES-related injuries have been diagnosed or

treated in New York City.  *See* Levine Dec., Ex. A. (Affidavit of Plaintiff Victoire Dumont);

*see also* DeFrancesco Dec., Ex. A (Transcript of Deposition of Victoire Dumont, p. 35, 38-39); Coots Aff., Ex. 5 (Plaintiff's Answers to Lilly's First Interrogatories).

## II.    PUBLIC INTEREST CONSIDERATIONS MILITATE IN FAVOR OF TRANSFER TO THE EASTERN DISTRICT OF NEW YORK.

### A.    New York Law Applies to this Case and New York Should Adjudicate Claims under its Own Law.

While conceding that Plaintiff is domiciled in New York, Lilly continues its reckless characterization and complete disregard of the facts in this case as outlined in Plaintiff's moving papers, answers to interrogatories, deposition testimony and affidavit when it argues that French law should apply to this case. Although a choice-of-law motion has yet to be considered by any court, under the four-part test of this court outlined in Lilly's Opposition, New York law will apply because the evidence indicates that it is has the most significant nexus to the case. *See supra* Point I.A. Certainly, it is the place where many of Plaintiff's injuries occurred, *see supra* Point I.C., and where Plaintiff resides. Furthermore, Lilly concedes that it is Plaintiff's domicile. *See* Memorandum in Opposition, p. 9.

Clearly, the courts in New York would have the greatest familiarity with New York common law. *See, e.g., McClamrock*, 267 F.Supp. 2d at 41 (holding North Carolina District Courts have the greatest familiarity with North Carolina law). New York applies a market share theory to DES cases. *See Hymowitz v. Eli Lilly*, 539 N.E.2d 1069 (N.Y. 1989). The Eastern District of New York has extensive experience in applying New York law regarding DES cases. *In re DES Cases*, 789 F. Supp. 552 (E.D.N.Y. 1992) (discussing New York's DES cases in detail in reference to consolidated DES litigation). Indeed, the very case law cited by Lilly suggests that the public interest would be served by transferring a case from the District of Columbia to a district court familiar with its state's laws where those laws govern

8

the case.  *Trout Unlimited*, 944 F.Supp. at 19.

In assessing the public interests analysis, it is also important to note that the circumstances of the instant case clearly distinguish it from *Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124, 129 (D.D.C. 2001), cited by Lilly.  S*ee id.*  (distinguishing itself from *Trout Unlimited*, 944 F.Supp. at 19).  In *Greater Yellowstone Coalition*, this Court based its decision to keep the case in the District of Columbia because, among other reasons, there was an exclusive focus on claims under federal law.  The court in *Greater Yellowstone Coalition* also based its decision upon finding that the action had a sufficient nexus to the District of Columbia because federal government officials in the District of Columbia were involved in the operative facts of the case, two of the plaintiffs maintained offices in the District of Columbia, and the case involved some national significance.[6] Unlike *Greater Yellowstone Coalition,* the instant case involves common law causes of action arising under state law.  Because this case is based upon state common law causes of action, and New York has the most significant nexus to this case, New York law applies.

Clearly, since (1) there are no fact witness in the District of Columbia, (2) the plaintiff resides in the Eastern District of New York, (3) there is no national significance to this case, and (4) common law claims, rather than exclusively federal claims, are at issue, there is no sufficient nexus to the District of Columbia and the District of Columbia law does not apply. Therefore, the public interest considerations favor transfer of this instant case from the District of Columbia to the Eastern District of New York, where there is a sufficient nexus and its state law will apply.

---

[6] Accordingly, whether the movant in that case was forum shopping was not a dispositive factor in the Court's decision.

9

**B.    Judicial Economy Favors Transfer to the Eastern District of New York.**

Currently, dozens of other DES lawsuits involving the exact same defendants, including Eli Lilly & Co. ("Lilly" or "Defendant"), are currently pending in the Eastern District of New York, where all DES cases are assigned to one District Court Judge and one Magistrate Judge, and a Special Master has been appointed by Senior Judge Jack B. Weinstein to facilitate the resolution of these cases.  The Eastern District of New York has extensive experience in hearing DES cases.  *See, e.g., In re DES Cases*, 789 F. Supp. at 552.  As such, transferring the case to the Eastern District of New York would likely facilitate a more expeditious trial of the case and ease the congestion of the calendar of the District of Columbia without overburdening the Eastern District of New York. *See Armco Steel Co*. at 324 (transferring case from the District of Columbia and holding that a pending related action in a transferee forum could support a decision to transfer a case to that forum)(internal citations omitted).  Moreover, in the interests of efficiency and judicial economy, Plaintiff could then move the Court to join for trial all the cases in which the DES manufacturers named in this suit are also named Defendants in the dozens of other DES lawsuits pending in that District.

10

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Motion to Transfer this case to the Eastern

District of New York should be granted.

Respectfully submitted,


_____s/Roxanne DeFrancesco_____
Roxanne DeFranceso (RD5870)
THE LAW OFFICES OF SYBIL SHAINWALD, P.C.
Attorney(s) for Plaintiff Victoire Dumont
200 West 57th Street, Suite 402
New York, NY 10019
(212) 425-5566
shainwaldlaw@aol.com

11

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **VICTOIRE DUMONT,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | Civil Action No.  07-CV-01635 (JR) |
| **v.** | ] | |
| | ] | |
| **ABBOTT LABORATORIES, INC., et al.,** | ] | **DECLARATION OF ROXANNE** |
| | ] | **DeFRANCESCO, ESQ. IN SUPPORT** |
| | ] | **OF PLAINTIFF'S MOTION TO** |
| | ] | **TRANSFER** |
| | ] | |
| **Defendants.** | ] | |

_____

ROXANNE DeFRANCESCO, ESQ., an attorney duly admitted to practice law in the New York and New Jersey, and the United States District Courts for the Eastern District of New York and District of New Jersey, and admitted *pro hac vice* to the United States District Court for the District of Columbia for purposes of the above-captioned action, declares the following under the penalty of perjury:

1.    I am an associate of the Law Offices of Sybil Shainwald, P.C., counsel to Plaintiff Victoire Dumont in the above-referenced case, and as such, I am fully familiar with facts set forth herein and submit this Declaration in support of Plaintiff's Motion to Transfer.

2.    Annexed hereto as Exhibit "A" is a true and exact copy of excerpted pages from the Deposition Transcript of Victoire Dumont, April 29, 2008.

Dated:  New York, New York
        May 13, 2008

_____s/Roxanne DeFrancesco_____
Roxanne DeFrancesco (RD5870)
THE LAW OFFICES OF SYBIL SHAINWALD, P.C.
Attorneys for Plaintiff Victoire Dumont
200 West 57th Street, Suite 402
New York, NY 10019
(212) 425-5566
shainwaldlaw@aol.com

042908vd[1]

12      Q      How are you today?

13      A      Good.  Thank you.

14      Q      Are you currently being monitored at all by

15  any physician in the United States with respect to

16  cancer?

17              MR. LEVINE:  She doesn't have cancer.

18              MS. KLEIMAN:  Which was treated, but is

19  there any monitoring?

20              MR. LEVINE:  You mean OB-GYN monitoring?

21              MS. KLEIMAN:  That's right.

33

1              MR. LEVINE:  Do you have an OB?

2              THE WITNESS:  It would be Dr. Shattman.

3              BY MS. KLEIMAN:

4      Q      Where is Dr. Shattman?

5      A      In New York.

6      Q      Is Dr. Shattman the Cornell Hospital?

7      A      Yes.

8      Q      Other than Dr. Shattman, have you seen any

9  other OB-GYN since you've been in the United States?

042908vd[1]

```
 6      A     No.   New Jersey for a year I believe or

 7  two, or three.

 8      Q     But you've been in the New York for the

 9  last --

10      A     Fifteen years.

11      Q     Have you undergone any educational programs

12  or degree programs while you've been here in the United

13  States?

14      A     No.

15      Q     I think you mentioned that you've been

16  working primarily in the United States for the last 15

17  years?

18      A     Yes, that's correct.

19      Q     What's your current job position?

20      A     I'm a VP of sales for a denim company,

21  apparel, fashion.
```

36

```
 1      Q     Have you ever received any type of

 2  infertility treatments of any nature?

 3      A     Meaning to overcome the infertility, like
```

```
                         042908vd[1]
 4    an IVF, for instance?

 5         Q    Correct.

 6         A    Yes.

 7         Q    Where was that?

 8         A    At Dr. Shattman's office.

 9         Q    Anywhere else, any other physicians?

10         A    No.

11         Q    MS. KLEIMAN:  Those are all of the

12    questions I have.  Thank you.

13              MR. REILLY:  No questions.

14              MS. EWERT:  I don't have any questions.  I

15    would like to request a copy of the prescriptions for

16    the DES order.

17              MR. LEECH:  We join in that.

18              MR. SAUNDERS:  I have one question for the

19    witness.

20              EXAMINATION BY MR. SAUNDERS:

21         Q    Where in New Jersey did you live?
```

37

```
 1         A    In Hoboken.
```

Page 39